Douglas Q. Hahn, SBN 257559
 dhahn@sycr.com
Salil Bali, SBN 263001
 sbali@sycr.com
STRADLING YOCCA CARLSON & RAUTH, PC
660 Newport Center Drive, Suite 1600
Newport Beach, CA 92660
Telephone:  949-725-4000
Facsimile:  949-725-4100

Manish Mehta (admitted *pro hac vice*)
 mmehta@beneschlaw.com
Zaiba Baig (admitted *pro hac vice*)
 zbaig@beneschlaw.com
BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP
333 West Wacker Drive, Suite 1900
Chicago, IL 60606
Telephone:  312-212-4949
Facsimile:  312-767-9192

*Attorneys for Defendant*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| KAJEET, INC.,<br><br>             Plaintiff,<br><br>     v.<br><br>QUSTODIO, LLC,<br><br>             Defendant. | Case No. 8:18-cv-01519-JAK-PLA<br><br>**The Honorable John A. Kronstadt**<br><br>**QUSTODIO LLC'S NOTICE OF MOTION AND MOTION TO DISMISS PURSUANT TO FRCP 12(b)(6)**<br><br>Hearing Date:  February 4, 2019<br><br>Time:  8:30 a.m. |

1

## NOTICE OF MOTION

2

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

3       PLEASE TAKE NOTICE that on February 4, 2019 at 8:30 a.m., or as soon

4    thereafter as this matter may be heard, Defendant Qustodio, LLC., ("Defendant")

5    will and hereby respectfully moves to dismiss Plaintiff Kajeet, Inc.'s ("Plaintiff")

6    Complaint [Dkt. No. 1] in this action pursuant to FRCP 12(b)(6).

7       Plaintiff's Complaint fails to state a plausible claim for relief under Federal

8    Rule of Civil Procedure 12(b)(6). *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

9    This Motion will be heard in the Courtroom of the Honorable John A. Kronstadt

10   for the United States District Court in the Central District of California.  The Court

11   is located at the First Street Courthouse, Courtroom 10B, 350 W. First Street, Los

12   Angeles, California 90012.

13      This Motion is based on this Notice of Motion, the Memorandum of Points

14   and Authorities set forth below, the pleadings on file herein and upon such other

15   matters as may be presented to the Court at the time of the hearing.

16      This Motion is made following the conference of counsel pursuant to L.R. 7-

17   3, which took place on or about October 31, 2018 between Plaintiff's Counsel

18   Richard Wojcio and Corby Vowell and Defendant's Counsel Manish Mehta and

19   Salil Bali.

20

21   Dated:  November 21, 2018          STRADLING YOCCA CARLSON &
                                        RAUTH, PC
22

23

24                                      */s/ Salil Bali*
                                        Douglas Q. Hahn
25                                      Salil Bali

26

27                                      *Attorneys for Defendant*

28

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-i-

QUSTODIO'S MOTION TO DISMISS

4841-3525-6185v5/105552-0001                                    18-cv-01519

# **TABLE OF CONTENTS**

I.      INTRODUCTION ........................................................................................ 1

II.     THE ASSERTED PATENTS ...................................................................... 2

III.    A MOTION TO DISMISS UNDER RULE 12(B)(6) IS AN APPROPRIATE VEHICLE TO ADDRESS PATENT ELIGIBILITY ..................................... 3

IV.     THESE CLAIMS FAIL *ALICE'S* TWO-STEP TEST ................................... 4

        A.      Standard for Patent-Eligibility Under 35 U.S.C. § 101 ....................... 5

        B.      A Representative Claims Analysis is Appropriate Here ...................... 5

        C.      The Claims Fail Step One of the *Alice* Test Because They Are Directed to an Abstract Idea .................................................................. 7

                1.      Management of functions based on policies is abstract ............. 8

                2.      The claims are abstract because they merely capture human activity ........................................................................... 9

        D.      The Claims Fail *Alice* Step Two Because They Lack an "Inventive Concept" ............................................................................ 13

                1.      The claimed elements are generic and conventional ............... 14

                2.      The functional limitations are also conventional .................... 17

                3.      The claims do not provide a solution to a technological problem ....................................................................................... 23

                4.      The claims, as a whole, are unpatentable ................................. 24

        E.      No disputed material fact prevents dismissal ..................................... 24

V.      CONCLUSION ......................................................................................... 25

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

4841-3525-6185v5/105552-0001

18-cv-01519

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Accenture Glob. Servs., GmbH v. Guidewire Software, Inc.*,
728 F.3d 1336 (Fed. Cir. 2013) ........................................................ 6, 7

*Alice Corp. v. CLS Bank Int'l*,
134 S. Ct. 2347 (2014) ................................................................ *passim*

*Berkheimer v. HP Inc.*,
881 F.3d 1360 (Fed. Cir. 2018) ........................................................ 25

*In re Bilski*,
545 F.3d 943 (Fed. Cir. 2008) .......................................................... 3

*Bilski v. Kappos*,
130 S. Ct. 3218 (2010) ................................................................... 7

*Content Extraction and Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*,
776 F.3d 1343 (Fed. Cir. 2014) .................................................. 5, 7, 18

*CyberSource Corp. v. Retail Decisions, Inc.*,
654 F.3d 1366 (Fed. Cir. 2011) ........................................................ 21

*Eclipse IP LLC v. McKinley Equip. Corp.*,
2014 WL 4407592 (C.D. Cal. Sept. 4, 2014) (Wu, J.) .......................... 4

*Elec. Power Grp., LLC v. Alstom S.A.*,
830 F.3d 1350 (Fed. Cir. 2016) .............................................. 7, 20, 22, 23

*Intellectual Ventures I LLC, v. Capital One Bank (USA)*,
792 F.3d 1363 (Fed. Cir. 2015) .................................................. 1, 9, 17

*Intellectual Ventures I LLC v. Erie Indem. Co.*,
850 F.3d 1315 (Fed. Cir. 2017) .............................................. 19, 20, 21

*Intellectual Ventures II LLC v. JP Morgan Chase & Co.*,
2015 WL 1941331 (S.D.N.Y. April 28, 2015) ................................. 17, 22

*Interval Licensing LLC v. AOL, Inc.*,
896 F.3d 1335 (Fed. Cir. 2018) .................................................. 4, 23

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-iii-

## QUSTODIO'S MOTION TO DISMISS

*Kinglite Holdings Inc. v. Micro-Star Int'l Co. Ltd.*,
  No. CV-14-03009, 2016 WL 4205356 (C.D. Cal., May 26, 2016)
  (Selna, J.) ............................................................................................ 24

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
  132 S. Ct. 1289, 1298 (2012) .............................................. 5, 17, 20, 25

*MyMedicalRecords, Inc. v. Walgreen Co.*,
  2014 WL 7339201 (C.D. Cal. Dec. 23, 2014) ................................... 4, 9

*OIP Techs. v. Amazon.com, Inc.*,
  788 F.3d 1359 (Fed. Cir. 2015) (Mayer, J., concurring) ..................... 4

*Prism Techs. LLC v. T-Mobile USA, Inc.*,
  696 Fed. App'x 1014 (Fed. Cir. 2017) .............................. 1, 10, 13, 22

*Prod. Ass'n Techs. LLC v. Clique Media Group*,
  2017 WL 5664986 (C.D. Cal. Oct. 12, 2017) (Wu, J.) ......................... 4

*SAP Am., Inc. v. InvestPic, LLC*,
  898 F.3d 1161 (Fed. Cir. 2018) .......................................................... 25

*Shipping and Transit, LLC v. Hall Enters.*,
  2017 WL 3485782 (C.D. Cal. July 5, 2017) ................................... 2, 14

*Smartflash LLC v. Apple Inc.*,
  680 Fed. App'x 977, 982–83 (Fed. Cir. 2017) ............................... 9, 21

*Smart Sys, Innovations, LLC v. Chicago Transit Authority*,
  2015 WL 4184486 (N.D. Ill. July 10, 2015), *aff'd*, 873 F.3d 1364
  (Fed. Cir. 2017) ..................................................................... 5, 6, 7, 8

*Tele-Publishing, Inc. v. Facebook, Inc.*,
  252 F. Supp. 3d 17 (D. Mass. 2017) ................................................. 23

In re *TLI Commc'ns LLC Patent Litig.*,
  823 F.3d 607 (Fed. Cir. 2016) ...................................................... 5, 18

*Tranxition, Inc. v. Lenovo (United States) Inc.*,
  664 Fed. App'x 968 (Fed. Cir. 2016) ................................................ 20

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
  874 F.3d 1329 (Fed. Cir. 2017) ......................................................... 20

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-iv-

QUSTODIO'S MOTION TO DISMISS        18-cv-01519

4841-3525-6185v5/105552-0001

*Ultramercial, Inc. v. Hulu, LLC*,
    772 F.3d 709 (Fed. Cir. 2014) .................................................................. 8, 17, 24

*Williamson v. Citrix Online, LLC*,
    212 F. Supp. 3d 887 (C.D. Cal. 2016) (Otero, J.) ............................................. 23

*Zuili v. Google LLC*,
    722 Fed. App'x. 1027 (Fed. Cir. 2018) ....................................................... 14, 15

**Statutes**

35 U.S.C. § 101 .................................................................................................*passim*

**Other Authorities**

Rule 12(b)(6) ............................................................................................................ 3, 4

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-v-

QUSTODIO'S MOTION TO DISMISS          18-cv-01519

4841-3525-6185v5/105552-0001

## I.   INTRODUCTION

This patent case is ripe for dismissal on the pleadings. Here, plaintiff Kajeet, Inc. ("Kajeet") seeks to stretch its monopoly to accuse technologies well outside the bounds of what the asserted patents contemplate—and even worse, by asserting patents directed to unpatentable subject matter. This is not about a categorical hostility to patents; Defendant Qustodio, LLC ("Qustodio") respects the legitimate patent rights of others, and indeed, has its own portfolio of intellectual property. However, this is a textbook case where the patentee is asserting facially defective patents that should not have been allowed in the first place, and therefore this case must be dismissed.

The essence of the asserted patents is to use rules to manage human activity, a fundamental concept that is not subject to patent protection. The claims cover the abstract concept of managing access to features of a communication device (e.g., a cell phone), such as permitting or denying a user to make a phone call or download content based on policies (e.g., rules). This is no different from how parents have managed their children's access to entertainment for centuries. Unsurprisingly, these patents issued *prior* to the seminal patent eligibility decision in *Alice Corp. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014), which means that the claims were not examined under its now well-established standard that they certainly fail to satisfy.

Courts have routinely held that such a concept is considered patent-ineligible subject matter – under the first prong of the *Alice* test. *See, e.g.*, *Prism Techs. LLC v. T-Mobile USA, Inc.*, 696 Fed. App'x 1014 (Fed. Cir. 2017) (claims directed to "providing restricted access to resources" are abstract) (internal quotations omitted). This is because the asserted claims cover an "age old" concept that mimics human activity. *See, e.g.*, *Intellectual Ventures I LLC, v. Capital One Bank (USA)*, 792 F.3d 1363, 1367 (Fed. Cir. 2015) (concepts are abstract under *Alice* if they "involve[] methods of organizing human activity"). The claims clearly fail step one of the *Alice* test.

QUSTODIO'S MOTION TO DISMISS

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

1    Nor do these claims fare any better under the second step of *Alice*, which

2  requires that the additional claim elements or functions "transform" the abstract

3  idea into patent eligible subject matter. *Alice*, 134 S. Ct. at 2355. These claims

4  include only prior art elements, such as a "computing device," and basic functions,

5  which fail to transform the abstract idea into patent-eligible subject matter. *See,*

6  *e.g.*, *Shipping and Transit, LLC v. Hall Enters.*, 2017 WL 3485782, at *6 (C.D.

7  Cal. July 5, 2017) ("[T]he addition of a generic computer or other conventional

8  technology does not transform an abstract idea into a patent-eligible application.").

9  Neither does the *combination* of such additional generic elements or functions

10  suffice to transform that abstract idea into an inventive concept.

11    Because the *claims* of the asserted patents fail both prongs of the *Alice* test,

12  they are invalid, and this Court should grant Qustodio's motion to dismiss.

13  **II.    THE ASSERTED PATENTS**

14    Kajeet asserts three patents in this case: U.S. Patent No. 8,712,371 ("the

15  '371 patent") (Exhibit A), U.S. Patent No. 8,630,612 ("the '612 patent") (Exhibit

16  B), and U.S. Patent No. 8,667,559 ("the '559 patent") (Exhibit C) (collectively

17  referred to as "the asserted patents"). (Dkt. No. 1). They are all titled "Feature

18  Management of A Communication Device" and share a common specification.[1]

19  All of the claims are directed to a concept of deciding whether to grant or deny a

20  request to perform a function at a computing device. (*See,* Ex. A at claim 1).

21    The specification places the alleged "invention" in context.  Postpaid mobile

22  phones were financially detrimental to their owners (e.g., parents or administrators)

23  because they did not provide a measure for stopping the "user from running up a

24  huge cell phone bill." (Ex. A at 1:37-40). The patents acknowledged that this was a

25  well-recognized problem in human behavior: "Many parents experienced this issue

26  with their children . . . [and] the same type of issue exist[ed] between employers

27  _____

[1] The '559 and '612 patents are continuations of the '371 patent. Because all of the
28  asserted patents share a common specification, unless indicated otherwise, all
references made to the specification will be made with respect to the '371 patent.

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-2-

QUSTODIO'S MOTION TO DISMISS    18-cv-01519

4841-3525-6185v5/105552-0001

and employees and other parties in similar administrator/user relationships with respect to the use/abuse of cell phones and other devices." (Ex. A at 1:40-52).

To address this problem, the claims simply adopted the same rule-based approach humans have used to control others' behaviors since the beginning of time. The claims are directed to "granting" or "denying" a "request" based on "policies." (*See, e.g.*, Ex. A at claim 1, "a policy enforcer operable to enforce the decision of the policy decider as to whether the request has been granted or denied"). These policies were designed to prevent the unauthorized use of cell phones to "make[] and receive[] calls, exchang[e] data, play[] games and music, send[] and receiv[e] email, access[] web sites, and pay[] for goods and services." (*Id.* at Abstract). For example, a policy may prevent the user from accessing entertainment (e.g., a game) stored on the device for a particular reason, "such as the wrong time of the day, the wrong day of the week, the game has been played in excess of some time limit set on the game, etc." (*Id.* at 8:39-44). This is identical to how parents set rules for their children's access to entertainment.

To implement this age-old concept within the computer environment, the claims simply recite generic techniques for managing basic functions according to policies of a computing device. The claims incorporate generic technology, such as a "computing device," "switch," and "memory," but offer no unique or unconventional way in which this technology or conventional techniques of applying policies based on a request are used.

## III. A MOTION TO DISMISS UNDER RULE 12(B)(6) IS AN APPROPRIATE VEHICLE TO ADDRESS PATENT ELIGIBILITY

Where, as here, the complaint fails to state a claim upon which relief can be granted, a party may move to dismiss it under Federal Rule of Civil Procedure 12(b)(6). The issue of patent-eligible subject matter is "a threshold inquiry" for stating such a claim, and it should be addressed through a motion to dismiss under this rule. *In re Bilski*, 545 F.3d 943, 950-51 (Fed. Cir. 2008). The "[f]ailure to

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

4841-3525-6185v5/105552-0001

-3-

QUSTODIO'S MOTION TO DISMISS          18-cv-01519

recite statutory subject matter is the sort of 'basic deficiency,' that can, and should, 'be exposed at the point of minimum expenditure of time and money by the parties and the court.'" *OIP Techs. v. Amazon.com, Inc.*, 788 F.3d 1359, 1364 (Fed. Cir. 2015) (Mayer, J., concurring). Indeed, this Court routinely decides patent ineligibility under 35 U.S.C. § 101 at the Rule 12(b)(6) stage.[2]

## IV.    THESE CLAIMS FAIL *ALICE'S* TWO-STEP TEST

The claims plainly fail both steps of the *Alice* analysis and therefore are invalid under 35 U.S.C. § 101. Here, the *Alice* test is properly applied based upon the analysis of one representative claim of each of the asserted patents. *See Alice*, 134 S. Ct. at 2359-60 (employing a representative claim analysis).

The first prong of *Alice* is not satisfied because the claimed concept of limiting access to functions based on policies is an abstract idea. Limiting access to functions is an "age old" and pre-existing concept that has been implemented in a number of contexts, whether it is parents setting rules for their children or employers limiting access to certain information to their employees. Such pre-existing and standard ideas are abstract. *See, e.g.*, *Interval Licensing LLC v. AOL, Inc.*, 896 F.3d 1335, 1348 (Fed. Cir. 2018) (finding that "conventional, pre-existing practices" are abstract); *MyMedicalRecords, Inc. v. Walgreen Co.*, 2014 WL 7339201, at *3 (C.D. Cal. Dec. 23, 2014).

The claims also fail the second prong of the *Alice* test because they lack any "inventive concept." *Alice*, 134 S. Ct. at 2358. The claims recite generic and conventional technologies, such as a "network," "computing device," "switch," "interface," "node," "server," "policy decider," "policy enforcer," and "memory" that perform standard functions. Such well-known technologies merely provide a

---

[2] *See, e.g.*, *Prod. Ass'n Techs. LLC v. Clique Media Group*, 2017 WL 5664986, at *3 (C.D. Cal. Oct. 12, 2017) (Wu, J.) (holding that defendants motion to dismiss was ripe because "[p]atentability is ultimately a question of law"); *Eclipse IP LLC v. McKinley Equip. Corp.*, 2014 WL 4407592, *5-6 (C.D. Cal. Sept. 4, 2014) (Wu, J.) (recognizing that the Court has broad discretion in when it chooses to address patentability under § 101, including at the motion to dismiss phase).

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-4-

QUSTODIO'S MOTION TO DISMISS          18-cv-01519

4841-3525-6185v5/105552-0001

"generic environment" to execute the abstract idea. *See* In re *TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 611 (Fed. Cir. 2016) (holding that, despite reciting "concrete, tangible components," the claims were directed to an abstract idea because "the physical components merely provide[d] a generic environment in which to carry out the abstract idea").

### A.      Standard for Patent-Eligibility Under 35 U.S.C. § 101

Section 101 of the Patent Act sets forth the subject matter that is eligible for patent protection. 35 U.S.C. § 101. Courts apply the now-familiar two-part test articulated by the Supreme Court in *Alice* for assessing subject matter eligibility. The first step requires a determination of "whether the claims at issue are directed to a patent-ineligible concept," such as an abstract idea. *Alice*, 134 S. Ct. at 2355. *Alice* step two requires a "consider[ation of] the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Alice*, 134 S. Ct. at 2355. (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1298 (2012)).

### B.      A Representative Claims Analysis is Appropriate Here

Where a single claim is representative of the remaining patent claims, it is proper for a court to find all of the claims patent-ineligible based upon an evaluation of that single claim. *See Smart Sys. Innovations, LLC v. Chicago Transit Authority*, 2015 WL 4184486, at *4 (N.D. Ill. July 10, 2015) ("For the purposes of a § 101 challenge, where a patent's claims are substantially similar and linked to the same abstract idea, courts may look to representative claims.") (internal quotations omitted), *aff'd*, 873 F.3d 1364 (Fed. Cir. 2017).

All of the claims here "recite little more than the same abstract idea" of providing access to functions based on policies and are confined to "well-known, routine, and conventional" technology. *Content Extraction and Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1348–49 (Fed. Cir. 2014).  They

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-5-

QUSTODIO'S MOTION TO DISMISS          18-cv-01519

4841-3525-6185v5/105552-0001

"contain only minor differences in terminology but require performance of the same basic process," and thus, "they should rise or fall together." *Accenture Glob. Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1344 (Fed. Cir. 2013).

For purposes of this analysis, claim 1 of the '371 patent, claim 1 of the '612 patent and claim 27 of the '559 patent are each representative of the other claims in their respective patents (collectively, the "Representative Claims"). The remaining independent claims do not substantively differ enough from the Representative Claims to warrant a separate analysis under *Alice*. But this is to be expected when the asserted patents share the same specification, and accordingly must be supported by the same written description. They are, in fact, "substantially similar and linked to the same abstract idea as the other claims." *Smart Systems Innovations*, 2015 WL 4184486, at *4. For example, independent claims 13, 22 and 27 of the '371 patent differ slightly in wording in comparison to Representative Claim 1 of the '371 patent. They require an interface for interfacing with a node and storing of policies – a non-distinctive element. Independent claims 13 and 22 of the '612 patent also differ slightly in wording in comparison to Representative Claim 1 of the '612 patent and require managing a policy that controls a function of a computing device, and generating a graphical user interface for use by an administrator, which are routine functions. Independent claims 13 and 22 of the '559 patent differ slightly in wording in comparison to claim 27 of the '559 patent. They require processing of a request to run a function, accessing a decision stored on a computing device, receiving an update to a policy, determining whether the request should be granted based on the updated policy and/or other policies—all non-distinctive elements.

In sum, the differences between the Representative Claims and the remaining independent claims are trivial and do not change the claimed abstract idea of managing access to functions. They only add conventional technologies, or pre/post solution activity, which courts have routinely determined do not confer

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

4841-3525-6185v5/105552-0001

-6-

QUSTODIO'S MOTION TO DISMISS          18-cv-01519

patent eligibility. *See, e.g.*, *Smart Systems Innovations*, 2015 WL 4184486, at \*4 (finding that the representative claim contained all the features of the other claims, and that the other claims had no "distinctive elements"). Put simply, the limitations and steps contained in the other independent claims are "well-known, routine and conventional activities." *Content Extraction*, 776 F.3d at 1348-49.

The dependent claims fare no better; each either further defines the *same* abstract idea (*e.g.*, a *type* of policy) or simply adds insignificant pre- or post-solution activity in an attempt to limit the abstract idea to a particular environment. This does not suffice to confer independent patent eligibility. *See Bilski v. Kappos* 561 U.S. 593, 610–11 (2010) (holding that the "prohibition against patenting abstract ideas cannot be circumvented by attempting to limit the use of the formula to a particular technological environment or adding insignificant post-solution activity") (internal quotations omitted). Therefore, a finding that the Representative Claims are unpatentable under 35 U.S.C. § 101 should extend to all of the remaining claims—both independent and dependent—of the asserted patents.[3]

### C.    The Claims Fail Step One of the *Alice* Test Because They Are Directed to an Abstract Idea

The claims fail the first step of the *Alice* test because they are directed to the concept of managing access to functions based on policies, which is nothing more than an abstract idea. The first step requires the court to "identify and define whatever fundamental concept appears wrapped up in the claim," *Accenture Global Servs.*, 728 F.3d at 1341, and in turn, the "focus" and "character" of the claims must be assessed in light of the specification. *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353, 1355 (Fed. Cir. 2016). The operative question is whether the claims "focus on a specific means or method that improves the relevant technology or are instead directed to a result or effect that itself is the abstract idea and merely invoke generic processes and machinery." *Smart Systems*

---

[3] Should Kajeet separately argue the patentability of any other claim, Qustodio reserves the right to address such claim in its reply brief.

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

QUSTODIO'S MOTION TO DISMISS          18-cv-01519

*Innovations*, 873 F.3d at 1371. The management of functions based on policies is the fundamental concept embodied by the claims, which then invoke generic and well-known technologies. It is also predicated upon a basic human activity. Therefore, the claims capture an abstract idea.

### 1.      Management of functions based on policies is abstract

The claims fail the first prong of *Alice* because they are directed to the abstract concept of using policies to manage access to functions. Stripping away the generic technical jargon of the non-inventive elements, the claims reveal that they are directed to nothing but access control of basic functions.[4]

At their core, the Representative Claims are all directed to "managing" or "controlling" a "computer device" that issues a "decision" to "grant" or "deny" a "request" based on a "policy." (*See* Representative Claims). The specification confirms the nature of the idea captured by the claims.  As it explains, the "present invention is directed to the real-time management and enforcement of policies or rules associated with the feature or functions that may be performed with the device." (Ex. A at 1:18-21). Specifically, it "is directed to the real-time management of a device in general, and more particularly to the management of a phone by an administrator, such as a parent . . . who can specifically control the use of the phone through management of its features and the wallets associated with the phone." (*Id*. at 3:48-54). It is without question that the focus and character of the claims is directed to access management—which is an abstract idea. *See Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 715 (Fed. Cir. 2014) (holding that a process that only permitted consumer access to media after certain activities was directed to an abstract idea, devoid of a concrete or tangible application).

---

[4] It is proper to disregard the generic technical components of the claims because they do not alter the abstract nature of managing access to functions. *See Alice*, 134 S. Ct. at 2352 n. 2, 2356 (disregarding limitations such as the shadow credit record and shadow debt record to hold that the claims were directed to the abstract idea of "intermediated settlement").

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

4841-3525-6185v5/105552-0001

-8-

QUSTODIO'S MOTION TO DISMISS      18-cv-01519

1   This Court has also found a similar concept directed to access management

2   based on policies to be an abstract idea. In *MyMedicalRecords, Inc. v. Walgreen*

3   *Co.*, Judge Wright held that a patent claiming the method of collecting, accessing,

4   and managing personal health records was directed to patent-ineligible subject

5   matter. 2014 WL 7339201, at *1. Judge Wright reasoned that "[t]he concept of

6   secure record *access* and *management*. . . [was] an age-old idea." *Id.* at *3

7   (emphasis added). It is an age-old idea because a patent on it, "without more,

8   would threaten to preempt the entire field of secure filing systems." *Id.*

9   Just as in *MyMedicalRecords*, the claims here are also directed to limiting

10   access based on policies.  Therefore, it logically follows that the claimed concept

11   here is also directed to an "age-old idea."  *Id.* at *3 (holding that such "age-old

12   ideas . . . are likely abstract like natural laws and fundamental mathematical

13   relationships."). A patent covering this concept would effectively preempt the

14   entire field of access management. *Id.* at *1. Thus, this Court's own precedent

15   confirms that this concept is abstract.

16   The Federal Circuit has also held that similar concepts were nothing more

17   than abstract ideas under the first prong of the *Alice* test. In *Smartflash LLC v.*

18   *Apple Inc.*, the Federal Circuit held that claimed concept of "conditioning and

19   controlling access to data based on payment" was an abstract idea. 680 Fed. App'x

20   977, 982–83 (Fed. Cir. 2017). The claimed concept here is no different than the

21   one in *Smartflash*, as both are directed to controlling access based on certain

22   conditions. *Smartflash* also supports that the concept of limiting access, to content

23   or information, by any means, remains an abstract idea at its core.

24          **2.**      **The claims are abstract because they merely capture human**

25                  **activity**

26   The claims also fail step one of the *Alice* test because they capture a concept

27   that merely mimics human activity, which is abstract. *See, e.g.*, *Intellectual*

28   *Ventures I*, 792 F.3d at 1367 ("tracking financial transactions to determine whether

Stradling Yocca
Carlson & Rauth
Lawyers
Newport Beach

-9-

QUSTODIO'S MOTION TO DISMISS        18-cv-01519

4841-3525-6185v5/105552-0001

they exceed a pre-set spending limit (i.e., budgeting)" is an abstract idea that because it "involve[es] methods of organizing human activity"). Here, the ability to manage a user's access to functions based on policies is a human activity and therefore abstract under this additional line of reasoning.

Particularly instructive is the analysis in *Prism Techs. LLC v. T-Mobile USA, Inc.* 696 Fed. App'x 1014, 1017 (Fed. Cir. 2017), in which the Federal Circuit agreed that the "claims recite[d] ineligible subject matter because they . . . are directed to the abstract idea of controlling access to resources . . . ." The Federal Circuit reasoned that because the "patents-in-suit . . .[we]re directed to the abstract idea of providing *restricted access* to resources," they encompassed an abstract idea because "humans similarly restrict and provide access to resources." *Id.* (emphases added; internal citations and quotations omitted).

Like the concept underlying the claims at issue in *Prism*, the focus of the claims here are similarly directed to restricting access to functions based on policies—a function that humans have been performing for ages. The concept captured by the claims is analogous to many things, including parenting, which is a well-known method of organizing human behavior.[5] Parents implement the concept of the asserted patents by managing their children's entertainment access based on policies (or rules) such as time of day, location, type of content, etc.

By way of illustration, the below analogy demonstrates how the claimed concept as recited in the Representative Claims is practiced every day by parents:

| Claim 1 of the '371 Patent | Parenting Example |
|---|---|
| A system for managing a computing device, the system comprising: | A parent for managing a child's access to entertainment (e.g., cartoons). |
| a switch or a node configured to receive a request to or from the computing device to perform one or | The parent can receive a request from the child for entertainment (e.g., to watch cartoons). |

---

[5] Likewise, businesses and government routinely engage in similar restrictions of access, *e.g.*, limiting confidential information to only those who can establish that they are allowed to obtain such information. Indeed, the examples are endless.

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-10-

QUSTODIO'S MOTION TO DISMISS     18-cv-01519

4841-3525-6185v5/105552-0001

| more functions associated with the computing device; | |
|---|---|
| a policy decider operable to access one or more policies that control one or more functions associated with the computing device, the policy decider further operable to generate a decision to grant or deny the request based on the one or more policies4; and | The parent can define one or more rules (policies) for when the child is permitted the entertainment. For example, one policy can be that homework must be finished. The parent can store the one or more policies in their mind and access them to decide whether the child should be granted or denied their request for entertainment. The parent can mentally draw a decision (or conclusion) based on the one or more policies in their mind whether the child should be permitted the entertainment. |
| a policy enforcer operable to enforce the decision of the policy decider as to whether the request has been granted or denied by transmitting data to the switch or node, the data being indicative of one or more actions consistent with the decision to the switch or node. | The parent can enforce the decision by granting or denying the requested entertainment by notifying the child that either (i) yes they are permitted the entertainment since their homework has been completed or (ii) no they are not permitted the entertainment since their homework has not been completed. |

| Claim 1 of the '612 Patent | Parenting Example |
|---|---|
| A system for managing computing devices configured to communicate over one or more networks serviced by one or more service providers, the system comprising a memory bearing instructions that, when executed on the system, cause the system to at least: | A parent for managing children's access to entertainment (e.g., cartoons). |
| store a policy that controls at least a use of a function on a computing device, the control comprising allowing and disallowing the use of the function based on a context associated with the computing device, the policy being defined by an administrator; | The parent can define a policy for when the children are allowed access to the entertainment and the type of entertainment (e.g., G-rated cartons, PG-rated cartoons, etc.). The policy can be stored mentally in the parent's mind and retrieved to control the child's access to the entertainment. For example, the parent can determine that |

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

QUSTODIO'S MOTION TO DISMISS        18-cv-01519

4841-3525-6185v5/105552-0001

|  | the child is only permitted to watch G-rated cartoons (e.g., denying the child's access to PG-rated cartoons). |
|---|---|
| group one or more computing devices in a group; | The parent can manage access to the entertainment for multiple children at one time, e.g., babysitting. |
| associate the policy with the group; | The parent can mentally associate the policy to the group of children such as when the children are allowed access to the entertainment by means of a mental process (i.e., in the human mind). |
| receive a request sent to or from a computing device in the group to use the function; | The parent can receive a request from one of the children requesting access to the entertainment (e.g., to watch cartoons) from a particular source. |
| generate a decision to grant or deny the request based on the policy; and | The parent can mentally generate a decision (or conclusion) based on the policy whether that particular child should be granted or denied the requested entertainment. |
| enforce the decision by taking an action that is consistent with the decision and by sending to the computing device data indicative of the action, the action allowing or disallowing the use of the function on the computing device. | The parent can enforce their decision by granting or denying the requested entertainment by notifying that particular child that either (i) yes they are permitted the entertainment since they are of age for the particular content (e.g., PG-rated content) or (ii) no they are not permitted the entertainment since they are not of age. |

| Claim 27 of the '559 Patent | Parenting Example |
|---|---|
| A method for controlling a computing device configured to execute a function using a communication network managed by a service provider, the method comprising | A parent for controlling their child's access to play-time with a friend. |
| sending to a server a request to communicate with a remote computing device over the communication network; | A child can communicate to a parent a request to interact (or communicate) with a friend (e.g., to play a game). |

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

QUSTODIO'S MOTION TO DISMISS          18-cv-01519

4841-3525-6185v5/105552-0001

| receiving in real-time from the server a decision granting or denying the request, the decision being based on a policy stored at the server and configured by an administrator; and | The child can receive from the parent a decision on the child's request for the entertainment. The parent's decision can be based on a policy (or rule) stored in their mind (e.g., whether their homework has been completed) as to whether the child is permitted the requested entertainment. |
| --- | --- |
| enforcing the decision by enabling a communication with the remote computing device over the communication network when the decision grants the request and by disabling the communication when the decision denies the request, the communication being enabled or disabled without storing the policy on the computing device. | The parent can enforce their decision by granting or denying the child's request by notifying the child that either (i) yes they are permitted to interact with their friend to play a game since their homework is completed or (ii) no they are not permitted to interact with their friend since their homework is not completed. As explained in the previous limitation, the policy is stored in the memory of the parent and not the child. |

Because the concept captured by the claims is analogous to a human activity (i.e., parenting), the asserted patents do not claim patent eligible subject matter. *Prism*, 696 Fed. App'x at 1017.

For at least the foregoing reasons, the concept of managing access to functions based on policies is an age-old concept that is nothing more than management of human activity. Therefore, the claims fail to satisfy *Alice* step one.

**D.    The Claims Fail *Alice* Step Two Because They Lack an "Inventive Concept"**

The claims also fail the second step of the *Alice* analysis because they recite nothing more than generic and conventional technologies and steps. Under the second prong, the Court "must examine the elements of the claim[s] to determine whether [they] contain an inventive concept sufficient to transform the claimed abstract idea into a patent eligible application." *Alice*, 134 S. Ct. at 2357. The transformative step must be *more than* merely implementing the abstract idea using conventional technologies (*e.g.*, a computer). *Id.* at 2358. The inclusion of claim

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

4841-3525-6185v5/105552-0001

-13-

QUSTODIO'S MOTION TO DISMISS        18-cv-01519

components or functions described in "purely functional and generic" terms do not impart patent-eligibility. *Id.* at 2360 (finding no inventive concept in claims that included a "communications controller" and a "data storage unit" because the hardware "is purely functional and generic" since these components are in "[n]early every computer" and perform basic functions).

Taken individually, nothing in the claims transform the abstract idea into patent eligible subject matter. And when viewed as a whole, each claim merely describes techniques for controlling access according to policies using existing and conventional technologies. Such broad concepts place no meaningful limitation on the abstract idea. Therefore, the claims fail step two of the *Alice* test.

### 1.    The claimed elements are generic and conventional

Each of the claimed components recited in the claims is used for nothing more than its well-known, generic technology. Such components "cannot transform a patent-ineligible abstract idea into a patent-eligible invention." *Alice*, 134 S. Ct. at 2358. Where hardware and software components are used for their "purely functional and generic" use, no inventive concept is imparted. *Id.* at 2360. *Shipping and Transit*, 2017 WL 3485782, at *6 ("[T]he addition of a generic computer or other conventional technology does not transform an abstract idea into a patent-eligible application."). The claims do not convey that these elements are somehow used in a unique or non-conventional manner to "move [them] into § 101 eligibility territory." *Zuili v. Google LLC*, 722 Fed. App'x. 1027, 1031 (Fed. Cir. 2018). These structural terms of the Representative Claims are identified in the following chart, and described in further detail below:

| Limitation | Structure |
|---|---|
| Computing Device | Described as computing device. |
| [Communication] Network | Described as telecommunication network. |
| Switch / Node | Described as generic structure to permit access to network. |
| Server / Memory | Described as standard components. |
| Policy Decider / Policy Enforcer | Described in generic terms without |

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

4841-3525-6185v5/105552-0001

-14-

QUSTODIO'S MOTION TO DISMISS        18-cv-01519

| | |
|---|---|
| | unique attributes. |
| Interface | Described as standard point of entry for defining policies. |

*Computing Device*

The "computing device" recited in each Representative Claim is not inventive. The asserted patents only disclose this device in its generic role. (Ex. A at 5:60-66). It is not used in a previously unknown manner, and therefore only performs its generic, routine function. *Zuili*, 722 Fed. App'x at 1030–31 (holding that the "computing device," without more, was generic).

*Network / Communication Network*

Likewise, neither the incorporation of a generic "network" in claim 1 of the '559 patent nor a generic "communication network" recited in claim 1 of the '612 patent, is sufficiently inventive to make the claims patent-eligible under *Alice*. The specification only discloses a network in its general sense – a telecommunication network. (Ex. A at 5:51-60 & 6:23-25). The network simply provides a generic environment for carrying out the claimed abstract idea of managing access based on policies. *Zuili*, 722 Fed. App'x at 1030–31 ("communication network" was generic).

*Switch / Node*

No more inventive are the "switch" and "node" elements of the '371 patent. The specification only discusses the "node" element in relation to an originating packet data serving node ("O-PDSN"). (Ex. A at 7:59-61). According to the specification, the O-PDSN is used for its generic purpose of providing access "to the Internet, intranets and application servers for the mobile station and acts as a client for the home agent and the authentication, authorization and accounting (AAA) Server." *Id.* at 7:61-66. Likewise, for the "switch" element, the specification discusses an originating mobile switching center (O-MSC) only in the general sense of being used to authenticate a mobile station, which is a conventional use of O-MSC. *Id.* at 6:15-18 and 7:46-54. But, nowhere does

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

4841-3525-6185v5/105552-0001

QUSTODIO'S MOTION TO DISMISS          18-cv-01519

1  specification provide any unique use or function of these elements as would be

2  necessary to provide an inventive concept or improvement.

3  *Server / Memory*

4      Nor are the "server" or "memory" elements of claims 1 of the '559 and '612

5  patents being utilized in any unconventional manner. There are no unique aspects

6  of the memory discussed in the specification. The specification only discloses the

7  server in the context of a generic one (*Id.* at 7:55-66) and does not mention

8  memory.

9  *Policy Decider / Policy Enforcer*

10      Similarly, the "policy decider" and the "policy enforcer" of claim 1 of the

11  '371 patent are also generic components devoid of any inventive aspect. The

12  specification describes a policy decider in a generic sense as "a logical element that

13  can be physically house[d] in a server manager 20 or in another server accessible

14  to either the server manager 20 or the [policy enforcement point] PEP 28." (Ex. A

15  at 8:22-24). The specification discloses the generic nature of the policy enforcer as

16  well as nothing more than "a logical element that can be physical housed in

17  another data server node or gateway device, depending on the serve request such as

18  a wireless application protocol (WAP) gateway, instant messaging gateway, email

19  gateway, multimedia messaging service gateway, etc." *Id.* at 8:9-11.

20      The specification's characterization of the "policy" elements as performing

21  their standard functions confirms that these components are nothing more than

22  purely conventional.[6] The "policy decider" and "policy enforcer" are simply

23  software[7] that can be implemented on any generic computer or server according to

---

24  [6] Claim 1 of the '371 patent does not recite where these conventional components

25  are housed, even in a conventional network setting. And, the specification's general

26  description of these components confirms that they can be located anywhere.

27  [7] To the extent that Kajeet argues that the "policy enforcer" and the "policy

28  decider" are hardware, it does not change the analysis because these components

   are not being utilized for anything but their generic nature and the specification

   does not describe these components as being anything other than conventional.

Stradling Yocca
Carlson & Rauth
Lawyers
Newport Beach

4841-3525-6185v5/105552-0001

-16-

QUSTODIO'S MOTION TO DISMISS          18-cv-01519

their intended conventional purpose of deciding whether to grant or deny a request and decision enforcement. Courts have found similar components performing similar functionalities as routine and conventional computer activity. *See, e.g.*, *Intellectual Ventures II LLC v. JP Morgan Chase & Co.*, 2015 WL 1941331, at *14 (S.D.N.Y. April 28, 2015) ("The use of an 'access mechanism' to enforce the pre-selected rules is nothing more than programming conventional software or hardware to apply rules governing access – a routine, conventional practice."); *Ultramercial*, 772 F.3d at 715–16 (holding that the step of "updating an activity log, requiring a request from the consumer to view the ad, restrictions on public access, and the use of the Internet" were all "routine, conventional activit[ies]"). The "policy decider" and the "policy enforcer" do not transform the idea into an inventive concept.

<u>*Interface*</u>

Likewise, the "interface" element, which is found in the dependent claims is generic. The specification describes this feature as simply a point of entry for defining policies. There is nothing inventive about providing a way for an administrator to establish policies. *See Intellectual Ventures I*, 792 F.3d at 1370 (holding that an interactive interface is a generic computer element tasked with providing content to a user).

In sum, the purported "invention" resides in conventional and well-known technologies, which do not "transform [the] abstract concept in to a patent eligible invention." *Alice*, 134 S. Ct. at 2358. These claim elements do not improve upon existing technology, and thus do not pass the bar of patent eligible subject matter.

### 2.  The functional limitations are also conventional

The functional language of the claims is also conventional and generic, further underscoring the lack of an inventive step. *Mayo*, 132 S. Ct. at 1300 ("simply appending conventional steps specified at a high level of generality" to an abstract idea does not make that idea patentable). Because the functional language

Stradling Yocca
Carlson & Rauth
Lawyers
Newport Beach

-17-

QUSTODIO'S MOTION TO DISMISS          18-cv-01519

4841-3525-6185v5/105552-0001

does not implement the underlying conventional technology in a specific or non-abstract way, the Representative Claims themselves confirm the non-inventive and conventional nature of each functional element. *See* In re *TLI Commc'ns*, 823 F.3d at 615 (holding that "vague, functional descriptions of server components are insufficient to transform the abstract idea into a patent-eligible invention"). The functional elements of the Representative Claims are summarized in the chart below, and then described in further detail:

| Limitation | Function |
|---|---|
| Receiving/Sending a Request | Routine computer functions that utilize standard and conventional technologies, such as a node or switch and a server. |
| Accessing One or More Policies | Access to policies is a routine function that is not performed pursuant to a unique request or a non-conventional manner. |
| Generating & Receiving a Decision to Grant or Deny the Request | Basic computer function based on standard policies with no underlying technical disclosure of how function is performed. |
| Storing a Policy | Well-known computer function. |
| Grouping One or More Computing Devices and Associating with a Policy | Grouping and associating are a well-known computer function. No disclosure to demonstrate that these functions are performed in a unique manner. |
| Enforcing the Decision | Routine computer function to carry out abstract idea. |
| Enabling or Disabling Communication | Basic computer function that mimics human activity by employing conventional technology. |

*Receiving/Sending a Request*

Representative Claims 1 of the '371 and the '612 patents include the function of "receiving" a request. This generalized step calls for conventional computer activity. *See Content Extraction*, 776 F.3d at 1348 (holding that "receiving" and "storing" data is merely conventional computer activity). This generic function does not implement the underlying conventional technology in any unique way. *In re TLI Commc'ns*, 823 F.3d at 615. A switch or a node receives

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-18-

QUSTODIO'S MOTION TO DISMISS          18-cv-01519

4841-3525-6185v5/105552-0001

a request to or from a computing device, or a system receives a request to or from a computing device. Nothing further is recited. The receiving function of a node or a switch, or even a system, is not by itself inventive.

Nor does the request being one to "perform one or more functions associated with the computing device," as recited in claim 1 of the '371 patent, make these claims any less abstract or more specific. The "one or more functions" could be any generic function of the computing device, and because the "one or more functions" could literally be anything, they add nothing of substance to this claim. Likewise, the request being received from one or more computing devices in a group as required by claim 1 of the '612 does not make this claim any more inventive, as the specification does not discuss functionality beyond anything other than what is conventional. *Id.* (finding abstract functional language that implemented conventional technologies).

Likewise, the function of "sending" a request is a conventional and well-known computer functionality. *See Intellectual Ventures I LLC v. Erie Indem. Co.*, 850 F.3d 1315, 1329 (Fed. Cir. 2017) (concluding that "sending" and receiving information, and combining information to be routine computer functions). The request being to communicate with a remote computing device and use of a conventional communication network does not confer patent eligibility as there is nothing unconventional about sending a particular type of request over a communication network. Tellingly, Representative Claim 27 of the '559 patent is silent on how the request is sent to a server, and the specification fails to disclose any specific method as to how a request can be sent to the server. The absence of any particulars from the specification confirms that this language adds nothing more than a conventional computer function.

*Accessing One or More Policies*

The function of "accessing" one or more policies of Representative Claim 1 of the '371 patent is also routine and conventional computer activity. *See Alice*,

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-19-

4841-3525-6185v5/105552-0001

QUSTODIO'S MOTION TO DISMISS      18-cv-01519

134 S. Ct. at 2359 ("[U]se of a computer to obtain data, adjust account balances, and issue automated instructions; all of these computer functions are 'well-understood, routine, conventional activit[ies] previously known to the industry." (quoting *Mayo*, 132 S. Ct. at 1294)). The fact that one or more policies is accessed to control one or more functions associated with the computing device does not confer patent eligibility when the claim lacks any details as to how the policies are accessed or why they are accessed. The specification's silence on the accessing details confirms that this functionality is a conventional computer function.

### *Generating & Receiving a Decision to Grant or Deny the Request*

The function of "generating" and "receiving" are also well-known activities of computers. *See Tranxition, Inc. v. Lenovo (United States) Inc*., 664 Fed. App'x 968, 972 (Fed. Cir. 2016) (holding that "generating" a plan is a routine and conventional computer activity.); *Intellectual Ventures I*, 850 F.3d at 1329 (holding that "sending" and "receiving" information, and combining information are routine computer functions). The "generating" limitation of Representative Claims 1 of the '371 and '612 patents does not recite any technical limitations on *how* the generation actually occurs based on the policies and therefore is generic. Such "essentially result-focused, functional character of claim language has been a frequent feature of claims held ineligible under § 101." *Electric Power*, 830 F.3d at 1356.

Likewise, receiving in "real-time" the decision granting or denying the request from a server as claim 27 of the '559 patent recites cannot be non-generic when the specification does not even mention that real-time decision-making is something unconventional or beyond simply routine computer functionality.  *See Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1340–41 (Fed. Cir. 2017) (holding that the  function of "receiving" a "real-time media stream" operated according to its ordinary function).

Stradling Yocca
Carlson & Rauth
Lawyers
Newport Beach

4841-3525-6185v5/105552-0001

-20-

QUSTODIO'S MOTION TO DISMISS          18-cv-01519

*Storing a Policy*

The function of "storing" is, as well, another purely conventional and well-known function of computers since their inception. *Smartflash LLC*, 680 Fed. App'x at 983 (holding that "merely *storing*, transmitting, retrieving, and writing data to implement an abstract idea on a computer does not transform the nature of the claim into a patent-eligible application") (internal quotations omitted) (emphasis added). There is nothing inventive or unconventional about storing policies as described in Representative Claim 1 of the '612 patent. Likewise, claims 1 of the '371 and '612 patents recite nothing about how the policies control the function of the computing device. Indeed, the discussion relating to the "control" is generic. That policies are user-defined further confirms that the policies themselves, and the controlling of a function by the computing device, lack ingenuity. *See CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1372 (Fed. Cir. 2011) (steps performable by the human mind do not add patentable weight). Likewise, the fact that "control" is the allowing or disallowing the use of a function based on "a context" associated with the computing device is not inventive, as this is simply using a computing device according to its intended purpose, and the specification does not characterize this feature as non-conventional.

*Grouping One or More Computing Devices and Associating with a Policy*

Similarly, the elements of "grouping" and "associating" are exclusively conventional computer activities. *Intellectual Ventures I*, 850 F.3d at 1329 (holding that combining information is a routine computer function). Representative Claim 1 of the '612 patent offers no explanation as to why one or more computing devices are grouped nor why they are subsequently associated with a policy. The specification similarly fails to discuss how grouping one or more computing devices and associating with a policy is an inventive concept to support the inventiveness of the purported invention.

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

*Enforcing the Decision*

The element of "enforcing" the decision is, yet again, another purely conventional computer function in the context of each Representative Claim. *See Intellectual Ventures II*, 2015 WL 1941331, at *14 ("The use of an 'access mechanism' to *enforce* the pre-selected rules is nothing more than programming conventional software or hardware to apply rules governing access – a routine, conventional practice.") (emphasis added). This function merely invokes running generic computer hardware to perform the abstract function of enforcing. *See Prism Techs*, 696 Fed. App'x at 1017–18. The specification's failure to describe this function beyond its generic nature confirms the conventional computer functionality.

Claim 1 of the '371 patent recites nothing to specify how the enforcement is being carried-out by "transmitting" data to a switch or node, as required by the claim. Simply sending data to a switch or node is a conventional and well-known activity, as is enforcing the decision by taking an action consistent with the decision, as claim 1 of the '612 patent recites. This claim, like claim 1 of the '371 patent, is silent on how the enforcing is occurring, or how it is enforced by sending data to a conventional component such as the computing device. Likewise, claim 27 of the '559 patent fails to specify how the decision is enforced, or how enforcing results in enabling or disabling of a communication with a conventional device over a generic communication network is extraordinary and inventive. The specification is likewise silent as to how the enforcing is actually occurring. This sort of functional, results-oriented language, devoid of specific instructions, "has been a frequent feature of claims held ineligible under § 101." *Electric Power*, 830 F.3d at 1356.

*Enabling or Disabling Communication*

The generic technique of enabling or disabling the communication as recited by Representative Claim 27 of the '559 patent is yet another basic function that

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-22-

QUSTODIO'S MOTION TO DISMISS      18-cv-01519

4841-3525-6185v5/105552-0001

does not impart inventiveness on the claims. *Interval Licensing LLC*, 896 F.3d at 1347 (One cannot "contend that it is arguably inventive to enable a person to access information over a network through a user interface."). Further, doing so without storing the policy on the computing device is not inventive. The policy necessarily has to be stored somewhere, which further evidences that this a purely generic limitation without any inventiveness. Indeed, the specification does not disclose anything remarkable or inventive about enabling the communication "without storing the policy on the computing device." *Electric Power* explained that even when the type of information (in other words data) at issue is specific, that "does not change its character as information." 830 F.3d at 1356.

In summary, the claims are directed to abstract ideas and recite nothing beyond generic technologies performing their routine and conventional functions. Accordingly, the claims fail to transform their underlying abstract idea into patent eligible subject matter. The Supreme Court has made clear that limiting the field of use of the abstract idea to a particular existing technological environment does not render the claims any less abstract. *See Alice*, 134 S. Ct. at 2358.

### 3. The claims do not provide a solution to a technological problem

The second step of *Alice* could be satisfied, in theory, if the claims were to provide a new solution for a technological problem, but again, the Representative Claims are lacking. As explained in the specification, claims are simply directed to addressing the lack of oversight over human behavior, which is inherently not a technological problem. *Cf. Tele-Publishing, Inc. v. Facebook, Inc.*, 252 F. Supp. 3d 17, 27 (D. Mass. 2017) (recognizing that securing personal information is not "an inherently technological problem"). The recitation of generic technological components and routine computer functions to address this problem do not make the claims patent-eligible. *Williamson v. Citrix Online, LLC*, 212 F. Supp. 3d 887, 898 (C.D. Cal. 2016) (Otero, J.) (reasoning that "a method can only be performed

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

4841-3525-6185v5/105552-0001

-23-

QUSTODIO'S MOTION TO DISMISS          18-cv-01519

1   using a computer does not necessarily render Section 101 inapplicable" because

2   that such rule would "eviscerate[] Section 101's exceptions").

3        As discussed in Sections IV.D.1 and IV.D.2, *supra*, the claims merely recite

4   generic technological elements, with routine functions, which are used in a

5   conventional way to manage access based on policies. The claims neither improve

6   an existing technology or field, nor do they "purport[] to improve the functioning

7   of the computer itself" or "effect an improvement in any other technology or

8   technical field may be patent eligible." *Alice*, 134 S. Ct. at 2359. Therefore, the

9   claims do not even present a technology problem, let alone one that is resolved by

10  a new solution.

11              **4.      The claims, as a whole, are unpatentable**

12       Even when their elements are analyzed as "an ordered combination," the

13  claims do not recite patent-eligible subject matter. After all, the claims call for

14  using policies to limit access to functions of a computing device using well-known

15  and conventional activities. The order of the elements fail to present an invention

16  that is not merely routine or conventional use. *Kinglite Holdings Inc. v. Micro-Star*

17  *Int'l Co. Ltd.*, No. CV-14-03009, 2016 WL 4205356, at *6 (C.D. Cal., May 26,

18  2016) (Selna, J.) (claims were patent-ineligible because the "ordered combination"

19  of the elements simply requires the implementation of the idea within a

20  conventional computer). Even when viewed in its entirety, each claim is no more

21  than the expected sum of its conventional parts. *See Ultramercial*, 772 F.3d at 716

22  (holding that even the combination of eleven steps does not transform the nature of

23  the claim when they do nothing more than recite routine, conventional activity).

24  The combination of elements does not transform the claims into patent-eligible

25  subject matter.

26       **E.      No disputed material fact prevents dismissal**

27       Finally, the Complaint should be dismissed because it does not raise material

28  disputes of fact as to whether the asserted patents claim an abstract idea. The

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-24-

QUSTODIO'S MOTION TO DISMISS          18-cv-01519

4841-3525-6185v5/105552-0001

Complaint is silent on whether the asserted patents claim "abstract ideas" under step one of *Alice*. Instead, the Complaint alleges that the asserted patents satisfy step two of *Alice* by pointing to purported problems discussed in the specifications[8] of the patents. *See* Dkt. 1 at ¶¶ 11–14. However, the Complaint fails to create a factual issue as to the second step of *Alice*. Even if the Court were to accept as true the allegation that Kajeet thought of a novel solution, that an idea may be "groundbreaking, innovative, or even brilliant" does not satisfy Section 101. *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1163 (Fed. Cir. 2018) (internal citations omitted).

The Complaint does not explain how the "additional features" individually or in combination amount to more than "well-understood, routine, conventional activity." *Mayo*, 132 S. Ct. at 12. Nor does the Complaint explain why any *specific* aspect of the purported claimed invention is non-conventional. Rather, the Complaint makes conclusory assertions and attorney argument about the technology as a whole, while failing to identify any claim language directed to improving access control. *Compare Berkheimer*, 881 F.3d at 1370 (finding that "one-to-many" editing limitation created factual issues). Therefore, there are no factual issues precluding this Court from ruling that the claims are invalid under 35 U.S.C. § 101.

## V. CONCLUSION

The asserted patents are directed to ineligible subject matter under the *Alice* two-part test. This case is ripe for dismissal and Qustodio requests that the Court dismiss the Complaint with prejudice because the asserted patents are patent-ineligible under 35 U.S.C. § 101.

---

[8] Citations to the specifications are unavailing because any purported inventive concept or improvement needs to be captured in the claims themselves, not simply the specification or attorney argument. *See Berkheimer v. HP Inc.*, 881 F.3d 1360, 1369 (Fed. Cir. 2018).

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-25-

QUSTODIO'S MOTION TO DISMISS      18-cv-01519

4841-3525-6185v5/105552-0001

1

Dated:  November 21, 2018          STRADLING YOCCA CARLSON &
                                   RAUTH, PC

2

3                                  */s/ Salil Bali*_____
                                   Douglas Q. Hahn
4                                  Salil Bali

5
                                   BENESCH, FRIEDLANDER, COPLAN &
6                                  ARONOFF LLP
7                                  Manish Mehta (admitted *pro hac vice*)
                                   Zaiba Baig (admitted *pro hac vice*)
8
9                                  *Attorneys for Defendant*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

QUSTODIO'S MOTION TO DISMISS          18-cv-01519

4841-3525-6185v5/105552-0001