BRANDON C. FERNALD
FERNALD LAW GROUP
510 West Sixth Street, Suite 700
Los Angeles, California 90014
Telephone:  323-410-0320
Facsimile:   323-410-0330
Email:  brandon.fernald@fernaldlawgroup.com

JONATHAN T. SUDER (*Pro Hac Vice*)
CORBY R. VOWELL (*Pro Hac Vice*)
RICHARD A. WOJCIO, JR. (*Pro Hac Vice*)
FRIEDMAN, SUDER & COOKE
Tindall Square Warehouse No. 1
604 East 4th Street, Suite 200
Fort Worth, Texas 76102
Telephone:  (817) 334-0400
Facsimile:  (817) 334-0401
Email:  jts@fsclaw.com
Email:  vowell@fsclaw.com
Email:  wojcio@fsclaw.com

Attorneys for Plaintiff
KAJEET, INC.

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| KAJEET, INC., | CASE NO. 8:18-cv-01519-JAK-PLA |
| Plaintiff, | |
| vs. | **PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PURSUANT TO FRCP 12(B)(6)** |
| QUSTODIO, LLC, | |
| Defendant. | **Hearing Date: February 25, 2019**<br>**Time: 8:30AM** |

i
PLAINTIFF'S BRIEF IN OPPOSITION TO MOTION TO DISMISS

# TABLE OF CONTENTS

I.      INTRODUCTION ........................................................................................1

II.     BACKGROUND AND TECHNOLOGY ....................................................3

III.    LEGAL STANDARDS ..............................................................................6

        A.      Patent Eligibility under 35 U.S.C. § 101 and *Alice* ......................6

                1.      *Alice* Step One......................................................................7

                2.      *Alice* Step Two......................................................................9

        B.      Burdens and Presumptions Applicable to Rule 12(b)(6) Motions........................10

IV.     ARGUMENT ............................................................................................11

        A.      Representative Claim Analysis is Inappropriate.....................................11

        B.      The Challenged Claims are Directed To Patent Eligible Subject Matter at *Alice* Step One......................................................................13

                1.      The Claimed Systems are Directed to Improved Control Systems............13

                2.      The Claimed Systems are not Preemptive ................................18

        C.      The Challenged Claims Comprise an "Inventive Concept" at *Alice* Step Two ......................................................................21

        D.      Determination on Patent Eligibility is Properly Reserved Until after Claim Construction......................................................................25

V.      CONCLUSION..........................................................................................25

# TABLE OF AUTHORITIES

***Cases***:

*Aatrix Software, Inc. v. Green Shades Software, Inc.,*
    882 F.3d 1121 (Fed. Cir. 2018) ......................................................7, 8, 10, 25

*Affinity Labs of Tex., LLC v. DIRECTV, LLC,*
    838 F.3d 1253 (Fed. Cir. 2016) .......................................................................9

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l,*
    573 U.S. 208 (2014) .......................................................6, 8, 9, 12, 18

*Ancora Techs. v. HTC Am., Inc.,*
    Case No. 2018-1404, 2018 U.S. App. LEXIS 32433 (Fed. Cir. 2018).....9, 16

*Ariosa Diagnostics, Inc. v. Sequenom, Inc.,*
    788 F.3d 1371 (Fed. Cir. 2015) .......................................................................7

*Ass'n for Molecular Pathology v. Myriad Genetics, Inc.,*
    569 U.S. 576 (2013) .......................................................................................6

*Automated Tracking Sols., LLC v. Coca-Cola Co.,*
    723 F. App'x 989 (Fed. Cir. 2018) ...............................................................10

*Bancorp Servs., L.L.C. v. Sun Life Assurance Co. of Canada (U.S.), et al.,*
    687 F.3d 1266 (Fed. Cir. 2012) ................................................................8, 25

*BASCOM Glob. Internet Servs. v. AT&T Mobility LLC,*
    827 F.3d 1341 (Fed. Cir. 2016)................................................7, 9, 10, 21, 23

*Becton, Dickinson & Co. v. Tyco Healthcare Grp.,*
    616 F.3d 1249 (Fed. Cir. 2010) .....................................................................19

*Berkheimer v. HP Inc.,*
    881 F.3d 1360 (Fed. Cir. 2018) ............................................................9, 10, 22

*Bilski v. Kappos,*
    561 U.S. 593 (2010) ................................................................................7, 18

*Cal. Inst. of Tech. v. Hughes Commc'ns Inc.,*
    59 F.Supp.3d 974 (C.D. Cal. 2014)................................................................8

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n,*
 776 F.3d at 1343 (Fed. Cir. 2014) ..................................................................9

*Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.,*
 880 F.3d 1356 (Fed. Cir. 2018) ...............................................................6, 13

*Custom Accessories, Inc. v. Jeffrey-Allan Indus., Inc.,*
 807 F.2d 955 (Fed. Cir. 2016) ...................................................................17

*DDR Holdings, LLC v. Hotels.com, L.P.,*
 773 F.3d 1245 (Fed. Cir. 2014) *(DDR Holdings II)*..........................8, 21, 22

*Elec. Power Grp., LLC v. Alstom S.A.,*
 830 F.3d 1350 (Fed. Cir. 2016) ...................................................................9

*Enfish LLC v. Microsoft Corp.,*
 822 F.3d 1327 (Fed. Cir. 2016) ............................................ 1, 8-9, 13, 15, 20

*FairWarning IP, LLC v. Iatric Sys., Inc.,*
 839 F.3d 1089 (Fed. Cir. 2016) .................................................................10

*Finjan, Inc. v. Blue Coat Sys., Inc.,*
 879 F.3d 1299 (Fed. Cir. 2018) ..........................................................9, 13, 21

*Gaus v. Conair Corp.,*
 363 F.3d 1284 (Fed. Cir. 2004) .................................................................19

*HTC Corp. v. Cellular Communs. Equip., LLC,*
 701 F. App'x 978 (Fed. Cir. 2017)............................................................19

*Intellectual Ventures I LLC v. Erie Indem. Co.,*
 850 F.3d 1315 (Fed. Cir. 2017) .............................................................. 9-10

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.,*
 566 U.S. 66 (2012) .........................................................6, 7, 12, 18, 21, 23

*McRO, Inc. v. Bandai Namco Games Am. Inc.,*
 837 F.3d 1299 (Fed. Cir. 2016) ............................................................8, 12

*OIP Techs., Inc. v. Amazon.com, Inc.,*
 788 F.3d 1359 (Fed. Cir. 2015) ...................................................................7

*Rapid Litig. Mgmt. Ltd. v. CellzDirect, Inc.,*
        827 F.3d 1042 (Fed. Cir. 2016) ..................................................... 7

*Research Corp. Techs. v. Microsoft Corp.,*
        627 F.3d 859, 868 (Fed. Cir. 2010) ............................................. 11

*Sound View Innovations, LLC v. Hulu, LLC,*
        Case No. LA CV17-04146-JAK (PLAx), Dkt. No. 83
        (C.D. Cal. April 11, 2018) ........................................................... 9

*State Contracting & Eng'g Corp. v. Condotte Am., Inc.,*
        346 F.3d 1057 (Fed. Cir. 2003) ................................................... 10

*Thales Visionix, Inc. v. U.S.,*
        850 F.3d 1343 (Fed. Cir. 2017) ................................................... 12

*TimePlay, Inc. v. Audience Entm't LLC,*
        No. CV 15-05202 SJO (JCx), 2015 U.S. Dist. LEXIS 174781
        (C.D. Cal. 2015) ........................................................................... 8

*Trading Techs Int'l, Inc. v. CQG, Inc.,*
        675 Fed. Appx. 1001 (Fed. Cir. 2017) ......................................... 9

*Turner v. Cook,*
        362 F.3d 1219 (9th Cir. 2004) ..................................................... 10

*Ultramercial, Inc. v. Hulu, LLC,*
        772 F.3d 709 (Fed. Cir. 2014) .................................... 7, 10, 11, 21

*U.S. v. Ritchie,*
        342 F.3d 903 (9th Cir. 2003) ....................................................... 17

*Vaporstream, Inc. v. Snap, Inc.,*
        Case No. 2:17-cv-00220-MLH, 2017 U.S. Dist. LEXIS 32884
        (C.D. Cal. February 27, 2018) ........................................ 10, 24, 25

*Visual Memory LLC v. NVIDIA Corp.,*
        867 F.3d 1253 (Fed. Cir. 2017) .................................... 9, 13, 16

***Other:***

35 U.S.C. § 101...................................................................1, 6, 7, 10, 17, 20, 25

35 U.S.C. § 282...................................................................................10

Rule 12(b)(6).............................................................................1, 3, 8, 10, 25

Plaintiff Kajeet, Inc. ("Plaintiff" or "Kajeet") hereby files this response to Defendant Qustodio, LLC's ("Defendant" or "Qustodio") Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Motion"). Dkt. No. 37.  For the forgoing reasons, Qustodio's Motion should be denied and judgment should be entered that the challenged claims of the Patents-in-Suit are directed to patent eligible subject matter.

## I.      INTRODUCTION

Every defendant accused of infringing a patent having anything to do with computer hardware or software now follows the same playbook. They immediately argue the patent covers ineligible subject matter and file a motion to dismiss.  What Defendant does in this Motion, like many such defendants, is over simplify the invention in order to support its arguments. For example, Defendant's analogy that the patented subject matter is merely the same as parents regulating children watching cartoons simplifies the subject matter to the point of being no different than saying a cell phone is patent ineligible because it is nothing more than modernization of children speaking through two tin cans tied to a string. "[W]ere it appropriate to invalidate claims at a high level of abstraction and untethered from the language of the claims, the exceptions to § 101 would swallow the rule."  *Enfish LLC v. Microsoft Corp.*, 822 F.3d 1327, 1337 (Fed. Cir. 2016).

As explained in the Complaint, the Patents-in-Suit address problems rooted in computing and networking technology brought on by the rapid proliferation of computing devices in all aspects of modern society.  They claim system and methods comprising a specific and novel component arrangement for effecting policy-based controls over communication devices attached to and enabled by wireless networks. The claimed systems and methods result in improvements to computer functionality in management of communications devices through improved security and effectiveness. By virtue of storing policies remotely from the controlled device, they are inaccessible to the controlled device for manipulation or deletion, thereby improving system effectiveness.  In fact, the claimed systems enable entirely new and novel functionality

PLAINTIFF'S BRIEF IN OPPOSITION TO MOTION TO DISMISS

with respect to the control accommodated, allowing for control of both incoming and outgoing communications and providing greater granularity of policies. As such, the claims are patent eligible under step one of *Alice*.

Yet, even if the claims were directed to an abstract idea under step one, which they are not, each would still be patent eligible under step two of *Alice*. Each comprises structural limitations confining their scope to systems comprising a particular component arrangement that was not well-known, routine, or conventional in the art at the time of the invention. This component arrangement, which contemplates remote storage of the usage policies applied to control the communication device, directly corresponds to improved security, effectiveness, and robustness of the systems. The implementation and advantageous results of these structural limitations relating to the remote storage of policies are discussed in the specification and file histories of the Patents-in-Suit. As such, the claims comprise an "inventive concept" satisfying step two of *Alice*.

This is confirmed by the expert declaration filed herewith. In it, Dr. Knutson[1] states:

- The challenged claims are directed to solving a problem arising from the rapid proliferation of communications devices throughout society;

- the claimed inventions represent improved systems and methods for communication device management in security, effectiveness, and robustness; and,

- the component arrangement disclosed and claimed was not well-known, routine, or conventional, and its use effected improvements in the operation of communication device control.

---

[1] Plaintiff submits herewith the Declaration of Dr. Charles D. Knutson (hereinafter identified as "Knutson Decl."), dated December 20, 2018. All citations to are to the specific paragraph(s) cited.

PLAINTIFF'S BRIEF IN OPPOSITION TO MOTION TO DISMISS

1   Defendant fails to recognize these points because it ignores the context of the
2   claimed inventions and parses the claims down to discrete elements that are then
3   individually considered without ever considering them in combination with the rest of
4   the claim. These are critical missteps in the inquiry under *Alice*. Further, Defendant
5   provides no evidence that a person of ordinary skill in the art would agree with its
6   understanding of the scope of the challenged claims.

7   What makes Defendant's position more tenuous is that it filed its motion under
8   Rule 12(b)(6) which requires that all allegations in the Complaint, including Plaintiff's
9   explanation of the invention, be taken as true. Against this backdrop, and without the
10  benefit of discovery or claim construction, Defendant baldly asserts patent ineligibility
11  based on unsupported attorney argument and repeated over-simplifications of the
12  problem addressed and solutions claimed by the patents. As shown below, Defendant's
13  Motion is deficient and should be denied and the Patents-in-Suit should be held directed
14  to patent eligible subject matter.

## II.   BACKGROUND AND TECHNOLOGY

16  Kajeet was founded in 2003 with the aim of developing solutions to an emerging
17  technological problem - how to ensure safe operation of mobile communication devices
18  by children and others. The known systems and methods for control prior to the time
19  of invention were largely inadequate and relied upon removing access to the
20  communication device to prevent disallowed usage or utilized policy-based controls in
21  which the policies were stored locally within accessible portions of the device's
22  memory. This arrangement was ineffective because the policies were locally accessible
23  for manipulation or deletion and because each communication device to be controlled
24  needed to be separately and independently configured. Kajeet addressed these
25  shortcomings via the inventions claimed in the Patents-in-Suit which stores usage
26  policies remotely from the communication device(s). This arrangement improved
27  operation of the systems through improved security from user manipulation while

28

---

3

PLAINTIFF'S BRIEF IN OPPOSITION TO MOTION TO DISMISS

accommodating real-time control of one or more devices which could be grouped to apply a set of policies to each simultaneously.

Kajeet's efforts and ingenuity yielded thirty-two U.S. Patents, many of which share a common specification to that of the asserted patents in this case.[2]  The Patents-in-Suit discuss how the proliferation of cell phones and other modern communication devices throughout aspects of modern life created the problem of providing adequate control over these devices, which typically accommodate a wide range of functionality accessible at any time from virtually anywhere.  For example, in the Background section, the Patents note that:

> In other words, there is nothing to stop the user from running up a huge cell phone bill. Many parents have experienced this issue with their children, prompting the parents to take their children's phones away or to otherwise restrict their children's access to the phones. Unfortunately, modern society requires that parents have the ability to contact their children by cell phone and vice versa, so the cell phones are often returned to the children despite the possibility of further abuse.

> The same type of issue exists between employers and employees and other parties in similar administrator/user relationships with respect to the use/abuse of cell phones and other devices. For example, an employer may want an employee to have a communications or mobile computing device, but may not want to pay for certain services or applications that the employee can access with the device or may want to limit how, when, and how much of those services or applications can be used by the employee. Exh. A to Wojcio Decl.[3] ('371 Patent) at 1:37-56.

---

[2] The patents in suit are each continuation applications claiming the benefit of U.S. application Ser. No. 11/824,336 filed on Jun. 28, 2007, which issued as U.S. Patent No. 7,945,238 on May 17, 2011.

[3] Plaintiff submits herewith the Declaration of Richard A. Wojcio, Jr. (hereinafter identified as "Wojcio Decl."), dated December 21, 2018.  All citations to Exhibits hereinafter refer to attachments to the Wojcio Decl.

Critically, the Patents-in-Suit note that prior art methods of controlling use of computing devices (*i.e.*, removing access by taking the device away altogether or by disabling it) were unworkable because they deprived the user of allowable uses of the device in order to prevent disallowed uses. The specification makes clear that the problem to be solved is how to maintain effective control to prohibit certain uses while still allowing approved uses, all in the context of the user possessing the device at all times including when physically apart from and/or not in contact with the parent/administrator.

> For example, if a child uses up all of the funds in their prepaid account, and their phone service provider shuts down access to its services, the child will not be able to call a parent in the event of an emergency, or arrange to be picked up after school or a sporting event, etc.

> Thus, a prepaid phone service does not solve the problem of *ensuring availability of key services even if the prepaid account has run out of money*. In addition to insuring the safety of their children, many parents, employers and others would like to be able to exercise administrative control over the services and activities that a child, employee, etc., is allowed to pay for out of their prepaid account, but prepaid accounts have not been structured to provide such administrative control or feature management. Exh. A at 2:7-21; *See, also,* Exh. A at 3:24-29; 5:14-19; 12:47-67.

Factual allegations consistent with these concepts are included within the allegation of Kajeet's Complaint. Notably, at Paragraph 13, Plaintiff states:

> 13.    The inventions disclosed and claimed in the Asserted Patents provide for systems and methods *for providing access to desirable features, such as always allowing for calls to a parent, for example, while also preventing access to features deemed inappropriate* because of cost (e.g., downloadable games or other applications), type of content (e.g., gambling or pornographic content), the time of day or night (e.g., during school hours or after bed time), and/or the device's location, among other criteria. The Asserted Patents disclose the use of *policies defining acceptable and unacceptable uses of a mobile communication device*

*based on a variety of contexts which are set by administrators (e.g., parents or teachers) at the server level* to control use of one or more mobile communication devices. *This represented an unconventional scheme that was neither well known nor routine for addressing a newly emerging problem in society.* The inventions disclosed and claimed in the Asserted Patents provided for more robust control that was more resilient to manipulation and/or disablement by users of the controlled devices and, therefore, *more effective than prior art systems and methods*.

It is in the context of the problem addressed, which is rooted in computer and networking technology, that the challenged claims are to be viewed. When doing so, it is clear that each claim is directed to a concrete system or method utilizing a non-conventional component and network arrangement to improve operation of a computer system. More specifically, these claims require remote storage of usage policies which are thereby less vulnerable to manipulation by the user of the device(s) being managed while still accommodating real-time, continuous control during device usage, thereby improving the functionality of the computer-based systems through improved security, effectiveness, and robustness of the control accommodated.

## III.   LEGAL STANDARDS

### A. Patent Eligibility under 35 U.S.C. § 101 and *Alice*

35 U.S.C. § 101 defines subject matter which is eligible for patenting, stating that "any new and useful process, machine, manufacture, or composition of matter, *or any new and useful improvement thereof*" is patentable. 35 U.S.C.S. § 101; *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356, 1361 (Fed. Cir. 2018) (emphasis added). This broad language is only limited by three narrowly construed, judicially-created exceptions excluding from patentability claims directed to laws of nature, natural phenomena, and abstract ideas. *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 569 U.S. 576, 589 (2013) (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 70 (2012)). As explained in *Mayo*, the primary rationale underpinning these judicial exceptions is the risk of pre-emption, whereby

issuance of claims directed to these "basic tools of scientific and technological work" would stymy innovation, rather than promote it. *Mayo*, 566 U.S. at 71; *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 217 (2014); *Bilski v. Kappos*, 561 U.S. 593, 611-12 (2010).

The relevant inquiry for determining patent eligibility, therefore, is whether the challenged claims do more than merely claim judicially excepted subject matter. *Alice*, 573 U.S. at 215. As laid out in *Mayo* and elaborated upon in *Alice*, this inquiry first requires the Court to determine as a threshold matter whether the claims are directed to patent-ineligible concepts. If so, then the Court must "search for an 'inventive concept'—*i.e.,* an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.' *Alice*, 573 U.S. at 217-18 (quoting *Mayo*, 566 U.S. at 72-73).

Courts look primarily to the claims themselves and to the intrinsic record, comprising the specification and file history, to clarify the proper scope and meaning of the limitations within a challenged claim. *See, e.g., OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1363 (Fed. Cir. 2015) (considering prosecution history and specification to determine key features of challenged claims); *Ariosa Diagnostics, Inc. v. Sequenom, Inc.*, 788 F.3d 1371, 1377 (Fed. Cir. 2015) (finding evidence in prosecution history showing a step of the challenged claim was considered well-understood, routine, and conventional); *BASCOM Glob. Internet Servs. v. AT&T Mobility LLC*, 827 F.3d 1341, 1343 (Fed. Cir. 2016) (reviewing intrinsic record to determine whether challenged claims embody an "inventive concept").

### 1. *Alice* Step One

"A 101 analysis begins by identifying whether an invention fits within one of the four statutorily provided categories of patent eligible subject matter." *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018) (quoting *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 713-14 (Fed. Cir. 2014). The challenged claims are then considered as a whole in light of the specification to determine their true

subject matter.  *Rapid Litig. Mgmt. Ltd. v. CellzDirect, Inc.*, 827 F.3d 1042, 1045 (Fed. Cir. 2016).  This involves more than simply identifying a patent-ineligible concept that may be implicit in the claim. Rather the problem addressed by the claim(s) as described in the specification is considered to ascertain what the claim is "directed to".  *Id.*; *See also, Cal. Inst. of Tech. v. Hughes Commc'ns Inc.*, 59 F.Supp.3d 974, 991 (C.D. Cal. 2014).

Importantly, the focus is on the specific solution claimed and <u>not</u> on over-simplifications of the claimed subject matter because "[a]t some level, all inventions… embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas." *Alice*, 573 U.S. at 217; *Enfish*, 822 F.3d at 1336.  For this reason, many courts, including Courts in this District, have declined to rule on patent eligibility disputes until after fully resolving all claim construction matters because "'the determination of patent eligibility requires a full understanding of the basic character of the claimed subject matter.'"  *TimePlay, Inc. v. Audience Entm't LLC*, No. CV 15-05202 SJO (JCx), 2015 U.S. Dist. LEXIS 174781, at *14 (C.D. Cal. 2015) (quoting *Bancorp Servs., L.L.C. v. Sun Life Assurance. Co. Can. (U.S.)*, 687 F.3d 1266,1273-74 (Fed. Cir. 2012)); *Aatrix*, 882 F.3d 1121, 1125 (finding error in District Court's granting of Rule 12(b)(6) motion without first construing the claims).

As the *Alice* case law has developed, various rationale have emerged which have been consistently relied upon to find patent eligibility at step one.  For example, claims that are "necessarily rooted in computer technology" or that "overcome a problem specifically arising in the realm of computer networks" have been found directed to patent eligible subject matter.  *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1257 (Fed. Cir. 2014).  Likewise, claims which include specific language limiting the claims to a certain process, component arrangement, or methodology for effecting a desired result have been found patent eligible.  *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1316 (Fed. Cir. 2016).

PLAINTIFF'S BRIEF IN OPPOSITION TO MOTION TO DISMISS

In more recent decisions, courts have repeatedly held challenged claims to be directed to patent eligible subject at step one in instances where the claims captured "a specific improvement to the way computers operate."  *See, e.g., Enfish*, 822 F.3d at 1336; *Visual Memory LLC v. NVIDIA Corp.*, 867 F.3d 1253 (Fed. Cir. 2017); *Trading Techs Int'l, Inc. v. CQG, Inc.*, 675 Fed. Appx. 1001 (Fed. Cir. 2017); *Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299 (Fed. Cir. 2018); *Core Wireless*, 880 F.3d at 1361; *Ancora Techs. V. HTC Am., Inc.*, Case No. 2018-1404, 2018 U.S. App. LEXIS 32433, at *13-14 (Fed. Cir. 2018).  In fact, this Court followed the rationale of this line of cases in denying a motion to dismiss for patent ineligibility earlier this year.  *See Sound View Innovations, LLC v. Hulu, LLC*, Case No. LA CV17-04146-JAK (PLAx), Dkt. No. 83 (C.D. Cal. April 11, 2018) (attached hereto as Exh. D to Wojcio Decl.).

### 2. *Alice* Step Two

If a challenged claim is found to be directed to patent ineligible subject matter at step one, the Court must proceed to *Alice s*tep two to determine if it comprises an "inventive concept" sufficient to "transform" the ineligible matter into a patent-eligible application.  *Alice*, 573 U.S. at 221; *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016) ("we have described… the second-stage inquiry (where reached) as looking more precisely at what the claim elements add—specifically, whether, in the Supreme Court's terms, they identify an 'inventive concept' in the application of the ineligible matter to which (by assumption at stage two) the claim is directed.").  The elements of each challenged claim are considered both individually and as an ordered combination.  *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1367 (Fed. Cir. 2018) (citing *Alice*, 573 U.S. at 217).  Simply focusing on each element in isolation or focusing only on whether certain elements recite a patentable invention is insufficient. *See BASCOM*, 827 F.3d at 1349-50.

"The second step of the *Alice* test is satisfied when the claim limitations 'involve more than performance of 'well-understood, routine, [and] conventional activities previously known to the industry.'" *Id.*; *Content Extraction & Transmission LLC v.*

1   *Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1347-48 (Fed. Cir. 2014) (quoting *Alice*,

2   573 U.S. 224); *Affinity Labs of Tex., LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1262 (Fed.

3   Cir. 2016); *Intellectual Ventures I LLC v. Erie Indem. Co.*, 850 F.3d 1315, 1328 (Fed.

4   Cir. 2017).   Whether the claim elements or the claimed combination are well-

5   understood, routine, or conventional is a question of fact.  *Aatrix*, 882 F.3d at 1128.

6   Courts have looked to the opinions of experts to aid in the determination of whether a

7   claimed combination is well-understood, routine, or conventional.  *Vaporstream, Inc.*

8   *v. Snap, Inc.*, Case No. 2:17-cv-00220-MLH, 2017 U.S. Dist. LEXIS 32884 at *15

9   (C.D. Cal. February 27, 2018).

## B. Burdens and Presumptions Applicable to Rule 12(b)(6) Motions

11       Patent eligibility is "a question of law that may contain underlying issues of fact"

12   such as "whether a claim element or combination of elements is well-understood,

13   routine and conventional to a skilled artisan in the relevant field" *Automated Tracking*

14   *Sols., LLC v. Coca-Cola Co.*, 723 F. App'x 989, 992 (Fed. Cir.

15   2018) (citing *Berkheimer*, 881 F.3d at 1368).  "[A] challenger must prove ineligibility

16   under § 101 by clear and convincing evidence." *Ultramercial*, 722 F.3d at 1338-39.  "A

17   party seeking to establish that particular claims are invalid must [also] overcome the

18   presumption of validity in 35 U.S.C. § 282" which attaches to all issued patents.  *State*

19   *Contracting & Eng'g Corp. v. Condotte Am., Inc.*, 346 F.3d 1057, 1067 (Fed. Cir. 2003).

20       When deciding a Rule 12 motion to dismiss, all material allegations in plaintiff's

21   complaint must be accepted as true and considered in the light most favorable to the

22   non-moving party. *Turner v. Cook*, 362 F.3d 1219, 1225 (9th Cir. 2004).  Grant of

23   Defendant's Rule 12 motion at this stage of the case is possible "only when there are

24   no factual allegations that, taken as true, prevent resolving the eligibility question as a

25   matter of law." *Aatrix*, 882 F.3d at 1125.  Indeed, plausible factual allegations in the

26   Complaint, standing alone, have been found sufficient to overcome a § 101 challenge

27   under Rule 12(b)(6) where "nothing on th[e] record . . . refutes those

28

allegations." *Aatrix*, 882 F.3d at 1125; *FairWarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089, 1097 (Fed. Cir. 2016) (quoting *BASCOM*, 827 F.3d at 1352).

Given the high evidentiary burden, "it [is] rare that a patent infringement suit can be dismissed at the pleading stage for lack of patentable subject matter…. The only plausible reading of the patent must be that there is clear and convincing evidence of ineligibility. For those reasons … ***dismissal for lack of eligible subject matter will be the exception, not the rule.***" *Ultramercial*, 722 F.3d at 1338-39 (internal citations omitted) (emphasis added). Indeed, "an abstract idea should exhibit itself so manifestly as to override the broad statutory categories of eligible subject matter [processes, machines, manufactures, compositions of matter, or any new and useful improvement thereof] and the statutory context that directs primary attention on the patentability criteria of the rest of the Patent Act." *Research Corp. Techs. v. Microsoft Corp.,* 627 F.3d 859, 868 (Fed. Cir. 2010).

## IV.   ARGUMENT

### A. Representative Claim Analysis is Inappropriate

Defendant focuses all of its analysis and arguments on three purportedly representative claims from the Patents-in-Suit. Dkt. No. 37 at 5-7. Those claims are claim 1 of the '371 Patent, claim 1 of the '612 Patent, and claim 27 of the '559 Patent. Representative claim analysis is not appropriate, however, because the remaining independent claims of each patent include additional, different limitations which are directed to specific, alternative embodiments having differing claim scope. For instance, limitations directed to: (1) implementation of instructions on a non-transitory medium for controlling use of groups of computing devices over a network serviced by a service provider[4]; (2) use of a graphic user interface having specific features and functionality by administrators to define groups and policies[5]; and/or (3) routine

---

[4] See Exh. C ('612 Patent) at claim 3; Exh. B ('559 Patent) at claim 1; and Exh. A ('371 Patent) at claim 22.

[5] ~~See Exh. C ('612 Patent) at claim 22.~~

PLAINTIFF'S BRIEF IN OPPOSITION TO MOTION TO DISMISS

updating of policies from a server during use[6].  Each of these additional limitations are material and result in differing claim scope from the purportedly representative claims which impacts the *Alice* analysis.

The dependent claims are addressed to limitations specifying policy types, how they are configured, and how they are applied within the claimed systems. These further narrow the independent claims in manners that elaborate on how the claimed system operates and, as such, are not merely "insignificant pre- or post- solution activity" as Defendant posits.  Limitations defining the type, character, and content of rules applied in a system such as those included in the dependent claims of the Patents-in-Suit have been found critical to the patent eligibility analysis.  See *McRO,* 837 F.3d at 1316.

In *McRO*, the Federal Circuit affirmed the patentability of the asserted claims, holding:

> "By incorporating the specific features of the rules as claim limitations, claim 1 is limited to a specific process for automatically animating characters using particular information and techniques and does not preempt approaches that use rules of a different structure or different techniques. *McRO,* 837 F.3d at 1316.

Here, similarly, the dependent claims further confine the claims to concrete implementations of the claimed systems that are patent eligible.  In other words, there is no risk preemption that would justify finding the claims patent ineligible.  For these reasons it is improper to regard the three claims identified by Defendant as representative.  A separate *Alice* analysis is required for each claim of the Patents-in-Suit.  The Court should not extend Defendant's arguments to any claims beyond those specifically addressed in its Motion, leaving all remaining claims undisturbed.

---

[6] See Exh. B ('559 Patent) at claims 13 and 22.

PLAINTIFF'S BRIEF IN OPPOSITION TO MOTION TO DISMISS

**B. The Challenged Claims are Directed To Patent Eligible Subject Matter at** *Alice* **Step One**

"[A]ll inventions at some level embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas." *Mayo*, 566 U.S. at 71. "We must therefore ensure at step one that we articulate what the claims are directed to with enough specificity to ensure the step one inquiry is meaningful." *Thales Visionix, Inc. v. U.S.*, 850 F.3d 1343, 1347 (Fed. Cir. 2017) (citing *Alice*, 573 U.S. at 217). Claims directed to specific improvements in computing systems are patent eligible, ending the inquiry at the first step. *See, e.g., Enfish*, 822 F.3d 1327; *Visual Memory*, 867 F.3d 1253; *Finjan*, 879 F.3d at 1304; *Core Wireless*, 880 F.3d at 1361.

Here, challenged claims are not directed to an abstract idea because each is: (1) rooted in computing and network technology; (2) represents improvements in the security and effectiveness in how systems implementing policy-based control over communication devices operate; and, (3) are directed to specific implementations of such improved systems such that there is no risk of preemption.

**1. The Claimed Systems are Directed to Improved Control Systems**

Claims directed to improvements in operation of computer systems have been consistently found patent eligible. Here, the challenged claims are directed to systems and methods for effecting policy-based controls over communication devices. By their explicit language, they are not directed to judicially-excepted subject matter. Instead, the challenged claims are directed to particular systems and methods for implementing policy-based controls on communication devices. Knutson Decl. at ¶¶ 19-24.

The claims are addressed to specific solutions in which the policies applied are stored remotely and are, therefore, inaccessible by the controlled device. Knutson Decl. at ¶¶ 21-23. This arrangement advantageously accommodates policy application in real-time with device usage while preventing the user of the controlled device from accessing and manipulating the policies. Knutson Decl. at ¶¶ 18, 20. Additionally, remote policy storage allows for a single set of policies to be configured and

simultaneously applied to one or many communication devices, either under a defined user profile or via the use of profile groups.  Knutson Decl. at ¶ 18.  The claims at issue are therefore directed to improved computer-based systems and not merely to an abstract concept of applying policies to control access.  Knutson Decl. at ¶ 24.

The requirement for remote policy storing is within in the challenged claims of the '371 Patent.  For example, claim 1 of the '371 Patent includes limitations requiring that requests to use certain functionality of a computing device *be routed via a switch or node to a policy decider module*.  See Exh. A at claim 1; Knutson Decl. at ¶ 21.  Policy decisions are *transmitted back through the switch or node for enforcement* on the controlled device.  *Id.*  These limitations capture the distributed architecture scheme resulting in improved effectiveness of the claimed systems.  Similar limitations, among others, are present in each of the other independent claims of the '371 Patent.  See Exh. A at claims 13, 22, and 27.

Likewise, remote policy storage and real-time application of policies are required in the challenged claims of the '559 Patent.  For example, claim 27 of the '559 Patent includes limitations requiring that requests to communicate with remote computing devices *be sent to a server from which a decision on the request is provided in real-time*.  Exh. B at claim 27; Knutson Decl. at ¶ 22.  Similar limitations, among others, are present in each of the other independent claims of the '559 Patent.  Exh. B at claims 1, 13, and 22.

The same is true for the claims of the '612 Patent, which require not only remote storage of policies, but also that the claimed systems and methods accommodate application of a single set of policies to a group of devices.  For example, claim 1 of the '612 Patent includes limitations requiring grouping of the managed computing devices and that enforcement of policy decisions include sending data corresponding to the decision back to the managed device(s).  Exh. C at claim 1; Knutson Decl. at ¶ 23.  Similar limitations, among others, are present in each of the other independent claims of the '612 Patent.  Exh. C at claims 13, 22, and 27.

These claims address a challenge (real-time control of access to services) that is specific to the use of computing devices in a particular networked infrastructure. Thus, the claimed subject matter, when considered as a whole, recites more than the mere use of generic computer functionality, and provides an improvement to a technical field, meeting the guidelines for non-abstract subject matter under *Alice*.  Knutson Decl. at ¶24.  The Complaint captures this concept (Dkt. No. 1 at ¶ 13) and this well pleaded factual allegation must be taken as true for the purposes of deciding the present Motion.

The case law supports a finding of patent eligibility at step one.  For example, in *Enfish*, the Federal Circuit found claims directed to self-referential logical model for a computer database as directed to patent eligible subject matter at the first step of the *Alice* test. The Court noted that the invention represented improvements over conventional computer databases resulting in increased flexibility, faster search times, and smaller memory requirements. The challenged claims were deemed "not simply directed to *any* form of storing tabular data, but instead [were] specifically directed to a *self-referential* table for a computer database" so that they functioned differently and better than conventional databases. *Enfish*, 822 F.3d at 1337. Importantly, the Court reasoned that "software can make non-abstract improvements to computer technology just as hardware improvements can… Therefore, we find it relevant to ask whether the claims are directed to an improvement in computer functionality versus being directed to an abstract idea, even at the first step of the *Alice* analysis." *Enfish*, 822 F.3d at 1335. The Court cautioned against "oversimplifying" computer-related inventions and noted that "[m]uch of the advancement made in computer technology consists of improvements to software that, by their very nature, may not be defined by particular physical features but rather by logical structures and processes." *Enfish*, 822 F.3d at 1337-38.

Similarly, in *Visual Memory*, the Federal Circuit reversed a district court holding which found the challenged claims directed to ineligible subject matter, citing favorably to its prior decision in *Enfish*. *Visual Memory*, 867 F.3d at 1258-59. The challenged

PLAINTIFF'S BRIEF IN OPPOSITION TO MOTION TO DISMISS

claims were directed to the use of conventional memory components within a computer and purported to improve upon existing memory hierarchical structures through implementation of a "programmable operational characteristic" which, effectively, tailored the allocation scheme of data to be stored based upon characteristics of a processor. The Federal Circuit disagreed with the district court's conclusion that the claims were directed to the "'abstract idea of categorical data storage" and instead concluded that the challenged claims were directed to "an improved computer memory system." *Id.* at 1257, 1259. The Court relied on statements in the specification explaining the benefits of the memory structures claimed therein, such as "obviate[ing] the need to design a separate memory system for each type of processor, which proved to be costly and inefficient, and, at the same time, avoid the performance problems of prior art memory systems." *Visual Memory*, 867 F.3d at 1259.

Finally, in a more recent case, the Federal Circuit held that claims directed to a software-based scheme for controlling access to features patent eligible because the embodiments claimed comprised "concrete assignment of specified functions among a computer's components to improve computer security." *Ancora Techs.*, 2018 U.S. App. LEXIS 32433, at *1. The Federal Circuit noted that "[i]mproving security – here, against a computer's unauthorized use of a program – can be a non-abstract computer-functionality improvement if done by a specific technique that departs from earlier approaches to solve a specific computer problem." *Id.*, at *13. The improved security resulted from disposing license credentials in a different portion of a computer's memory whereby they would be less vulnerable to manipulation. *Id.*, at *13-14.

The claims of the Patents-in-Suit are akin to those upheld in each of these cases because they are rooted in computer technology and they claim systems embodying a novel architecture resulting in improved operation. More specifically, the claims are rooted in control schemes for managing communication devices and require remote storage of usage policies which are thereby less vulnerable to manipulation by the user of the device while still accommodating real-time control during use. Knutson Decl. at

PLAINTIFF'S BRIEF IN OPPOSITION TO MOTION TO DISMISS

¶ 24.  The claimed systems improve the functionality of such computer-based systems through improved security, effectiveness, and robustness of the control accommodated by virtue of this remote storage of polices, which are inaccessible by the controlled device for manipulation or deletion.  As such, the claims are directed to patent eligible subject matter under step one.

Defendant ignores this and baldly asserts without support that the claims are directed to nothing more than "the abstract concept of using policies to manage access to functions."  Dkt. No. 37 at 8.  No analysis or evidence is provided, just attorney argument as to the scope of the "Representative Claims" which fails to consider any actual limitations from those claims.  No indication of what scope a person of ordinary skill in the art would ascribe to the Representative Claims is provided either.

Defendant notes that the Patents-in-Suit issued prior to the Supreme Court's ruling in *Alice*, implying that they would not have issued if examined post-*Alice*.  This argument has no weight.  All patent applications are examined for patent eligibility under 35 U.S.C. § 101, even before *Alice*.  The Patents-in-Suit were examined for patentability and proceeded to issuance.  Further, seven patents within the same family as the Patents-in-Suit have issued post-*Alice* including U.S. Patent No. 8,929,857 which includes claims directed to a system of "policy deciders" and "enforcers" similar to the claims asserted in this suit.[7]  The Examiner found these claims to also be directed to patent eligible subject matter.  *See* Exh. E at claim 1.  Although not dispositive, such Examiner decisions are "evidence the court must consider in determining whether the party asserting invalidity has met its burden by clear and convincing evidence.  *Custom Accessories, Inc. v. Jeffrey-Allan Indus., Inc.*, 807 F.2d 955, 961 (Fed. Cir. 2016).

_____

[7] The Court is authorized to consider evidence subject to judicial notice, which the file histories of these related patents are.  *U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).  The Kajeet portfolio comprises the following patents which issued after the *Alice* decision and were, therefore, found to be directed to patentable subject matter as defined in *Alice*, including: U.S. Patents Nos. 8,774,754; 8,774,755; 8,929,857; 8,995,952; 9,137,386; 9,237,433; and, 10,009,480.

Defendant contends that the challenged claims are directed to the abstract idea of "limiting access to functions based on policies" which has been found to be an abstract concept in other cases.  Dkt. No. 37 at 7-8.  Such mere identification of an abstract concept without any analysis of the claim language, itself, to show how it is directed to nothing more than the identified concept is not enough under *Alice* step one, however.  Defendant has put forth no evidence showing that a person of ordinary skill in the art would agree with its assertions and has provided no comparison of the claims at issue to those held ineligible in the cases Defendant cites.  On this record, and in the context of a Rule 12 motion, Defendant cannot overcome the presumption of validity nor the presumption of truthfulness attached to the allegations of the Complaint.

## 2.  The Claimed Systems are not Preemptive

A primary concern underpinning the law of patent eligibility is the risk of preemption.  *Mayo*, 566 U.S. at 71; *Alice*, 573 U.S. at 217; *Bilski*, 561 U.S. at 611-12.  Allowance of preemptive claims directed to the "basic tools of scientific and technological work" would stymy innovation and are therefore patent ineligible.  *Id.*  Here, inclusion of limitations within the claims capturing the distributed architecture arrangement limits the applicability of the claims to systems and/or methods implementing this unique component arrangement.  The claims cannot, therefore, be preemptive of the greater concept of effecting device management through selective access to features/content.  For example, systems which require no communication to a remote component storing usage policies cannot be within the scope of the challenged claims.  Likewise, systems and methods of control that do not operate in response to requests ***from the managed device*** are not within the scope of the challenged claims by the explicit language of those claims.  This is strongly indicative that the challenged claims are directed to specific systems and methods for effecting device management rather than to a broader, abstract concept.  Defendant incorrectly asserts that the claims of the Patents-in-Suit read on common parenting activities and, therefore, are

1  preemptive and abstract. Dkt. No. 37 at 10-13. Defendant's proffered analogies fail for
2  several reasons. *See* Knutson Decl. at ¶¶ 25-28.

3       The challenged claims are addressed to a specific technology-centric problem
4  which is wholly apart from the parenting examples presented.   These purportedly
5  analogous scenarios fail to address the modern parenting issues stemming from children
6  possessing their own mobile communication devices to which they could have
7  unfettered feature access while away from a parent or teacher, which is the focus of the
8  Patents-in-Suit and the backdrop against which the claims are to be interpreted.
9  Knutson Decl. at ¶¶ 25, 26.

10       Importantly, the analogies presented do not read on the limitations of the claims.
11  Defendant must gloss over several limitations to make its analogies fit.  For example,
12  with respect to claim 1 of the '371 Patent, Defendant's analysis requires that the parent
13  comprises each of "the switch or node," "the policy decider," and "the policy enforcer."
14  See Dkt. No. 37 at 10-11.  Knutson Decl. at ¶¶ 25, 27.  Likewise, Defendant's analysis
15  relating to claims of the '612 and '559 Patents, respectively, requires that the "parent"
16  be both the claimed "system" as a whole or "server" component and then also be "the
17  administrator" who configures the "system" or "server."  Knutson Decl. at ¶ 28.  The
18  Federal Circuit has warned against construing claim elements in this manner, noting
19  that "[w]here a claim lists elements separately, "the clear implication of the claim
20  language" is that those elements are "distinct components" of the patented invention.
21  *HTC Corp. v. Cellular Communs. Equip., LLC*, 701 F. App'x 978, 982 (Fed. Cir. 2017)
22  (citing *Becton, Dickinson & Co. v. Tyco Healthcare Grp.*, 616 F.3d 1249, 1254 (Fed.
23  Cir. 2010) (quoting *Gaus v. Conair Corp.*, 363 F.3d 1284, 1288 (Fed. Cir. 2004))).
24  Defendant's analogies violate this instruction.

25       Aside from this glaring claim construction issue, Defendant's interpretation
26  becomes unworkable, however, when applying the actual claim language.  In particular,
27  it is unclear how the policy enforcer would "enforce the decision of the policy decider
28  as to whether the request has been granted or denied ***by transmitting data to the switch***

*or node*, the data being indicative of one or more actions consistent with the decision" as the claim language requires.  Exh. A at claim 1 (emphasis added).  If every one of these elements manifests in the parent, according to Defendant's analogy, then how and why is data ***transmitted back*** to "the switch or node" by "the policy enforcer" to enforce the decision?  Defendant's analogy completely reads this transmitting limitation out of the claim and represents precisely the type of analysis explicitly prohibited in performing a § 101 analysis - a high level of abstraction that is untethered from the language of the claims.  *Enfish*, 822 F.3d at 1337.

The challenged claims contemplate making and effecting policy decisions ***concurrent*** with usage, and not a lock-step process of first getting permission before then commencing use.  Referring to claim 27 of the '559 Patent, for example, the claim language requires that the decision be "received ***in real-time*** from the server" and that enforcement entails "***disabling the communication*** when the decision denies the request."  Exh. B at claim 27. There is no separate step in the method for initiating communication with a remote computing device apart from the transmission of the request over the communication network.  The policy decision and enforcement thereof occur concurrently with execution of a desired function on the computing device, not as a prior authorization event.  This cannot occur within the proffered real-world parenting analogy.  Either the child would have to ask permission, first, before commencing the desired activity to completely prevent a disallowed activity - a step not contemplated by the claim language - or the parent's notification that a policy decision and enforcement are needed would only occur through observing the child already performing the desired activity.  In this second instance, the decision is not provided in real-time, however, as the child would already have commenced the activity by the time the parent became aware of it and then subsequently decide whether it may continue.

That these claims cannot and do not preempt systems and methods of policy-based controls outside of the specific arrangement claimed is fatal to Defendant's position.  In truth, the claims at issue are "directed to" concrete systems and applications

PLAINTIFF'S BRIEF IN OPPOSITION TO MOTION TO DISMISS

rather than to any abstract concept and are, therefore, patent eligible under *Alice* step one. Defendant has unwittingly made this clear through presenting purportedly analogous non-computer implementation of the claimed systems and methods which fail to read on the challenged claims. The inclusion of limitations within the claims confining them to the specific component arrangement yielding improved system functionality, as described above, render these claims patent eligible. *Trading Techs.*, 675 Fed. Appx. at 1005.

The challenged claims are patent eligible under step one of *Alice*, ending the inquiry. Analysis under step two by the Court is therefore not required to decide the present Motion. In the event that the Court disagrees and finds the challenged claims to be directed to an abstract concept, however, the following sections demonstrate that the claims are still patent eligible under *Alice* step two because they include sufficient additional limitations directed to an "inventive concept" to transform the nature of the claim. An expert declaration supporting this position is provided to aid the Court in its understanding of certain factual matters underpinning the step two analysis.

**C. The Challenged Claims Comprise an "Inventive Concept" at *Alice* Step Two**

For claims directed to a judicial exception under step one, courts are to "consider the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Finjan*, 879 F.3d at 1303 (quoting *Mayo*, 566 U.S. at 67). The "inventive concept" must be something sufficient to ensure that the claims amount to "significantly more" than the abstract idea itself. *Id.* (quoting *Mayo*, 566 U.S. at 72-73). To satisfy this prong, the claims must include additional features which are significantly beyond "well understood, routine, conventional activity" or a simple "instruction to implement or apply the abstract idea on a computer." *Ultramercial,* 772 F.3d at 715 (quoting *Mayo,* 566 U.S. at 79); *Bascom,* 827 F.3d at 1349. In *DDR Holdings II*, the Federal Circuit explicitly differentiated abstract, ineligible subject matter "executed on a generic computer" and "fundamental economic and conventional

business practices" from those rooted in the advancement of computer technology, stating:

> [T]hese claims stand apart [and are thus eligible for patent protection] because they do not merely recite the performance of some business practice known from the pre-internet world along with the requirement to perform it on the Internet. Instead, ***the claimed solution is necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks."*** *DDR Holdings,* 773 F.3d at 1257 *(DDR Holdings II)* (emphasis added).

Again, "whether something is well-understood, routine, and conventional to a skilled artisan at the time of the patent is a factual determination." *Berkheimer*, 881 F.3d at 1369.

Rather than rely only upon attorney argument, Plaintiff provides herewith the declaration of Dr. Knutson which discusses the onset of the problem addressed by the Patents-in-Suit as well as prior art systems and methods for addressing it.[8]  Knutson Decl. at ¶¶ 13-17  As noted therein, the component arrangement disclosed and claimed in the Patents-in-Suit was not well-known, routine, or conventional and, further, its use effected an improvement in the operation of mobile communication device control systems.  Knutson Decl. at ¶¶ 18, 29.

As described above and verified by Dr. Knutson, the claims of the Patents-in-Suit are directed to solving a problem arising from the rapid proliferation of mobile communications devices throughout society - a problem rooted in technology that

---

[8] Although Plaintiff believes the present patent eligibility issue is fully resolved under step one of *Alice* without need to proceed to step two, in an abundance of caution Plaintiff provides the attached declaration.  Recent Federal Circuit cases have made clear that the analysis under step two is heavily influenced by factual issues relating to how a skilled artisan would view the claimed subject matter.  *See, e.g., Berkheimer*, 881 F.3d at 1369.  In light of this recent case law as well as the potential for invalidation of the Patents-in-Suit at this early stage of the case, the Knutson declaration is provided in support of Plaintiff's arguments.  The Court need not rely on it to decide the present motion.

PLAINTIFF'S BRIEF IN OPPOSITION TO MOTION TO DISMISS

requires a likewise technological solution.  Knutson Decl. at ¶¶ 13-15.    Further, Dr. Knutson explains that means for preventing excessive or inappropriate use of such communication devices, which remain in the possession of children potentially all day and night, were needed.  Knutson Decl. at ¶ 15.  Dr. Knutson understands that the claimed inventions addressing this technology-centric problem represent an improvement in operation of mobile device management systems and methods in security, effectiveness, and robustness.  Knutson Decl. at ¶¶ 18-20, 24.

Defendant contends that each of the challenged claims "recite nothing more than generic and conventional technologies and steps" and, therefore, fail to demonstrate an "inventive concept."  Dkt. No. 37 at 13.  Defendant supports this contention through identification of each component and structural limitation of the challenged claims paired with bald assertions that each is generic and used in a conventional manner. Defendant's analysis and corresponding conclusions are wholly insufficient under the law.

First, Defendant fails to consider the claims as a whole, as the case law requires, and instead only considers the limitations of the challenged claims individually.  *Mayo*, 566 U.S. at 67; *BASCOM*, 827 F.3d at 1349-50.  There is a reason that such high-level and overly simplified analysis is insufficient, it reads out of a claim any "inventive concept" relating to the specific implementation for effecting the desired result by the claimed system or method.  In truth, were Defendant's analysis sufficient, many recent Federal Circuit cases finding claims patent eligible under *Alice* step two would have been decided differently.  *See, e.g., BASCOM*, 827 F.3d at 1349-50.

In *BASCOM*, the Federal Circuit found the claims at issue, claiming internet filtering systems, to contain an "inventive concept" at step two despite "agree[ing] with the district court that the limitations of the claims, taken individually, recite generic computer, network, and Internet components, none of which is inventive by itself."  *Id.*, at 1348.  The Court cautioned that "[t]he inventive concept inquiry requires more than recognizing that each claim element, by itself, was known in the art" because "an

---

23

PLAINTIFF'S BRIEF IN OPPOSITION TO MOTION TO DISMISS

inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces." *Id.*, at 1350.  The claims were found patent eligible because the ordered combination revealed that the claimed systems employed a distributed architecture scheme in which the filtering tool was disposed at the network level, remote from users. *Id*.  The Court noted that the ordered combination represented a "specific, discrete implementation" alleviating any concern of preemption. *Id*.

This court recently cited favorably to *BASCOM*, denying a motion for summary judgment of patent ineligibility. *Vaporstream*, 2017 U.S. Dist. LEXIS 32884 at *15 (reasoning that the movant had not met its burden because the claim analysis provided by movant's expert "simply breaks apart the asserted claims into their individual elements in an attempt to show that each individual element, by itself, was well understood and conventional at the time of invention" and had not "present[ed] any evidence showing that the specific combination of the elements performed in the specific order claimed in the patents-in-suit was conventional and generic.")  Here, Defendant's analysis is likewise deficient for failing to consider the claim elements in combination.

Again, as confirmed by Dr. Knutson, when considered as an ordered combination of elements, the challenged claims comprise an "inventive concept" manifest in at least the requirement of storing usage policies remotely from the managed devices.  Knutson Decl. at ¶ 29.  This unconventional component arrangement resulted in improvements in operation of communication device control systems.  Knutson Decl. at ¶¶ 18, 29.  Further, inclusion within the claims of limitations explicitly or implicitly requiring storage of usage policies remotely from the managed devices precludes their being preemptive of other device management systems and methods, such as on-device only implementations. Knutson Decl. at ¶¶ 21-23.  The challenged claims therefore comprise sufficient additional limitations addressed to a non-conventional or well-known component arrangement to provide the required "inventive concept" under *Alice* step two.  Knutson Decl. at ¶¶ 29, 30.

### D. Determination on Patent Eligibility is Properly Reserved Until after Claim Construction

To the extent that the "inventive concepts" manifest in the claims are not readily apparent, construction of several claim terms may be required.  District courts have denied *Alice* motions as premature when filed before claim construction for this very reason.  *See, e.g., VaporStream*, 2017 U.S. Dist. LEXIS 32884 at *15; *Bancorp*, 687 F.3d at 1273-74 ("it will ordinarily be desirable – and often necessary – to resolve claim construction disputes prior to a § 101 analysis, for the determination of patent eligibility requires a full understanding of the basic character of the claimed subject matter").  The Federal Circuit has endorsed this course of action.  *Aatrix*, 882 F.3d at 1125 (reversing finding of patent ineligibility, in part, because 12(b)(6) motion granted without claim construction).

Here, construction of at least the limitations highlighted above which confine the scope of the claims to read on only systems comprising remotely stored policies as well as real-time application thereof in response to requests from the managed device(s) will impact the *Alice* analysis.  Further, construction of the terms "switch or node," "request," "response," "policy," "transmitting," "receiving," and "server" which are terms of art in the computer and networking field will impact the patent eligibility determination.  Knutson Decl. at ¶ 25.  For this reason, at a minimum, Defendant's motion is not ripe.

### V.    CONCLUSION

For at least the reasons discussed herein, Qustodio's Motion cannot be granted on the present record.  It should be denied in its entirety, therefore, and the challenged claims should be held to be directed to patent eligible subject matter.

DATED:  December 21, 2018          */s/ Corby R. Vowell*

Brandon C. Fernald
FERNALD LAW GROUP

510 W. 6TH Street, Suite 700
Los Angeles, California 90014
Telephone:  (323) 410-0320
Fax:  (323) 410-0330
Email:  brandon.fernald@fernaldlawgroup.com

Attorney for Plaintiff
KAJEET, INC.

Of Counsel:
Jonathan T. Suder
Corby R. Vowell
Richard A. Wojcio, Jr.
FRIEDMAN, SUDER & COOKE
Tindall Square Warehouse No. 1
604 East 4th Street, Suite 200
Fort Worth, Texas  76102
Telephone:  (817) 334-0400
Facsimile:  (817) 334-0401
Email:  jts@fsclaw.com
Email:  vowell@fsclaw.com
Email:  wojcio@fsclaw.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 21st day of December, 2018, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Central District of California, Western Division, using the electronic case filing system of the court.  The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

*/s/ Corby R. Vowell*
Corby R. Vowell

PLAINTIFF'S BRIEF IN OPPOSITION TO MOTION TO DISMISS