Douglas Q. Hahn (SBN: 257559)
  dhahn@sycr.com
Salil Bali (SBN: 263001)
  sbali@sycr.com
STRADLING YOCCA CARLSON & RAUTH, P.C.
660 Newport Center Drive, Suite 1600
Newport Beach, CA 92660
Phone: 949-725-4000
Facsimile: 949-725-4100

Manish Mehta (admitted *pro hac vice*)
  mmehta@beneschlaw.com
Lowell D. Jacobson (admitted *pro hac vice*)
  ljacobson@beneschlaw.com
Zaiba Baig (admitted *pro hac vice*)
  zbaig@beneschlaw.com
BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP
333 West Wacker Drive, Suite 1900
Chicago, IL 60606
Telephone: 312-212-4949
Facsimile: 312-767-9192

*Attorneys for Defendant*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| KAJEET, INC.,<br><br>Plaintiff,<br><br>v.<br><br>QUSTODIO, LLC,<br><br>Defendant. | Case No. 8:18-cv-01519-JAK-PLA<br><br>**The Honorable John A. Kronstadt**<br><br>**QUSTODIO'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS FIRST AMENDED COMPLAINT PURSUANT TO FRCP 12(b)(6)**<br><br>HEARING DATE: June 24, 2019<br>TIME: TBD          8:30 a.m. |

## **NOTICE OF MOTION**

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on June 24, 2019, at 8:30 a.m., or as soon thereafter as this matter may be heard, Defendant Qustodio, LLC., ("Defendant") will and hereby respectfully moves to dismiss Plaintiff Kajeet, Inc.'s ("Plaintiff") First Amended Complaint ("FAC") [Dkt. No. 57] in this action pursuant to FRCP 12(b)(6).

Plaintiff's FAC fails to rectify deficiencies with its prior pleading and fails to state a plausible claim for relief. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This Motion will be heard in the Courtroom of the Honorable John A. Kronstadt for the United States District Court in the Central District of California. The Court is located at the First Street Courthouse, Courtroom 10B, 350 W. First Street, Los Angeles, California 90012.

This Motion is based on this Notice of Motion, the Memorandum of Points and Authorities set forth below, the pleadings on file herein and upon such other matters as may be presented to the Court at the time of the hearing.

This Motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on or about 4:30pm CT on April 8, 2019 between Plaintiff's Counsel Richard Wojcio and Corby Vowell and Defendant's Counsel Lowell D. Jacobson.

Dated: April 15, 2019

STRADLING YOCCA CARLSON & RAUTH, P.C.

*/s/ Salil Bali*
Douglas Q. Hahn
Salil Bali

***Attorneys for Defendant Qustodio, LLC***

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-i-
QUSTODIO'S RENEWED MOTION TO DISMISS

18-cv-01519

# **TABLE OF CONTENTS**

I.    INTRODUCTION ...................................................................................... 1

II.   THE ASSERTED PATENTS ..................................................................... 2

    A.   The Alleged "Problem" To Be Solved Is One of Human Behavior ..... 2

    B.   The Asserted Claims Capture the Concept of Limiting Access to
        Functions Based on Policies ................................................................ 3

    C.   A Representative Claims Analysis is Appropriate for these Claims .... 4

III.  PATENT ELIGIBILITY IS A THRESHOLD LEGAL QUESTION THAT
    CAN AND SHOULD BE RESOLVED ON THE PLEADINGS................... 5

    A.   A Motion to Dismiss Under Rule 12(b)(6) is An Appropriate Vehicle
        to Address Patent Eligibility ............................................................... 6

    B.   The FAC Fails to Add Any "Express, Factual Allegations" as Ordered
        by the Court and Contradicts the Knutson Declaration ....................... 6

    C.   This Court Should Afford the Knutson Declaration Minimal, if any,
        Weight ................................................................................................. 8

IV.   THESE CLAIMS FAIL ALICE'S TWO-STEP ELIGIBILITY TEST .......... 9

    A.   The Claims Fail Step One of the Alice Test Because They Are
        Directed to an Abstract Idea................................................................ 9

        1.   Federal Circuit precedent confirms that limiting access to
            functions based on policies is abstract...................................... 10

        2.   These claims are abstract because they merely mimic or capture
            human activity .......................................................................... 11

    B.   The Claims Lack any "Inventive Concept" at Alice Step Two .......... 15

        1.   The FAC improperly conflates the fundamental concept of the
            claims at Alice step one with the additional inventive concept
            required at Alice step two ......................................................... 15

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

2.    The claims do not embody an inventive concept that goes significantly beyond implementing the abstract idea on conventional computer networking components ...................... 17

3.    The claims do not provide a solution to a technological problem ................................................................. 21

4.    The ordered combination of claim limitations is unidentified and provides no inventive concept ........................................... 22

5.    BASCOM Confirms that the Concept of "Remote Storage of Policies Was Well-Known" As of 1997 ................................... 23

C.    Kajeet fails to allege new "facts" that would create a material dispute as to patentability ................................................................. 24

V.    CONCLUSION ........................................................................... 25

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-iii-

QUSTODIO'S RENEWED MOTION TO DISMISS

18-cv-01519

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Accenture Glob. Servs., GmbH v. Guidewire Software, Inc.*,
   728 F.3d 1336 (Fed. Cir. 2013) ................................................................5, 10

*Affinity Labs of Tex., LLC v. DIRECTV, LLC*,
   838 F.3d 1253 (Fed. Cir. 2016) ...................................................................16

*Alice Corp. Pty. Ltd. v. CLS Bank Intern.*,
   573 U.S. 208 (2014) ............................................................................*passim*

*Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*,
   841 F.3d 1288 (Fed. Cir. 2016) ...................................................................10

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ......................................................................................7

*Athena Diagnostics, Inc. v. Mayo Collaborative Servs., LLC*,
   915 F.3d 743 (Fed. Cir. 2019) .......................................................................7

*Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*,
   827 F.3d 1341 (Fed. Cir. 2016) ..........................................................*passim*

*Berkheimer v. HP Inc.*,
   881 F.3d 1360 (Fed. Cir. 2018) ......................................................4, 22, 25

*Berkheimer v. HP Inc.*,
   890 F.3d 1369 (Fed. Cir. 2018) .......................................................1, 16, 25

*Bilski v. Kappos*,
   561 U.S. 593 (2010) ......................................................................................5

*Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*,
   775 F.3d 1343 (Fed. Cir. 2014) ..........................................................4, 5, 19

*CyberSource Corp. v. Retail Decisions, Inc.*,
   654 F.3d 1366 (Fed. Cir. 2011) ...................................................................20

*Eclipse IP LLC v. McKinley Equip. Corp.*,
   2014 WL 4407592 (C.D. Cal. Sept. 4, 2014)................................................6

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-iv-

QUSTODIO'S RENEWED MOTION TO DISMISS

18-cv-01519

*Elec. Power Grp., LLC v. Alstom S.A.*,
      830 F.3d 1350 (Fed. Cir. 2016) .................................................................. 10

*Genetic Techs. Ltd. v. Merial LLC*,
      818 F.3d 1369 ........................................................................................... 15

*Glasswall Sols. Ltd. v. Clearswift Ltd.*,
      754 F. App'x 996 (Fed. Cir. 2018) ............................................................... 8

*Intellectual Ventures I LLC, v. Capital One Bank (USA)*,
      792 F.3d 1363 (Fed. Cir. 2015) ..........................................................1, 9, 11

*Intellectual Ventures I LLC v. Erie Indem. Co.*,
      850 F.3d 1315 (Fed. Cir. 2017) ............................................................ 20, 21

*Intellectual Ventures I LLC v. Symantec Corp.*,
      838 F.3d 1307 (Fed. Cir. 2016) ................................................................... 9

*Intellectual Ventures II LLC v. JP Morgan Chase & Co.*,
      2015 WL 1941331 (S.D.N.Y. Apr. 28, 2015) ............................................ 19

*Interval Licensing LLC v. AOL, Inc.*,
      896 F.3d 1335 (Fed. Cir. 2018) ............................................................ 12, 25

*Kinglite Holdings Inc. v. Micro-Star Int'l Co.*,
      2016 WL 4205356 (C.D. Cal., May 26, 2016) (Selna, J.) .......................... 23

*Mintz v. Dietz & Watson, Inc.*,
      679 F.3d 1372 (Fed. Cir. 2012) ................................................................... 2

*Mortgage Grader, Inc. v. First Choice Loan Servs.*,
      811 F.3d 1314 (Fed. Cir. 2016) ................................................................. 25

*MyMedicalRecords, Inc. v. Walgreen Co.*,
      2014 WL 7339201 (C.D. Cal. Dec. 23, 2014) (Wright, J.)................... 11, 12

*OIP Techs. v. Amazon.com, Inc.*,
      788 F.3d 1359 (Fed. Cir. 2015) (Mayer, J., concurring)............................... 6

*Prism Techs. LLC v. T-Mobile USA, Inc.*,
      696 Fed. App'x 1014 (Fed. Cir. 2017) ...................................................*passim*

Prod. *Ass'n Techs. v. Clique Media Grp.*,
      2017 WL 5664986 (C.D. Cal. Oct. 12, 2017) ............................................. 6

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-v-

QUSTODIO'S RENEWED MOTION TO DISMISS

18-cv-01519

*SAP Am., Inc. v. InvestPic, LLC*,
   898 F.3d 1161 (Fed. Cir. 2018) .................................................................25

*Secured Mail Sols. LLC v. Universal Wilde, Inc.*,
   873 F.3d 905 (Fed. Cir. 2017) ....................................................................8

*Shipping & Transit, LLC v. Hall Enters.*,
   No. CV 16-06535-AG-AFM, 2017 WL 3485782 (C.D. Cal. July 5, 2017)
   (Guilford, J.) ...................................................................................17, 18, 19

*Smart Sys. Innovations, LLC v. Chicago Transit Auth.*,
   873 F.3d 1364 (Fed. Cir. 2017) (Fed. Cir. 2017) ................................10

*Smart Sys. Innovations, LLC v. Chicago Transit Auth.*,
   No. 14 C 08053, 2015 WL 4184486 (N.D. Ill. July 10, 2015) ............4

*Strikeforce Techs. v. SecureAuth Corp.*,
   No. LA CV17-04314 JAK (SKx), 2017 WL 8808122
   (C.D. Cal. Dec. 1, 2017) ......................................................................6, 11

*Tele-Publishing, Inc. v. Facebook, Inc.*,
   252 F. Supp. 3d 17 (D. Mass. 2017).......................................................21

*Ultramercial, Inc. v. Hulu, LLC*,
   772 F.3d 707 (Fed. Cir. 2014) 716 ...........................................11, 17, 19, 23

*Williamson v. Citrix Online, LLC*,
   212 F. Supp. 3d 887 (C.D. Cal. 2016) (Otero, J.) ...............................21

*Zuili v. Google LLC*,
   722 Fed. App'x 1027 (Fed. Cir. 2018) ....................................................18

**Statutes**

35 U.S.C. § 101..........................................................................................*passim*

F.R.C.P. Rule 12(b)(6)....................................................................................6

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-vi-

QUSTODIO'S RENEWED MOTION TO DISMISS

18-cv-01519

# I.     INTRODUCTION

This Court provided Plaintiff Kajeet, Inc. ("Kajeet") an opportunity to amend its defective complaint to include "express, factual allegations consistent with the patent intrinsic record that support its position under both steps of *Alice*." (Dkt. 56, Order). This meant that Kajeet was to include well-pleaded factual allegations to support its argument that the claimed "remote storage of usage policies" would satisfy *Alice*. Nothing Kajeet alleges in its amended pleading moves the needle in favor of patent-eligibility. To the contrary, it introduced conflicting allegations as to the "remote storage" feature of the claims, undermining the factual nature of the allegations. Kajeet's First Amended Complaint (Dkt. 57, "FAC") also cites to the same claim language and concept— "remote policy storage" (FAC, ¶ 20; *see also* ¶¶ 42–43, 58–59, 75–76)—to satisfy both steps of *Alice*. This is improper as a matter of law. *Berkheimer v. HP Inc.*, 890 F.3d 1369, 1373–74 (Fed. Cir. 2018) ("*Berkheimer II*") (citing *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 72–73 (2012)) (it is axiomatic that "the 'inventive concept' cannot be the abstract idea itself").

The FAC adds nothing to alter the conclusion the claims are directed to limiting access to functions based on policies, which is nothing more than the management of a human activity. This is a fundamental concept that the Federal Circuit has repeatedly held to be an abstract idea. *See, e.g.*, *Prism Techs. LLC v. T-Mobile USA, Inc.*, 696 Fed. App'x 1014, 1017 (Fed. Cir. 2017) (holding claims directed to "providing restricted access to resources" are abstract). It covers an "age old" concept that mimics human activity. *See, e.g.*, *Intellectual Ventures I LLC, v. Capital One Bank (USA)*, 792 F.3d 1363, 1367 (Fed. Cir. 2015) (holding concepts abstract if they are "involve[] methods of organizing human activity"). The asserted claims are abstract at *Alice* step one.

The claims also fail to recite an inventive concept. Although the FAC repeatedly refers to a "distributed architecture concept" and the resulting

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-1-
QUSTODIO'S RENEWED MOTION TO DISMISS

18-cv-01519

unclaimed benefits of improved security and operation as a basis of satisfying *Alice* step two, a simple examination of the claims themselves shows that they recite no particular architecture or solution to impart an inventive concept. *Alice Corp. Pty. Ltd. v. CLS Bank Intern.*, 573 U.S. 208, 217 (2014). As the claims of the asserted patents fail both prongs of the *Alice* test, they are invalid, and this Court should grant Qustodio, LLC's ("Qustodio") motion to dismiss, with prejudice.

## II.    THE ASSERTED PATENTS

Three patents are asserted in this case: U.S. Patent No. 8,712,371 ("the '371 patent"), U.S. Patent No. 8,630,612 ("the '612 patent"), and U.S. Patent No. 8,667,559 ("the '559 patent") (collectively, the "Asserted Patents"), which share a common specification[1] and are each titled "Feature Management of A Communication Device." (Dkt. Nos. 57-2 to 57-4). All of the claims are directed to a concept of deciding whether to grant or deny a request to perform a function at a computing device.

### A.    The Alleged "Problem" To Be Solved Is One of Human Behavior

As explained in the Background of the specification,[2] postpaid mobile phones were detrimental financially to their owners (e.g., parents or administrators) and did not provide a measure for stopping the "user from running up a huge cell phone bill." ('371 patent, Col. 1:37–40). The patents acknowledged that this was a well-recognized problem in human behavior, not one unique to technology: "Many parents experienced this issue with their children . . . [and] the same type of issue exist[ed] between employers and employees and other parties in similar administrator/user relationships with respect to the use/abuse of cell phones and other devices." (*Id.* at Col. 1:40–52).

---

[1]  As the Asserted Patents share a common specification, all citations to the specification ("Spec.") are to the '371 Patent (Dkt. 57-3) unless otherwise indicated.
[2]  Statements made in the Background section of a patent about the state of the art are considered admitted prior art. *Mintz v. Dietz & Watson, Inc.*, 679 F.3d 1372, 1376 (Fed. Cir. 2012)

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-2-

QUSTODIO'S RENEWED MOTION TO DISMISS

18-cv-01519

The Background section admits that the prior art included "partial solutions" to such problems. (*Id*. at Col. 1:65–2:1). Such solutions included the use of pre-paid phone services, which "limit spending because the user of the phone can only use what has been paid for in advance" or a "service provider" that "establish[es] an account for a user, in which funds can be stored . . . ." (*Id*. at Col. 1:65–2:1, 2:63–3:1). These features were also well known in the context of "parental or administrative control over an account":

> The Telcordia™ Converged Real-Time Charging system allows users to place limited *real-time controls* over prepaid and postpaid accounts. For example, when an account allows a child to download premium data (data for which a charge is imposed), *parental controls over that account can be set to limit that child's spending within a set of parameters*.

(*Id*. at Col. 3:17–29) (emphases added). While these systems were considered "only partial solutions," they did contemplate the concepts of access management and remote usage polices to govern activities of a device. Indeed, the Background section concluded that what remained unsolved by the prior art solutions was not access management generally—or the remote storage of usage policies—but instead "the problem of providing limits on overspending and other activities by the user *while simultaneously assuring that the user will always be able to use the phone when appropriately needed*." *Id*. (emphasis added).

**B.    The Asserted Claims Capture the Concept of Limiting Access to Functions Based on Policies**

The concept captured by the claims is directed to limiting access to functions (or features) based on policies. The FAC concedes as much. (FAC, ¶ 19) ("The inventions disclosed and claimed in the Asserted Patents provide for systems and methods for *providing access to desirable features*," where the "*use of policies* defin[es] acceptable and unacceptable uses of a mobile communication device ....") (emphasis added) (citing '371 patent claims). The asserted claims simply adopt a rule-based approach humans have used to control others' behavior since the

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-3-

QUSTODIO'S RENEWED MOTION TO DISMISS

18-cv-01519

beginning of time. The claims include both systems and methods for "granting" or "denying" a "request" based on "policies." (*See, e.g.*, '371 patent at cl. 1, "a policy enforcer operable to enforce the decision of the policy decider as to whether the request has been granted or denied"). These policies were designed to prevent the unauthorized use of cell phones to "make[] and receive[] calls, exchang[e] data, play[] games and music, send[] and receiv[e] email, access[] web sites, and pay[] for goods and services." (*Id.* at Abst.). For example, a policy may prevent the user from accessing entertainment (e.g., a game) stored on the device for a particular reason, "such as the wrong time of the day, the wrong day of the week, the game has been played in excess of some time limit set on the game, etc." (*Id.* at Col. 8:39–44). This is no different from how parents have always set rules for their children's access to entertainment.

### C.     A Representative Claims Analysis is Appropriate for these Claims

Where a single claim is representative of the remaining patent claims, it is proper for a Court to find all of the patent claims ineligible based upon an evaluation of that single claim. *See Berkheimer v. HP Inc.*, 881 F.3d 1360, 1369 (Fed. Cir. 2018); *Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*, 775 F.3d 1343, 1348 (Fed. Cir. 2014).

For purposes of this analysis, claim 1 of the '371 patent, claim 1 of the '612 patent and claim 27 of the '559 patent, are each representative of the other claims in their respective patents (collectively, the "Representative Claims"). All of the claims[3] "recite little more than the same abstract idea" of providing access to functions based on policies and are confined to "well-known, routine, and conventional" technology. *Content Extraction*, 776 F.3d at 1348-49. They "contain only minor differences in terminology but require performance of the same basic

_____

[3] The remaining independent claims do not substantively differ enough from the Representative Claims to warrant a separate analysis under *Alice*. They are, in fact, "substantially similar and linked to the same abstract idea as the other claims." *Smart Sys. Innovations, LLC v. Chicago Transit Auth.*, No. 14 C 08053, 2015 WL 4184486, at *4 (N.D. Ill. July 10, 2015).

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

process," and therefore, "they should rise or fall together." *Accenture Glob. Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1344 (Fed. Cir. 2013).

Any differences between the Representative Claims and others are trivial; they do not change the claimed abstract idea of managing access to functions or only add conventional technologies or pre/post solution activity,[4] which is insufficient to confer patent eligibility. *Id.* (holding that the representative claim contained all the features of the other claims, and that the other claims had no "distinctive elements"). Put simply, the limitations and steps contained in the other independent claims are "well-known, routine and conventional activities." *Content Extraction*, 776 F.3d at 1348–49.

Each dependent claim either further defines the *same* abstract idea (*e.g.*, a type of policy) or simply adds insignificant pre- or post- solution activity in a particular use case, which cannot confer independent patent eligibility. *See Bilski v. Kappos*, 561 U.S. 593, 610–11 (2010) (holding that "prohibition against patenting abstract ideas 'cannot be circumvented by attempting to limit the use of the formula to a particular technological environment' or adding 'insignificant post-solution activity.'"). Thus, a finding that the Representative Claims are unpatentable under 35 U.S.C. § 101 should extend to all of the remaining claims of the asserted patents.[5]

## III.   PATENT ELIGIBILITY IS A THRESHOLD LEGAL QUESTION THAT CAN AND SHOULD BE RESOLVED ON THE PLEADINGS

---

[4] For example, Representative Claim 1 of the '612 patent requires managing a policy that controls a function of a computing device, and generating a graphical user interface for use by an administrator, which also differs slightly in wording compared claim 27 of the '559 patent by reciting processing of a request to run a function, accessing a decision stored on a computing device, receiving an update to a policy, determining whether the request should be granted based on the updated policy and/or other policies.
[5] Should Kajeet argue that the patentability of other claim(s) does not rise and fall with the patentability of the Representative Claims, Qustodio reserves the right to separately address such arguments in its reply and may seek extra space to do so.

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

QUSTODIO'S RENEWED MOTION TO DISMISS

18-cv-01519

### A.   A Motion to Dismiss Under Rule 12(b)(6) is An Appropriate Vehicle to Address Patent Eligibility

Where, as here, the FAC fails to state a claim upon which relief can be granted, a party may move to dismiss it under Federal Rule of Civil Procedure 12(b)(6). Whether a patent claims eligible subject matter is "a threshold" issue that should be addressed through a motion to dismiss under this rule. *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1355 (Fed. Cir. 2016). The "[f]ailure to recite statutory subject matter is the sort of 'basic deficiency,' that can, and should, 'be exposed at the point of minimum expenditure of time and money by the parties and the court.'" *OIP Techs. v. Amazon.com, Inc.*, 788 F.3d 1359, 1364 (Fed. Cir. 2015) (Mayer, J., concurring). Indeed, this Court has routinely decided § 101 eligibility issues at the Rule 12(b)(6) stage.[6]

### B.   The FAC Fails to Add Any "Express, Factual Allegations" as Ordered by the Court and Contradicts the Knutson Declaration

The Court instructed Plaintiff to "file an amended pleading that includes *express, factual allegations* consistent with the patent intrinsic record that support its position under both steps of *Alice*." (Dkt. 56 at 8) (emphasis added). Contrary to the Court's instructions, no new *factual* allegations were added to the FAC.[7] The amendments relevant to the *Alice* analysis amount to nothing more than naked, attorney argument. (Dkt. 57-1, ¶¶ 40–43, 56–59, 73–76).

While FAC does make a single reference to the supporting Declaration of Charles D. Knutson ("Knutson Declaration") in ¶ 12, the declaration does nothing

---

[6] *E.g.*, Prod. *Ass'n Techs. v. Clique Media Grp.*, 2017 WL 5664986, *3 (C.D. Cal. Oct. 12, 2017) (finding that defendants motion to dismiss was ripe because "[p]atentability is ultimately a question of law."); *Eclipse IP LLC v. McKinley Equip. Corp.*, 2014 WL 4407592, at *5–6 (C.D. Cal. Sept. 4, 2014) (finding that the court has broad discretion in when it chooses to address patentability under § 101, including at the motion to dismiss phase); *Strikeforce Techs. v. SecureAuth Corp.*, No. LA CV17-04314 JAK (SKx), 2017 WL 8808122 (C.D. Cal. Dec. 1, 2017) (dismissing pursuant to Rule 12(b)(6) on *Alice* grounds).

[7] Because the FAC violates CSO 10.a and 13 by failing to include a redlined of the additions and deletions as an appendix, Qustodio was required to perform its own comparison to assess any changes between the pleadings.

-6-

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

1   to bolster the FAC's allegations; it is not expressly cited to support of any of the

2   allegations contained in the remainder of the FAC. Qustodio (and now this Court)

3   is left to guess which portions (if any) of the Knutson Declaration Kajeet intended

4   to support the attorney argument contained in the FAC. Such ambiguity is

5   emblematic of the FAC's inability to articulate sufficient well-pleaded facts to

6   support the patentability of the Asserted Claims.

7        More problematic, however, is that the declaration now directly contradicts

8   the FAC as to the scope of the asserted claims – the core issue subject to this

9   motion.[8] (*Compare* Dkt. 57-5, ¶ 21 ("The *requirement* for *remote policy storing* is

10  implicit in claim 1 of the '371 patent.") *with* Dkt. 57-1, ¶ 38 ("The '371 Patent

11  generally discloses *and claims* . . . policies which … **may be** *stored remotely* from

12  the controlled computing device") (emphases added). This is far from an innocent

13  mistake; the Court inquired about this very inconsistency during oral argument

14  (Jacobson Decl., Ex. A (Feb. 25, 2019 Hr'g Tr.) at 11:11–12:14), yet Kajeet has

15  done nothing to clarify this discrepancy. Instead, by incorporating the same

16  declaration into the FAC, Kajeet has solidified the conclusion that the FAC does

17  not contain sufficiently well-pleaded facts as required by the Supreme Court.

18  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Given this inconsistency the Court

19  should not consider the declaration for this reason alone. *Athena Diagnostics, Inc.*

20  *v. Mayo Collaborative Servs., LLC*, 915 F.3d 743, 755 (Fed. Cir. 2019) (finding

21  patent claims unpatentable under § 101 and explaining that the district court need

22  not "consider the allegations in the expert declaration because they were not

23  consistent with the complaint read in light of the '820 patent" ). Indeed, the

24  introduction of new, conflicting allegations demonstrate such statements are not

25  the "express, factual allegations" that the Court contemplated when it authorized

26  Kajeet to file a FAC.

27

28

---

[8] This inconsistency is present as to all of the Representative Claims.

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-7-

QUSTODIO'S RENEWED MOTION TO DISMISS

18-cv-01519

### C.   This Court Should Afford the Knutson Declaration Minimal, if any, Weight

The Knutson Declaration is nothing more than conclusory statements—not well-pleaded factual allegations—and should be disregarded.[9] To the extent the Court considers the Knutson Declaration, it should afford it little, if any, weight to its assessment under the *Alice* analysis. In this case, expert testimony is unnecessary to determine whether the asserted patents are directed towards an abstract idea, since this determination may be made clearly from the face of the asserted patents themselves.[10] At step one, the Knutson Declaration summarily concludes that the claims that purportedly implicitly require "*remote policy storing*" result in a "*distributed architecture scheme*" based on the sending of a request to a server (e.g., Claim 1 of the '371 patent). This "scheme" purportedly "results in the claim being confined to a particular solution within the corresponding technical field rather than being directed merely to the *broader abstract concept* of applying parental or corporate policies to control access." (Dkt. 57-5 at ¶¶ 21–23) (emphasis added). Dr. Knutson arrives at this conclusion without explaining how or why the specific combination of elements is different from the generic concept of managing access to functions based on policies, which numerous courts have held is directed to an abstract idea. *See* Section IV.A.1, *infra*.

More problematic is the Declaration's reliance on these *very same arguments* to conclude that the claims are directed to an "inventive concept" under step 2. In the sole paragraph that addresses *Alice* step two, Dr. Knutson asserts that:

> When considered as an ordered combination of elements, the

---
[9] *Glasswall Sols. Ltd. v. Clearswift Ltd.*, 754 F. App'x 996, 999 (Fed. Cir. 2018) (conclusory allegations in complaint and expert declaration regarding patent's eligibility could not be used to preclude judgment on the pleadings).

[10] *Secured Mail Sols. LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 912 (Fed. Cir. 2017) (Federal Circuit has routinely "determined claims to be patent-ineligible at the motion to dismiss stage based upon intrinsic evidence from the specification without need for extraneous fact finding outside the record.") (cleaned up)

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

challenged claims comprise an "inventive concept." Each requires *storing usage policies remotely* from the managed devices, an unconventional arrangement at the time which yielded improvements in the operation of such systems.

Decl. ¶ 29 (emphases added).

By parroting the same argument used at step 1 to opine that the "inventive concept" at step 2 is satisfied, the Declaration concedes that there are no other claimed limitations that impart an "inventive concept" than what was relied upon for the step 1 analysis. This fails as a matter of law because the inventive concept must be "significantly more" than the implementing the abstract idea itself. *Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1315 (Fed. Cir. 2016). The Declaration is silent as to how the "storing usage policies remotely" or any "improvements in the operation of such systems" are something more than an inherent result of the claims. *See Intellectual Ventures I*, 792 F.3d at 1367 ("[C]laiming the improved speed or efficiency inherent with applying the abstract idea on a computer" does not "provide a sufficient inventive concept."). Furthermore, the claim language is silent as to any alleged "improvements in the operation of such systems" referenced in the Declaration and Dr. Knutson fails to explain why such improvements are necessarily captured by the claims.

## IV.   THESE CLAIMS FAIL *ALICE'S* TWO-STEP ELIGIBILITY TEST

Section 101 of the Patent Act sets forth what is eligible for patent protection. Courts apply the Supreme Court's now-familiar two-part *Alice* test for assessing subject matter eligibility under 35 U.S.C. § 101.

### A.   The Claims Fail Step One of the *Alice* Test Because They Are Directed to an Abstract Idea

The claims fail the first step of the *Alice* test because they are directed to the concept of managing access to functions based on policies, which is nothing more than an abstract idea. *Alice* step one requires the Court to "identify and define whatever fundamental concept appears wrapped up in the claim.'" *Accenture*

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-9-

*Global Servs.*, 728 F.3d at 1341. The "focus" and "character" of the claims must be assessed in light of the specification. *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353, 1355 (Fed. Cir. 2016). The issue is whether the claims "focus on a specific means or method that improves the relevant technology or are instead directed to a result or effect that itself is the abstract idea and merely invoke generic processes and machinery." *Smart Sys. Innovations, LLC v. Chicago Transit Auth.*, 873 F.3d 1364, 1371 (Fed. Cir. 2017) (Fed. Cir. 2017). Limiting access to functions is the fundament concept embodied by the claims, which then invoke generic and well-known technologies. It is also predicated upon a basic and longstanding human activity. Therefore, the claims capture an abstract idea. *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1294 (Fed. Cir. 2016) (appropriate to analyze whether an idea is abstract through examination of earlier cases of a "similar or parallel descriptive nature").

### 1. Federal Circuit precedent confirms that limiting access to functions based on policies is abstract

The claims of the asserted patents fail the first prong of *Alice* because they are directed to the abstract concept of limiting access to functions based on policies. Stripping away the generic technical jargon of the non-inventive elements reveals basic access control.[11] To identify an abstract idea at the first prong of *Alice*, courts "examine earlier cases in which a similar or parallel descriptive nature can be seen—what prior cases were about, and which way they were decided." *See Amdocs*, 841 F.3d at 1294. Both the Federal Circuit and this Court have repeatedly held that the concept of limiting access to certain activities based on policies is an

---

[11] At *Alice* step one, it is proper to disregard any generic technical components recited in the claims because they do not alter the abstract nature of managing access to functions. *Alice*, 573 U.S. at 213 n. 2, 219 (disregarding limitations such as the shadow credit record and shadow debt record and holding that the claims were directed to the abstract idea of "intermediated settlement").

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-10-

QUSTODIO'S RENEWED MOTION TO DISMISS

18-cv-01519

1    abstract idea.[12]

2         Limiting access to functions based on policies is virtually indistinguishable

3    from the concept held to be abstract in *BASCOM*, where the claims recited a

4    system for filtering internet content located on a remote ISP server, permitting

5    customized Internet traffic filtering for each account. *See* 827 F.3d at 1345.

6    According to the FAC, the asserted patents claim the concept of remote storage of

7    policies. (FAC ¶ 20). This is a distinction without a difference; the remote storage

8    of policies is still an abstract idea. *See BASCOM*, 827 F.3d at 1348.  In *BASCOM*,

9    the Federal Circuit held at *Alice* step one that those claims, which required the

10   remote filtering of content, were "an abstract idea because it is a longstanding,

11   well-known method of organizing human behavior, similar to concepts previously

12   found to be abstract." *Id*. The claimed concept here is no different than those held

13   to be abstract by the BASCOM court: "An abstract idea on 'an Internet computer

14   network' or on a generic computer is still an abstract idea." *Id.* at 1348.

15                **2.    These claims are abstract because they merely mimic or**
                        **capture human activity**
16

17        The claims also fail part one of the *Alice* test because they capture a concept

18   that mimics human activity, which has been repeatedly held to be an abstract idea.

19   *See, e.g.*, *Intellectual Ventures I*, 792 F.3d at 1367 (holding that "tracking financial

20   transactions to determine whether they exceed a pre-set spending limit (i.e.,

21   budgeting)" is an abstract idea because it "involve[s] methods of organizing human

---

22   [12] *E.g.*, *Prism Techs.*, 696 Fed. App'x at 1017 (finding that claims directed to
23   "providing restricted access to resources" is abstract); *Intellectual Ventures I*, 792
     F.3d at 1367 (finding concepts abstract if they are "involve[e] methods of
24   organizing human activity"); *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 707, 716
     (Fed. Cir. 2014) 716 (routine steps such as restrictions on public access "comprise
25   the abstract concept of offering media content in exchange for viewing an
     advertisement"); *MyMedicalRecords, Inc. v. Walgreen Co.*, 2014 WL 7339201, *3
26   (C.D. Cal. Dec. 23, 2014) (Wright, J.) ("The concept of secure record access and
27   management . . . is an age old idea," and therefore abstract under 35 U.S.C. § 101);
     *Strikeforce*, 2017 WL 8808122, at *6 (holding "long-established means of
28   transmitting sensitive information" abstract under § 101).

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-11-

QUSTODIO'S RENEWED MOTION TO DISMISS

18-cv-01519

activity"). Managing another's access to functions or content using policies likewise mimics a human activity. *Prism Techs.*, 696 Fed. App'x at 1017 (controlling or restricting access to resources is abstract because "humans similarly restrict and provide access to resources").

This is because limiting access to functions is an "age old" concept that has been implemented in a number of contexts, whether it is parents setting rules for their children or employers limiting access to certain information to their employees. *E.g.*, *MyMedicalRecords*, 2014 WL 7339201, at *3. Courts have routinely and repeatedly held that claims that capture such pre-existing and standard ideas are abstract. *See, e.g.*, *Interval Licensing LLC v. AOL, Inc.*, 896 F.3d 1335, 1348 (Fed. Cir. 2018) (finding that "conventional, pre-existing practices" of acquiring information to display adjacent to other information using a generic network connection are abstract).

Thus, the concept captured by the claims is analogous to (among other things) parenting, which is just one of many well-known methods of organizing the human behavior of another. Parents implement the concept of the asserted patents by managing their children's entertainment access based on polices (or rules) such as time of day, location, type of content, etc. Likewise, businesses and government routinely engage in similar restrictions of access, *e.g.*, limiting confidential information to only those who can establish that they are allowed to obtain such information. Indeed, the examples are endless. By way of illustration, the below analogy demonstrates how the claimed concept is practiced every day by parents:

| Claim 1 of the '371 Patent | Parenting Example |
|---|---|
| A system for managing a computing device, the system comprising: | A parent for managing a child's access to entertainment (e.g., cartoons). |
| a switch or a node configured to receive a request to or from the computing device to perform one or more functions associated with the computing device; | The parent can receive a request from the child for entertainment (e.g., to watch cartoons). |

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-12-

QUSTODIO'S RENEWED MOTION TO DISMISS

18-cv-01519

| a policy decider operable to access one or more policies that control one or more functions associated with the computing device, the policy decider further operable to generate a decision to grant or deny the request based on the one or more policies; and | The parent can define one or more rules (policies) for when the child is permitted the entertainment. For example, one policy can be that homework must be finished. The parent can store the one or more policies in their mind and access them to decide whether the child should be granted or denied their request for entertainment. The parent can mentally draw a decision (or conclusion) based on the one or more policies in their mind whether the child should be permitted the entertainment. |
|---|---|
| a policy enforcer operable to enforce the decision of the policy decider as to whether the request has been granted or denied by transmitting data to the switch or node, the data being indicative of one or more actions consistent with the decision to the switch or node. | The parent can enforce the decision by granting or denying the requested entertainment by notifying the child that either (i) yes they are permitted the entertainment since their homework has been completed or (ii) no they are not permitted the entertainment since their homework has not been completed. The parent may also restrict access to the entertainment by removing the source of the entertainment altogether (e.g., removing a television set or tablet from the child) or by removing the power source that enables the use of the entertainment (e.g., removing a plug or a charger). |

| Claim 1 of the '612 Patent | Parenting Example |
|---|---|
| A system for managing computing devices configured to communicate over one or more networks serviced by one or more service providers, the system comprising a memory bearing instructions that, when executed on the system, cause the system to at least: | A parent for managing children's access to entertainment (e.g., cartoons). |
| store a policy that controls at least a use of a function on a computing device, the control comprising allowing and disallowing the use of the function based on a context associated with the computing device, the policy being defined by an administrator; | The parent can define a policy for when the children are allowed access to the entertainment and the type of entertainment (e.g., G-rated cartons, PG-rated cartoons, etc.). The policy can be stored mentally in the parent's mind and retrieved to control the child's access to the entertainment. For example, the parent can determine that the child is only permitted to watch G-rated cartoons (e.g., denying the child's access to PG-rated cartoons). |
| group one or more computing devices in a group; | The parent can manage access to the entertainment for multiple children at one |

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-13-

QUSTODIO'S RENEWED MOTION TO DISMISS

18-cv-01519

| | |
|---|---|
| | time, e.g., babysitting. |
| associate the policy with the group; | The parent can mentally associate the policy to the group of children such as when the children are allowed access to the entertainment by means of a mental process (i.e., in the human mind). |
| receive a request sent to or from a computing device in the group to use the function; | The parent can receive a request from one of the children requesting access to the entertainment (e.g., to watch cartoons) from a particular source. |
| generate a decision to grant or deny the request based on the policy; and | The parent can mentally generate a decision (or conclusion) based on the policy whether that particular child should be granted or denied the requested entertainment. |
| enforce the decision by taking an action that is consistent with the decision and by sending to the computing device data indicative of the action, the action allowing or disallowing the use of the function on the computing device. | The parent can enforce their decision by granting or denying the requested entertainment by notifying that particular child that either (i) yes they are permitted the entertainment since they are of age for the particular content (e.g., PG-rated content) or (ii) no they are not permitted the entertainment since they are not of age. The parent may also restrict access to the entertainment by prohibiting access to the physical copy of the movie, by removing access to a DVD player, or by password-protecting a Netflix or Hulu account. |

| Claim 27 of the '559 Patent | Parenting Example |
|---|---|
| A method for controlling a computing device configured to execute a function using a communication network managed by a service provider, the method comprising | A parent for controlling their child's access to play-time with a friend. |
| sending to a server a request to communicate with a remote computing device over the communication network; | A child can communicate to a parent a request to interact (or communicate) with a friend (e.g., to play a game). |
| receiving in real-time from the server a decision granting or denying the request, the decision being based on a policy stored at the server and configured by an administrator; and | The child can receive from the parent a decision on the child's request for the entertainment. The parent's decision can be based on a policy (or rule) stored in their mind (e.g., whether their homework has been completed) as to whether the child is permitted the requested entertainment. |
| enforcing the decision by enabling a communication with the remote computing device over the communication | The parent can enforce their decision by granting or denying the child's request by notifying the child that either (i) yes they are permitted to interact with their friend to |

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-14-

QUSTODIO'S RENEWED MOTION TO DISMISS

18-cv-01519

| | |
|---|---|
| network when the decision grants the request and by disabling the communication when the decision denies the request, the communication being enabled or disabled without storing the policy on the computing device. | play a game since their homework has been completed or (ii) no they are not permitted to interact with their friend since their homework has not been completed. This may be accomplished through informing the playmate's parent that the child is not permitted to play until homework is finished, or by refusing to give the child a ride to a playmate's home to play. As explained in the previous limitation, the policy is stored in the memory of the parent and not the child. |

Because the concept captured by the claims is analogous to a human activity (e.g., parenting), the asserted claims are likewise directed to an abstract idea at *Alice* step one. *Prism Techs.*, 696 Fed. App'x at 1017.

## B.    The Claims Lack any "Inventive Concept" at *Alice* Step Two

At *Alice* step two, the Court "must examine the elements of the claim[s] to determine whether [they] contain an inventive concept sufficient to transform the claimed abstract idea into a patent eligible application." *Alice*, 573 U.S. at 222. The claims also fail the second step of the *Alice* analysis because they merely recite generic and conventional technologies and steps that, alone or in combination, do not provide any improvement, let alone the *specific* improvements in the *recited* computer technology.  *See BASCOM*, 827 F.3d at 1348.

### 1.    The FAC improperly conflates the fundamental concept of the claims at Alice step one with the additional inventive concept required at Alice step two

The FAC fails to present sufficient allegations to find that *Alice* step two has been satisfied. The FAC instead attempts to rely on the same claim limitations (and combination thereof) to support its argument that an "inventive concept" is satisfied under step two as it does to argue that the concept captured by the claims is not abstract, under step one. This is improper under the law. *Genetic Techs. Ltd. v. Merial LLC*, 818 F.3d 1369, 1376 (Fed. Cir. 2016 (holding that claims directed towards abstract ideas simply "[c]annot rely on the novelty of that discovery for the inventive concept necessary for patent eligibility.").

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-15-

QUSTODIO'S RENEWED MOTION TO DISMISS

18-cv-01519

The analysis under step two of *Alice* asks whether specific elements recited in a claim, individually or as an ordered combination, go "significantly beyond" that abstract idea to do "significantly more" than merely implement it on a conventional and well-known technology such as computers, computing components, and computing networks. *Alice*, 573 U.S. at 222.  At step two, the Court must "look with more specificity at what the claim elements add, in order to determine 'whether they identify an "inventive concept" in the application of the ineligible subject matter' to which the claim is directed." *Affinity Labs of Tex., LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1258 (Fed. Cir. 2016). This requires considering whether "the *specific* improvements in the *recited* computer technology go beyond 'well-understood, routine, conventional activit[ies]' and render the invention patent-eligible." *BASCOM*, 827 F.3d at 1348 (quoting *Alice*, emphases added).

It therefore is axiomatic that "the 'inventive concept' cannot be the abstract idea itself." *Berkheimer II*, 890 F.3d at 1373–74 (*citing Mayo*, 566 U.S. at 72–73). But that is exactly what the FAC does here—the "inventive concept" is the [r]emote policy storage" of the asserted patents. (FAC ¶¶ 20; Dkt. 57-5 ¶ 29). But that is the *same* reason why Kajeet's expert contends the patent is not an abstract idea under the first prong of *Alice*. (*Id.* ¶¶ 29, 30). Kajeet does not (since it cannot) articulate more than the remote storage limitation as the inventive concept at step two of *Alice* because the asserted patents' specification is silent on any unique or particular technical way to achieve the remote storage of policies that would impart an inventive concept. Surely this "[r]emote policy storage" must require more than the conventional use of a server, as the fact that the policy was located on a server—and any alleged benefits therefrom—are derived from the logical flow of that use, and nothing more.

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-16-

QUSTODIO'S RENEWED MOTION TO DISMISS

18-cv-01519

### 2. The claims do not embody an inventive concept that goes significantly beyond implementing the abstract idea on conventional computer networking components

The FAC asserts that the claims as a whole, "when considered as an ordered combination of elements,"[13] "comprise" an "inventive concept" of storing policies remotely from the managed devices, an allegedly unconventional arrangement which was a purported improvement over the prior art. (FAC ¶¶ 43, 59, 76; *see also id.* ¶ 20). At most, the FAC alleges that the claims are directed to a type of "distributed architecture" and/or a "specific solution." (*Id.* at ¶¶ 40, 56, 73 and Ex. E at ¶ 21-23). To be clear, the purported "specific" architecture or solution is not articulated anywhere in the vague and generic recitation of these claims. Rather, each element recited is used only for its conventional purpose, and Kajeet does not even attempt to claim that any limitation by itself imparts an inventive concept. *See, e.g.*, *Ultramercial*, 772 F.3d at 715 ("[T]he limitations of the '545 claims do not transform the abstract idea that they recite into patent-eligible subject matter because the claims simply instruct the practitioner to implement the abstract idea with routine, conventional activity."); *BASCOM*, 827 F.3d at 1348 ("specific improvements" to computer technology recited in claims must "go beyond well-understood, routine, conventional activities" to render the invention patent-eligible) (cleaned up); *Shipping & Transit, LLC v. Hall Enters.*, No. CV 16-06535-AG-AFM, 2017 WL 3485782, at *6 (C.D. Cal. July 5, 2017) (Guilford, J.) ("[T]he addition of a generic computer or other conventional technology does not transform an abstract idea into a patent-eligible application."). Kajeet attempts to remedy this deficiency by characterizing the claims as a whole, opining on what they implicitly "require" instead of identifying what their conventional limitations actually recite, whether individually or in combination, providing the allegedly unconventional arrangement.

---

[13] Kajeet thus implicitly concedes that no individual element imparts any inventive concept to any Asserted Claim.

-17-

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

As shown below, these claims do not convey that such standard components are used unconventionally to "move [them] into § 101 eligibility territory." *Zuili v. Google LLC*, 722 Fed. App'x 1027, 1031 (Fed. Cir. 2018).

### *The '371 Patent's Specific Deficiencies*

The FAC contends that the '371 claims comprise an inventive concept "when considered as an ordered combination of elements." (FAC ¶ 59; Dkt. 57-5 ¶ 21). To the contrary, Kajeet's patents recite purely conventional technologies without explanation as to how these claims are actually implemented. For example, Kajeet contends that these limitations disclose a "distributed architecture scheme" in which "requests and data consistent with the decision be routed through the switch/node to the policy decider and enforcer and vice-versa." (FAC ¶¶ 55–56; Dkt. 57-5 ¶ 21).

The specification only discusses the "node" element in relation to an originating packet data serving node ("O-PDSN"), which is used for its generic purpose of providing access "to the Internet, intranets and application servers for the mobile station and acts as a client for the home agent and the authentication, authorization and accounting (AAA) Server." Dkt. 57-3 at 7:59–66. Nor is there anything inventive about the "switch" element, identified as an originating mobile switching center (O-MSC) used to authenticate a mobile station, which is a conventional use of O-MSC. *Id.* at 6:15–18 & 7:46–54. Likewise, the "policy decider" and the "policy enforcer" impart no inventive qualities; they merely effectuate the abstract idea of access control, as confirmed by their recitation in functional language. *Prism Techs.*, 696 Fed. App'x at 1017 (claims that recite "perfectly conventional generic computer components employed in a customary manner" fail step two of *Alice*). The specification describes a policy decider in a generic sense as "a logical element that can be physically house[d] in a server manager 20 or in another server accessible to either the server manager 20 or the [policy enforcement point] PEP 28." (Dkt. 57-3 at Col. 8:22–24). The specification

-18-

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

likewise discloses the generic nature of the policy enforcer as being nothing more than "a logical element that can be physical housed in another data server node or gateway device, depending on the serve request such as a wireless application protocol (WAP) gateway, instant messaging gateway, email gateway, multimedia messaging service gateway, etc." (*Id.* at 8:9–11).

Similar components performing similar functionalities are *per se* non-inventive routine and conventional computer activity. *See, e.g.*, *Intellectual Ventures II LLC v. JP Morgan Chase & Co.*, 2015 WL 1941331, *14 (S.D.N.Y. Apr. 28, 2015) ("The use of an 'access mechanism' to enforce the pre-selected rules is nothing more than programming conventional software or hardware to apply rules governing access – a routine, conventional practice."); *see also Ultramercial*, 772 F.3d at 715–16 (holding that the additional step of "updating an activity log, requiring a request from the consumer to view the ad, restrictions on public access, and the use of the Internet" were all "routine, conventional activity"). Therefore, the "policy decider" and the "policy enforcer" merely effectuate the abstract idea itself; they do not transform the abstract idea into an inventive concept.

### *The '559 Patent's Specific Deficiencies*

The '559 patent suffers from the same deficiencies as the '371 patent, reciting the same conventional technology and failing to disclose how to use it in any purportedly innovative way. (FAC ¶ 59; Dkt. 57-5 ¶ 21). It recites a method of sending a request to a server, receiving a server decision in real-time, and enabling/disabling communication without storing the policy on the computing device as an example of a "distributed architecture arrangement" that confines the patent to a particular solution. (FAC ¶¶ 39–40 & Dkt. 57-5 ¶ 22). The generalized step of 'receiving" a request calls for conventional computer activity. *See Content Extraction*, 776 F.3d at 1348 ("receiving" and "storing" data is conventional computer activity). Likewise, "sending" a request is conventional and well-known

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-19-

QUSTODIO'S RENEWED MOTION TO DISMISS

18-cv-01519

computer functionality. *Intellectual Ventures I LLC v. Erie Indem. Co.*, 850 F.3d 1315, 1329 (Fed. Cir. 2017) ("sending" and receiving information is a routine computer functions). The request to communicate with a remote computing device via a conventional communication network does not confer patent eligibility as there is nothing unconventional about sending such a request. Representative Claim 27 of the '559 patent is silent on how the request is sent to a server, and the specification does not disclose any specific method as to how a request must be sent. This silence confirms that this is nothing more than a conventional computer function.

### *The '612 Patent's Specific Deficiencies*

Like the '371 and '559 patents, there is no explanation as to how the limitations of the '612 patent, alone or in combination, implement the recited conventional technology in an innovative fashion. The '612 patent purportedly comprises the ability to store the applicable policies separate and apart from the computing device(s). (FAC ¶¶ 72–73 & Dkt. 57-5 ¶ 23). The function of "storing" is purely a conventional and well-known function of computers since their inception. *Smartflash*, 680 Fed. App'x at 983 ("merely storing, transmitting, retrieving, and writing data to implement an abstract idea on a computer does not transform the nature of the claim into a patent-eligible application" (cleaned up)). Likewise, the '612 patent does not disclose how the policies control the function of the computing device. Indeed, the entire discussion relating to the "control" is generic. The policies being user-defined further confirms that the policies, and the controlling of a function by the computing device, lacks ingenuity. *See CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1372 (Fed. Cir. 2011) (steps performable by the human mind do not add patentable weight). Likewise, the fact that control is the allowing or disallowing the use of a function based on "a context" associated with the computing device is not inventive; the specification does not identify this feature as non-conventional. So any assertion otherwise is

-20-

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

QUSTODIO'S RENEWED MOTION TO DISMISS

18-cv-01519

1    conclusory and unsupported.

2       Similarly, the elements of "grouping" and "associating" are exclusively

3    conventional computer activities. *See Erie Indem. Co.*, 850 F.3d at 1329 (holding

4    that combining information is a routine computer function). The '612 patent

5    neither offers an explanation as to why one or more computing devices are grouped

6    nor why they are subsequently associated with a policy. The specification fails to

7    discuss how grouping one or more computing devices and associating them with a

8    policy is an inventive concept that imparts patentability to the purported invention.

9                              *       *       *

10      In sum, the purported "inventive concept" resides in conventional and well-

11   known technologies, used for their conventional purposes, which as a matter of law

12   do not and cannot "transform [the] abstract idea into a patent eligible invention."

13   *Alice*, 572 U.S. at 26. Nor do these claim limitations improve existing technology,

14   and thus do not transform the abstract idea into patentable subject matter.

15              **3.    The claims do not provide a solution to a technological**

16                      **problem**

17      While the additional claim limitations can satisfy *Alice* if they implement a

18   new solution for a technological problem, these claims do not. The specification

19   concedes that the claims are directed to addressing the lack of oversight over

20   human behavior, which is not a technological problem. *Tele-Publishing, Inc. v.*

21   *Facebook, Inc.*, 252 F. Supp. 3d 17, 27 (D. Mass. 2017) (recognizing that securing

22   personal information is not "an inherently technological problem"). The

23   Background also admits that the prior art "partial solutions" provided some

24   oversight as discussed in Section II.A.   Therefore, the recitation of generic

25   technological components and routine computer functions to address this problem

26   does not make the claims patent-eligible. *Williamson v. Citrix Online, LLC*, 212 F.

27   Supp. 3d 887, 898 (C.D. Cal. 2016) (Otero, J.) (explaining that "a method can only

28   be performed using a computer does not necessarily render Section 101

Stradling Yocca
Carlson & Rauth
Lawyers
Newport Beach

-21-

QUSTODIO'S RENEWED MOTION TO DISMISS

18-cv-01519

inapplicable" because that such rule would "eviscerate[] Section 101's exceptions"). Nor does the fact that the human behavior involves use of a computing device make the problem inherently technological. *Alice*, 573 U.S. at 223 (limitation of use to a particular environment cannot impart eligibility to an abstract idea).

Kajeet and its expert contend that the asserted patents provide a security benefit that is not recited in the claims, and at best, is the natural and logical consequence of the remote storage requirement that is at most implicit in the claims. (FAC ¶¶ 14, 19; Dkt. 57-5 ¶¶ 13, 18, 24). But because this purported benefit is not recited, it cannot be the inventive concept. *Berkheimer*, 881 F.3d at 1369 (the inventive concept must be captured in the limitations of the claims, not in citations to the specifications or other extrinsic sources). As discussed in Section IV.D.2, *supra*, the claims contain generic technological elements recited with functional language, used for their routine functions in a conventional way to manage access based on policies. The claims neither improve an existing technology or field nor "purport[] to improve the functioning of the computer itself" or to "effect an improvement in any other technology or technical field." *Alice*, 573 U.S. at 225. Therefore, the claims do not present a technology problem, let alone one that is resolved by a new technology-based solution.

### 4.    The ordered combination of claim limitations is unidentified and provides no inventive concept

Kajeet further alleges that the claims of the Asserted Patents, when considered as an ordered combination, comprises an inventive concept. (FAC ¶¶ 43, 59, 76). Kajeet, however, never identifies what those claim elements are, let alone what order provides the inventive concept. Instead, Kajeet characterizes the "inventive concept" of each of the claims as a whole based upon what it asserts they implicitly require to satisfy *Alice* step one. (FAC, ¶ 20; Dkt. 57-5, ¶ 21). Each such allegation is entirely conclusory and fails to address the claim language itself;

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-22-

QUSTODIO'S RENEWED MOTION TO DISMISS

18-cv-01519

the only support for Kajeet's assertion is that its claims require storing usage policies remote from the managed devices. *Id*. This does not satisfy step two of *Alice*, which requires the specifics of the purportedly inventive concept.

Kajeet presupposes that the ordered combination of its claims must be an inventive concept since it (erroneously) asserts that remote storage of policies was "an unconventional arrangement at the time which yielded improvements in the operation of systems implementing the claimed methods." (*Id.*; *see also* Dkt. 57-5 at ¶ 29). To the contrary, whatever unidentified combination of Kajeet's claim limitations that improves security via remote storage of policies is logical and expected, because such remote storage had been well-known for years. *BASCOM*, 827 F.3d at 1343–44. Kajeet's conclusory assertion that its unexplained "ordered combination" of unidentified limitations was unconventional is pure *ipse dixit*.

The order of the elements fail to present an invention that is not merely routine or conventional use. *Kinglite Holdings Inc. v. Micro-Star Int'l Co.*, 2016 WL 4205356, at *6 (C.D. Cal., May 26, 2016) (Selna, J.) (holding claims patent ineligible because their "ordered combination" of limitations simply required the implementation of the idea within a conventional computer). Even when viewed in its entirety, each claim is nothing more than the expected sum of their conventional parts. *Ultramerical*, 772 F.3d at 716 (holding that combination of eleven steps does not transform the nature of the claim when they do nothing more than recite routine, conventional activity). The combination of elements does not transform the claims into patent-eligible subject matter.

### 5. BASCOM Confirms that the Concept of "Remote Storage of Policies Was Well-Known" As of 1997

Finally, the concept of remote storage of policies controlling access to content and improving security was well-known by 1997—over a decade before the 2007 priority date claimed by the Asserted Patents. *See BASCOM*, 827 F.3d at 1343–44. In *BASCOM*, the Federal Circuit held that claims reciting a system for

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-23-

QUSTODIO'S RENEWED MOTION TO DISMISS

18-cv-01519

filtering Internet content were abstract based on its limitations being directed to well-known generic computer components, such as a "local client computer," "remote ISP server," "Internet computer network" and "controlled access network accounts." *Id*. at 1348. But those claims satisfied *Alice* step two because they "recite[d] a specific, discrete implementation of the abstract idea of filtering content" that required "the installation of a filtering tool *at a specific location*, remote from the end-users," i.e., on a particular remote computer (the ISP server), with substantial supporting description in the specification. *See id*. at 1350 (emphasis added). "Th[os]e claims d[id] not merely recite the abstract idea of filtering content along with the requirement to perform it on the internet, or to perform it on a set of generic computer components. Such claims would not contain an inventive concept." *Id.*

By contrast, Kajeet seemingly contends that the broad concept of remote storage itself, described in its most general terms, is inventive. (FAC ¶ 20 ("Remote policy storage represented an unconventional scheme that was neither well known nor routine for addressing a newly emerging problem in society"); Dkt. 57-5 ¶ 29 (the asserted patents "require[] storing usage policies remotely from the managed devices, an unconventional arrangement at the time which yielded improvements in the operations of such systems.")). Neither the FAC or declaration identifies a specific location of the remote storage, let alone why such a specific location would be inventive. This is improper under the law.

## C. Kajeet fails to allege new "facts" that would create a material dispute as to patentability

Ultimately, the FAC fails to allege any new facts that would prevent dismissal, and nothing alleged therein or in the Knutson Declaration moves the merits of Kajeet's claims toward plausibility. To the contrary, as discussed in Section III.B, *supra*, the FAC now contains internally inconsistent allegations as to the claim scope that undermine the factual nature of the allegations. Kajeet's

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

allegations amount to nothing more than conclusory assertions which fail to identify any specific solution or the particular claim language disclosing an inventive concept. The relevant paragraphs of the FAC consist of attorney argument and fail to cite to either the Asserted Patents or the Knutson Declaration. Where, as here, the facts of a complaint are not well-grounded, they must be dismissed. *Berkheimer*, 881 F.3d at 1368 ("Patent eligibility has in many cases been resolved on motions to dismiss . . . . Nothing in this decision should be viewed as casting doubt on the propriety of these cases."); *see Berkheimer II*, 890 F.3d at 1374 (holding the inquiry into whether a claim is well-understood, routine, or conventional is a question of fact, albeit subject to *Twombly/Iqbal*). Thus, no factual issues preclude this Court from deciding invalidity under 35 U.S.C. § 101.

Moreover, since the relied-upon technological improvements are not found within the claims themselves, their identification should be disregarded. *Berkheimer*, 881 F.3d at 1369; *Mortgage Grader, Inc. v. First Choice Loan Servs.*, 811 F.3d 1314, 1326 (Fed. Cir. 2016) (rejecting evidence submitted in expert declarations as creating genuine issue of material fact as to patent eligibility where the purported assertions about problem solving were absent from the language of the claims themselves); *Interval Licensing*, 896 F.3d at 1346 (dismissing claims directed towards improved user experience through the display of secondary information on a computer, where the patent's claims were "wholly devoid of details which describe *how* this is accomplished") (emphasis in original). If the Court did accept as true the allegations that Kajeet thought of a novel solution (which it did not, *see BASCOM*, 827 F.3d at 1348), it does not satisfy Section 101 even if it were "groundbreaking, innovative, or even brilliant." *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1163 (Fed. Cir. 2018) (internal citations omitted).

## V.   CONCLUSION

Qustodio requests that the Court dismiss Counts 1–3 of the FAC with prejudice as directed to patent-ineligible subject matter under 35 U.S.C. § 101.

-25-

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

1   Dated: April 15, 2019

2

STRADLING YOCCA CARLSON &
RAUTH, P.C.

3   */s/ Salil Bali*

4   Douglas Q. Hahn
Salil Bali

5   *Attorneys for Defendant*

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-26-

QUSTODIO'S RENEWED MOTION TO DISMISS

18-cv-01519