BRANDON C. FERNALD
FERNALD LAW GROUP
510 West Sixth Street, Suite 700
Los Angeles, California 90014
Telephone:  323-410-0320
Facsimile:  323-410-0330
Email:  brandon.fernald@fernaldlawgroup.com

JONATHAN T. SUDER (*Pro Hac Vice*)
MICHAEL T. COOKE (*Pro Hac Vice*)
CORBY R. VOWELL (*Pro Hac Vice*)
RICHARD A. WOJCIO, JR. (*Pro Hac Vice*)
FRIEDMAN, SUDER & COOKE
Tindall Square Warehouse No. 1
604 East 4th Street, Suite 200
Fort Worth, Texas 76102
Telephone:  (817) 334-0400
Facsimile:  (817) 334-0401
Email:  jts@fsclaw.com
Email:  mtc@fsclaw.com
Email:  vowell@fsclaw.com
Email:  wojcio@fsclaw.com

Attorneys for Plaintiff
KAJEET, INC.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

| | |
|---|---|
| KAJEET, INC., | CASE NO. 8:18-cv-01519-JAK-PLA |
| Plaintiff, | |
| vs. | **PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PURSUANT TO FRCP 12(B)(6)** |
| QUSTODIO, LLC, | **Hearing Date: June 24, 2019** |
| Defendant. | **Time: 8:30AM** |

# TABLE OF CONTENTS

I.     INTRODUCTION ........................................................................................1

II.    BACKGROUND AND TECHNOLOGY ...................................................4

III.   LEGAL STANDARDS ...............................................................................5

       A.     Patent Eligibility under 35 U.S.C. § 101 and *Alice* .................................5

              1.     *Alice* Step One..................................................................6

              2.     *Alice* Step Two .................................................................7

       B.     Burdens and Presumptions Applicable to Rule 12(b)(6) Motions ..........................8

IV.    ARGUMENT ...............................................................................................9

       A.     Kajeet has Amended its Complaint as the Court Instructed ...................................9

       B.     The Challenged Claims are Patent Eligible at *Alice* Step One .............................12

              1.     The Claimed Systems are Directed to Improved Control Systems............12

              2.     The Claimed Systems are not Preemptive .................................15

       C.     The Challenged Claims are Patent Eligible at *Alice* Step Two............................18

              1.     Factual Allegations of FAC Establish "Inventive Concept".....................19

              2.     "Well-Understood, Routine, Conventional" is Not a Novelty
                     Analysis..................................................................................20

              3.     Defendant's Arguments are Premised Upon Misstatements of the
                     Case Law.................................................................................21

       D.     Representative Claim Analysis is Inappropriate....................................23

       E.     Claim Construction may be Necessary to Determine Patent Eligibility................24

V.     CONCLUSION............................................................................................25

PLAINTIFF'S BRIEF IN OPPOSITION TO MOTION TO DISMISS

# TABLE OF AUTHORITIES

***Cases***:

*Aatrix Software, Inc. v. Green Shades Software, Inc.,*
    882 F.3d 1121 (Fed. Cir. 2018) ................................................6, 7, 8, 9, 22, 25

*Affinity Labs of Tex., LLC v. DIRECTV, LLC,*
    838 F.3d 1253 (Fed. Cir. 2016) ...................................................................... 8

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l,*
    573 U.S. 208 (2014) ....................................................................5, 6, 8, 12, 15

*Ancora Techs. v. HTC Am., Inc.,*
    908 F.3d 1343 (Fed. Cir. 2018) ..........................................................7, 13, 14

*Ariosa Diagnostics, Inc. v. Sequenom, Inc.,*
    788 F.3d 1371 (Fed. Cir. 2015) ...................................................................... 6

*Ass'n for Molecular Pathology v. Myriad Genetics, Inc.,*
    569 U.S. 576 (2013) ...................................................................................... 5

*Bancorp Servs., L.L.C. v. Sun Life Assurance Co. of Canada (U.S.), et al.,*
    687 F.3d 1266 (Fed. Cir. 2012) ................................................................ 7, 25

*BASCOM Glob. Internet Servs. v. AT&T Mobility LLC,*
    827 F.3d 1341 (Fed. Cir. 2016) .......................................6, 8, 9, 10, 18, 20, 21

*Becton, Dickinson & Co. v. Tyco Healthcare Grp.,*
    616 F.3d 1249 (Fed. Cir. 2010) .................................................................... 16

*Berkheimer v. HP Inc.,*
    881 F.3d 1360 (Fed. Cir. 2018) .............................................8, 19, 20, 21, 22

*Bilski v. Kappos,*
    561 U.S. 593 (2010) ................................................................................ 5, 15

*Cal. Inst. of Tech. v. Hughes Commc'ns Inc.,*
    59 F.Supp.3d 974 (C.D. Cal. 2014) ............................................................... 6

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n,*
    776 F.3d at 1343 (Fed. Cir. 2014) ................................................................. 8

*Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.,*
    880 F.3d 1356 (Fed. Cir. 2018) ..................................................5, 7, 12

*DDR Holdings, LLC v. Hotels.com, L.P.,*
    773 F.3d 1245 (Fed. Cir. 2014) *(DDR Holdings II)* ...........................7, 18, 19

*Diamond v. Diehr,*
    450 U.S. 175 (1981) ...............................................................21

*Elec. Power Grp., LLC v. Alstom S.A.,*
    830 F.3d 1350 (Fed. Cir. 2016) .....................................................8

*Enfish LLC v. Microsoft Corp.,*
    822 F.3d 1327 (Fed. Cir. 2016) .........................................2, 6, 7, 12, 14, 17

*FairWarning IP, LLC v. Iatric Sys., Inc.,*
    839 F.3d 1089 (Fed. Cir. 2016) .....................................................9

*Finjan, Inc. v. Blue Coat Sys., Inc.,*
    879 F.3d 1299 (Fed. Cir. 2018) ..............................................7, 12, 18

*Gaus v. Conair Corp.,*
    363 F.3d 1284 (Fed. Cir. 2004) ....................................................16

*Genetic Techs. Ltd. v. Merial LLC,*
    818 F.3d 1369 (Fed. Cir. 2016) ....................................................22

*HTC Corp. v. Cellular Communs. Equip., LLC,*
    701 F. App'x 978 (Fed. Cir. 2017) .................................................16

*Intellectual Ventures I LLC v. Erie Indem. Co.,*
    850 F.3d 1315 (Fed. Cir. 2017) .....................................................8

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.,*
    566 U.S. 66 (2012) ..............................................5, 12, 15, 18, 22

*McRO, Inc. v. Bandai Namco Games Am. Inc.,*
    837 F.3d 1299 (Fed. Cir. 2016) ..................................................7, 24

*OIP Techs., Inc. v. Amazon.com, Inc.,*
    788 F.3d 1359 (Fed. Cir. 2015) .....................................................6

*Parker v. Flook,*
    437 U.S. 584 (1978) ........................................................................21

*Rapid Litig. Mgmt. Ltd. v. CellzDirect, Inc.,*
    827 F.3d 1042 (Fed. Cir. 2016) .......................................................6

*Research Corp. Techs. v. Microsoft Corp.,*
    627 F.3d 859 (Fed. Cir. 2010) .........................................................9

*Sound View Innovations, LLC v. Hulu, LLC,*
    Case No. LA CV17-04146-JAK (PLAx) (C.D. Cal. April 11, 2018)............7

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,*
    551 U.S. 308 (2007) ........................................................................8

*Thales Visionix, Inc. v. U.S.,*
    850 F.3d 1343 (Fed. Cir. 2017) .....................................................12

*TimePlay, Inc. v. Audience Entm't LLC,*
    No. CV 15-05202 SJO (JCx), 2015 U.S. Dist. LEXIS 174781
    (C.D. Cal. 2015) .............................................................................7

*Trading Techs Int'l, Inc. v. CQG, Inc.,*
    675 Fed. Appx. 1001 (Fed. Cir. 2017) ..........................................18

*Turner v. Cook,*
    362 F.3d 1219 (9th Cir. 2004) ...................................................9, 13

*Ultramercial, Inc. v. Hulu, LLC,*
    772 F.3d 709 (Fed. Cir. 2014) ....................................................6, 18

*Vaporstream, Inc. v. Snap, Inc.,*
    Case No. 2:17-cv-00220-MLH, 2017 U.S. Dist. LEXIS 32884
    (C.D. Cal. February 27, 2018)........................................8, 20, 25

*Visual Memory LLC v. NVIDIA Corp.,*
    867 F.3d 1253 (Fed. Cir. 2017) ........................................12, 14, 15

**_Other:_**

35 U.S.C. § 101............................................................5, 9, 17, 21, 25

35 U.S.C. § 102....................................................................................21

PLAINTIFF'S BRIEF IN OPPOSITION TO MOTION TO DISMISS

35 U.S.C. § 103.................................................................................21

Rule 12(b)(6)...........................................................................7, 8, 9, 25

PLAINTIFF'S BRIEF IN OPPOSITION TO MOTION TO DISMISS

## I.   INTRODUCTION

Quite remarkably, we find ourselves back again for Qustodio's second attempt to dismiss Plaintiff's patent case *at the pleadings stage* by re-raising *the same arguments* already considered and rejected by this Court just two months ago.[1]   *Compare* Dkt. Nos. 37 and 62.

At the hearing on Qustodio's first Motion to Dismiss (Dkt. No. 37) and in its subsequent Order (Dkt. No. 56 at 8), this Court indicated that the allegations made in the supporting expert declaration of Dr. Knutson are sufficient to satisfy the *Alice* test with respect to each of the Patents-in-Suit.   Nonetheless, the Court granted Qustodio's prior Motion without prejudice on *purely procedural grounds* and instructed Kajeet to amend its Complaint to incorporate the allegations identified as overcoming *Alice* from the Knutson Declaration directly into the Complaint.   Dkt. No. 56 at 8.   This course was taken by the Court in explicit recognition that the materials properly before a district court in deciding a motion to dismiss do not necessarily include expert opinions *not contained in the pleadings or as an attachment thereto*.   *Id.*

Kajeet has since filed its First Amended Complaint ("FAC") (Dkt. No. 57) on March 14, 2019 which includes direct citations to the patents' specification and statements from the Knutson Declaration per this Court's instructions.   *See* Dkt. No. 57 at ¶¶39-43, 55-59, and 72-76.   Additionally, the FAC has attached the Knutson Declaration *in its entirety* and explicitly incorporates it for all purposes.   Dkt. No. 57 at ¶12.   This settles the *Alice* issues with respect to the Patents-in-Suit, especially at the pleadings stage of this case, in light of this Court's opinions and instructions.

To be sure, Qustodio' present Motion includes no new arguments that have not already been considered by this Court and continues to rely on cases designated as non-precedential.   Dkt. No. 56 at 7.   Further, Qustodio avoids even attempting to refute the

---

[1] Because Qustodio fails to raise any new arguments in the present Motion, the arguments and authorities relied upon by Kajeet in its Opposition Brief (Dkt. No. 43) and attachments thereto remain relevant to the present Motion and are incorporated herein for all purposes.

PLAINTIFF'S BRIEF IN OPPOSITION TO MOTION TO DISMISS

controlling case law and arguments presented in Kajeet's first Opposition Brief (Dkt. No. 43) despite this Court's direct statements at the February hearing and in its subsequent Order (Dkt. No. 57 at 7, fn.3) highlighting to Qustodio this deficiency. Qustodio's renewal of the same unpersuasive arguments and its continued failure to present any meaningful response to controlling case law in Kajeet's favor, which this Court indicated settled the point, underscores the futility of the present Motion in light of the opinions already expressed by this Court.  The true effect of the present Motion is to cause further delay of this case while wasting the resources of Kajeet and this Court.

Qustodio continues to oversimplify and misstate the subject matter of the claims to admittedly discuss each only at a "high level of abstraction and untethered from the language of the claims."  *Enfish LLC v. Microsoft Corp.*, 822 F.3d 1327, 1337 (Fed. Cir. 2016); Dkt. No. 62-2 at 21:3-4 ("[I]n order to draw these analogies, you generally do them at a high level").  An objective review of the claimed subject matter and Patents-in-Suit shows that they are directed to systems and methods for effecting policy-based controls over communication devices addressing a problem rooted in computing and networking technology brought on by the rapid proliferation of computing devices in all aspects of modern society.  Dkt. No. 57 at ¶¶39, 42, 55, 58, 72, 75.  The claims are directed to much more than merely the setting of policies for effecting control as Defendants posit.  They claim particular systems and methods effecting control of modern communications devices, which are generally portable and feature-rich, and comprise limitations defining particular manners of their use to effect such control.  *Id.* Each challenged claim is therefore patent eligible at Step One of *Alice*.

Beyond this, each comprises a specific and novel component arrangement for effecting policy-based controls over communication devices attached to and enabled by wireless networks.  Dkt. No. 57 at ¶¶12, 39-43, 55-59, 72-76; Dkt. No. 57-5.  The challenged claims are rooted in computer functionality but rather provide for improvements thereto in management of communications devices through improved

PLAINTIFF'S BRIEF IN OPPOSITION TO MOTION TO DISMISS

security and effectiveness. Dkt. No. 57 at ¶¶39, 55, 72. By virtue of storing policies remotely from the controlled device, they are inaccessible to the controlled device for manipulation or deletion, thereby improving system effectiveness. Dkt. No. 57 at ¶¶40, 56, 73. In fact, the claimed systems enable entirely new and novel functionality with respect to the control accommodated, allowing for control of both incoming and outgoing communications and providing greater granularity of policies. Dkt. No. 57 at ¶¶41, 57, 74. As such, the claims are patent eligible under step two of *Alice*.

Qustodio seeks to rebut with unsupported attorney argument the allegations of the FAC and supporting expert declaration, each of which must be taken as true in deciding the Motion. Qustodio simply cannot prevail as there is no evidence in the record upon which the Court could rely to refute the allegations of the FAC. Further, Qustodio cannot controvert that the claims at issue capture the specific architecture in which policies are stored remotely from the computing device being controlled as identified in the FAC and supporting Knutson Declaration. This is because Qustodio's proposed claim constructions and supporting expert declaration, both served one week after the filing of the present Motion, demonstrate throughout that Qustodio understands every challenged claim to require remote policy storage.[2] Ex. A to Wojcio Decl.[3] at 3; Ex. B at 10, 19-20[4] (construing "policy" as being "stored remotely"). It appears that while Qustodio now argues to this Court that "a simple examination of the claims themselves shows that they recite no particular architecture" (Dkt. No. 62 at 2),

---

[2] Kajeet's citation to Qustodio's proposed claim constructions should not be construed to indicate that Kajeet agrees with or accepts Qustodio's proposals for these claim terms. Kajeet will address each in its claim construction briefing and maintains that the distributed architecture required by the challenged claims is manifest by the plain language of the claims rather than via importation of limitations into claim terms as Qustodio proposes.

[3] Plaintiff submits herewith the Declaration of Richard A. Wojcio, Jr. (hereinafter "Wojcio Decl."), dated April 29, 2019. All citations to Exhibits hereinafter refer to attachments to the Wojcio Decl. unless indicated otherwise.

[4] Citations to Ex. B of Wojcio Decl. are to the page numbers indicated within the Geier Declaration.

PLAINTIFF'S BRIEF IN OPPOSITION TO MOTION TO DISMISS

1  Qustodio intends to argue and provide expert testimony to the opposite effect to this
2  Court with respect to seven separate claim elements in claim construction.

3  ## II.    BACKGROUND AND TECHNOLOGY

4          Kajeet was founded in 2003 with the aim of developing solutions to an emerging
5  technological problem - how to ensure safe operation of mobile communication devices
6  by children and others.  Kajeet's efforts and ingenuity have resulted in issuance of
7  thirty-three U.S. Patents to date, many of which share a common specification to that
8  of the asserted patents in this case.  The Patents-in-Suit discuss how the proliferation of
9  cell phones and other modern communication devices throughout aspects of modern
10 life created the problem of providing adequate control over these devices, which
11 typically accommodate a wide range of functionality accessible at any time from
12 virtually anywhere.  Dkt. No. 57-3 at 1:37-56.

13         Critically, the Patents-in-Suit note that prior art methods of controlling use of
14 computing devices (*i.e.*, removing access by taking the device away altogether or by
15 disabling it) were unworkable because they deprived the user of allowable uses of the
16 device in order to prevent disallowed uses.  The specification makes clear that the
17 problem to be solved is how to maintain effective control to prohibit certain uses while
18 still allowing approved uses, all in the context of the user possessing the device at all
19 times including when physically apart from and/or not in contact with the
20 parent/administrator.  Dkt. No. 57-3 at 2:7-21; 3:24-29; 5:14-19; 12:47-67.  The Patents-
21 in-Suit and asserted claims are directed to systems and methods providing for effective
22 control while desirably allowing for the controlled device remaining in the user's
23 possession.  Dkt. No. 57 at ¶¶14, 18-20.

24         It is in the context of the problem addressed, which is rooted in computer and
25 networking technology, that the challenged claims are to be viewed.  When doing so, it
26 is clear that each claim is directed to a concrete system or method utilizing a non-
27 conventional component and network arrangement to improve operation of a computer
28 system. Dkt. No. 57 at ¶¶38-39, 54-55, 71-72.  The asserted claims require remote

storage of usage policies which are thereby less vulnerable to manipulation by the user of the device(s) being managed while still accommodating real-time, continuous control during device usage, thereby improving the functionality of the computer-based systems through improved security, effectiveness, and robustness of the control accommodated.  Dkt. No. 57 at ¶¶40-43, 56-59, 73-76.

## III.   LEGAL STANDARDS

### A. Patent Eligibility under 35 U.S.C. § 101 and *Alice*

35 U.S.C. § 101 defines subject matter which is eligible for patenting as "any new and useful process, machine, manufacture, or composition of matter, ***or any new and useful improvement thereof***." 35 U.S.C.S. § 101; *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356, 1361 (Fed. Cir. 2018) (emphasis added).  This broad language is only limited by three narrowly construed, judicially-created exceptions excluding from patentability claims directed to laws of nature, natural phenomena, and abstract ideas.  *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 569 U.S. 576, 589 (2013) (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 70 (2012)).  As explained in *Mayo*, the primary rationale underpinning these judicial exceptions is the risk of pre-emption, whereby issuance of claims directed to these "basic tools of scientific and technological work" would stymy innovation, rather than promote it.  *Mayo*, 566 U.S. at 71; *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 217 (2014); *Bilski v. Kappos*, 561 U.S. 593, 611-12 (2010).

The relevant inquiry for determining patent eligibility, therefore, is whether the challenged claims do more than merely claim judicially excepted subject matter.  *Alice*, 573 U.S. at 215.  As laid out in *Mayo* and elaborated upon in *Alice*, this inquiry first requires the Court to determine as a threshold matter whether the claims are directed to patent-ineligible concepts.  If so, then the Court must "search for an 'inventive concept'—*i.e.,* an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'"  *Alice*, 573 U.S. at 217-18 (quoting *Mayo*, 566 U.S. at 72-73).

Courts look primarily to the claims themselves and to the intrinsic record, comprising the specification and file history, to clarify the proper scope and meaning of the limitations within a challenged claim. *See, e.g., OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1363 (Fed. Cir. 2015) (considering prosecution history and specification to determine key features of challenged claims); *Ariosa Diagnostics, Inc. v. Sequenom, Inc.*, 788 F.3d 1371, 1377 (Fed. Cir. 2015) (finding evidence in prosecution history showing a step of the challenged claim was considered well-understood, routine, and conventional); *BASCOM Glob. Internet Servs. v. AT&T Mobility LLC*, 827 F.3d 1341, 1343 (Fed. Cir. 2016) (reviewing intrinsic record to determine whether challenged claims embody an "inventive concept").

### 1. *Alice* Step One

"A 101 analysis begins by identifying whether an invention fits within one of the four statutorily provided categories of patent eligible subject matter." *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018) (quoting *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 713-14 (Fed. Cir. 2014). The challenged claims are then considered as a whole in light of the specification to determine their true subject matter. *Rapid Litig. Mgmt. Ltd. v. CellzDirect, Inc.*, 827 F.3d 1042, 1045 (Fed. Cir. 2016). This involves more than simply identifying a patent-ineligible concept that may be implicit in the claim. Rather the problem addressed by the claim(s) as described in the specification is considered to ascertain what the claim is "directed to". *Id.*; *See also, Cal. Inst. of Tech. v. Hughes Commc'ns Inc.*, 59 F.Supp.3d 974, 991 (C.D. Cal. 2014).

Importantly, the focus is on the specific solution claimed and <u>not</u> on over-simplifications of the claimed subject matter because "[a]t some level, all inventions… embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas." *Alice*, 573 U.S. at 217; *Enfish*, 822 F.3d at 1336. For this reason, many courts, including Courts in this District, have declined to rule on patent eligibility disputes until after fully resolving all claim construction matters because "'the determination of patent

PLAINTIFF'S BRIEF IN OPPOSITION TO MOTION TO DISMISS

eligibility requires a full understanding of the basic character of the claimed subject matter.'" *TimePlay, Inc. v. Audience Entm't LLC*, No. CV 15-05202 SJO (JCx), 2015 U.S. Dist. LEXIS 174781, at *14 (C.D. Cal. 2015) (quoting *Bancorp Servs., L.L.C. v. Sun Life Assurance. Co. Can. (U.S.)*, 687 F.3d 1266,1273-74 (Fed. Cir. 2012)); *Aatrix*, 882 F.3d 1121, 1125 (finding error in District Court's granting of Rule 12(b)(6) motion without first construing the claims).

As the *Alice* case law has developed, various rationale have emerged which have been consistently relied upon to find patent eligibility at step one. For example, claims that are "necessarily rooted in computer technology" or that "overcome a problem specifically arising in the realm of computer networks" have been found directed to patent eligible subject matter. *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1257 (Fed. Cir. 2014). Likewise, claims which include specific language limiting the claims to a certain process, component arrangement, or methodology for effecting a desired result have been found patent eligible. *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1316 (Fed. Cir. 2016).

In more recent decisions, courts have repeatedly held challenged claims to be directed to patent eligible subject at step one in instances where the claims captured "a specific improvement to the way computers operate." *See, e.g., Enfish*, 822 F.3d at 1336; *Visual Memory LLC v. NVIDIA Corp.*, 867 F.3d 1253 (Fed. Cir. 2017); *Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299 (Fed. Cir. 2018); *Core Wireless*, 880 F.3d at 1361; *Ancora Techs. V. HTC Am., Inc.*, 908 F.3d 1343, 1348-49 (Fed. Cir. 2018). In fact, this Court recently followed the rationale of this line of cases in denying a motion to dismiss for patent ineligibility. *See Sound View Innovations, LLC v. Hulu, LLC*, Case No. LA CV17-04146-JAK (PLAx), Dkt. No. 83 (C.D. Cal. April 11, 2018) (Dkt. No. 43-5).

### 2. *Alice* Step Two

If a challenged claim is found to be directed to patent ineligible subject matter at step one, the Court must proceed to *Alice s*tep two to determine if it comprises an

"inventive concept" sufficient to "transform" the ineligible matter into a patent-eligible application.  *Alice*, 573 U.S. at 221; *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016) ("we have described… the second-stage inquiry (where reached) as looking more precisely at what the claim elements add—specifically, whether, in the Supreme Court's terms, they identify an 'inventive concept' in the application of the ineligible matter to which (by assumption at stage two) the claim is directed.").  The elements of each challenged claim are considered both individually and as an ordered combination.  *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1367 (Fed. Cir. 2018) (citing *Alice*, 573 U.S. at 217).  Simply focusing on each element in isolation or focusing only on whether certain elements recite a patentable invention is insufficient. *See BASCOM*, 827 F.3d at 1349-50.

"The second step of the *Alice* test is satisfied when the claim limitations 'involve more than performance of 'well-understood, routine, [and] conventional activities previously known to the industry.'" *Id.*; *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1347-48 (Fed. Cir. 2014) (quoting *Alice*, 573 U.S. 224); *Affinity Labs of Tex., LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1262 (Fed. Cir. 2016); *Intellectual Ventures I LLC v. Erie Indem. Co.*, 850 F.3d 1315, 1328 (Fed. Cir. 2017).  Whether the claim elements or the claimed combination are well-understood, routine, or conventional is a question of fact.  *Aatrix*, 882 F.3d at 1128; *Berkheimer*, 881 F.3d at 1368.  Courts have looked to the opinions of experts to aid in the determination of whether a claimed combination is well-understood, routine, or conventional.  *Vaporstream, Inc. v. Snap, Inc.*, Case No. 2:17-cv-00220-MLH, 2017 U.S. Dist. LEXIS 32884 at *15 (C.D. Cal. February 27, 2018).

## B. Burdens and Presumptions Applicable to Rule 12(b)(6) Motions

When reviewing a motion to dismiss under Rule 12(b)(6), a district court must consider the complaint in its entirety as well as ***documents incorporated into the complaint*** and matters of which a court may take judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (emphasis added).  All material

1  allegations must be accepted as true and considered in the light most favorable to the
2  non-moving party. *Turner v. Cook*, 362 F.3d 1219, 1225 (9th Cir. 2004).

3      Grant of Defendant's Rule 12 motion at this stage of the case is possible "only
4  when there are no factual allegations that, taken as true, prevent resolving the eligibility
5  question as a matter of law." *Aatrix*, 882 F.3d at 1125.   Indeed, plausible factual
6  allegations in the Complaint, standing alone, have been found sufficient to overcome a
7  § 101 challenge under Rule 12(b)(6) where "nothing on th[e] record . . . refutes those
8  allegations."  *Id.*; *FairWarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089, 1097 (Fed.
9  Cir. 2016) (quoting *BASCOM*, 827 F.3d at 1352).  "[A]n abstract idea should exhibit
10 itself so manifestly as to override the broad statutory categories of eligible subject
11 matter [processes, machines, manufactures, compositions of matter, or any new and
12 useful improvement thereof] and the statutory context that directs primary attention on
13 the patentability criteria of the rest of the Patent Act." *Research Corp. Techs. v.
14 Microsoft Corp.,* 627 F.3d 859, 868 (Fed. Cir. 2010).

15 **IV.   ARGUMENT**

16 **A. Kajeet has Amended its Complaint as the Court Instructed**

17      The Court indicated at the hearing and in its Order on Qustodio's first Motion to
18 Dismiss that the factual allegations within the Knutson Declaration are sufficient to
19 satisfy *Alice* at the pleadings stage and instructed Kajeet to amend its Complaint
20 accordingly.  That is precisely what Kajeet has done.

21      This Court's tentative oral ruling given at the outset of the hearing conveyed the
22 Court's opinion that the allegations of the Knutson Declaration relating to the
23 challenged claims being directed to a technological improvement can be sufficient to
24 show patent eligibility at *Alice* at step one.  Dkt. No. 62-2 at 4:11-20 ("And I think it
25 might.").   The Court also expressed that the discussion of the inventive concept
26 identified and discussed in the Knutson Declaration "may well be enough" to show
27 patent eligibility at *Alice* step two.  Dkt. No. 62-2 at 4:21-5:9.  The Court noted,
28 however, that these allegations were not present in the Complaint at the level of detail

PLAINTIFF'S BRIEF IN OPPOSITION TO MOTION TO DISMISS

provided in the Knutson Declaration and instructed Kajeet to amend its Complaint to include the detail of the Knutson Declaration.  Dkt. No. 62-2 at 7:18-20 ("I don't think there's enough specificity in the current version of the Complaint as to the *Alice* step two matter."); 16:6-11 (noting that dismissal with prejudice is inappropriate in light of their being sufficient allegations in the Knutson Declaration).  The Court went on to set a schedule for the remainder of the case in anticipation of Kajeet's filing an FAC.

Three days after the hearing, this Court issued its Order on the first *Alice* Motion which mirrored the Court's statements at the hearing, stating:

> "Plaintiff's principle cited support for the assertion that this arrangement creates a technological improvement, however, does not come from the intrinsic record of the Asserted Patents or from the Complaint. ***Instead it is based more on the Declaration of Charles D. Knutson*** submitted in support of Plaintiff's opposition to Defendant's Motion to Dismiss. Knutson Decl., Dkt. 43-7 ¶¶ 18, 20-23. ***The Knutson Declaration states, for example, that "the remote storage of usage policies . . . are thereby less vulnerable to manipulation by the device user, at the same time accommodating real-time, continuous control concurrent with device usage, which improved the functionality of computer-based systems through improved security, effectiveness, and robustness of control." Id. ¶ 20.*** Plaintiff relies on the Knutson Declaration and similar arguments to support its position under Alice step two. Dkt. 43 at 24."
>
> …
>
> Here, as noted, Plaintiff relies primarily on the Knutson Declaration to support its argument that the combination of elements in the asserted claims provides an inventive concept. ***If the statements in the Knutson Declaration are accepted, Bascom, as well as Defendant's statements about that decision, suggest that, at least on a motion to dismiss, with all reasonable inferences drawn in favor of the nonmoving party, it would be premature to determine that the asserted claims are drawn to patent-ineligible subject matter***.
>
> …

Because the Knutson Declaration, rather than the materials properly and ordinarily considered on a motion to dismiss, forms the principal basis for Plaintiff's argument under *Alice* step two, ***judicial and party economy are best served by having Plaintiff file an amended pleading*** that includes express, factual allegations consistent with the patent intrinsic record that support its position under both steps of *Alice*. Dkt. No. 56 at 6, 9 (emphasis added).

The FAC includes factual allegations in the body of the pleading addressed to satisfying the Court's instructions.  For example, the precise language quoted by the Court from ¶20 of the Knutson Declaration is present in three places within the FAC addressed to each of the three Patents-in-Suit, respectively.  Dkt. No. 57 at ¶¶42, 58, 75.  Additionally, allegations mirroring those of ¶¶18, 21-23 of the Knutson Declaration is within the FAC.  Dkt. No. 57 at ¶¶19-20, 39-43, 55-59, 72-76.  Beyond this, as a catchall, Kajeet attached the Knutson Declaration cited by the Court to its FAC as Ex. E thereto (Dkt. No. 57-5).  As such, there can be no doubt that the allegations identified by the Court in its Order are now within the FAC and are, therefore, properly before the Court for deciding the present Motion.

The allegations within the FAC represent far more than mere attorney argument or conclusory statements as Qustodio contends.  They are factual allegations replete with direct citations to the specification, asserted claims, and file histories of the Patents-in-Suit.  *See*, Dkt. No. 57 at ¶¶19-20, 39-43, 55-59, 72-76.  Each allegation is further supported and reinforced by the opinions of Dr. Knutson.  *See, generally,* Dkt. No. 57-5.  Conversely, the arguments in Qustodio's Motion are necessarily nothing more than attorney argument because there is absolutely no evidence in the record supporting any of Qustodio's positions.  And yet, even as Qustodio wrongly derides Kajeet's FAC as comprising solely attorney argument and conclusory opinions, it actually and unashamedly does that very thing as it asks this Court to grant its Motion to Dismiss in the face of every evidentiary presumption being in Kajeet's favor.

**B. The Challenged Claims are Patent Eligible at *Alice* Step One**

"[A]ll inventions at some level embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas." *Mayo*, 566 U.S. at 71. "We must therefore ensure at step one that we articulate what the claims are directed to with enough specificity to ensure the step one inquiry is meaningful." *Thales Visionix, Inc. v. U.S.*, 850 F.3d 1343, 1347 (Fed. Cir. 2017) (citing to *Alice*, 573 U.S. at 217). Claims directed to specific improvements in computing systems are patent eligible, ending the inquiry at the first step. *See, e.g., Enfish*, 822 F.3d 1327; *Visual Memory*, 867 F.3d 1253; *Finjan*, 879 F.3d at 1304; *Core Wireless*, 880 F.3d at 1361.

Here, challenged claims are not directed to an abstract idea because each is: (1) rooted in computing and network technology; (2) represents improvements in the security and effectiveness in how systems implementing policy-based control over communication devices operate; and, (3) are directed to specific implementations of such improved systems such that there is no risk of preemption.

**1. The Claimed Systems are Directed to Improved Control Systems**

Claims directed to improvements in operation of computer systems have been consistently found patent eligible. Here, the challenged claims are directed to systems and methods for effecting policy-based controls over communication devices. By their explicit language, they are not directed to judicially-excepted subject matter. Instead, the challenged claims are directed to particular systems and methods for implementing policy-based controls on communication devices. Dkt. No. 57 at ¶¶19, 39, 55, 72; Dkt. No. 57-5 at ¶¶ 19-24.

The challenged claims are addressed to a challenge (real-time control of access to services) that is specific to the use of computing devices in a particular networked infrastructure. Thus, the claimed subject matter, when considered as a whole, recites more than the mere use of generic computer functionality, and provides an improvement to a technical field, meeting the guidelines for non-abstract subject matter under *Alice*. Dkt. No. 57 at ¶¶42,58,75; Dkt. No. 57-5 at ¶24. The FAC captures this concept and

1    these well pleaded factual allegations must be taken as true for the purposes of deciding

2    the present Motion. *Turner*, 362 F.3d at 1225.

3          The claims are addressed to specific solutions in which the policies applied are

4    stored remotely and are, therefore, inaccessible by the controlled device. *Id.* Remote

5    policy storage is required by the express limitations of the challenged claims of the '371

6    Patent (Dkt. No. 57 at ¶55-56; Dkt. No. 57-5 at ¶21), by the express limitations of the

7    challenged claims of the '559 Patent (Dkt. No. 57 at ¶39-40; Dkt. No. 57-5 at ¶22), and

8    by the express limitations of the challenged claims of the '371 Patent (Dkt. No. 57 at

9    ¶72-73; Dkt. No. 57-5 at ¶23).  These limitations capture the distributed architecture

10   scheme resulting in improved effectiveness of the claimed systems. *Id.* The distributed

11   arrangement advantageously accommodates policy application in real-time with device

12   usage  while  preventing  the  user  of  the  controlled  device  from  accessing  and

13   manipulating the policies.  Dkt. No. 57 at ¶¶42,58,75; Dkt. No. 57-5 at ¶¶18,20.  They

14   are therefore directed to improved computer-based systems and are patent eligible. *Id.*

15         Moreover, they are addressed to the precise type of improvement identified by

16   the Federal Circuit in a recent case conferring patent eligibility. *Ancora Techs.*, 908

17   F.3d at 1344.   In *Ancora Techs.*, the Federal Circuit held that claims directed to a

18   software-based scheme for controlling access to features are patent eligible because the

19   embodiments claimed comprised "concrete assignment of specified functions among a

20   computer's components ***to improve computer security***." *Id.* The Federal Circuit noted

21   that "[i]mproving security – here, against a computer's unauthorized use of a program

22   – can be a non-abstract computer-functionality improvement if done by a specific

23   technique that departs from earlier approaches to solve a specific computer problem."

24   *Id.*, at 1348.   The improved security resulted from disposing license credentials in a

25   different portion of a computer's memory whereby they would be less vulnerable to

26   manipulation. *Id.*, at 1348-49.

27        *Ancora Techs.* follows a line of Federal Circuit cases applying the holding of

28   *Enfish* to find patent eligibility at step one of *Alice.*  In *Enfish*, the Federal Circuit found

13

**PLAINTIFF'S BRIEF IN OPPOSITION TO MOTION TO DISMISS**

claims directed to self-referential logical model for a computer database as directed to patent eligible subject matter at step one. *Enfish LLC v. Microsoft Corp.*, 822 F.3d 1327, 1337 (Fed. Cir. 2016). The Court noted that the invention represented improvements over conventional computer databases resulting in increased flexibility, faster search times, and smaller memory requirements. *Enfish*, 822 F.3d at 1337. The challenged claims were deemed "not simply directed to *any* form of storing tabular data, but instead [were] specifically directed to a *self-referential* table for a computer database" so that they functioned differently and better than conventional databases. *Id.* Importantly, the Court reasoned that "software can make non-abstract improvements to computer technology just as hardware improvements can… Therefore, we find it relevant to ask whether the claims are directed to an improvement in computer functionality versus being directed to an abstract idea, even at the first step of the *Alice* analysis." *Enfish*, 822 F.3d at 1335. The Court cautioned against "oversimplifying" computer-related inventions and noted that "[m]uch of the advancement made in computer technology consists of improvements to software that, by their very nature, may not be defined by particular physical features but rather by logical structures and processes." *Enfish*, 822 F.3d at 1337-38.

Similarly, in *Visual Memory*, the Federal Circuit reversed a district court holding which found the challenged claims directed to ineligible subject matter, citing favorably to its prior decision in *Enfish*. *Visual Memory*, 867 F.3d at 1258-59. The challenged claims were directed to the use of conventional memory components within a computer and purported to improve upon existing memory hierarchical structures through implementation of a "programmable operational characteristic" which, effectively, tailored the allocation scheme of data to be stored based upon characteristics of a processor. The Federal Circuit disagreed with the district court's conclusion that the claims were directed to the "'abstract idea of categorical data storage" and instead concluded that the challenged claims were directed to "an improved computer memory system." *Id.* at 1257, 1259. The Court relied on statements in the specification

explaining the benefits of the memory structures claimed therein, such as "obviate[ing] the need to design a separate memory system for each type of processor, which proved to be costly and inefficient, and, at the same time, avoid the performance problems of prior art memory systems." *Visual Memory*, 867 F.3d at 1259.

In the present case, the challenged claims are likewise rooted in computer technology and effect improved computer-based systems, as discussed above. As such, the claims are directed to patent eligible subject matter under step one.

### 2. The Claimed Systems are not Preemptive

A primary concern underpinning the law of patent eligibility is the risk of preemption. *Mayo*, 566 U.S. at 71; *Alice*, 573 U.S. at 217; *Bilski*, 561 U.S. at 611-12. Allowance of preemptive claims directed to the "basic tools of scientific and technological work" would stymy innovation and are therefore patent ineligible. *Id.*

Here, inclusion of limitations within the claims capturing the distributed architecture arrangement limits the applicability of the claims to systems and/or methods implementing this unique component arrangement. Dkt. No. 57 at ¶¶19, 39, 55, 72; Dkt. No. 57-5 at ¶¶ 19-24. The claims cannot, therefore, be preemptive of the greater concept of effecting device management through selective access to features/content.

For example, systems which require no communication to a remote component storing usage policies cannot be within the scope of the challenged claims. Likewise, systems and methods of control that do not operate in response to requests ***to or from the managed device*** are not within the scope of the challenged claims by the explicit language of those claims. This is strongly indicative that the challenged claims are directed to specific systems and methods for effecting device management rather than to a broader, abstract concept. Defendant incorrectly asserts that the claims of the Patents-in-Suit read on common parenting activities and, therefore, are abstract. Dkt. No. 62 at 12-16. Defendant's analogies remain deficient for the several reasons

highlighted in Kajeet's prior Opposition Brief and fail to demonstrate a non-computer analogue to the challenged claims.  Dkt. No. 43 at 19-21; Dkt. No. 43-7 at ¶¶25-28.

The challenged claims are addressed to a specific technology-centric problem which is wholly apart from the parenting examples presented.  These purportedly analogous scenarios fail to address the modern parenting issues stemming from children possessing their own mobile communication devices to which they could have unfettered feature access while away from a parent or teacher, which is the focus of the Patents-in-Suit and the backdrop against which the claims are to be interpreted.  Dkt. No. 57-5 at ¶¶25, 26.

The analogies presented simply do not read on the limitations of the claims and gloss over several limitations to make its analogies fit.  For example, with respect to claim 1 of the '371 Patent, Defendant's analysis requires that the parent comprise each of "the switch or node," "the policy decider," and "the policy enforcer."  *See* Dkt. No. 62 at 12-13; Dkt. No. 57-5 at ¶¶25,27.  Likewise, Defendant's analysis relating to claims of the '612 and '559 Patents, respectively, requires that the "parent" be both the claimed "system" as a whole or "server" component and then also be "the administrator" who configures the "system" or "server."  *See* Dkt. No. 62 at 13-15; Dkt. No. 57-5 at ¶¶28. The Federal Circuit has warned against construing claim elements in this manner, noting that "[w]here a claim lists elements separately, "the clear implication of the claim language" is that those elements are "distinct components" of the patented invention. *HTC Corp. v. Cellular Communs. Equip., LLC*, 701 F. App'x 978, 982 (Fed. Cir. 2017) (citing *Becton, Dickinson & Co. v. Tyco Healthcare Grp.*, 616 F.3d 1249, 1254 (Fed. Cir. 2010) (quoting *Gaus v. Conair Corp.*, 363 F.3d 1284, 1288 (Fed. Cir. 2004))). Defendant's analogies violate this instruction.

Aside from this glaring claim construction issue, Defendant's interpretation becomes unworkable, however, when applying the actual claim language.  In particular, it is unclear how the policy enforcer would "enforce the decision of the policy decider as to whether the request has been granted or denied *by transmitting data to the switch*

*or node*, the data being indicative of one or more actions consistent with the decision"
as the claim language requires.  Dkt. No. 57-3 at claim 1 (emphasis added).  If every
one of these elements manifests in the parent, according to Defendant's analogy, then
how and why is data ***transmitted back*** to "the switch or node" by "the policy enforcer"
to enforce the decision?   Defendant's analogy completely reads this transmitting
limitation out of the claim and represents precisely the type of analysis explicitly
prohibited in performing a § 101 analysis - a high level of abstraction that is untethered
from the language of the claims.  *Enfish*, 822 F.3d at 1337.

The challenged claims contemplate making and effecting policy decisions
***concurrent*** with usage, and not a lock-step process of first getting permission before
then commencing use.  Referring to claim 27 of the '559 Patent, for example, the claim
language requires that the decision be "received ***in real-time*** from the server" and that
enforcement entails "***disabling the communication*** when the decision denies the
request." Dkt. No. 57-2 at claim 27. There is no separate step in the method for initiating
communication with a remote computing device apart from the transmission of the
request over the communication network.  The policy decision and enforcement thereof
occur concurrently with execution of a desired function on the computing device, not
as a prior authorization event.  This cannot occur within the proffered real-world
parenting analogy.  Either the child would have to ask permission, first, before
commencing the desired activity to completely prevent a disallowed activity - a step not
contemplated by the claim language - or the parent's notification that a policy decision
and enforcement are needed would only occur through observing the child already
performing the desired activity.  In this second instance, the decision is not provided in
real-time, however, as the child would already have commenced the activity by the time
the parent became aware of it and then subsequently decide whether it may continue.

That these claims cannot and do not preempt systems and methods of policy-
based controls outside of the specific arrangement claimed is fatal to Defendant's
position.  In truth, the claims at issue are "directed to" concrete systems and applications

rather than to any abstract concept and are, therefore, patent eligible under *Alice* step one. Defendant has once again unwittingly made this clear through presenting purportedly analogous non-computer implementation of the claimed systems and methods which fail to read on the challenged claims. The inclusion of limitations within the claims confining them to the specific component arrangement yielding improved system functionality, as described above, render these claims patent eligible. *Trading Techs.*, 675 Fed. Appx. at 1005.

The challenged claims are patent eligible under step one of *Alice*, ending the inquiry. Analysis under step two by the Court is therefore not required to decide the present Motion. In the event that the Court disagrees and finds the challenged claims to be directed to an abstract concept, however, the following sections demonstrate that the claims are still patent eligible under *Alice* step two because they include sufficient additional limitations directed to an "inventive concept" to transform the nature of the claim. An expert declaration supporting this position is provided to aid the Court in its understanding of certain factual matters underpinning the step two analysis.

## C. The Challenged Claims are Patent Eligible at *Alice* Step Two

For claims directed to a judicial exception under step one, courts are to "consider the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Finjan*, 879 F.3d at 1303 (quoting *Mayo*, 566 U.S. at 67). The "inventive concept" must be something sufficient to ensure that the claims amount to "significantly more" than the abstract idea itself. *Id.* (quoting *Mayo*, 566 U.S. at 72-73). To satisfy this prong, the claims must include additional features which are significantly beyond "well understood, routine, conventional activity" or a simple "instruction to implement or apply the abstract idea on a computer." *Ultramercial,* 772 F.3d at 715 (quoting *Mayo,* 566 U.S. at 79); *Bascom,* 827 F.3d at 1349. In *DDR Holdings II*, the Federal Circuit explicitly differentiated abstract, ineligible subject matter "executed on a generic computer" and "fundamental economic and conventional

business practices" from those rooted in the advancement of computer technology, stating:

> [T]hese claims stand apart [and are thus eligible for patent protection] because they do not merely recite the performance of some business practice known from the pre-internet world along with the requirement to perform it on the Internet. Instead, ***the claimed solution is necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks.***" *DDR Holdings,* 773 F.3d at 1257 *(DDR Holdings II)* (emphasis added).

Again, "whether something is well-understood, routine, and conventional to a skilled artisan at the time of the patent is a factual determination." *Berkheimer*, 881 F.3d at 1369.

### 1. Factual Allegations of FAC Establish "Inventive Concept"

Plaintiff's FAC attaches the declaration of Dr. Knutson discussing the onset of the problem addressed by the Patents-in-Suit, prior art systems and methods for addressing it, and Kajeet's claimed solutions as expert evidentiary support for the well-pleaded factual allegations in the FAC. *See* Dkt. No. 57-5. The component arrangement required by the challenged claims using remote policy storage in the context of feature management of a computing device was not well-known, routine, or conventional and, further, its use effected an improvement in the operation of mobile communication device control systems. Dkt. No. 57 at ¶¶19-20, 43, 59, 76; Dkt. No. 57-5 at ¶¶18, 29.

As described above and verified by Dr. Knutson, the claims of the Patents-in-Suit are directed to solving a problem arising from the rapid proliferation of mobile communications devices throughout society - a problem rooted in technology that requires a likewise technological solution. Dkt. No. 57 at ¶¶12-14, 42, 58, 75; Dkt. No. 57-5 at ¶¶13-15.    Means for preventing excessive or inappropriate use of such communication devices, which remain in the possession of children potentially all day and night, were needed. *Id*. The claimed inventions addressing this technology-centric problem represent an improvement in operation of mobile device management systems

and methods in security, effectiveness, and robustness.  Dkt. No. 57 at ¶¶19-20, 39-43, 55-59, 72-76; Dkt. No. 57-5 at ¶¶18-20, 24.

### 2.  "Well-Understood, Routine, Conventional" is Not a Novelty Analysis

Defendant's argues that "the concept of remote storage of policies controlling access to content and improving security was *well-known* by 1997" while citing to the patent at issue in the *BASCOM* case.  Defendant's also contend that the claims at issue in *BASCOM* were claimed the location of the remote storage more specifically than the claims at issue in the present case.  Dkt. No. 62 at 23-24.  This is mere attorney argument that is at odds with *BASCOM*'s express holding that these concepts were not well-known.  *BASCOM*, 827 F.3d at 1350 ("On this limited record, this specific method of filtering Internet content cannot be said, as a matter of law, to have been conventional or generic.").  Qustodio also improperly conflates "well-understood" within the context of defining an "inventive concept" at *Alice* step two with the novelty requirement for patenting, a concept wholly distinct and separate from the *Alice* inquiry.  *Id*.; *Berkheimer*, 890 F.3d at 1380-81.

First, in *BASCOM* the Federal Circuit reasoned that while "the limitations of the claims, taken individually, recite generic computer, network and Internet components, none of which is inventive by itself… an inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces."  *BASCOM*, 827 F.3d at 1349-50.[5]  The Court held the claims at issue directed to patentable subject matter at *Alice* step two because the record established that "the installation of a filtering tool at a specific location, *remote from the end-users*… cannot be said, as a matter of law, to have been conventional or generic".  *BASCOM*, 827 F.3d at 1350 (emphasis

---

[5] This court recently cited favorably to *BASCOM*, denying a motion for summary judgment of patent ineligibility.  *Vaporstream*, 2017 U.S. Dist. LEXIS 32884 at *15 (reasoning that the movant had not met its burden because the claim analysis provided by movant's expert "simply breaks apart the asserted claims into their individual elements in an attempt to show that each individual element, by itself, was well understood and conventional at the time of invention" and had not "present[ed] any evidence showing that the specific combination of the elements performed in the specific order claimed in the patents-in-suit was conventional and generic.")

PLAINTIFF'S BRIEF IN OPPOSITION TO MOTION TO DISMISS

added).  The literal language of the respective claims at issue in *BASCOM* described the remote location as "a remote ISP server" and as "[a]n ISP server… at a remote client computer."  *BASCOM*, 827 F.3d 1345-46.

Here, the challenged claims similarly require that the policies be stored remotely from the controlled device and with no less specificity that provided in the claims of *BASCOM*.  Further, the holding of *BASCOM* that the unconventional arrangement claimed was not well-understood, routine, or conventional at that time belies Defendant's assertion to the contrary.  The plain language of *BASCOM* shows Defendant to be flatly wrong.

Finally, even if Defendant's assertions were correct, they would have no legal import with respect to the present *Alice* analysis.  *Berkheimer*, 890 F.3d at 1380-81 (quoting *Diamond v. Diehr*, 450 U.S. 175, 190 (1981)) ("The question . . . of whether a particular invention is **novel** is *wholly apart* from whether the invention falls into a category of statutory subject matter."); *Parker v. Flook*, 437 U.S. 584, 588 (1978) (subject matter eligibility "does not involve the familiar issues of novelty and obviousness that routinely arise under §§102 and 103 when the validity of a patent is challenged").  *Berkheimer* continues: "[i]n the §101 inquiry, issues of patentability— i.e., novelty and obviousness under §§102 and 103—are "of no relevance" and "[a]llegations that a claimed invention is not routine or conventional, without more, cannot wholly replace the § 101 inquiry under *Alice* steps one and two."  *Berkheimer*, 890 F.3d at 1380-81 (quoting *Diamond*, 450 U.S. at 189).

### 3.  Defendant's Arguments are Premised Upon Misstatements of the Case Law

Defendant's contention that relying on the same limitations to show an "inventive concept" under *Alice* step two as referred to under the analysis of *Alice* step one is illogical and represents a clear misunderstanding and misstatement of the law of the Federal Circuit cases cited.  *See*, Dkt. No. 62 at 15-16.

The portion of *Berkheimer* Defendant cites, excerpted herein, as well as *Genetic Techs.*, concern challenged claims that were directed to laws of nature:

"It is clear from *Mayo* that the 'inventive concept' cannot be the abstract idea itself, and *Berkheimer* and *Aatrix* leave untouched the numerous cases from this court which have held claims ineligible because the only alleged 'inventive concept' is the abstract idea. *Mayo*, 566 U.S. at 72-73 (requiring that 'a process that focuses upon **the use of a natural law** also contain *other elements* or a combination of elements, sometimes referred to as an 'inventive concept,' sufficient to ensure that the patent in practice amounts to significantly more than a patent upon **the natural law itself**' (emphasis added)). '[A] claim directed to a newly discovered **law of nature** (or natural phenomenon or abstract idea) **cannot rely on the novelty of that discovery for the inventive concept** necessary for patent eligibility; instead, the application must provide something inventive, beyond mere 'well-understood, routine, conventional activity.'' **Genetic Techs. Ltd. v. Merial LLC**, 818 F.3d 1369, 1376 (Fed. Cir. 2016) (quoting *Mayo*, 566 U.S. at 73)." *Berkheimer v. HP Inc.*, 890 F.3d 1369, 1374 (Fed. Cir. 2018) (emphasis added).

In those cases, the Federal Circuit made clear that novelty allegedly based on discovery of the law of nature claimed could not save them from falling within the judicially excepted subject matter category of natural laws. This is inapplicable to the present case which does not concern claims directed to natural laws and, further, where the inventive concept identified at step two (the use of a distributed architecture scheme in which policies are stored remotely from the controlled device) is not the same as what Plaintiff claims they are directed to at step one (systems and methods for effecting policy-based controls over communication devices).

Defendant's argument is illogical in the context of performing the *Alice* analysis, which requires the claim to be considered as a whole at step one to ascertain what it is "directed to" and that the claim be considered "as an ordered combination" at step two to identify an inventive concept manifest therein. *Berkheimer*, 890 F.3d at 1378-79. This Court apparently agrees, having already considered and rejected Defendant's argument as part of Defendant's first *Alice* motion. Dkt. No. 56 at fn. 3 ("Defendant's position fails to acknowledge that, **under Federal Circuit caselaw, the issue of the**

*placement of claimed elements in a computer system has been considered in terms of both Alice step one and Alice step two*. Therefore, Knutson's statements regarding Alice step one may be relevant to the Alice step two inquiry.") (emphasis added).

### D. Representative Claim Analysis is Inappropriate

Defendant's analysis and arguments address only claim 1 of the '371 Patent, claim 1 of the '612 Patent, and claim 27 of the '559 Patent, which are purportedly representative of all other claims in the Patents-in-Suit.  Dkt. No. 62 at 4-5.  Defendant fails to provide any meaningful analysis and relies only on citations to case law not tied to the language of the claims at issue here.  Dkt. No. 62 at fn. 3.  Oddly, the only comparison of claim limitations made by Qustodio is between claim 1 of the '612 Patent and claim 27 of the '559 Patent, which has no bearing on whether representative claims analysis is appropriate here because each of the compared claims are themselves asserted by Qustodio to be representative *of the other claims* within their respective patents.  Dkt. No. 62 at 4 and fn. 4.  Comparing their limitations to one another has no factual or legal import for determining the propriety of the representative claims analysis Qustodio suggests for deciding the present Motion.

Additionally, Defendant's seeking to shift the burden to Kajeet to show representative analysis is inappropriate without Qustodio having first provided any specific arguments or bases tracking the language of the claims.  Qustodio has been aware of Kajeet's objection to representative analysis since the prior *Alice* briefing.  Dkt. No. 43 at 11-13.  Qustodio may not wait until its reply brief in this second round of *Alice* briefing to first raise substantive arguments on this issue in an attempt to deprive Kajeet from an opportunity to respond.  To the extent Qustodio seeks to raise new arguments in its reply properly presented in its opening brief, Kajeet will seek to have them stricken and/or seek leave to file a surreply.

While Plaintiff vehemently denies that it is now obligated to show representative analysis is improper due to Defendant's failure to provide any specific factual basis in support thereof, Plaintiff nonetheless incorporates herein the arguments presented in its

Response to Qustodio's first Motion to Dismiss.  Dkt. No. 43 at 11-12.  In summary, representative claim analysis is not appropriate because the remaining independent claims of each patent include additional, different limitations which are directed to specific, alternative embodiments having differing claim scope.[6]  Each of these additional limitations are material and result in differing claim scope from the purportedly representative claims which impacts the *Alice* analysis.  Further, the dependent claims include limitations defining the type, character, and content of rules applied in a system such as those included in the dependent claims of the Patents-in-Suit have been found critical to the patent eligibility analysis.[7]  See *McRO,* 837 F.3d at 1316.

A separate *Alice* analysis is required for each claim of the Patents-in-Suit.  The Court should not extend Defendant's arguments to any claims beyond those specifically addressed in its Motion, leaving all remaining claims undisturbed.

## E. Claim Construction may be Necessary to Determine Patent Eligibility

To the extent that the "inventive concepts" manifest in the claims are not readily apparent, construction of several claim terms may be required.  District courts have denied *Alice* motions as premature when filed before claim construction for this very reason.  *See, e.g., VaporStream*, 2017 U.S. Dist. LEXIS 32884 at *15; *Bancorp*, 687 F.3d at 1273-74 ("it will ordinarily be desirable – and often necessary – to resolve claim construction disputes prior to a § 101 analysis, for the determination of patent

---

[6] For instance, limitations directed to: (1) implementation of instructions on a non-transitory medium for controlling use of groups of computing devices over a network serviced by a service provider (*See* Dkt. No. 57-4 at claim 3; Dkt. No. 57-2 at claim 1; Dkt. No. 57-3 at claim 22); (2) use of a graphic user interface having specific features and functionality by administrators to define groups and policies (*See* Dkt. No. 57-4 at claim 22); and/or (3) routine updating of policies from a server during use (*See* Dkt. No. 57-2 at claims 13 and 22).

[7] Dependent claims of the respective purportedly representative claims are addressed to specific policy types, how they are configured, and how they are applied within the claimed systems. These further narrow the independent claims in manners that elaborate on how the claimed system operates to effect control and, as such, are not merely "insignificant pre- or post- solution activity."  They are part of the solution, itself.

PLAINTIFF'S BRIEF IN OPPOSITION TO MOTION TO DISMISS

eligibility requires a full understanding of the basic character of the claimed subject matter"). The Federal Circuit has endorsed this course of action. *Aatrix*, 882 F.3d at 1125 (reversing finding of patent ineligibility, in part, because 12(b)(6) motion granted without claim construction).

Here, Defendant has indicated that several terms within each asserted claim requires construction by the Court. *See*, Ex. A 3-6; Ex. B at 10. Additionally, Defendant's proposed constructions almost universally seek to import location-based limitations into the claims that may bear on the extent to which the distributed architecture identified as an inventive concept at step two of *Alice* is required by the asserted claims. *Id.* Defendant has taken completely opposite positions with respect to claim construction. In the context of its *Alice* briefing, Defendant states that no construction is needed in trying to save its poorly crafted and illogical parenting analogies in the face of claim construction canons that would show those analogies to be unworkable. Dkt. No. 62-2 at 20:10-15 ("We don't believe that we're – that a claim construction is required").

Defendant's inability to maintain a consistent position with regard to the proper scope and meaning of the claims at issue, at a minimum, show that Defendant's motion is not ripe.

## V.      CONCLUSION

For at least the reasons discussed herein, Qustodio's Motion cannot be granted on the present record. It should be denied in its entirety, therefore, and the challenged claims should be held to be directed to patent eligible subject matter.

DATED:  April 29, 2019             */s/ Corby R. Vowell*

                                   Brandon C. Fernald
                                   FERNALD LAW GROUP
                                   510 W. 6TH Street, Suite 700
                                   Los Angeles, California 90014
                                   Telephone:  (323) 410-0320

PLAINTIFF'S BRIEF IN OPPOSITION TO MOTION TO DISMISS

Fax:  (323) 410-0330
Email:  brandon.fernald@fernaldlawgroup.com

Attorney for Plaintiff
KAJEET, INC.

Of Counsel:
Jonathan T. Suder
Michael T. Cooke
Corby R. Vowell
Richard A. Wojcio, Jr.
FRIEDMAN, SUDER & COOKE
Tindall Square Warehouse No. 1
604 East 4th Street, Suite 200
Fort Worth, Texas  76102
Telephone:  (817) 334-0400
Facsimile:  (817) 334-0401
Email:  jts@fsclaw.com
Email:  mtc@fsclaw.com
Email:  vowell@fsclaw.com
Email:  wojcio@fsclaw.com

PLAINTIFF'S BRIEF IN OPPOSITION TO MOTION TO DISMISS

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 29th day of April, 2019, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Central District of California, Western Division, using the electronic case filing system of the court.  The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

*/s/ Corby R. Vowell*
Corby R. Vowell

PLAINTIFF'S BRIEF IN OPPOSITION TO MOTION TO DISMISS