Douglas Q. Hahn (SBN: 257559)
  dhahn@sycr.com
Salil Bali (SBN: 263001)
  sbali@sycr.com
STRADLING YOCCA CARLSON & RAUTH, P.C.
660 Newport Center Drive, Suite 1600
Newport Beach, CA 92660
Phone: 949-725-4000
Facsimile: 949-725-4100

Manish Mehta (admitted pro hac vice)
  mmehta@beneschlaw.com
Lowell D. Jacobson (admitted pro hac vice)
  ljacobson@beneschlaw.com
Zaiba Baig (admitted pro hac vice)
  zbaig@beneschlaw.com
BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP
333 West Wacker Drive, Suite 1900
Chicago, IL 60606
Telephone: 312-212-4949
Facsimile: 312-767-9192

*Attorneys for Defendant*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| KAJEET, INC.,<br><br>Plaintiff,<br><br>v.<br><br>QUSTODIO, LLC,<br><br>Defendant. | Case No. 8:18-cv-01519-JAK-PLA<br><br>**The Honorable John A. Kronstadt**<br><br>**QUSTODIO'S REPLY MEMORANDUM OF POINTS & AUTHORITIES IN FURTHER SUPPORT OF ITS MOTION TO DISMISS FIRST AMENDED COMPLAINT PURSUANT TO FRCP 12(b)(6)**<br><br>HEARING DATE: June 24, 2019<br><br>TIME: 8:30 a.m. |

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ............................................................................................ 1

II. KAJEET MISCONSTRUES THIS COURT'S PRIOR RULING AND SEEKS TO CREATE A FACTUAL DISPUTE VIA *IPSE DIXIT*. ........................................................................................................... 1

III. KAJEET HAS FAILED TO SHOW THAT REPRESENTATIVE CLAIMS ANALYSIS IS INAPPROPRIATE HERE ............................. 3

IV. KAJEET HAS FAILED TO REBUT THAT CLAIMS ARE DIRECTED TO AN ABSTRACT IDEA AT *ALICE* STEP ONE. ......... 4

    A. The "Improvements" are not Identified in the Intrinsic Record ................................................................................................. 5

    B. *ENFISH* and its Progeny Do Not Apply to These Generic Claims. ................................................................................................ 5

    C. Lack of Total Preemption Does Not Suffice at *Alice* Step One. ... 6

V. KAJEET FAILS TO IDENTIFY ANY INVENTIVE CONCEPT RECITED IN SPECIFIC LIMITATIONS AT *ALICE* STEP TWO. ..... 7

VI. KAJEET'S INVOCATION OF WAIVED CLAIM CONSTRUCTION ARGUMENTS CANNOT PRECLUDE DISMISSAL UNDER RULE 12(B)(6) BECAUSE THERE IS NO DISPUTE. ............................................................................................. 10

VII. CONCLUSION .............................................................................................. 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
  882 F.3d 1121 (Fed. Cir. 2018) ................................................................ 4, 5, 10

*Affinity Labs of Tex., LLC v. DIRECTV, LLC*,
  838 F.3d 1253 (Fed. Cir. 2016) ............................................................................ 7

*Alice Corp. v. CLS Bank*,
  573 U.S. 208 (2014) .............................................................................. *passim*

*Ancora Techs., Inc. v. HTC Am., Inc.*,
  908 F.3d 1343 (Fed. Cir. 2018) ....................................................................... 5, 6

*Ariosa Diagnostics, Inc. v. Sequenom, Inc.*,
  788 F.3d 1371 (Fed. Cir. 2015) ............................................................................ 7

*Athena Diagnostics, Inc. v. Mayo Collaborative Servs.*,
  915 F.3d 743 (Fed. Cir. 2019) .............................................................................. 2

*BASCOM Global Internet Servs. v. AT&T Mobility LLC*,
  827 F.3d 1341 (Fed. Cir. 2016) ....................................................................... 6, 8

*Berkheimer v. HP Inc.*,
  881 F.3d 1360 (Fed. Cir. 2018) ............................................................................ 3

*Berkheimer v. HP Inc.*,
  890 F.3d 1369 (Fed. Cir. 2018) ....................................................................... 5, 8

*BSG TECH LLC v. Buyseasons, Inc.*,
  988 F.3d 1281 (Fed. Cir. 2018) .................................................................. 7, 8, 9

*buySAFE, Inc. v. Google, Inc.*,
  765 F.3d 1350 (Fed. Cir. 2014) ............................................................................ 1

*Content Extraction & Transm'n LLC v. Wells Fargo Bank*,
  776 F.3d 1343 (Fed. Cir. 2014) ............................................................................ 5

*ENFISH, LLC v. Microsoft Corp.*,
  822 F.3d 1327 (Fed. Cir. 2016) ............................................................................ 5

*Finjan, Inc. v. Blue Coat Sys.*,
  879 F.3d 1299 (Fed. Cir. 2018) .................................................................... 5, 6

*Glasswall Sols. Ltd. v. Clearswift, Ltd.*,
  754 F. App'x 996 (Fed. Cir. 2018) ............................................................ 2, 6, 8

*Mortgage Grader, Inc. v. First Choice Loan Servs.*,
  811 F.3d 1314 (Fed. Cir. 2016) ................................................................ 2, 8, 10

*Return Mail, Inc. v. USPS*,
  868 F.3d 1350 (Fed. Cir. 2017) ............................................................................ 7

*Secured Mail Sols. LLC v. Universal Wilde, Inc.*,
  169 F. Supp. 3d 1039 (C.D. Cal. 2016) (Carter, J.) ............................................. 1

*Smart Sys. Innovations, LLC v. Chicago Transit Auth.*,
  873 F.3d 1364 (Fed. Cir. 2017) ............................................................................ 7

*Sound View Innovations, LLC v. Hulu, LLC*,
  No. LA CV17-04146 ............................................................................................ 5

*Strikeforce Techs. v. SecureAuth Corp.*,
  No. LA CV17-04314 ............................................................................................ 9

*Trading Techs. Int'l, Inc. v. IBG LLC*,
  No. 2017-2323, 2019 WL 1907236 (Fed. Cir. Apr. 30, 2019) ........................... 9

*Visual Memory LLC v. NVIDIA Corp.*,
  867 F.3d 1253 (Fed. Cir. 2017) ...................................................................... 5, 6

**Other Authorities**

Rule 12(b)(6) .............................................................................................. 2, 10

## I. INTRODUCTION

Kajeet's FAC remains deficient because the bases it alleges for patent eligibility are unmoored from the intrinsic evidence. Kajeet concedes that the Patents-in-Suit are directed towards "policy-based controls over communication devices" (Opp. at 12:17–18), which has been repeatedly held to be an abstract idea at *Alice* step one. Kajeet also fails to address that the Patents-in-Suit neither recite nor disclose any inventive concept *significantly beyond* merely implementing that abstract idea over a computer network as is required to survive *Alice* step two.[1] Kajeet again fails to identify with any particularity any specific technical solution other than to apply its abstract idea over a computer network. Rather Kajeet's Opposition (Dkt. 64, "Opp.") misconstrues this Court's prior ruling and improperly seeks to fill those gaping holes in the patents by parroting conclusory *ipse dixit* from a declaration stapled to the FAC. This manufactured effort to survive Qustodio's *Alice* challenge is precisely the type of implausible conclusion that the Court should disregard on this Motion to Dismiss. *Secured Mail Sols. LLC v. Universal Wilde, Inc.*, 169 F. Supp. 3d 1039, 1043–44 (C.D. Cal. 2016) (Carter, J.) (citing *Iqbal* & *Twombly*).

## II. KAJEET MISCONSTRUES THIS COURT'S PRIOR RULING AND SEEKS TO CREATE A FACTUAL DISPUTE VIA *IPSE DIXIT.*

Contrary to Kajeet's assertion, this Court *did not* rule that the Declaration satisfied both steps of the *Alice* test. (Opp. at 1:6–9). According to Kajeet, its prior complaint was dismissed on purely procedural grounds, namely that it failed to attach the Knutson Declaration to its pleading. Not so. This Court ordered Kajeet to "file an amended pleading that includes express, factual allegations consistent with the patent intrinsic record that support its position under both steps of Alice." (Dkt. 56 at 8) (*citing Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1126–27 (Fed. Cir. 2018). Kajeet ignored the Court's order, mirrored

---

[1] *Alice Corp. v. CLS Bank*, 573 U.S. 208, 223–26 (2014); *see buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014) (computers communicating over a network "is not even arguably inventive").

verbatim the conclusory allegations of the Knutson Declaration, and now declares that it has shown that the claims of the Patents-in-Suit survive *Alice*. Not so.

The problem with Kajeet's approach is that the FAC is entirely premised upon the conclusory Knutson Declaration, not based on allegations consistent with or contained in the intrinsic record. Kajeet argues that by incorporating the Knutson Declaration into the FAC as an exhibit, it must be accepted as true and considered in a light most favorable to Kajeet. (Opp. at 8:25–9:2). But the question of patentability is a question of law, and the Court should not accept as true conclusory or self-serving allegations of patent eligibility when deciding a Rule 12(b)(6) motion. *Athena Diagnostics, Inc. v. Mayo Collaborative Servs.*, 915 F.3d 743, 755 (Fed. Cir. 2019) (recognizing that district court need not "consider the allegations in the expert declaration because they were not consistent with the complaint read in light of the '820 patent" in invalidating claims under § 101).[2]

The Knutson Declaration does nothing to solve Kajeet's invalidity woes. Its testimony is not premised upon any language found within the claims or the specification of the Patents-in-Suit, and thus fails to comply with the Court's order that Kajeet amend its pleading with "express, factual allegations consistent with the patent intrinsic record that support its position under both steps of *Alice*." (Dkt. 56 at p. 8). Of the substantive portions of the Knutson Declaration that Kajeet incorporated in the FAC, ¶¶16–17 describe the prior art. Kajeet's "distributed architecture scheme" is described at a high level in ¶18 without reference to the Patents-in-Suit or their claims, and ¶¶19–20 speak broadly and generally about the Patents-in-Suit and the contents of their specification, untethered to the claims. The

---

[2] *See also Mortgage Grader, Inc. v. First Choice Loan Servs.*, 811 F.3d 1314, 1326 (Fed. Cir. 2016) (expert declarations were insufficient to create genuine issue of material fact as to patent eligibility where the purported assertions about problem solving were absent from the language of the claims themselves); *Glasswall Sols. Ltd. v. Clearswift, Ltd.*, 754 F. App'x 996, 998–99 (Fed. Cir. 2018) (expert declaration opining on the benefits of the claimed invention did not preclude dismissal when claims that failed to recite how the inventive concept worked).

claims are addressed topically in ¶¶21–23,[3] which opine that they capture the "distributed architecture arrangement" and confine it to a particular technical field (addressing the pure legal issue of *Alice* step one). Then ¶24 summarizes the prior three paragraphs and asserts without explanation that the claims are directed to "improvements" to computer systems inherent to using the internet to remotely store device usage policies. The declaration ignores the "inventive concept" of any individual claim limitation, and instead only addresses the claims *as a whole*, "*considered* as an ordered combination of elements" in ¶29, but does not identify any limitations (let alone their combination or order) that impart an inventive concept. And ¶30 avers a concluding opinion that the general arrangement meaningfully limits claim scope. Lacking entirely in both the Knutson Declaration and the FAC that parrots it is the required identification of particular claim limitations and explanation of their import to the invention.

Even more troubling here, the Knutson Declaration asserts that the purportedly inventive concept of remote storage is a requirement "implicit" in the claims. (Dkt. 57-5, ¶21). This contradicts the FAC, which alleges that the Patents-in-Suit "generally disclose[] and claim[] . . . policies which … <u>may be</u> stored remotely from the controlled computing device" (*see* FAC ¶¶38, 54, 71) (emphases added). Kajeet wholly fails to explain this discrepancy anywhere in its Opposition, demonstrating why the conclusory Knutson Declaration should be disregarded.

### III. KAJEET HAS FAILED TO SHOW THAT REPRESENTATIVE CLAIMS ANALYSIS IS INAPPROPRIATE HERE

Kajeet baldly concludes that the limitations at issue for other independent claims, referred to collectively in exemplary fashion, "are material" and "result in different claim scope." (Opp. at 24:1–6). Kajeet argues that Qustodio has failed to allege that representative claim analysis is appropriate and thus seeks to improperly "shift the burden to Kajeet" to show that representative claim analysis is appropriate. But that burden is properly on Kajeet. *Berkheimer v. HP Inc.*, 881 F.3d

---
[3] ¶¶21-22 do not cite any claim language, but instead summarize selected portions.

1360, 1365 (Fed. Cir. 2018) (claim may be treated as representative "if the patentee does not present any meaningful argument for the distinctive significance" of other claim limitations). Kajeet fails to raise any new arguments and merely incorporates the deficient arguments from its original Response to Qustodio's first Motion to Dismiss. (Dkt. 43). Kajeet's "analysis" argues that each claim includes additional or different limitations but omits the specific claim language alleged to be dispositive, and fails for that reason alone.[4] (*See id*. at 17:19–18:18). Kajeet simply asserts, with no showing relevant to the inquiry at *Alice* step one, that these unidentified additional limitations are material and result in differing claim scope. This is insufficient for Kajeet to carry its burden.

## IV.  KAJEET HAS FAILED TO REBUT THAT CLAIMS ARE DIRECTED TO AN ABSTRACT IDEA AT *ALICE* STEP ONE.

Kajeet concedes that the claims are directed to "policy-based controls over communication devices." (Opp. at 12:17–18). In other words, the claims are directed to access control, a concept repeatedly held to be abstract at *Alice* step 1.[5] To the extent that Kajeet argues, at *Alice* step one, that the claims as a whole "require remote storage of usage policies," (*e.g.*, Opp. at 19:3–14), Kajeet has also identified "remote storage" as the purportedly inventive concept at *Alice* step two, and it cannot be both. *See* Mot. at 23. Whether directed to policy-based controls alone or also requiring remote policy storage, the idea remains abstract. *Id.* Moreover, as *Alice* step one (like the *Alice* inquiry as a whole) is itself a legal issue,[6] the conclusory statements in the FAC should not be credited: they are either irrelevant factual allegations or legal conclusions properly for the Court to decide.

---

[4] Kajeet's reliance on *McRO* is misplaced; the court treated claim 1 as representative, without dispute that "neither the different text of the other independent claims nor the added limitations of the dependent claims in either patent affected the result regarding patentability." *See* 837 F. 3d 1299, 1307 & n.3.
[5] *See* Dkt. 62 at 10:16-11:14, citing cases confirming that access control is abstract.
[6] Claim construction and scope-of-the-art disputes aside, Qustodio has been unable to locate authority crediting factual allegations in the pleadings or expert testimony is at all relevant at *Alice* step one. Rather, it is only at step two that the asserted unconventionality of the limitations effecting the purportedly inventive concept *may* present factual issues. *Aatrix*, 890 F.3d at 1359.

### A. The "Improvements" are not Identified in the Intrinsic Record

Kajeet's identification of "advantages" and/or "improvements" that it alleges render the "policy-based controls" non-abstract should be rejected as pure attorney argument not identified in the intrinsic record as the Court required. (Dkt. 56 at 8).

For example, Kajeet seems to assert that these policy-based controls involve accessing some features when others are disabled. (Opp. at 12:23–13:14). This "requirement" or "improvement" is absent from the claims themselves and Kajeet fails to identify where (if anywhere) in the specification such "improvements" are identified or asserted. Such claims should be rejected for non-compliance with this Court's Order. Likewise, the claimed "improved effectiveness" *from the distributed architecture* is not recited in the claims nor asserted anywhere in the specification and as such, should be rejected. Such conclusory allegations fail to "explain[] in detail how the invention achieves the improvements," and should be ignored on a motion to dismiss. *Contra Berkheimer v. HP Inc.*, 890 F.3d 1369, 1372 (Fed. Cir. 2018) (elaborating that the *Aatrix* complaint only survived 12(b)(6) because it explained exactly *how* alleged improvements were achieved).

### B. *ENFISH* and its Progeny Do Not Apply to These Generic Claims.

Kajeet argues that the above-alleged "improvements" are the sort of claims recently held to be patent-eligible at *Alice* step one in *Ancora* and *Visual Memory* as being directed to "<u>specific improvement[s]</u> to the way <u>computers operate</u>." *See ENFISH, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1336–37 (Fed. Cir. 2016) (emphases added). But "an improvement to computer functionality itself" must enable a system "to do things it could not do before," not merely perform "familiar tasks with greater speed and efficiency," *Finjan, Inc. v. Blue Coat Sys.*, 879 F.3d 1299, 1305 (Fed. Cir. 2018) or "well-understood, routine, [and] conventional activities previously known to the industry," *Content Extraction & Transm'n LLC v. Wells Fargo Bank*, 776 F.3d 1343, 1347–48 (Fed. Cir. 2014).[7] But neither the

---

[7] *See also Sound View Innovations, LLC v. Hulu, LLC*, No. LA CV17-04146 JAK

FAC nor the Opposition identifies any such specific improvements[8] in the intrinsic record of the claims and the common specification of the Asserted Patents.

Despite its refrain that the claims are directed to an "improvement" (Opp. at 13:15–15:7), Kajeet again fatally fails to identify any such language in the actual claim recitation. Kajeet's alleged improvements, including "application in real-time," are merely the enhanced efficiency benefits inherent to the use of modern computer and networking technology that the Federal Circuit rejected as insufficient as a matter of law in *Finjan*. Likewise, as explained above, the Patents-in-Suit recite no such specific technological improvements, and neither the FAC, Kajeet, nor its expert explains *why* or *how* "remote storage" of the policies allegedly "effecting policy-based controls over communication devices" provides any improvement beyond what was known in the art.[9] (Opp. at 12:17–13:14). This failure, again, is fatal at *Alice* step one. *See Glasswall*, 754 F. App'x at 999 (Fed. Cir. 2018) (failure to recite "how" steps were performed made claims abstract).

### C. Lack of Total Preemption Does Not Suffice at *Alice* Step One.

Kajeet argues that the claims' survival does not preempt "the greater concept of effecting device management through selective access to features/content."

---

(PLAx) (Apr. 30, 2019) (Kronstadt, J.) (combining operators in a certain way with a known data structure was not a patent-eligible technological improvement).

[8] Claims passed muster when the patent disclosed "a specific technique that departs from earlier approaches to solve a specific computer problem," which "*specifically* identif[ied] how that functionality improvement is effectuated in an assertedly unexpected way" by a licensing record stored in a "*particular,* modifiable, non-volatile portion of the computer's BIOS, and the structure in that memory location [wa]s used for verification by interacting with the distinct computer memory that contains the program to be verified." *Ancora Techs., Inc. v. HTC Am., Inc.*, 908 F.3d 1343, 1348–49 (Fed. Cir. 2018) (emphases added). Similarly, claims reciting a memory system "having one or more programmable operational characteristics, said characteristics being defined through configuration by said computer based on the type of said processor," and "determin[ing] a type of data stored by said cache," survived because the specification identified multiple benefits from using that system that were a vast improvement over the capabilities of prior art. *Visual Memory LLC v. NVIDIA Corp.*, 867 F.3d 1253, 1259 (Fed. Cir. 2017).

[9] To the contrary, using a server to simultaneously apply usage policies to multiple devices in real-time was well-known to "improve security" in the industry by 1997, over a decade before the Patents-in-Suits' priority date. *BASCOM Global Internet Servs. v. AT&T Mobility LLC*, 827 F.3d 1341, 1343–44 (Fed. Cir. 2016).

(Opp. at 15:16–18.) But this ignores black-letter law that the "absence of complete preemption does not demonstrate patent eligibility," because "preemption concerns are fully addressed and made moot" if a claim is directed to an abstract idea. *E.g.*, *Return Mail, Inc. v. USPS*, 868 F.3d 1350, 1370 (Fed. Cir. 2017); *Ariosa Diagnostics, Inc. v. Sequenom, Inc.*, 788 F.3d 1371, 1379 (Fed. Cir. 2015).[10]

## V. KAJEET FAILS TO IDENTIFY ANY INVENTIVE CONCEPT RECITED IN SPECIFIC LIMITATIONS AT *ALICE* STEP TWO.

Qustodio has shown that the Patents-in-Suit fail to impart an inventive concept to the abstract idea of access control, and simply employ that idea over a generic computer network. In its Opposition, Kajeet has failed to identify *what* the specific "distributed architecture" and/or "specific solution" allegedly found within the Patents-in-Suit are, *where* they are located within the claim language, and *why* or *how* they are inventive other than because its expert says so without explanation.

Step two of *Alice* requires the court to "look with more specificity at what the additional claim elements add, in order to determine 'whether they identify an "inventive concept" in the application of the ineligible subject matter' to which the claim is directed." *Affinity Labs of Tex., LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1258 (Fed. Cir. 2016). "[T]he relevant inquiry is *not* whether *the claimed invention as a whole* is unconventional or non-routine," but "what else is there in the claims before us?" *See BSG TECH LLC v. Buyseasons, Inc.*, 988 F.3d 1281, 1290 (Fed. Cir. 2018) (cleaned up and emphases added). Kajeet has not provided that answer.

As shown in Qustodio's opening Motion, the FAC and the Knutson Declaration it parrots both fail to identify any particular claim limitations, whether individually or in combination, that do "significantly more" than merely implement

---

[10] Arguing that Qustodio's analogy omits certain specific limitations (Opp. at 16:10–17:8) is irrelevant: "Under *Alice* step one, 'claims are considered in their entirety to ascertain whether *their character as a whole is directed to excluded subject matter*.'" *Smart Sys. Innovations, LLC v. Chicago Transit Auth.*, 873 F.3d 1364, 1371 (Fed. Cir. 2017) (emphasis added). By contrast, the individual limitations are the focus of *Alice* step two. *See id.* at 1373–74. Because they do not affect "the character of the claims as a whole," they are irrelevant at *Alice* step one.

the abstract idea of access control over a generic computer network as needed to impart any inventive concept. Kajeet's Opposition offers no more specificity, referring only to the claims as a whole throughout,[11] and never to any limitations either individually or in combination. Neither does the FAC nor the Knutson Declaration identify any such limitations, whether individually or in combination; they instead incorrectly address the allegedly "inventive concept" that "the claims as a whole, considered as an ordered combination . . . comprise." (FAC ¶¶ 43, 59, 76; *see* Dkt. 57-5 ¶ 29.) Kajeet has failed to show that there is *anything* else in the claims before the court as is required to survive at *Alice* step two. *BSG* at 1290–91.

Kajeet argues that an unidentified "component arrangement required by the challenged claims using remote storage policy in the context of feature management" is an "improvement in the operation of mobile communication device control systems." (Opp. at 19:21–20:2). But Kajeet and its expert fail to specify *what* the purportedly inventive component arrangement is, a fatal defect at *Alice* step two. *Berkheimer*, 890 F.3d at 1372; *Mortg. Grader*, 811 F.3d at 1326; *Glasswall*, 754 F. App'x at 999; *Ameranth*, 842 F.3d at 1241. At best, Kajeet has argued that the general idea of storing policies remotely from managed device imparts an inventive concept to the abstract idea of "policy-based controls." But such broad assertions are insufficient for Kajeet to meet its *Alice* step two burden. *BASCOM*, 827 F.3d at 1348 ("specific improvements" to computer technology recited in claims must "go beyond well-understood, routine, conventional activities" to impart inventive concept).

Kajeet relies again on its expert to argue in general and conclusory terms (Opp. at 25:12–26:2) that the "distributed architecture arrangement" inherent to the claims was "unconventional." Kajeet's expert, in turn, asserts that storing usage policies remotely from managed devices was "unconventional" and thus yielded "improvements" in system operation. (Dkt. 57-6 ¶ 29). But this elides what was

---

[11] Opp. at 25:16–18, 25:21–23, 25:27–26, 27:4–6.

"unconventional" about the requirement, which limitations in what order implement it, and how it "improved" anything in the art. It is pure *ipse dixit*.

No such explanation is provided because one could not be credibly made, once the abstract idea ("policy based controls over communication devices") is separated from the additional limitations (the "distributed architecture requiring remote policy storage") as *Alice* step two requires.[12] So to say that the use of the "distributed architecture" that requires remote policy storage is innovative is tantamount to claiming that in 2005, using a computer network to store information remotely was somehow "unconventional." This explanation—the only way that Kajeet's *Alice* step two argument logically holds together—is facially implausible.

Storing information (including policies) remotely from computing devices is the natural, conventional, logical, and routine use of computer networking technology. So while Kajeet identifies such generic components used for their conventional purposes of storing certain things remotely, that does not suffice at *Alice* step two. *Strikeforce Techs. v. SecureAuth Corp.*, No. LA CV17-04314 JAK (SKx), 2017 WL 8808122, at *7 (C.D. Cal. Dec. 1, 2017) (Kronstadt, J.) ("logical and conventional" ordered combination of limitations was not inventive).

Kajeet's conclusory argument that the claims provide a "technological solution" to "a problem rooted in technology" likewise fails at *Alice* step two because it does not attempt to address the requirement to identify an "inventive concept" in the claim language or explain why the problem only resides in technology. (Opp. at 19:13–20:2). The intrinsic record confirms the core problem

---

[12] Because the use of policies to control devices is the concept identified at *Alice* step one, and the policies cannot also be part of the "inventive concept" at step two. *Trading Techs. Int'l, Inc. v. IBG LLC*, No. 2017-2323, 2019 WL 1907236, at *4 (Fed. Cir. Apr. 30, 2019) (even if novel, "a claimed invention's use of the ineligible concept to which it is directed cannot supply the inventive concept that renders the invention 'significantly more' than that ineligible concept." (citing *BSG*)). "At *Alice* step two, it is irrelevant whether" the allegedly unconventional feature "may have been non-routine or conventional as a factual matter" if it simply restates, narrows, or reformulates the abstract idea. *BSG*, 899 F.3d at 1291.

here relates instead to human behavior,[13] as the patents' "Background" section offers many scenarios for managing others' behavior, such as that of children, employees, or other types of administrator/user roles. (Dkt. 57-3 at 1:64–3:60). Kajeet's reliance on its expert declaration cannot fill this gap because the declaration fails to identify the relevant claim limitations that purportedly solve that problem or explain how they do so beyond merely implementing the "policy-based controls" over generic computer networking components. Dkt. 57-5 ¶¶ 13–15, 20–23; *see Mortg. Grader*, 811 F.3d at 1326 (expert declaration did not create factual dispute as to patent eligibility where the purported assertions about problem solving were absent from the language of the claims themselves).

## VI. KAJEET'S INVOCATION OF WAIVED CLAIM CONSTRUCTION ARGUMENTS CANNOT PRECLUDE DISMISSAL UNDER RULE 12(B)(6) BECAUSE THERE IS NO DISPUTE.

Even though it waived this issue by failing to propose such constructions or terms as the S.P.R. require (*see* Jacobson Decl. at Exs. A–B), Kajeet again asserts that claim construction "may be required" if allegedly-inventive aspects of its claims "are not readily apparent" (Opp. at 24:15–16). But this generic plea still fails to identify any actual "dispute." *See Aatrix*, 882 F.3d at 1125 (at the 12(b)(6) stage, the court must either adopt the non-movant's claim constructions or "resolve the disputes to whatever extent is needed to conduct the § 101 analysis," not deny on such basis). Because Qustodio has *accepted* Kajeet's position of an "inherent requirement" of "remote storage of policies," there is no "dispute" that requires resolution or precludes a ruling. (*See* Dkt. 64-2, 64-3.)

## VII. CONCLUSION

Qustodio respectfully requests that the Court grant its Motion with prejudice.

---

[13] That the behavior involves use of devices or accessing content is not limiting to a particular technological environment, let alone innovative. *See, e.g., Prism Techs.*, 696 F. App'x at 1016–17 (controlling access to protected computer resources was abstract because "humans similarly restrict and provide access").

| | | |
|---|---|---|
| Dated: May 6, 2019 | | STRADLING YOCCA CARLSON & RAUTH, P.C. |
| | By: | */s/ Salil Bali* |
| | | Douglas Q. Hahn |
| | | Salil Bali |
| | | *Attorneys for Defendant* |