EXHIBIT 4
TO APPLICATION TO SEAL

Douglas Q Hahn (SBN: 257559)
Salil Bali (SBN: 263001)
STRADLING YOCCA CARLSON & RAUTH, P.C.
660 Newport Center Drive, Suite 1600
Newport Beach, CA 92660
Phone: 949-725-4000
Facsimile: 949-725-4100
Email: dhahn@sycr.com
Email: sbali@sycr.com

Manish Mehta (admitted *pro hac vice*)
mmehta@beneschlaw.com
Lowell D. Jacobson (admitted *pro hac vice*)
ljacobson@beneschlaw.com
Zaiba Baig (admitted *pro hac vice*)
zbaig@beneschlaw.com
Samuel J. Ruggio (admitted *pro hac vice*)
sruggio@beneschlaw.com
BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP
71 South Wacker Drive, Suite 1500
Chicago, IL 60606
Telephone: 312-212-4949
Facsimile: 312-757-9191

*Attorneys for Defendant*
*QUSTODIO, LLC*

**IN THE UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

KAJEET, INC.,

Plaintiff,

v.

QUSTODIO, LLC,

Defendant.

Case No.: 8:18-cv-01519-JAK-PLA

**QUSTODIO, LLC's OPPOSITION TO KAJEET'S MOTION FOR LEAVE TO SUPPLEMENT ITS INITIAL INFRINGEMENT CONTENTIONS**

** REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL **

# TABLE OF CONTENTS

I. Introduction ..... 1
II. Factual Background ..... 2
III. Legal Standards ..... 3
IV. Argument ..... 3
 A. Kajeet Has Failed to Show Good Cause for the SIC's Additions ..... 3
  1. Kajeet lacked diligence in discovery and moving for leave ..... 4
   a. Kajeet's source code argument is a red herring ..... 4
   b. Kajeet did not rely on *new* non-public technical detail ..... 5
   c. The "new" information from Qustodio's Responses cited in the SIC was previously disclosed ..... 6
  2. Kajeet's own representations confirm that it was not diligent in asserting these 12 New Claims ..... 8
 B. Leave Should be Denied as Futile for Claims 13-17 ..... 9
 C. Kajeet's Ambush Assertion of 12 New Claims Prejudices Qustodio ..... 10
V. Conclusion ..... 10

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Ameranth, Inc. v. Genesis Gaming Sols.*, No. SACV 11-0189 AG, 2015 WL 10793431 (C.D. Cal. Jan. 2, 2015) .......... 4, 8

*Collaborative Agreements, LLC v. Adobe Sys. Inc.*, No. 15-CV-03853 EMC, 2016 WL 1461487 (N.D. Cal. Apr. 14, 2016), *aff'd,* 696 F. App'x 1019 (Fed. Cir. 2017) .......... 9

*Essociate, Inc. v. 4355768 Canada Inc.*, No. SACV 14-0679 JVS, 2015 WL 12745799 (C.D. Cal. Jan. 14, 2015) .......... 3

*Etagz, Inc. v. Quiksilver, Inc.*, No. SACV 10-0300 DOC, 2012 WL 2581256 (C.D. Cal. Jul. 3, 2012) .......... 3, 8, 10

*Google, Inc. v. Netlist, Inc.*, Nos. C 08-4144 SBA, C 09-5718, 2010 WL 1838693 (N.D. Cal., May 5, 2010) .......... 8

*Hemopet v. Hill's Pet Nutrition, Inc.*, No. SACV 12-1908-JLS, 2014 WL 12603093 (C.D. Cal. Sept. 3, 2014) .......... 9

*Interpols Network Inc. v. Aura Interactive, Inc.*, No. SACV 12-00832-JVS (C.D. Cal. Aug. 19, 2013) .......... 3, 4

*O2 Micro Int'l Ltd. v. Monolithic Power Sys.*, 467 F.3d 1355 (Fed. Cir. 2006) .......... 3, 5, 8

*Samsung SDI Co. v. Matsushita Elec. Indus. Co.*, No. CV 05-8493, 2006 U.S. Dist. LEXIS 97060 (C.D. Cal. Jul. 10, 2006) .......... 7

*Samsung SDI Co. v. Matsushita Elec. Indus. Co.*, No. CV 05-8493, 2006 WL 5097404 (C.D. Cal. Jun. 15, 2006) .......... 7

*Zenith Elecs., LLC v. Sceptre, Inc.*, No. LA CV14-05150 JAK (C.D. Cal. Nov. 2, 2015) .......... 3, 8

**Rules**

Fed. R. Evid. 703 .......... 7

Fed. R. Evid. 801 .......... 7

SPR 2-1 .......... 2

SPR 2-2 .......... 2

SPR 2.6.1 .......... 2

SPR 4.1.2 .......... 3, 4

18-cv-01519-JAK-PLA ii

QUSTODIO'S RESP. BR.IN OPPOSITION TO KAJEET'S MOT. FOR LEAVE TO SUPPLEMENT INFRINGEMENT CONTENTIONS

## I. INTRODUCTION

Kajeet argues that Qustodio's supplemental interrogatory responses and hard copy source code production justified amending its Preliminary Infringement Contentions ("PIC") and adding 12 new claims to this case in August 2019, almost five months after it filed its First Amended Complaint ("FAC"). Logically then, the information supporting such a late request for leave to serve the Supplemental PICs ("SIC") must have been found, *for the first time*, in both the source code production and supplemental interrogatories—i.e., it must be *new* information. None of it is "new," as is evident from the SIC. ***First***, the SIC do not cite a *single line* of the source code, completely belying Kajeet's claim that it needed hard copies before it could supplement. ***Second***, the SIC cite to information contained in Qustodio's *original* interrogatory responses (served on April 15, 2019) that is also found in the core technical documents (produced on March 11, 2019). ***Third***, to the extent the SIC cite to the supplemental interrogatory responses, they cite to the *same* information—oftentimes verbatim—from the original responses and information found in the core technical documents. ***Fourth***, Kajeet possessed of all of this "new" information when the source code was made available for inspection on March 25, 2019, which it inspected on April 10-11 and May 20-21, 2019. ***Finally***, in its *ex parte* opposition, Kajeet represented to the Court that the new independent claims are "similar to those already in the case" and the new dependent claims are "virtually identical" to those already in the case, which raises the obvious question as to why Kajeet needed any "new" information to support its infringement allegations of the new claims. Based on this set of facts, Kajeet cannot demonstrate that it was diligent discovering this "new" information *and* in moving for leave to assert these new claims when it sat on this information for four months, during which Qustodio moved again on *Alice*, served its invalidity contentions, and elected to forego filing an *inter partes* review, and the parties (and this Court) engaged in the *Markman* process. As Kajeet has not met its burden to show diligence or lack of prejudice, its motion should be denied.

## II. FACTUAL BACKGROUND[1]

On December 11, 2018, Kajeet served its SPR 2-1 and 2-2 disclosures, asserting infringement of Claims 27-28 and 30 of the '559 Patent, as well as certain claims of the '371 and '612 Patents. The PIC relied entirely on publicly available documents cited to by URL and/or description. *See* Dkt. 89-4. On March 11, 2019, Qustodio made an initial technical document production pursuant to SPR 2.6.1, which contained significant non-public technical information about the accused functionality (both iOS and non-iOS). Jacobson Declaration ¶ 1 & Ex. A. On March 14, 2019, Kajeet served its First (and to date, only) set of Interrogatories, *id.* ¶ 3, to which Qustodio responded on April 15, 2019. *Id.* ¶ 3 & Ex. B.

In the interim, Qustodio sent Kajeet's counsel detailed correspondence on March 18, 2019, extensively quoting portions of its SPR 2.6.1 production to address Kajeet's continued misapprehension of the accused functionality set forth in the FAC. *Id.* ¶ 4 & Ex. C. For non-iOS devices, the letter explained that decisions are generated on the devices themselves based on policies stored on the devices. *Id.*

On March 25, 2019, Qustodio made the entirety of its source code available for inspection by Kajeet under SPR 2.6.1. Dkt. 96-1 ¶ 9. Kajeet first inspected the code on April 10-11, 2019, and conducted a second inspection on May 20-21, 2019, both by its counsel Rich Wojcio.[2] *Id*. Despite indicating that it would come out for a third inspection in early June (and requesting a second source code inspection computer), Kajeet's counsel did not do so at that time or since. Jacobson Decl. ¶ 5.

Notwithstanding the numerous meet-and-confers and hearings before this Court, Kajeet's surprise service of the SIC on August 1, 2019 was the first time that Kajeet notified Qustodio that it planned to assert new claims of any Patent-in-Suit.

[1] A fuller procedural history of Kajeet's assertion of only Claims 27, 28, and 30 of the '559 Patent is set forth in Qustodio's *ex parte* application. Dkt. 96 at 1:1-2:9.

[2] Mr. Wojcio requested hard copies of certain source code files in their entirety following each inspection. Dkt. 96-1 ¶ 9. Shortly after receiving such requests, Qustodio's counsel responded in writing, acknowledging the requests and asking for the SPO § 5.3 purpose for which the hard copies were reasonably necessary. *Id.* ¶ 10. Kajeet's counsel simply ignored those requests. *Id.* ¶ 11. Once Kajeet finally articulated its "need" for hard copies, Qustodio readily provided them. *Id*. ¶ 13.

## III. LEGAL STANDARDS

"[A] party may amend its preliminary infringement contentions 'only by order of the Court upon a timely showing of good cause.'" *Essociate, Inc. v. 4355768 Canada Inc.*, No. SACV 14-0679 JVS, 2015 WL 12745799 at *2 (C.D. Cal. Jan. 14, 2015) (citing N.D. Cal. Pat. L.R. 3-6). Here, Kajeet claims that it has good cause for its assertion of 12 New Claims based on its "new, non-public information about the operation of the Accused Products when implemented on computing devices implemented with the Andriod [*sic.*] and iOS operating systems . . . that was neither publicly available nor produced at an earlier time in this case." Dkt. 89 at 9.

To establish good cause based on new "*nonpublic* information about the Accused Instrumentality that was not discovered, despite diligent efforts" beforehand (SPR 4.1.2), "[t]he moving party must show not only that it was diligent in moving to amend its preliminary infringement contentions, but also that it was diligent in discovering the basis for the proposed amendment." *Interpols Network Inc. v. Aura Interactive, Inc.*, No. SACV 12-00832-JVS, slip op. at 2 (C.D. Cal. Aug. 19, 2013) (cleaned up); *see O2 Micro Int'l Ltd. v. Monolithic Power Sys.*, 467 F.3d 1355, 1363 (Fed. Cir. 2006). "The *burden is on the movant to establish diligence* rather than on the opposing party to establish a lack of diligence." *O2 Micro* at 1366 (emphasis added). Only once the movant has established diligence on both fronts need the Court consider whether potential prejudice warrants denial of leave. *See Zenith Elecs., LLC v. Sceptre, Inc.* No. LA CV14-05150 JAK, slip op. at 2 (C.D. Cal. Nov. 2, 2015). Again, it is the movant who must "demonstrate that the addition of the claims in question would be harmless." *Etagz, Inc. v. Quiksilver, Inc.*, No. SACV 10-0300 DOC, 2012 WL 2581256, at *2 (C.D. Cal. Jul. 3, 2012).

## IV. ARGUMENT

### A. Kajeet Has Failed to Show Good Cause for the SIC's Additions

The verification of interrogatory responses and production of hard copies of source code do not justify the departures from the PIC because the SIC does not rely

on new, previously undisclosed information.[3] Thus, Kajeet must show that it was not only diligent in seeking to uncover the allegedly new information, but that it was also diligent in seeking leave to assert claims on such basis. *Interpols*, slip op. at 2. Kajeet's arguments, conduct, and SIC confirm that it was not diligent in either way.

***1. Kajeet lacked diligence in discovery and moving for leave***

Kajeet claims that its addition of new claims was justified by the purportedly new information found in the source code and the supplemented interrogatory responses. Dkt. 89 at 9. However, the SIC's failure to cite to any new information drawn from the source code hard copies or first provided in the supplemental responses contained in these establishes that Kajeet was neither diligent in (a) uncovering the "new" information *nor* (b) moving for leave to assert New Claims.

**a. Kajeet's source code argument is a red herring**

The most glaring disconnect between Kajeet's justification to amend and the substance of its supplementation relates to the hard copies of the source code that it purportedly required in order for this supplementation to occur. Amazingly, not once in Kajeet's SIC for the '559 Patent is there even one citation to a single line of any source code module. This glaring absence in the SIC seriously undermines Kajeet's excuse that the production of hard copies of inspected source code modules was somehow necessary. Thus, Kajeet's claim that the purported delay in the production of hard copies of source code justifies its tactically belated supplementation is merely a sideshow belied by the utter failure of SIC to cite to any such code.[4]

Even if Kajeet required a *review* of the source code to supplement its PIC, Kajeet certainly did not have to wait until hard copies *were produced* to do so. Qustodio's source code has been available since March 25, 2019, at which point all

[3] The Court's tentative rulings on *Alice* and *Markman* fail to provide good cause for Kajeet to assert 12 new claims. Dkt. 89 at 5:5-12. Although the Orders remain outstanding, the Court tentatively construed the disputed terms in Kajeet's favor, which thus provides no basis to depart from Kajeet's PIC. *See* SPR 4.1.2.

[4] *See Ameranth, Inc. v. Genesis Gaming Sols.*, No. SACV 11-0189 AG, 2015 WL 10793431 at *3 (C.D. Cal. Jan. 2, 2015) (striking claims from final contentions because "Ameranth insufficiently shows that information gathered concerning Provante provide good cause for adding eight claims to the FIC, especially when a significant portion of the amendments do not rely on Provante information").

information therein was constructively available to Kajeet. Dkt. 96-1 ¶9. Kajeet waited nearly three weeks to actually inspect the source code, which it conducted via its counsel on April 10-11, 2019 and May 20-21, 2019. *Id*. Given the lack of any citation to the hard copies, Kajeet's failure to explain why the inspection of the source code *itself* was insufficient to justify adding new claims speaks volumes.[5]

Nor did Kajeet indicate that it *might* add new claims or follow up in any meaningful way after its inspections to diligently develop its understanding of Qustodio's source code or seek to utilize other resources and discovery procedures that were readily at hand to assess whether it had basis for the SIC.[6] Kajeet did not (and has not) sought to depose any Qustodio personnel, whether as individuals or corporate designees, to further understand the accused products or the source code. And Kajeet did not propound any discovery, such as RFAs or Interrogatories, directed to whether there was any basis for adding such claims. These inexplicable failures bely any claims by Kajeet that it was diligent in seeking to discover such information or why it failed to do so beforehand.

**b. Kajeet did not rely on *new* non-public technical detail**

Even if they cite to different content, the SIC rely on no new *information*. Other than the citation to Qustodio Interrogatory Responses (discussed below), the only substantive information in support of the SIC added seems to relate to Mobile Device Management ("MDM") aspect of iOS. Dkt. 92-2 at, *e.g.*, 63-66. But the same information was also available to Kajeet from the beginning of this case. Not only do the SIC confirm that information about this functionality was available to Kajeet as of June 2017, *see* Dkt. 92-2 at 69, but the PIC also expressly identify MDM as infringing functionality. *See* Dkt. 89-4 at 55. Kajeet has not met this burden to

[5] *See O2 Micro*, 467 F.3d at 1369-70 (affirming denial of leave to amend infringement contentions where the party seeking to amend had the necessary discovery almost three months before moving for leave).

[6] Kajeet cannot claim that it required hard copies for its expert Dr. Knutson to review because despite having been retained by Kajeet as of early December 2018 (*see* Dkt. 43-2), he was only disclosed six days before service of the SIC. This means that the hard copies could only have been reviewed by Kajeet's counsel—who already reviewed the code during the four-day inspection—during the relevant time period when they were purportedly being "diligently analyzed." *See* Dkt. 89 at 9:4-10:16.

explain why it could not have identified the same basis for asserting the New Claims.

**c. The "new" information from Qustodio's Responses cited in the SIC was previously disclosed**

Kajeet also relies on the purportedly "new" information contained in Qustodio's supplemental interrogatory responses as justification to add the New Claims at this stage. Dkt. 89 at 9-10 & nn. 6-8. Kajeet cannot show diligence because the substance of the information relied upon in the SIC was previously disclosed to Kajeet much earlier in the case. As illustrated in the chart below, the purportedly "new" evidence in the supplemental responses 1 and 5 was actually disclosed—almost verbatim—in the original responses served on April 15, 2019:

| Kajeet's "New Evidence" Cited in SIC[7] | Original Rog Resp. (Apr. 15, 2019) |
|---|---|
| [redacted] | [redacted] |

*See* Jacobson Decl. ¶ 6 & Ex. D[8] (emphases added to Responses).

[7] The cited portions were highlighted by Kajeet in its August 1, 2019 SICs. All citations to the Interrogatory Responses are to Qustodio's Supp'l Resps. & Objections to Kajeet's Interrogatories, served on July 5, 2019 (Dkt. 92-1).

[8] Exhibit D provides a more fulsome comparison of the Responses and other citations

In view of the foregoing, Kajeet cannot establish that the excerpts of the supplemental interrogatory responses relied upon in the SIC are new *information* that was previously undisclosed prior to July 2019. Knowing this, Kajeet claims that lack of a verification justifies its delay in marshaling this information. Dkt. 89 at 9-10, n.9. But that excuse is inapplicable to Kajeet's review of this same information in March 2019 when it received the production of core technical documents and during the April and May 2019 source code inspections. Verifications aside, Kajeet received the initial responses and the information therein as of April 15, 2019, and could have engaged in discovery including depositions, RFAs or additional interrogatories to verify or follow-up on the responses. Kajeet has done none of that.

Further, it is disingenuous for Kajeet to argue that verification was required before it could even *notify* Qustodio or the Court by the July 15, 2019 hearing of its intention to add claims. If the lack of verification were any real issue,[9] there is nothing diligent about Kajeet's failure to even *raise* it until June 11, 2019, nearly two months later. Dkt. 89-6 § I. Kajeet is incorrect that some need for "citable evidence" justifies its waiting until after *Alice* and *Markman* to *assert* these 12 claims. Dkt. 89 at 9-10, n.8. "[T]he plaintiff is not, however, required to produce evidence of infringement . . . or to provide evidentiary support for its contentions,"[10] *Samsung SDI Co. v. Matsushita Elec. Indus. Co.*, No. CV 05-8493, 2006 U.S. Dist. LEXIS 97060 at *5-6 (C.D. Cal. Jul. 10, 2006) (cleaned up); *see* 2006 WL 5097404 at *1 (Jun. 15, 2006) (PICs "are an initial discovery device and do not require the plaintiff to set forth evidence proving their claims."). Thus, despite Kajeet's claim to the contrary, neither the PIC nor SIC are limited to such "citable evidence."[11]

---

to the same information in the March 11, 2019 Core Technical Production and the March 18, 2019 letter explaining the details of Qustodio's accused instrumentality.

[9] Kajeet's argument that the SIC were justified by a more fulsome explanation of the differences between products, Dkt. 89 at 9:7-10:6 & n.7, is unavailing, and fails to explain what was missing previously or how this supports the additions in the SIC.

[10] Regardless, statements from Qustodio's counsel to Kajeet's would have sufficed. Fed. R. Evid. 703 (experts need not rely on admissible evidence) & 801(d)(2) (party statements offered in a representative capacity against an opponent are not hearsay).

[11] Neither cites a single production document by either side in this case (let alone the hard copies of source code modules that were purportedly required for Kajeet to be

In every citation, Kajeet has had the "new" information on or well before April 15, 2019—but it failed to move until nearly four months later. This substantial delay, spanning the second set of *Alice* briefing, and all *Markman* exchanges, briefing, and hearing, is inconsistent with diligence in moving for leave. *See O2 Micro*, 467 F.3d at 1369-70 (three months' delay was not diligent); *Ameranth*, 2015 WL 10793431 at *2-3 (no good cause to add claims months after information was available).

### ***2. Kajeet's own representations confirm that it was not diligent in asserting these 12 New Claims***

Finally, Kajeet's own admissions to this Court undermine its claim that it required new information to allege infringement of the New Claims. In its opposition to the *ex parte* motion, Kajeet represented to the Court that "the added claims comprise two independent claims *similar* to those already in the case and ten dependent claims which are *virtually identical* to the dependent claims already in the case." Dkt. 97 at 3:26-28 (emphases added). It also asserts that their limitations "use virtually identical terms and share a common specification and priority date," in dismissing Qustodio's need to identify additional prior art for its invalidity case. *Id.* at 15:25-28. But this purported substantial overlap in scope raises the question of why Kajeet *could not have asserted them before*: "The critical issue is not when [plaintiff] discovered this [new] information, but rather, whether [it] could have discovered it earlier had it acted with the requisite diligence." *Google, Inc. v. Netlist, Inc.*, Nos. C 08-4144 SBA, C 09-5718 SBA, 2010 WL 1838693, at *2 (N.D. Cal., May 5, 2010); *see Zenith*, slip op. at 4-5 (no diligence when information was already available); *Etagz*, at *2 ("[T]here is no substantial justification for waiting until the present time to add claims that have always been present in the . . . Patent.").

So if, as Kajeet contends, the scope of the 12 New Claims is so close to the existing asserted claims that no new prior art is needed to address them, then by that same argument, no additional information from Qustodio would have been necessary to support their assertion. For example, the overwhelming majority of

able to supplement), and instead both rely extensively on similarly "incompetent" unauthenticated publicly available documents. *See* Dkt. 89-4 (PIC) & 92-2 (SIC).

what supports Kajeet's efforts to add independent Claims 1 and 13 of the '559 Patent is publicly available information that was available to Kajeet long before it filed suit and was relied upon to support its infringement contentions for all of the previously-asserted claims. *Compare* Dkt. 89-4 (PIC) *e.g.*, 46-63 (Cl. 27) *with* Dkt. 92-2 (SIC) at 59-63, 67-68, 71-72, 74-76 (Cl. 1); 94-103, 106-07, 111-12 (Cl. 13).

Given Kajeet's representation that it had everything it purportedly needed to supplement *before* the July 15 *Markman* hearing, Dkt. 89 at 10:1-16, it is all the more glaring that Kajeet was able to serve the SIC just two weeks afterwards, yet was completely silent at the hearing and throughout *Markman*. *See Hemopet v. Hill's Pet Nutrition, Inc.*, No. SACV 12-1908-JLS, 2014 WL 12603093, at *3 & n.3 (C.D. Cal. Sept. 3, 2014) (finding no diligence because the plaintiff "proceeded with discovery and claim construction in th[at] action as if it were not asserting infringement of the [15] Additional Claims."). Kajeet cannot have it both ways.

**B. Leave Should be Denied as Futile for Claims 13-17**

The substantive failure of the SIC to provide even facial support for several recited claim limitations of '559 Claims 13-17 is also basis for denial of leave on futility grounds. *See Collaborative Agreements, LLC v. Adobe Sys. Inc.*, No. 15-CV-03853-EMC, 2016 WL 1461487, at *5–6 (N.D. Cal. Apr. 14, 2016) (denying as futile leave to amend contentions because recited claim limitations were absent from new material sought to be added), *aff'd,* 696 F. App'x 1019 (Fed. Cir. 2017).

Independent claim 13 requires the limitations of "access[ing] a decision stored on the computing device, the decision having been received from a server and being based on a policy that is stored on the server," and "receiv[ing] from the server an update to the decision" before "determin[ing] whether the request is granted or denied based on the decision and the update [to the decision]," for Kajeet's Elements B, C, and D, respectively. Dkt. 92-2 at 93. The recitation itself requires—and thus facially distinguishes—"decisions" (received from a server and based on a policy stored there); "policies" (used to generate decisions); and "updates" to the decisions

(also received from the server storing the policies). These are absent from the SIC.

Instead of receiving a *decision* and an *update to the decision* from a server as required, what is relied upon in Kajeet's SICs confirms that the Accused Instrumentality [REDACTED] Dkt. 92-2 at 105, 108-10. This does not describe receiving decisions (which result from applying the rules) or updates to the decisions from the server, because the Response on which Kajeet seeks to rely upon confirms that [REDACTED] *Id.* [REDACTED] *See id.* This is confirmed by Kajeet's cited support for Element D, which reiterates that [REDACTED] *Id.* at 110. Because these limitations are facially not satisfied, and in fact are rebutted, by the Responses upon which Kajeet relies in the SIC, leave should also be denied as futile.

### C. Kajeet's Ambush Assertion of 12 New Claims Prejudices Qustodio

Qustodio has extensively set forth the basis for prejudice in its *ex parte* application. Dkt. 96 at 4:6-7:20, 14:6-15:18. However, Kajeet's effort to belatedly assert these 12 claims nearly a year after filing suit has also prejudiced Qustodio by precluding a meaningful *inter partes* review ("IPR") petition before the August 24, 2019 statutory bar date. *Etagz*, at *3 (finding prejudice because "Defendant may have also attempted to place the newly asserted claims into reexamination had it known that Plaintiff was alleging their infringement"). With 12 new claims added to the three in-suit, the '559 patent would have asserted more claims than the other patents-in-suit, making it front and center in the case and a likely IPR candidate.

## V. CONCLUSION

Because Kajeet has failed to show diligence, and has not demonstrated why it could not have asserted these claims before, its Motion for Leave should be denied.

[12] Dkt. 57-2, at Abst. & 1:60 ("enforce rules (policies)"); Abst. & 1:49 ("enforcement of policies or rules"); 7:3 ("voice or data policies or rules").

[13] Any dispute by Kajeet as to the meaning of these limitations underscores the need for claim construction, which further demonstrates prejudice to Qustodio.

DATED: August 30, 2019

*/s/ Salil Bali*
DOUGLAS Q HAHN (SBN: 257559)
SALIL BALI (SBN: 263001)
STADLING YOCCA CARLSON & RAUTH, P.C.
660 Newport Center Drive, Suite 1600
Newport Beach, CA 92660
Phone: 949-725-4000
Facsimile: 949-725-4100
Email: dhahn@sycr.com
Email: sbali@sycr.com

MANISH MEHTA (*pro hac vice*)
LOWELL D. JACOBSON (*pro hac vice*)
ZAIBA BAIG (*pro hac vic*)
SAMUEL J. RUGGIO (*pro hac vice*)
BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP
333 West Wacker Drive, Suite 1900
Chicago, IL 60606
Telephone: 312-212-4949
Facsimile: 312-757-9191
Email: mmehta@beneschlaw.com
Email: ljacobson@beneschlaw.com
Email: zbaig@beneschlaw.com
Email: sruggio@beneschlaw.com

*Attorneys for Defendant Qustodio, LLC*