Douglas Q. Hahn (SBN 257559)
 dhahn@sycr.com
Salil Bali (SBN 263001)
 sbali@sycr.com
STRADLING YOCCA CARLSON &
RAUTH, P.C.
660 Newport Center Drive, Suite 1600
Newport Beach, CA 92660
Phone: 949-725-4000
Facsimile: 949-725-4100

Manish Mehta (*pro hac vice*)
 mmehta@beneschlaw.com
Lowell D. Jacobson (*pro hac vice*)
 ljacobson@beneschlaw.com
Zaiba Baig (*pro hac vice*)
 zbaig@beneschlaw.com
Samuel J. Ruggio (*pro hac vice*)
 sruggio@beneschlaw.com
BENESCH, FRIEDLANDER, COPLAN
& ARONOFF LLP
71 South Wacker Drive, Suite 1600
Chicago, IL 60606
Telephone: 312-212-4949
Facsimile: 312-757-9191
*Attorneys for Defendant*
*QUSTODIO, LLC*

Brandon C. Fernald
 Brandon.fernald@fernaldlawgroup.com
FERNALD LAW GROUP
510 West Sixth Street, Suite 700
Los Angeles, California 90014
Tel: 323-410-0320
Fax: 323-410-0330

Jonathan T. Suder (*pro hac vice*)
 jts@fsclaw.com
Michael T. Cooke (*pro hac vice*)
 mtc@fsclaw.com
Corby R. Vowell (*pro hac vice*)
 vowell@fsclaw.com
Richard A. Wojcio, Jr. (*pro hac vice*)
 wojcio@fsclaw.com
FRIEDMAN, SUDER & COOKE
Tindall Square Warehouse No. 1
604 East 4th Street, Suite 200
Fort Worth, Texas 76102
Tel: 817-334-0400
Fax: 817-334-0401

*Attorneys for Plaintiff,*
*KAJEET, INC.*

# IN THE UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| KAJEET, INC., <br><br> Plaintiff, <br><br> v. <br><br> QUSTODIO, LLC, <br><br> Defendant. | Case No.: 8:18-cv-01519-JAK-PLA <br><br> ***[DISCOVERY MATTER]*** <br><br> **JOINT STIPULATION REGARDING QUSTODIO, LLC'S MOTION TO COMPEL DISCOVERY** <br><br> Hearing Date: Oct. 16, 2019 <br> Time: 10:00 a.m. <br> Courtroom: 255 E. Temple St. <br>　　　　　Los Angeles, CA 90012 <br>　　　　　Courtroom 780, 7th Fl. <br><br> Complaint Filed:　　Aug. 24, 2018 <br> Discovery Cutoff:　　Jan. 24, 2020 |

# <u>TABLE OF CONTENTS</u>

I.    QUSTODIO'S INTRODUCTION ............................................................... - 1 -

II.   KAJEET'S INTRODUCTION ................................................................... - 4 -

III.  DISCOVERY DISPUTES ........................................................................ - 6 -

    A.    Request For Production Disputes ..................................................... - 6 -

        1.    Request No. 11 .......................................................... - 6 -

        2.    Request No. 3 ............................................................ - 14 -

        3.    Request No. 4 ............................................................ - 22 -

        4.    Request No. 7 ............................................................ - 26 -

        5.    Request No. 8 ............................................................ - 32 -

        6.    Request No. 9 ............................................................ - 35 -

    B.    Requests For Admissions Disputes .................................................. - 42 -

        1.    Request No. 1 ............................................................ - 42 -

IV.   CONCLUSION ...................................................................................... - 49 -

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ABT Sys., LLC v. Emerson Elec. Co.*,
   4:11CV00374 AGF, 2012 U.S. Dist. LEXIS 178619
   (E.D. Mo. Dec. 18, 2012) ................................................................................. 20

*Andrews v. Holloway*,
   256 F.R.D. 136 (D.N.J. 2009) ............................................................................ 9

*Antonious v. Spalding & Evenflo Cos, Inc.*,
   275 F.3d 1066 (Fed. Cir. 2002) ........................................................... 43, 44, 46

*ArcelorMittal Ind. Harbor LLC v. Amex Nooter, LLC*,
   No. 2:15-CV-195-PRC, 2016 U.S. Dist. LEXIS 89117
   (N.D. Ind. 2016) ........................................................................................ *passim*

*Blankenship v. Hearst Corp.*,
   519 F.2d 418 (9th Cir. 1975) .................................................................... *passim*

*Boucher v. First Am. Title Ins. Co.*,
   No. C10-199RAJ, 2011 U.S. Dist. LEXIS 49162
   (W.D. Wash. Nov. 4, 2011) ..................................................... 7, 9, 28, 43

*Carlyle Inv. Mgmt. L.L.C. v. Moonmouth Co. S.A.*,
   No. 7841-VCP, 2015 Del. Ch. LEXIS 42 (Ch. 2015) ................................ 13, 41

*In re Citric Acid Litig.*,
   191 F.3d 1090 (9th Cir. 1999) ........................................................................... 9

*Comcast of L.A., Inc. v. Top End Int'l*,
   No. CV 03-2213-JFW, 2003 U.S. Dist. LEXIS 18640
   (C.D. Cal. July 2, 2003) ............................................................................. 7, 28

*Crown Batter Mfg. Co. v. Club Car, Inc.*,
   185 F. Supp. 3d 987 (N.D. Ohio May 9, 2016) ................................................. 9

*Fresenius Med. Care Holding, Inc. v. Baxter, Inc.*,
   224 F.R.D. 644 (N.D. Cal. 2004) ............................................................. *passim*

ii

18-cv-01519

4843-3646-8389v1/105552-0001

*Gbarabe v. Chevron Corp.*,
  No. 14-cv-00173-SI, 2016 U.S. Dist. LEXIS 103594
  (N.D. Cal. Aug. 5, 2016) ............................................................ 37, 40

*Georgia-Pacific Corp. v. United States Plywood Corp.*,
  318 F. Supp. 1116 (N.Y.S.D. 1970), *aff'd* 446 F.2d 295
  (2d Cir. 1971), *cert. denied* 404 U.S. 870 (1971) ........................... 12, 18, 30, 33

*In re Google Litig.*,
  No. C 08-03172 RMW, 2011 U.S. Dist. LEXIS 140656
  (N.D. Cal. Dec. 7, 2011)............................................................. 2, 37, 39

*Grodzitsky v. Am. Honda Motor Co.*,
  CV 12-1142-SVW, 2017 U.S. Dist. LEXIS 92150
  (C.D. Cal. Jun. 13, 2017 ................................................................. 9

*India Mills & Mfg., Inc. v. Dorel Indus.*,
  No. 1:04CV01102-LJM-WTL, 2006 U.S. Dist. LEXIS 45637
  (S.D. Ind. 2006) ......................................................................... 30

*Int'l Intellectual Mgmt. Corp. v. Lee Yunn Enters., Inc.*,
  No. 2:08-cv-07587, 2009 U.S. Dist. LEXIS 132872
  (C.D. Cal. Dec. 14, 2009) ............................................................. 45

*Intel Corp. v. Prot. Capital LLC*,
  No. 13-cv-1685 GPC, 2013 U.S. Dist. LEXIS 201883
  (S.D. Cal. Oct. 2, 2011) ............................................................... 2, 37, 40

*Itex, Inc. v. Workrite Unif. Co.*,
  No. 08-C-1224, 2011 U.S. Dist. LEXIS 35275
  (N.D. Ill. Mar. 31, 2011) .............................................................. 3, 44, 47

*John Wiley & Sons, Ltd., v. McDonnell Boehnen Hulbert & Berghoff
  LLP*, No. 12-C-1446, 2013 U.S. Dist. LEXIS 80181
  (N.D. Ill. Jun. 7, 2013)................................................................. 44

*Judin v. United States*,
  110 F.3d 780 (Fed. Cir. 1997) ....................................................... 43, 46

*Kajeet, Inc. v. Circle Media Labs, Inc.*,
  Civ. No. 8:18-cv-01312 (C.D. Cal. Jul. 27, 2018) ............................... 16, 24

iii

JOINT STIPULATION TO COMPEL DISCOVERY

18-cv-01519

*Kajeet, Inc. v. Mobicip, LLC,*
   Civ. No. 2:18-cv-3899 (C.D. Cal. May 10, 2018)..............................................16

*Kearney & Trecker Corp. v. Giddings & Lewis,*
   296 F. Supp. 979 (E.D. Wis. 1969) .....................................................................33

*Kinglite Holdings, Inc. v. Micro-Star Int'l Co.,*
   No. 14-cv-03009 JVS, 2016 U.S. Dist. LEXIS 113284
   (C.D. Cal. Jun. 23, 2016)....................................................................................45

*Louisiana Pac. Corp. v. Money Mkt. 1 Institutional Inv. Dealer,*
   285 F.R.D. 481 (N.D. Cal. 2012) ...............................................................*passim*

*Lumen View Tech., LLC v. Findthebest.com, Inc.,*
   24 F. Supp. 3d. 329 (S.D.N.Y. 2014) ..................................................................45

*Luna v. Universal City Studios LLC,*
   No. 12-cv-9286 PSG, 2015 U.S. Dist. LEXIS 192571
   (C.D. Cal. Feb. 10, 2015) ....................................................................................23

*In re Method of Processing Ethanol Byproducts & Related*
   *Subsystems ('858) Patent Litig.,*
   303 F. Supp. 3d 791 (S.D. Ind. Oct. 23, 2014)....................................................37

*Michael Kors, L.L.C. v. Su Yan Ye,*
   No. 1:18-CV-2684 (KHP), 2019 U.S. Dist. LEXIS 60057
   (S.D.N.Y. 2019)..........................................................................................*passim*

*Minebea Co. v. Papst,*
   355 F. Supp. 2d 526 (D.D.C. 2005) ....................................................................30

*Mondis Tech., Ltd. v. LG Elecs., Inc.,*
   No. 2:07-CV-565-TJW-CE, 2011 U.S. Dist. LEXIS 47807
   (E.D. Tex. 2011) ...........................................................................................19, 32

*Moore v. Superway Logistics, Inc.,*
   1:17-cv-01480-DAD, 2019 U.S. Dist. LEXIS 90111
   (E.D. Cal. May 29, 2019) ...........................................................................*passim*

*In re MSTG, Inc.,*
   675 F.3d 1337 (Fed. Cir. 2012).................................................17, 18, 20, 29

iv

*Odyssey Wireless, Inc. v. Samsung Elecs. Co.,*
  No. 3:15-cv-01738-H (RBB), 2016 U.S. Dist. LEXIS 188611
  (S.D. Cal. 2016) ...................................................................................... 14, 41

*In re Regents of the Univ. of Cal.,*
  101 F.3d 1386 (Fed. Cir. 1996) ............................................................... 13, 41

*Shoen v. Shoen,*
  5 F. Supp. 1289 (9th Cir. 1993) ................................................................. 7, 28

*In re Teligent, Inc.,*
  640 F.3d 53 (2d Cir. 2011) ............................................................................ 20

*United Pet Group, Inc. v. MiracleCorp Products,*
  4:12-cv-00440 AGF, 2012 U.S. Dist. LEXIS
  (E.D. Mo., Nov. 5, 2012) ........................................................................ 17, 29

*United Pet Grp., Inc. v. MiracleCorp Prods.,*
  No. 4:12CV00440 AGF, 2012 U.S. Dist. LEXIS 158156
  (E.D. Mo. 2012) ............................................................................................ 22

*United States v. Bryan,*
  339 U.S. 323 (1950) ................................................................................... 7, 28

*United States v. Nobles,*
  422 U.S. 225 (1975) ................................................................................. 13, 41

*United States v. Torf (In re Grand Jury Subpoena),*
  357 F.3d 900 (9th Cir. 2003) ................................................................... 13, 41

*Upjohn v. United States,*
  449 U.S. 383 (1981) ...................................................................................... 43

*View Eng'g Inc. v. Robotic Vision Sys.,*
  208 F.3d 981 (Fed. Cir. 2000) ................................................................. 43, 46

*Wu v. Pearson Educ. Inc.,*
  09 CIV 6557 KBF JCF, 2012 U.S. Dist. LEXIS 51882
  (S.D.N.Y. Apr. 12, 2012) .................................................................. 17, 21, 29

**Statutes**

35 U.S.C. §§ 101, 102, 103, 112 ................................................................. 24, 25

JOINT STIPULATION TO COMPEL DISCOVERY

35 U.S.C. §§ 102 ......................................................................................... 26

**Other Authorities**

Fed. R. Civ. P. 26(b)(1), and (b) ........................................................ *passim*

Fed R. Civ. P. 26(b)(3)(B) .................................................................. 13, 41

Fed. R. Civ. P. 34(b)(2)(C) .................................................................. 1, 14

Federal Rule of Evidence 408 .............................................................. 19, 32

JOINT STIPULATION TO COMPEL DISCOVERY

18-cv-01519

# I.    QUSTODIO'S INTRODUCTION

The Defendant, Qustodio, LLC ("Qustodio"), submits this memorandum in support of its Motion to Compel Plaintiff Kajeet, Inc. ("Kajeet"), to Produce Documents Responsive to Qustodio's Requests for Production ("RFPs"), and to properly respond to Qustodio's Requests for Admission ("RFAs").

On February 26, 2019, Qustodio served its First Set of Requests for Production (Nos. 1–13) on Kajeet. (Declaration of Samuel J. Ruggio ("Ruggio Decl."), Ex. A).  On March 28, 2019, Kajeet served its Responses and Objections to Qustodio's First Set of RFPs. (Ruggio Decl., Ex. B).  In response to at least 10 of Qustodio's 13 Requests, Kajeet stated it "will not search for or produce documents responsive to this request but is willing to meet and confer regarding the scope of this Request." (*Id*.). Kajeet's Responses included various objections, but in no case did Kajeet indicate whether it was withholding documents pursuant to any such objections as Fed. R. Civ. P. 34(b)(2)(C) requires.

This is plainly improper given that each of Qustodio's RFPs focus on specific sets of facially relevant documents that indisputably involve the Patents-in-Suit.  For example, one request (RFP No. 3) is for all of Kajeet's Demand Letters, sent to others regarding potential infringement of one or more of the Patents-in-Suit. (*See* Ruggio Decl., Ex. H, Kajeet's Jun. 8, 2018 Letter to Qustodio).  In the letter to Qustodio, for example, Kajeet discussed licensing and proposed a "royalty rate of 4.5%." (*Id.* at 4).  Such letters to others, and the subsequent communications and negotiations, are clearly relevant for Qustodio to, at a minimum, determine an honest and accurate valuation of the Patents-in-Suit, and to aid in the "hypothetical negotiation" analyses for the reasonable royalty rate and royalty base.  *See, e.g.*, *Fresenius Med. Care Holding, Inc. v. Baxter, Inc.*, 224 F.R.D. 644, 656 (N.D. Cal. 2004) (granting motion to compel "demand letters to

third parties" because "prior investigations relating to the patents-in-suit" are "relevant to the claims and defenses").

Likewise, in RFP No. 11, Qustodio requested information relating to a third-party non-litigant, Patent Monetization, Inc. ("PMI") that is likely an agent of Kajeet. Indeed, Kajeet publicly declares that "those desiring information about Kajeet's Patent Licensing Program should contact Michael Cannata of Patent Monetization, Inc." (*Id.*, Ex. I). Further, Michael Cannata, one of PMI's principles, not only attended the Court-ordered mediation on August 20, 2019, but also signed the Protective Order undertaking entitling him to review highly confidential Qustodio financial information. (Ruggio Decl., ¶ 13). Documents about PMI, its agreement with Kajeet, and its analysis involving the Patents-in-Suit go to the heart of the patents' valuation, as they shed light on the *actual* negotiations surrounding the Patents-in-Suit and alternative investments. Qustodio is rightfully entitled to examine such documents to support its claims, defenses, and to rebut any damages and/or valuation assessment. *See In re Google Litig.*, No. C 08-03172 RMW , 2011 U.S. Dist. LEXIS 140656 (N.D. Cal. Dec. 7, 2011) (allowing third-party discovery as to a venture capital firm that invested in a party in patent litigation); *see also Intel Corp. v. Prot. Capital LLC*, No. 13-cv-1685 GPC, 2013 U.S. Dist. LEXIS 201883, at *9 (S.D. Cal. Oct. 2, 2011) (granting motion to compel discovery because "a third party's investment information is relevant in patent litigation").

On June 21, 2019, Qustodio informed Kajeet of the improper objections, requested Kajeet to either provide responsive information or participate in a L.R. 37-1 meet-and-confer. (Ruggio Decl., Ex. C). On the same day, Qustodio also served its First RFAs (Nos. 1–10). (Ruggio Decl., Ex. D). The parties met-and-conferred on July 1, 2019, to discuss Kajeet's improper objections to the RFPs. (Ruggio Decl., ¶ 11). Kajeet maintained its objections and refused to produce responsive information.

JOINT STIPULATION TO COMPEL DISCOVERY

On July 22, 2019, Kajeet served its Responses to Qustodio's RFAs. (Ruggio Decl., Ex. E).  In its Responses, Kajeet plainly refused to admit or deny **nine** of the ten RFAs, which sought the factual underpinnings of Kajeet's obligatory pre-suit diligence concerning Qustodio's accused products. (*Id.*).    Instead of simply admitting or denying whether certain factual events occurred, Kajeet unjustifiably stated it "is unable to admit or deny [these] Request[s] without disclosing information protected by attorney-client privilege and/or the work product doctrine." (*Id.* at 2-6).   This is misleading.   Qustodio's RFAs were clear and straightforward, seeking only one fact or event per request, and concerning a pre-litigation timeframe when no litigation could have reasonably been anticipated because Kajeet was assessing whether it even had a Rule 11 basis to bring suit in the first place.   In other words, Kajeet's privilege claim is wrong on the facts and wrong on the law. *See, e.g.*, *Itex, Inc. v. Workrite Unif. Co.*, No. 08-C-1224, 2011 U.S. Dist. LEXIS 35275, at *6 (N.D. Ill. Mar. 31, 2011) (granting motion to compel because "Defendants explain that they are not seeking any substantive information—at least through the requests to admit—regarding any pre-suit testing, but merely the underlying fact whether Plaintiff conducted the very specific pre-suit test described in their request.").

Three days later, on July 25, 2019, Qustodio sent Kajeet a second discovery deficiency letter, this time focusing on the improper objections to the RFAs, citing Supreme Court precedent on privilege, and several district court patent cases squarely on point. (Ruggio Decl., Ex. F).   Ten days after sending the second discovery letter, Qustodio heard nothing from Kajeet.   Qustodio followed up via email on August 5, 2019, and a conference between counsel occurred at 4:00 p.m. (*Id.*, Ex. G). On the call, Kajeet maintained its objections and stated it would inform Qustodio on Wednesday August 7, 2019, as to whether it reconsidered the privilege objections. (*Id.*, ¶ 12).   As has been Kajeet's habit throughout this litigation, it never followed up. (*Id.*).

JOINT STIPULATION TO COMPEL DISCOVERY

18-cv-01519

Qustodio therefore requires this Court's assistance to obtain relevant, non-privileged discovery, to which Qustodio is rightfully entitled.

## II.        KAJEET'S INTRODUCTION

Defendant complains that Kajeet's refused to produce documents in response to many of Defendant's Requests for Production knowing that Kajeet was at all times willing to confer to narrow these Requests to their proper scope. Defendant fails to mention that even though it timely received Kajeet's responses on March 28, 2019, Defendant took no action in response for nearly three months, and even then only did so as a tit-for-tat response to receiving a letter detailing Defendant's deficient discovery responses ten days earlier.  To be clear, Kajeet stated explicitly that it would not produce documents in response to these requests until a conference of counsel was held and yet Defendant took absolutely no action to even request a meet and confer for three months.

Defendant now asks the Court to compel production of documents and information that are either irrelevant to any issue in this case, or are protected from disclosure by one or more privileges.

For example, Defendant seeks documents relating to PMI – a non-party to this litigation whom Defendant knows has no ownership stake or rights in the asserted patents and is also not a licensee or party to any license to Kajeet's patents.  Defendant contends that such information is relevant because it believes PMI is Kajeet's agent for purposes of licensing the Kajeet patents.  To the extent this belief is accurate, however, the information and documents sought are not discoverable and protected by privilege.  In truth, Defendant seeks this information only in an attempt to improperly glean insight into Kajeet's litigation strategy and funding.

Defendant also seeks prior correspondence sent by Kajeet's counsel to others in the parental controls space, including notice and demand letters as well as

- 4 -

4843-3646-8389v1/105552-0001

licensing proposals and all documents relating to any licensing or settlement negotiations. This information is both irrelevant to the present case and protected by at least work product privilege as documents prepared in anticipation of litigation. Defendant knows this to be true as it, itself, received a notice letter ahead of Kajeet filing the present lawsuit. Beyond this, every example that Defendant raises is taken from allegations made by Kajeet in its complaints in prior litigations likewise following notice and demand correspondence.

Defendant further demands production of any responses received by Kajeet to any notice and demand letters sent. Kajeet refuses to provide this correspondence as irrelevant to the particular facts of this case and unnecessary in light of other production already made. Kajeet has agreed to and has produced all license agreements resulting from its prior negotiations and litigations as well as all prior art received in connection with any response. Any other information contained in the requested correspondence is irrelevant as either relating to non-consummated licensing negotiations, or relating to non-infringement positions taken by others with respect to their products and not those of Defendant. The positions taken in the non-produced aspects of these communications, therefore, have no bearing on valuation of the asserted patents or on any claims or defenses in this case, which center on infringement by Defendant's products and not those of others.

In light of this and the arguments presented in the following sections, Defendant's motion is meritless and should not be granted.

## III.   DISCOVERY DISPUTES

### A.   Request For Production Disputes

#### Specific Documents Relating To PMI

##### 1.   Request No. 11

Defendant's Request for Production No. 11 requests:

> **Request No. 11**: All Documents or Things referring to the relationship between Kajeet and Patent Monetization Inc. relating to the Patents-in-Suit, any Related Patent, or Qustodio.

Plaintiff's answer:

> **RESPONSE:** Plaintiff objects to this Request to the extent it seeks production of information and materials protected from disclosure by the attorney-client privilege, the work-product doctrine, or any other applicable privilege or immunity. Plaintiff objects to this Request as being directed to subject matter not relevant to the subject matter of this action, nor reasonably calculated to lead to the discovery of admissible evidence. Plaintiff objects to this Request to the extent that it is not reasonably limited in time or scope. Plaintiff objects to this Request to the extent that it seeks production of third-party documents that are not within the possession, custody, or control of Plaintiff.
>
> Plaintiff objects to this Request as being overly broad and unduly burdensome, insofar as it seeks the production of materials and information that is not proportional to the needs of the case based on both the breadth of the Request, itself, as well as application of the definitions proffered by Defendant. More specifically, the request for "All Documents and Things referring to the relationship between Kajeet and Patent Monetization Inc. relating to the Patents-in-Suit, any Related Patent…" is exceptionally broad and becomes broader still in light of Defendant's definitions of the terms "Related Patent," "referring to" and "relating to." Accordingly, the present Request is not reasonably limited in scope and requests documents not relevant to the subject matter of this action, nor reasonably calculated to lead to the discovery of admissible evidence.
>
> Subject to these objections and without waiving the same, Plaintiff responds as follows:
>
> Plaintiff will not search for or produce documents responsive to this request but is willing to meet and confer regarding the scope of this Request.

**DEFENDANTS ARGUMENT**

As discussed above, it is undisputed that Kajeet and PMI have some form of an agreement relating to the Patents-in-Suit, Related Patents and this litigation. The exact nature and extent of this agreement is unknown to Qustodio, because Kajeet simply refused any and all discovery as to PMI, without any valid basis. However, it is clear that (a) Kajeet publicly holds PMI out as its licensing agent, (b) PMI's principal, Michael Cannata, attended the Mediation between Qustodio and Kajeet, and (c) Michael Cannata signed the Protective Order undertaking, which permitted him access to Qustodio's Highly Confidential information, including financial information about the Accused Products. (Ruggio Decl., ¶ 13; Ex. I).  These facts – alone or taken together – support Qustodio's request for documents and information concerning the relationship between PMI and Kajeet and any and all documents PMI has concerning the Patents-in-Suit, Qustodio, and its Accused Products.

Kajeet's *carte blanche* refusal to produce information does not pass muster. Indeed, it is "[t]he party who resists discovery has the burden to show discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections." *Comcast of L.A., Inc. v. Top End Int'l*, No. CV 03-2213-JFW (RCx), 2003 U.S. Dist. LEXIS 18640, at *6 (C.D. Cal. July 2, 2003) (citing *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975)).  "We start with the premise that pre-trial discovery is ordinarily 'accorded a broad and liberal treatment.'" *Shoen v. Shoen*, 5 F. Supp. 1289, 1292 (9th Cir. 1993) (citing *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)); *see also United States v. Bryan*, 339 U.S. 323 (1950) (discovery is broad because litigants have a right to "every man's evidence.").

***First***, in Qustodio's "Definitions and Instructions" section of its RFPs, it provided the following definition for "Kajeet":

JOINT STIPULATION TO COMPEL DISCOVERY

> "You" and "Your" mean Kajeet, Inc. and each and every one of its respective present and former officers, directors, shareholders, members, trustees, employees, **agents**, **representatives** or **all other persons acting, or purporting to act, on their behalf**, as well as Kajeet's present or former parent companies, subsidiaries, related companies, affiliates, divisions, and predecessors."

(Ruggio Decl., Ex. A, at 1:7-11) (emphasis added).  Kajeet did not object to this definition, neither in its response nor on the meet-and-confer – and therefore has waived any belated objection to this definition. Kajeet cannot legitimately claim that it does not have a relationship with PMI and that PMI is acting (or purporting to act) on its behalf.  Indeed, Kajeet holds PMI out to the public as Kajeet's licensing arm by pursuing patent monetization efforts on behalf of Kajeet. (Ruggio Decl., Ex. I).  In fact, Kajeet publicly invites "those desiring information about Kajeet's Patent Licensing Program [to] contact Michael Cannata of Patent Monetization, Inc." (*Id.*).  And even in *this litigation*, PMI has been an active participant by attending the Court-ordered Mediation and by signing the undertaking of the Protective Order to gain access to Qustodio's Highly Confidential Information. (*Id.*, ¶ 13).  Notwithstanding Qustodio's properly framed and defined Request, Kajeet simply refused to produce *anything* related to PMI that concerns the Patents-in-Suit and Related Patents, Qustodio or this litigation.

*Second*, and most importantly, Kajeet's objection that Qustodio's request calls for documents that are not in its "possession, custody, or control," is unavailing both in fact and in law.  Kajeet must have in its own possession documents concerning PMI, including those relating to the agreement between PMI and Kajeet, and PMI's valuation of the Patents-in-Suit.  Kajeet's refusal to admit that such documents do not exist confirms this fact.

Further, Kajeet is under an obligation to secure all documents that it does not have in its actual possession from PMI.  Kajeet cannot hide behind the "control" obligation yet publicly hold out PMI as its licensing arm and permit PMI to access

JOINT STIPULATION TO COMPEL DISCOVERY

Qustodio's highly confidential information by signing the undertaking and attend
the mediation.  Kajeet cannot have it both ways.

And, contrary to its assertions, Kajeet does in fact have "control" as that
term has been defined by the Courts for the purposes of discovery. *See, e.g.*, *In re
Citric Acid Litig.*, 191 F.3d 1090, 1107 (9th Cir. 1999) ("Control is defined as the
legal right to obtain documents upon demand."); *Boucher v. First Am. Title Ins.
Co.*, No. C10-199RAJ, 2011 U.S. Dist. LEXIS 49162, at *4 (W.D. Wash. Nov. 4,
2011) (finding a contract established control over documents in non-party's
possession because "one agreement, for example, requires the agent to produce any
documents . . . at 'any reasonable time upon request from [defendant].'"); *Andrews
v. Holloway*, 256 F.R.D. 136, 145 n.13 (D.N.J. 2009) (finding control exists if a
party has "a right to access the [requested] documents or obtain copies of them.");
*see also Crown Batter Mfg. Co. v. Club Car, Inc.*, 185 F. Supp. 3d 987, 997 (N.D.
Ohio May 9, 2016) (evidence deemed "under a party's control when that party has
the right, authority, or practical ability to obtain the [evidence] from a non-party in
the action.").  Kajeet failed to claim that it does not have the legal right to obtain
responsive information from PMI or that the Kajeet/PMI agreement does not
establish a right by Kajeet to request documents from PMI.  This is likely because
Kajeet does have such control over documents that are in PMI's exclusive
possession.

***Lastly***, Kajeet's objections are procedurally improper under the Federal
Rules for two reasons: (a) it inappropriately cited the old Fed. R. Civ. P. 26(b)(1),
and (b) did not inform Qustodio if it was withholding responsive documents based
on those objections. *See, e.g.*, *Moore v. Superway Logistics, Inc.*, 1:17-cv-01480-
DAD, 2019 U.S. Dist. LEXIS 90111, at * (E.D. Cal. May 29, 2019) (the phrase
"reasonably calculated to lead to the discover of admissible evidence" "was
removed from Federal Rule of Civil Procedure 26(b)(1) because it had been used
by many to incorrectly define the scope of discovery."); *see also Grodzitsky v. Am.*

- 9 -

*Honda Motor Co.*, CV 12-1142-SVW, 2017 U.S. Dist. LEXIS 92150, at *15-16 (C.D. Cal. Jun. 13, 2017) (granting motion to compel, requiring party to certify that "no documents or information have been withheld on the basis of the objections raised in its 2014 original response").

*      *      *

Kajeet and PMI have an agreement concerning the Patents-in-Suit – this cannot be legitimately disputed.  PMI acts as an agent for Kajeet, Kajeet represents as much publicly, and PMI attended the mediation and signed the Protective Order undertaking – this is also not in dispute.  As such, Kajeet's conclusory assertions that the requested documents are not in its "possession, custody, or control" falls flat under these facts and its own prior admissions.

Therefore, this Court should grant Qustodio's Motion to Compel because RFP No. 11 clearly asks for responsive and relevant information regarding its claims, defenses, and potential damages assessments.

**PLAINTIFF'S ARGUMENT**

Kajeet incorporates its objections submitted in response to this request herein for all purposes.

The Federal Rules define the scope of discoverable information, stating that "parties may obtain discovery regarding any nonprivileged matter ***that is relevant*** to any party's claim or defense and proportional to the needs of the case[.]"  Fed. R. Civ. P. 26(b)(1); *Moore v. Superway Logistics, Inc.*, No. 1:17-cv-01480-DAD-BAM, 2019 U.S. Dist. LEXIS 90111, at *6 (E.D. Cal. 2019).  As Defendant notes, the language of Rule 26(b)(1) was recently amended.  "[T]he purpose of the amendment to Rule 26(b)(1) was ***to narrow the scope of discovery*** because the language 'reasonably calculated to lead to the discovery of admissible evidence' had been incorrectly used by some to define the scope of discovery as more broad than intended."  *ArcelorMittal Ind. Harbor LLC v. Amex Nooter, LLC*, No. 2:15-

JOINT STIPULATION TO COMPEL DISCOVERY

18-cv-01519

CV-195-PRC, 2016 U.S. Dist. LEXIS 89117, at *11 (N.D. Ind. 2016); *Michael Kors, L.L.C. v. Su Yan Ye*, No. 1:18-CV-2684 (KHP), 2019 U.S. Dist. LEXIS 60057, at *4 (S.D.N.Y. 2019). The new and narrower permissible scope applies to Defendant's requests.

Defendant's request and arguments miss the mark entirely by failing to show relevance of the requested information to some claim or defense in the case and also by failing to apply the correct standard for deciding the present dispute. Defendant baldly asserts that the requested PMI-related documents are "responsive and relevant to information regarding its claims, defenses, and potential damages assessments" without providing any basis for reaching this conclusion. In fact, Defendant fails to ***even identify*** a specific claim, defense, or issue to which the requested documents could be relevant much less provide some basis for establishing how the requested information could be relevant to some unidentified claims or defense.

Defendant also affirmatively misstates and misapplies the applicable burdens of persuasion, erroneously contending that it is solely Kajeet's burden to show that the requested discovery should not be allowed. This is wrong. "The party seeking to compel discovery has the burden of establishing that the information is relevant." *Moore v. Superway Logistics, Inc.*, No. 1:17-cv-01480-DAD-BAM, 2019 U.S. Dist. LEXIS 90111, at *7 (E.D. Cal. 2019). Only upon making this threshold showing does the burden shift to the party resisting discovery to show that discovery of relevant information should not be allowed *Louisiana Pac. Corp. v. Money Mkt. 1 Institutional Inv. Dealer*, 285 F.R.D. 481, 485 (N.D. Cal. 2012); *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975).

Merely identifying circumstantial evidence purported to show a relationship between PMI and Kajeet is insufficient to show that information about that relationship is somehow relevant to a claim or defense in this case.

*Michael Kors, L.L.C. v. Su Yan Ye*, No. 1:18-CV-2684 (KHP), 2019 U.S. Dist. LEXIS 60057, at *11 (S.D.N.Y. 2019) (limiting permissible discovery to only information directly tied to identified elements of the claims in the case.) Defendant notes that PMI is held out as a licensing agent working on behalf of Kajeet.  Accepting this as true, what is the relevance of any ***agreement between Kajeet and PMI*** to retain PMI as a consultant in support of Kajeet's licensing efforts to this case?   There is none.   This agreement would not speak to infringement by Defendant or to any as-yet unasserted defense Defendant may raise, nor to the valuation of Kajeet's claims under any *Georgia-Pacific* factor.  It follows that if the agreement, itself, is irrelevant, then documents referring to it are similarly irrelevant.

In truth, Defendant knows that PMI is not and cannot be reasonably alleged to have any ownership interest or rights in Kajeet's patents, is not a licensee to the Kajeet Patents, and is not an investor in Kajeet's business.  Defendant knows this to be true because it has already received documents in this case evidencing ownership of the Kajeet Patents by only Kajeet via assignment from the inventors as well as ***all*** licenses to the Kajeet Patents.  PMI is not mentioned nor is it a signatory to any of these documents, meaning PMI would not be a party to any "hypothetical negotiation" damages analysis for calculating royalty damages. There is simply no connection between PMI and the claims at issue in this litigation which could bring the details of Kajeet's relationship with PMI under the umbrella of "relevance."

Defendant does not identify one in this motion just as it was unable to do so during conference of counsel when asked to articulate the relevance of this request. This purpose of this request is not to uncover relevant information.   It is an improper and fruitless attempt to gain insight into Kajeet's litigation strategy and into the amount and source of Kajeet's litigation funding.

- 12 -

JOINT STIPULATION TO COMPEL DISCOVERY

Even if Defendant could identify a claim or defense in this case to which the information requested may be relevant, however, the Request remains improper as drafted because it is impermissibly broad and not confined the needs of the case. Defendant's request does not place sufficient meaningful limits the temporal scope of information sought and requests "all documents and things" concerning "any Related Patent."   Defendant's broad definition for "Related Patent," which includes any patent in the world, regardless of inventorship, that is related to the subject matter of the Patents-in-Suit.

Beyond this, to the extent PMI has been retained as an agent of Kajeet in connection with Kajeet's licensing campaign and corresponding litigations, communications between PMI and Kajeet would be protected from disclosure under the common interest privilege and the work product privilege.  *In re Regents of the Univ. of Cal.*, 101 F.3d 1386, 1390 (Fed. Cir. 1996) (finding a common interest among licensing agent and patent owner).   These protections extend beyond just work product made by an attorney to also cover work product of a party's representatives and agents.  *United States v. Nobles*, 422 U.S. 225, 254 n.16, 95 S. Ct. 2160, 2178 (1975) (protection covers documents of a party's "representative," whether a lawyer or not); *United States v. Torf (In re Grand Jury Subpoena)*, 357 F.3d 900, 909 (9th Cir. 2003) (documents prepared by retained environmental consultant protected from disclosure); Fed R. Civ. P. 26(b)(3)(B).

Communications and documents shared between and among PMI as a licensing agent and Kajeet as patent owner relating to the Kajeet Patents were made under direction of counsel and necessarily were created in anticipation of litigation to enforce Kajeet's patent rights.  As such, they are protected by the work product privilege.  *Carlyle Inv. Mgmt. L.L.C. v. Moonmouth Co. S.A.*, No. 7841-VCP, 2015 Del. Ch. LEXIS 42, at *28 (Ch. 2015) (communications leading to and agreement forming agent relationship asserting patent rights "almost certainly" implicate 'lawyers' mental impressions, theories and strategies" and are "only

- 13 -

JOINT STIPULATION TO COMPEL DISCOVERY

prepared 'because of' the litigation.'") This protection from disclosure extends to pre-litigation communications. *Odyssey Wireless, Inc. v. Samsung Elecs. Co.*, No. 3:15-cv-01738-H (RBB), 2016 U.S. Dist. LEXIS 188611, at *17 (S.D. Cal. 2016).

Finally, Defendant's contention that Kajeet has not satisfied Rule 34(b)(2)(C) is incorrect. The Notes of the Advisory Committee Notes on the 2015 Amendments which added this requirement states that:

> "the producing party does not need to provide a detailed description or log of all documents withheld, but ***does need to alert other parties to the fact that documents have been withheld*** and thereby facilitate an informed discussion of the objection. ***An objection that states the limits that have controlled the search for responsive and relevant materials qualifies as a statement that the materials have been "withheld."*** USCS Fed Rules Civ Proc R 34 (emphasis added).

Defendant's contention that Kajeet is required to state for each objection ***whether*** documents are being withheld conflicts with the Advisory Committee's understanding of what the new provision requires. In other words, there is no requirement to affirmatively state when documents are not being withheld.

Kajeet's response states that it "will not search for or produce documents responsive to this request but is willing to meet and confer regarding the scope of this Request." This is sufficient to "state[] the limits that have controlled the search for responsive and relevant materials," which is all that is required.

## DOCUMENTS RELATING TO PATENT VALUATION AND DAMAGES

### 2.    Request No. 3

Defendant's Request for Production No. 3 requests:

**Request No. 3**:    All Documents and Things reflecting settlement negotiations in any litigation or threatened litigation related to the Patents-in-Suit or Related Patents, including but not limited to Documents relating to the negotiation or stipulated claim construction terms.

- 14 -

JOINT STIPULATION TO COMPEL DISCOVERY

18-cv-01519

Plaintiff's answer:

**RESPONSE:** Plaintiff objects to this Request to the extent it seeks production of information and materials protected from disclosure by the attorney-client privilege, the work-product doctrine, or any other applicable privilege or immunity. Plaintiff additionally objects to this Request to the extent it seeks production of information and materials designated confidential or sealed pursuant to a Court order or by application of one or more Federal Rules of Evidence.

Plaintiff objects to this Request as being overly broad and unduly burdensome, insofar as it seeks the production of materials and information that is not proportional to the needs of the case based on both the breadth of the Request, itself, as well as application of the definitions proffered by Defendant. More specifically, the request for "All Documents and Things reflecting settlement negotiations in any litigation or threatened litigation related to the Patents-in-Suit or Related Patents" is exceptionally broad and becomes broader still in light of Defendant's definitions of the terms "Related Patents" and "relating to." Accordingly, the present Request is not reasonably limited in scope and requests documents not relevant to the subject matter of this action, nor reasonably calculated to lead to the discovery of admissible evidence.

Further, Plaintiff objects to this Request to the extent it seeks the production of documents that are just as accessible to Defendant as they are to Plaintiff and on the ground that it is unduly burdensome and cumulative to compel Plaintiff to obtain such documents for Defendant. Plaintiff objects to this Request to the extent it seeks production of third-party documents that are not within the possession, custody, or control of Plaintiff. Subject to these objections and without waiving the same, Plaintiff responds as follows:

Plaintiff will conduct a diligent search for only "all Documents and Things reflecting settlement negotiations in any litigation or threatened litigation in which the Patents-in-Suit are asserted, including but not limited to Documents relating to the negotiation or stipulated claim construction terms" and will produce all non-privileged, responsive documents in its possession, custody, and control. With respect to the remainder of this Request, Plaintiff will not search for or produce documents but is willing to meet and confer regarding amending this Request to confine it to a proper scope.

**DEFENDANT'S ARGUMENT**

Kajeet, its agent PMI, and their retained law firm, Friedman, Suder & Cooke, P.C. ("FSC"), have devised a licensing scheme whereby Kajeet and/or PMI identify potential infringers of the Kajeet Patent Portfolio, and FSC sends demand letters to the identified companies.  On June 8, 2018, Kajeet sent one such letter to Qustodio alleging its products "implicate multiple patent claims in the Kajeet patent portfolio." (Ruggio Decl., Ex. H).  The letter ends with a "cc:" to "Daniel Neal, Chairman, CEO & Founder, Kajeet, Inc." and "Michael Cannata [Patent Monetization Inc.]." (*Id.*, at 5).

Among other things, these letters contain a "licensing" section and proposes terms for licenses to "the Kajeet Patents." (*Id.*, at 4-5).  For example, in Qustodio's letter, Kajeet stated "an ongoing royalty rate of 4.5% represents a fair and reasonable amount for a license to the Kajeet Patents." (*Id.*).  It is undisputed that Kajeet sent ***multiple*** demand letters to companies alleging infringement of the Patents-in-Suit and/or related patents.  It is also undisputed that some companies responded in kind, and some eventually negotiated a license.  For example, in another case involving the Patents-in-Suit, *Kajeet, Inc. v. Mobicip, LLC*, Civ. No. 2:18-cv-3899 (C.D. Cal. May 10, 2018), Kajeet alleged it "sent a letter to Mobicip to put Mobicip on notice of the Kajeet patents" and that "Mobicip subsequently responded to Kajeet's letter." *Id.* at D.I. 1, ¶ 20.  In another case, *Kajeet, Inc. v. Circle Media Labs, Inc.*, Civ. No. 8:18-cv-01312 (C.D. Cal. Jul. 27, 2018), Kajeet stated it "sent a letter to Circle to put Circle on notice of the Kajeet patents" and that "Circle subsequently responded" but "provided no support for its assertion of non-infringement." (*Id.* at D.I. 1, ¶ 20).  Besides being responsive to Qustodio's request, this discovery is unquestionably relevant to Qustodio's claims and defenses.

In its attempt hinder Qustodio's case, Kajeet has simply refused to produce *anything* related to its enforcement of the Patents-in-Suit, including demand letters

JOINT STIPULATION TO COMPEL DISCOVERY

1   to other companies and their responses.  Instead, Kajeet maintained the position

2   that only the license agreements *themselves* are relevant and discoverable.  Aside

3   from the fact that these letters and subsequent negotiations are *discoverable*, that

4   information is not only relevant, but it is essential for Qustodio to conduct a

5   wholesome valuation analysis regarding the Patents-in-Suit, and to assist in

6   analyses involving damages (if any), and to rebut any damages assessment

7   proffered by Kajeet.  This is routine discovery that is governed by Federal Circuit

8   precedent as the "materials relate to an issue of substantive patent law."  *See, e.g.,*

9   *In re MSTG, Inc.*, 675 F.3d 1337, 1348 (Fed. Cir. 2012) ("Therefore, in light of

10  reason and experience, we hold that settlement negotiations related to reasonable

11  royalties and damage calculations are not protected by a settlement negotiation

12  privilege."); *Fresenius Med. Care Holding, Inc. v. Baxter, Inc.*, 224 F.R.D. 644,

13  656 (N.D. Cal. 2004) (noting "Baxter's assertion that it is not withholding any non-

14  privileged documents is clearly limited by its unilateral designation of relevance"

15  and granting motion to compel "demand letters to third parties" because they are

16  "relevant to the claims and defenses"); *see also Michael Kors, L.L.C. v. Sun Yan*

17  *Ye*, 1:18-CV-2684 (KHP), 2019 U.S. Dist. LEXIS 60057, at *18-22 (S.D.N.Y.

18  Apr. 8, 2019) ("A separate request could have asked for copies of cease and desist

19  letters sent to third parties that Plaintiff accused of infringing [] in the United

20  States, copies of letters responding to same, and any settlement agreement resulting

21  therefrom" and ordering Plaintiff to "respond to the Amended Requests consistent

22  with the Court's directions herein" because "[f]ew, if any, of its cease and desist

23  letters would be publicly available."); *Wu v. Pearson Educ. Inc.*, 09 CIV 6557

24  KBF JCF, 2012 U.S. Dist. LEXIS 51882, at * (S.D.N.Y. Apr. 12, 2012) ("to the

25  extent the plaintiff has otherwise identified specific categories of discoverable

26  documents, those documents shall be produced even if they were created in the

27  context of settlement negotiations"); *see also United Pet Group, Inc. v.*

28  *MiracleCorp Products*, 4:12-cv-00440 AGF, 2012 U.S. Dist. LEXIS, at * (E.D.

- 17 -

JOINT STIPULATION TO COMPEL DISCOVERY

Mo., Nov. 5, 2012) (ordering production of "documents related to license and settlement agreements").

Kajeet acknowledges that the license agreements are relevant, having produced several of them.  Yet, it simply believes that the negotiations and further communications that led to the agreements are "irrelevant."  Kajeet's position has already been rejected by the Federal Circuit, and for good reason. *See, e.g.*, *In re MSTG, Inc.*, 675 F.3d 1337, 1348 (Fed. Cir. 2012).  In order for Qustodio to perform a detailed analysis into the "hypothetical negotiation" pursuant to the *Georgia-Pacific* damages analysis, it needs to evaluate the *actual* negotiations underlying the Patents-in-Suit, including how the reasonable royalty was negotiated, whether offsets were applied, whether Kajeet and/or PMI made admissions regarding the Patents-in-Suit's valuation, whether the licensees offered any analysis and/or valuation or rebutting evidence, etc.  *See Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1120 (N.Y.S.D. 1970), *aff'd* 446 F.2d 295 (2d Cir. 1971), *cert. denied* 404 U.S. 870 (1971).  Kajeet's irrelevance position is therefore baseless.

Therefore, this Court should grant Qustodio's Motion to Compel because RFP No. 3 clearly asks for responsive and relevant information regarding its claims and defenses.

## PLAINTIFF'S ARGUMENT

Kajeet incorporates its objections submitted in response to this request herein for all purposes.

"The party seeking to compel discovery has the burden of establishing that the information is relevant."  *Moore v. Superway Logistics, Inc.*, No. 1:17-cv-01480-DAD-BAM, 2019 U.S. Dist. LEXIS 90111, at *7 (E.D. Cal. 2019).  Only upon making this threshold showing does the burden shift to the party resisting discovery to show that discovery of relevant information should not be allowed *Louisiana Pac. Corp. v. Money Mkt. 1 Institutional Inv. Dealer*, 285 F.R.D. 481,

- 18 -

485 (N.D. Cal. 2012); *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975).  As Defendant notes, the language of Rule 26(b)(1) was recently amended.  "[T]he purpose of the amendment to Rule 26(b)(1) was **to narrow the scope of discovery** because the language 'reasonably calculated to lead to the discovery of admissible evidence' had been incorrectly used by some to define the scope of discovery as more broad than intended."  *ArcelorMittal Ind. Harbor LLC v. Amex Nooter, LLC*, No. 2:15-CV-195-PRC, 2016 U.S. Dist. LEXIS 89117, at *11 (N.D. Ind. 2016); *Michael Kors, L.L.C. v. Su Yan Ye*, No. 1:18-CV-2684 (KHP), 2019 U.S. Dist. LEXIS 60057, at *4 (S.D.N.Y. 2019).   The new and narrower permissible scope applies to Defendant's requests.

Contrary to Defendant's erroneous assertions, Kajeet has produced documents relating to its licensing efforts.  Specifically, Kajeet has produced every settlement and license agreement to the Kajeet Patents, which is undoubtedly the best evidence for determining a reasonable royalty resulting from a "hypothetical negotiation."  Defendant incorrectly contends, however, that documents evidencing the underlying negotiations leading to these agreements are "essential for Qustodio to conduct a wholesome valuation analysis regarding the Patents-in-Suit."

But this use of such information is expressly forbidden by Federal Rule of Evidence 408, which prohibits use of conduct or statements made as part of compromise negotiations for proving the validity or value of a legal claim, among other prohibitions.   Further, documents relating to any ongoing and/or unconsummated settlement or licensing negotiations are undiscoverable.  *Mondis Tech., Ltd. v. LG Elecs., Inc.*, No. 2:07-CV-565-TJW-CE, 2011 U.S. Dist. LEXIS 47807, at *26 (E.D. Tex. 2011) (refusing discovery for unconsummated negotiations because this information is unreliable and has little probative value, and because this information has a chilling effect on ongoing negotiations).

JOINT STIPULATION TO COMPEL DISCOVERY

Defendant cites to *MSTG* but the facts of that case clearly distinguish it from application here.  As stated by the Ninth Circuit in a recent case also distinguishing *MSTG*:

> "However, ***MSTG applicability is also limited***. Factually, it is distinguishable from the present case in that the lower court decision that was affirmed ***only ordered production of the settlement negotiation documents because part of an expert's opinion relied on those underlying negotiation documents***. *Id.* at 1348. The production was necessary because '[a]s a matter of fairness MSTG [could] not at one and the same time ***have its expert rely on information about the settlement negotiations and deny discovery as to those same negotiations***.' *Id.* That is not the case here. The Court also notes that ***in MSTG, the lower court had previously denied production of settlement negotiation documents*** when the parties were in essentially the same position Finjan and ESET are now as to RFPs 157 and 160. *Id.* That decision was not challenged." *Finjan, Inc. v. ESET, Inc.*, No. 17CV183 CAB (BGS), 2018 U.S. Dist. LEXIS 182021, at *9 (S.D. Cal. 2018) (denying a motion to compel production of information concerning settlement negotiations and distinguishing *In re MSTG, Inc.*, 675 F.3d 1337, 1348 (Fed. Cir. 2012))(emphasis added).

Defendant omits these critical facts from its discussion of *MSTG*.  Defendant also fails to mention that courts "'have imposed heightened standards for discovery in order to protect confidential settlement discussions,' that require: (1) a showing of a special need for the material; (2) a resulting unfairness from not getting the discovery; and (3) that the need for the sought discovery outweighs the confidentiality interest." *Finjan,* 2018 U.S. Dist. LEXIS 182021, at *11; *MSTG*, 675 F.3d at 1347; *In re Teligent, Inc.*, 640 F.3d 53, 57-58 (2d Cir. 2011)).  Other courts have distinguished *MSTG* applying similar rationale.  *See, e.g., Implicit Networks*, 3:10-CV-04234-SI at 2-3, 2012 U.S. Dist. LEXIS 183715; *ABT Sys., LLC v. Emerson Elec. Co.*, 4:11CV00374 AGF, 2012 U.S. Dist. LEXIS 178619, 2012 WL 6594996 (E.D. Mo. Dec. 18, 2012).

- 20 -

Here, Defendant has not even attempted and cannot put forth argument or evidence showing "a special need" for production of the requested information. Defendant cannot do so.  Kajeet has not created a "special need" through reliance on any documents responsive to this improper request.  To be sure, Kajeet will rely on the settlement and licensing agreements it has already produced in formulating its damages theory and any other document cited or relied upon will be produced. As such, there exists no unfairness to Defendant in denying discovery of the requested documents beyond the agreements, themselves.

The other cases Defendant cites are also unavailing and/or factually distinguishable from the present case.

In *Fresenius*, for example, discovery of demand letters was compelled because the Plaintiff *agreed to produce* these documents but had not yet done so. *Fresenius*, 224 F.R.D. at 656 ("Baxter also agrees to produce these demand letters").  That is the extent of the discussion relating to third party demand letters. *Fresenius* did not hold that the demand letters, specifically, were relevant to any claim in the case.  Rather, the Court generically opined with respect to four separate documents requests *en masse* that "[t]o the extent that Baxter is claiming that *all four document requests* seek only irrelevant information, this claim is unsupported. *Id.*, (emphasis added).  Tellingly, in the fifteen years since *Fresenius* no court has cited to it as holding that demand letters to third parties are relevant for "determine[ing] an honest and accurate valuation of the Patents-in-Suit, and to aid in the 'hypothetical negotiation' analyses for the reasonable royalty rate and royalty base" as Defendant contends.

In both *Michael Kors* and *Wu*, motions to compel production of documents relating to negotiation and settlement of prior claims in response to discovery requests similar to Defendant's in breadth and subject matter *were denied*.  *Wu v. Pearson Educ., Inc.*, 2012 U.S. Dist. LEXIS 51882, at *3-4 (S.D.N.Y. 2012) ("documents concerning the negotiation process that led to the settlement of

- 21 -

JOINT STIPULATION TO COMPEL DISCOVERY

overrun claims need not be produced"); *Michael Kors, L.L.C. v. Su Yan Ye*, No. 1:18-CV-2684 (KHP), 2019 U.S. Dist. LEXIS 60057, at *18 (S.D.N.Y. 2019) ("Defendant has no need for this breadth of documents."). Further, in *Unified Pet Grp.*, production of only the license and settlement agreements themselves was compelled. *United Pet Grp., Inc. v. MiracleCorp Prods.*, No. 4:12CV00440 AGF, 2012 U.S. Dist. LEXIS 158156, at *2 (E.D. Mo. 2012) ("Plaintiff argues that the license/settlement agreements sought will be of little use to Defendant").

None of the cases Defendant cite support its position and the relief requested should be denied.

### 3.    Request No. 4

Defendant's Request for Production No. 4 requests:

> **Request No. 4**:    All Documents and Things relating to any responses to an assertion of infringement of the Patents-in-Suit or any Related Patent.

Plaintiff's answer:

> **RESPONSE:** Plaintiff objects to this Request to the extent it seeks production of information and materials protected from disclosure by the attorney-client privilege, the work-product doctrine, or any other applicable privilege or immunity. Plaintiff additionally objects to this Request to the extent it seeks production of information and materials designated confidential or sealed pursuant to a Court order or by application of one or more Federal Rules of Evidence.
>
> Plaintiff objects to this Request as being overly broad and unduly burdensome, insofar as it seeks the production of materials and information that is not proportional to the needs of the case based on both the breadth of the Request, itself, as well as application of the definitions proffered by Defendant. More specifically, the request for "All Documents and Things reflecting any response to an assertion of infringement of the Patents-in-Suit or any Related Patent" is exceptionally broad and becomes broader still in light of Defendant's definitions of the terms "Related Patent" and "relating to." Accordingly, the present Request is not reasonably limited in scope and requests documents not relevant to the subject matter of this

action, nor reasonably calculated to lead to the discovery of admissible evidence.

Further, Plaintiff objects to this Request to the extent it seeks the production of documents that are not within the possession, custody, or control of Plaintiff. Subject to these objections and without waiving the same, Plaintiff responds as follows:

Plaintiff will conduct a diligent search for only "any responses to an assertion of infringement of the Patents-in-Suit made by Kajeet" and will produce all non-privileged, responsive documents in its possession, custody, and control. With respect to the remainder of this Request, Plaintiff will not search for or produce documents but is willing to meet and confer regarding amending this Request to confine it to a proper scope.

## DEFENDANT'S ARGUMENT

Continuing with its mission to stonewall Qustodio's case, Kajeet has not reasonably responded to Qustodio's RFP 4.  As with RFP 3, Kajeet maintains that any responses to its demand letters are not relevant.  On the meet-and-confer, Kajeet agreed to disclose any prior art provided by a responding company, but it plainly refused to provide any responses as it believes they are "irrelevant." (Ruggio Decl., ¶ 11).

As a preliminary matter, it is quite appalling for Kajeet to unilaterally define the scope of discovery that is proportional to the needs of Qustodio's case, and then to apply that flawed and unreasonably restrictive definition of relevance, to all of Qustodio's Requests.  That is improper. *See, e.g.*, *Moore v. Superway Logistics, Inc.*, 1:17-cv-01480-DAD, 2019 U.S. Dist. LEXIS 90111, at * (E.D. Cal. May 29, 2019) (the phrase "reasonably calculated to lead to the discover of admissible evidence" "was removed from Federal Rule of Civil Procedure 26(b)(1) because it had been used by many to incorrectly define the scope of discovery."); *Luna v. Universal City Studios LLC*, No. 12-cv-9286 PSG, 2015 U.S. Dist. LEXIS 192571, at*4 (C.D. Cal. Feb. 10, 2015) ("[t]he Ninth Circuit favors a broad scope of discovery."); *see also Fresenius Med. Care Holding, Inc. v. Baxter, Inc.*, 224

F.R.D. 644, 656 (N.D. Cal. 2004) ("prior investigations relating to the patents-in-suit" are "relevant to the claims and defenses").

Setting aside Kajeet's improper discovery antics, Kajeet's claim of irrelevance regarding responses to demand letters is beyond the pale.  Responses from other targets are certainly relevant if they involve the Patents-in-Suit (which they do), and are especially relevant if the responding company provided arguments and opinions regarding infringement, invalidity and/or unenforceability of the Patents-in-Suit under 35 U.S.C. §§ 101, 102, 103, 112, and/or other sections of the Patent Act.  Responses to these letters exist, and some *have* alleged non-infringement and/or invalidity of the Patents-in-Suit.  For example, in *Kajeet, Inc. v. Circle Media Labs, Inc.*, Civ. No. 8:18-cv-01312 (C.D. Cal. Jul. 27, 2018), Kajeet stated it "sent a letter to Circle to put Circle on notice of the Kajeet patents" and that "Circle subsequently responded" but "provided no support for its assertion of non-infringement, nor did Circle identify any prior art purported to be relevant to validity of the Kajeet patents." (*Id.* at D.I. 1, ¶ 20).  As such, it is disingenuous for Kajeet to allege these responses from other targets, discussing the Patents-in-Suit, are "irrelevant."

Further, Kajeet's objection that the Request is unclear or overly broad with regards to the term "Related Patents" is belied by its own actions and admissions.  In its demand letters, Kajeet clearly understood what patents are "related" to the Patents-in-Suit, by touting its "patent portfolio of thirty-one (31) issued U.S. patents." (Ruggio Decl., Ex. H, at 1).  Kajeet even described them as "The Patents" and explained they "include four families." (*Id.*).  As such, Qustodio's request was properly phrased, reasonable in scope, and the documents responsive to this request are undoubtedly relevant.

Therefore, this Court should grant Qustodio's Motion to Compel because RFP No. 4 clearly asks for responsive and relevant information regarding its claims and defenses.

- 24 -
4843-3646-8389v1/105552-0001
18-cv-01519

**PLAINTIFF'S ARGUMENT**

Kajeet incorporates its objections submitted in response to this request herein for all purposes.

"The party seeking to compel discovery has the burden of establishing that the information is relevant." *Moore v. Superway Logistics, Inc.*, No. 1:17-cv-01480-DAD-BAM, 2019 U.S. Dist. LEXIS 90111, at *7 (E.D. Cal. 2019). Only upon making this threshold showing does the burden shift to the party resisting discovery to show that discovery of relevant information should not be allowed *Louisiana Pac. Corp. v. Money Mkt. 1 Institutional Inv. Dealer*, 285 F.R.D. 481, 485 (N.D. Cal. 2012); *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975). As Defendant notes, the language of Rule 26(b)(1) was recently amended. "[T]he purpose of the amendment to Rule 26(b)(1) was ***to narrow the scope of discovery*** because the language 'reasonably calculated to lead to the discovery of admissible evidence' had been incorrectly used by some to define the scope of discovery as more broad than intended." *ArcelorMittal Ind. Harbor LLC v. Amex Nooter, LLC*, No. 2:15-CV-195-PRC, 2016 U.S. Dist. LEXIS 89117, at *11 (N.D. Ind. 2016); *Michael Kors, L.L.C. v. Su Yan Ye*, No. 1:18-CV-2684 (KHP), 2019 U.S. Dist. LEXIS 60057, at *4 (S.D.N.Y. 2019). The new and narrower permissible scope applies to Defendant's requests.

Defendant's arguments for relevance highlight the appropriateness of Kajeet's response to the present Request. Defendant argues that the requested responses are relevant "if they involve the Patents-in-Suit (which they do), and are especially relevant if the responding company provided arguments and opinions regarding infringement, invalidity and/or unenforceability of the Patents-in-Suit under 35 U.S.C. §§ 101, 102, 103, 112, and/or other sections of the Patent Act."

But Defendant admits that Kajeet has agreed to produce and has produced all purported prior art that it has received in connection with the responses Defendant now seeks. To the extend the requested information has any relevance

- 25 -

4843-3646-8389v1/105552-0001

under 35 U.S.C. §§ 102 or 103, Defendant has been provided that information. Beyond this, Defendant's raising §§ 101, 112 and the non-infringement positions taken by others is a red herring.  Patentability under § 101 and the requirements of § 112 involves analysis of the specification, claims, and file history of a patent. Defendant has been provided all of this information from the outset.  It can do its own work with respect to these legal inquiries.

Defendant fails to explain how the non-infringement positions raised by others could be relevant to the present case.  Those positions would rely on factual matter that is not relevant to any issue in this case, namely the features, functionality, components, and operation of potentially infringing products of another.  Defendant is keenly aware of how its products work and, as such, is fully armed to develop its own non-infringement positions, to the extent it is able.  In truth, Defendant's request is motivated by a desire to improperly gain insight into the operation of the products of its competitors rather than by obtaining any information relevant to the claims in this case.

Finally, Defendant's arguments with respect to its use of the term "Related Patents" appear untethered to the facts.  Perhaps counsel for Defendant is unaware of Defendant's having expressly defined "Related Patents" in its discovery requests.  The definition provided is overly broad insofar as it would include any patent or application addressed to similar subject matter as the Patents-in-Suit and to any patent or application sharing an inventor with the Patents-in-Suit.  That Kajeet has used the word "related" in correspondence authored a year before Defendant served its discovery requests does not alter or undermine Kajeet's position that Defendant's definition is impermissibly broad.

### 4.    Request No. 7

Defendant's Request for Production No. 7 requests:

**Request No. 7**:    All Documents and Things related to any agreement, license, assignment, grant of rights, or covenant not to sue

- 26 -

for infringement for the Patents-in-Suit or any Related Patent, including but not limited to any discussion, proposal, or acceptance of any agreement relating to the Patents-in-Suit or any Related Patent, and the terms of any such agreement[,] license, assignment, grant of rights, or covenant not to sue.

Plaintiff's answer:

**RESPONSE:** Plaintiff objects to this Request to the extent it seeks production of information and materials protected from disclosure by the attorney-client privilege, the work-product doctrine, or any other applicable privilege or immunity. Plaintiff additionally objects to this Request to the extent it seeks production of information and materials designated confidential or sealed pursuant to a Court order or by application of one or more Federal Rules of Evidence.

Plaintiff objects to this Request as being overly broad and unduly burdensome, insofar as it seeks the production of materials and information that is not proportional to the needs of the case based on both the breadth of the Request, itself, as well as application of the definitions proffered by Defendant. More specifically, the request for "All Documents and Things relating to any agreement, license, assignment, grant of rights, or covenant not to sue for infringement for the Patents-in-Suit or any Related Patent, including but not limited to any discussion, proposal, or acceptance of any agreement relating to the Patents-in-Suit or any Related Patent" is exceptionally broad and becomes broader still in light of Defendant's definitions of the terms "Related Patent" and "relating to." Accordingly, the present Request is not reasonably limited in scope and requests documents not relevant to the subject matter of this action, nor reasonably calculated to lead to the discovery of admissible evidence.

Further, Plaintiff objects to this Request to the extent it seeks the production of documents that are not within the possession, custody, or control of Plaintiff. Plaintiff objects to this Request to the extent it is premature and improperly seeks discovery of legal positions or expert opinions within the scope of Federal Rule of Civil Procedure 26(a)(2)(B). Plaintiff objects to this Request to the extent it improperly seeks to require Plaintiff to marshal all of its available proof and limit the evidence that Plaintiff may present at the trial of this matter.

Subject to these objections and without waiving the same, Plaintiff responds as follows:

- 27 -
JOINT STIPULATION TO COMPEL DISCOVERY

Plaintiff will otherwise conduct a diligent search for only "All Documents and Things relating to any agreement, license, assignment, grant of rights, or covenant not to sue for infringement for the Patents-in-Suit" and will produce all non-privileged, responsive documents in its possession, custody, and control. With respect to the remainder of this Request, Plaintiff will not search for or produce documents but is willing to meet and confer regarding amending this Request to confine it to a proper scope.

**DEFENDANT'S ARGUMENT**

"The party who resists discovery has the burden to show discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections." *Comcast of L.A., Inc. v. Top End Int'l*, No. CV 03-2213-JFW(RCx), 2003 U.S. Dist. LEXIS 18640, at \*6 (C.D. Cal. July 2, 2003) (citing *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975)). "We start with the premise that pre-trial discovery is ordinarily 'accorded a broad and liberal treatment.'" *Shoen v. Shoen*, 5 F. Supp. 1289, 1292 (9th Cir. 1993) (citing *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)); *see also United States v. Bryan*, 339 U.S. 323 (1950) (discovery is broad because litigants have a right to "every man's evidence.").

As discussed above in RFP 3 and 11, Kajeet and PMI have maintained an active licensing campaign regarding the Patents-in-Suit and Related Patents. Yet, in this litigation, Kajeet is of the opinion that only the executed license agreements are relevant, and therefore it will not produce "irrelevant" documents related to those negotiations. Although Kajeet has waived each of its objections by failing to state in its Response whether it was withholding documents on such basis, Kajeet's substantive position is factually and legally improper.

***First***, it is rather remarkable for Kajeet to assert that documents regarding any license discussion, proposal, or acceptance, are "not relevant" when they so clearly and unequivocally involve the Patents-in-Suit and/or Related Patents, the value of which is unquestionably relevant at least to damages. *See, e.g., Fresenius Med. Care Holding, Inc. v. Baxter, Inc.*, 224 F.R.D. 644, 656 (N.D. Cal. 2004)

- 28 -

(granting motion to compel "demand letters to third parties" because they are "relevant to the claims and defenses"); *see also Michael Kors, L.L.C. v. Sun Yan Ye*, No. 1:18-CV-2684 (KHP), 2019 U.S. Dist. LEXIS 60057, at *18-22 (S.D.N.Y. Apr. 8, 2019) ("A separate request could have asked for copies of cease and desist letters sent to third parties that Plaintiff accused of infringing [] in the United States, copies of letters responding to same, and any settlement agreement resulting therefrom" and ordering Plaintiff to "respond to the Amended Requests consistent with the Court's directions herein" because "[f]ew, if any, of its cease and desist letters would be publicly available."). As such, Kajeet's unilateral designation of relevance, and the application of that flawed designation to clearly relevant documents, is highly improper.

**Second**, the letters, responses, and negotiations between Kajeet and the other targets are clearly relevant to aid Qustodio in determining an accurate valuation for the Patents-in-Suit, and to assist in the calculation of any damages-related assessment, *e.g.*, the reasonable royalty rate, royalty base, etc. *See, e.g., In re MSTG, Inc.*, 675 F.3d 1337, 1348 (Fed. Cir. 2012) ("Therefore, in light of reason and experience, we hold that settlement negotiations related to reasonable royalties and damage calculations are not protected by a settlement negotiation privilege."); *Wu v. Pearson Educ. Inc.*, No. 09 CIV 6557 KBF JCF, 2012 U.S. Dist. LEXIS 51882, at * (S.D.N.Y. Apr. 12, 2012) ("to the extent the plaintiff has otherwise identified specific categories of discoverable documents, those documents shall be produced even if they were created in the context of settlement negotiations"); *see also United Pet Group, Inc. v. MiracleCorp Products*, No. 4:12CV00440 AGF, 2012 U.S. Dist. LEXIS, at * (E.D. Mo. Nov. 5, 2012) (ordering production of "documents related to license and settlement agreements"). Kajeet cannot deny that documents relating to license negotiations contain damages-related information, such as offers, proposed royalty rates, and the like. Indeed, in its demand letter to Qustodio, Kajeet stated it has "determined that an ongoing royalty

JOINT STIPULATION TO COMPEL DISCOVERY

rate of 4.5% represents a fair and reasonable amount for a license to the Kajeet Patents" — which is not just the three patents that Kajeet asserted in this suit, but included 28 others, and pending applications, at the time of the writing. (Ruggio Decl., Ex. H, at pg. 4).   The differences between the terms proposed in these negotiations (or lack of differences), and the differences between the targets and their products, and their responses and further negotiations, and associated factual considerations captured in such communications, are all clearly relevant and are required for a meaningful analysis regarding the actual value of the Patents-in-Suit. Documents responsive to such request are squarely relevant under the *Georgia-Pacific* damages analysis, and indeed, are necessary for Qustodio to support its claims and defenses. *See Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1120 (N.Y.S.D. 1970), *aff'd* 446 F.2d 295 (2d Cir. 1971), *cert. denied* 404 U.S. 870 (1971).

**Lastly**, Kajeet cannot stand behind conclusory assertions of privilege, whether attorney-client privilege and/or work-product privilege, because such correspondences were sent to parties outside of the attorney-client relationship. *India Mills & Mfg., Inc. v. Dorel Indus.*, No. 1:04CV01102-LJM-WTL, 2006 U.S. Dist. LEXIS 45637, at *4 (S.D. Ind. 2006) (holding that a notice letter alone does not create reasonable anticipation of litigation); *Minebea Co. v. Papst*, 355 F. Supp. 2d 526, 528-29 (D.D.C. 2005) (patent "license negotiations are not, by definition, in anticipation of litigation and are not, without more, protected by the work product privilege").   In light of the claims at hand and issues at stake, the letters to third-parties and their responses and communications, should have been produced because they are at a bare minimum, discoverable, proportional, non-privileged, and relevant.

Therefore, this Court should grant Qustodio's Motion to Compel because RFP No. 7 clearly asks for responsive and relevant information regarding its claims and defenses.

JOINT STIPULATION TO COMPEL DISCOVERY

**PLAINTIFF'S ARGUMENT**

Kajeet incorporates its objections submitted in response to this request herein for all purposes.

"The party seeking to compel discovery has the burden of establishing that the information is relevant." *Moore v. Superway Logistics, Inc.*, No. 1:17-cv-01480-DAD-BAM, 2019 U.S. Dist. LEXIS 90111, at *7 (E.D. Cal. 2019). Only upon making this threshold showing does the burden shift to the party resisting discovery to show that discovery of relevant information should not be allowed *Louisiana Pac. Corp. v. Money Mkt. 1 Institutional Inv. Dealer*, 285 F.R.D. 481, 485 (N.D. Cal. 2012); *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975). As Defendant notes, the language of Rule 26(b)(1) was recently amended. "[T]he purpose of the amendment to Rule 26(b)(1) was ***to narrow the scope of discovery*** because the language 'reasonably calculated to lead to the discovery of admissible evidence' had been incorrectly used by some to define the scope of discovery as more broad than intended." *ArcelorMittal Ind. Harbor LLC v. Amex Nooter, LLC*, No. 2:15-CV-195-PRC, 2016 U.S. Dist. LEXIS 89117, at *11 (N.D. Ind. 2016); *Michael Kors, L.L.C. v. Su Yan Ye*, No. 1:18-CV-2684 (KHP), 2019 U.S. Dist. LEXIS 60057, at *4 (S.D.N.Y. 2019). The new and narrower permissible scope applies to Defendant's requests.

Contrary to Defendant's erroneous assertions, Kajeet has produced documents relating to its licensing efforts. Specifically, Kajeet has produced every settlement and license agreement to the Kajeet Patents, which is undoubtedly the best evidence for determining a reasonable royalty resulting from a "hypothetical negotiation." Defendant incorrectly contends, however, that documents evidencing the underlying negotiations leading to these agreements are "essential for Qustodio to conduct a wholesome valuation analysis regarding the Patents-in-Suit." Defendant goes on to baldly assert the requested documents are "clearly relevant because:

JOINT STIPULATION TO COMPEL DISCOVERY
4843-3646-8389v1/105552-0001

"[t]he differences between the terms proposed in these negotiations (or lack of differences), and the differences between the targets and their products, and their responses and further negotiations, and associated factual considerations captured in such communications, are all clearly relevant and are required for a meaningful analysis regarding the actual value of the Patents-in-Suit."

But this use of such information is expressly forbidden by Federal Rule of Evidence 408, which prohibits use of conduct or statements made as part of compromise negotiations for proving the validity or value of a legal claim, among other prohibitions. Further, documents relating to any ongoing and/or unconsummated settlement or licensing negotiations are undiscoverable. *Mondis Tech., Ltd. v. LG Elecs., Inc.*, No. 2:07-CV-565-TJW-CE, 2011 U.S. Dist. LEXIS 47807, at *26 (E.D. Tex. 2011) (refusing discovery for unconsummated negotiations because this information is unreliable and has little probative value, and because this information has a chilling effect on ongoing negotiations).

Aside from setting forth a prohibited use of the information sought, Defendant also fails to provide any explanation why the executed license and settlement agreements already produced and resulting from the settlement negotiations information sought would somehow be insufficient to demonstrate "differences between the terms proposes in these negotiations (or lack of differences)."

Defendant then cites to all of the same cases that have already been shown to be inapposite with respect to the facts of this case. For the sake of brevity, Kajeet incorporates its arguments made with respect to Request No. 3, *supra*, herein and likewise requests that the relief requested be denied.

### 5.    Request No. 8

Defendant's Request for Production No. 8 requests:

**Request No. 8**:    All Documents and Things related to any

communications or negotiations regarding any agreement, offer of a license, license, assignment, grant of rights, or covenant not to sue for infringement for the Patents-in-Suit or any Related Patent

Plaintiff's answer:

**RESPONSE:** Plaintiff objects to this request as being cumulative or Request No. 7 in light of Defendant's proffered definition of "Documents" which includes "communications." Plaintiff incorporates its objections in response to Request No. 7 into the present response. Subject to these objections and without waiving the same, Plaintiff responds as follows:

Plaintiff will not separately search for or produce documents responsive to this request but is willing to meet and confer regarding the scope of this Request, including how the scope of this Request differs from those identified above.

## DEFENDANT'S ARGUMENT

On the meet-and-confer, Kajeet maintained its objections that this Request calls for irrelevant documents and that it is cumulative of RFP 7. Both objections are misplaced.

First, Kajeet is mistaken that this Request is cumulative of RFP 7. Although there may be some overlap in the scope of documents requested, RFP 8 is different than RFP 7, in that it specifically requested "any communications or negotiations regarding any settlement." Kajeet refused to produce any. Second, such documents between Kajeet, PMI, and any third-party regarding communications or negotiations are unquestionably relevant for a myriad of reasons as discussed *supra* including, *inter alia*, for an accurate valuation of the Patents-in-Suit. *See Kearney & Trecker Corp. v. Giddings & Lewis*, 296 F. Supp. 979, 983 (E.D. Wis. 1969) ("the documents relative to negotiations with the five prospective licensees … should be produced"); *see also Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1120 (N.Y.S.D. 1970), *aff'd* 446 F.2d 295 (2d Cir. 1971), *cert. denied* 404 U.S. 870 (1971).

Therefore, this Court should grant Qustodio's Motion to Compel because RFP No. 8 clearly asks for responsive and relevant information regarding its claims and defenses.

**PLAINTIFF'S ARGUMENT**

Kajeet incorporates its objections submitted in response to this request herein for all purposes.

"The party seeking to compel discovery has the burden of establishing that the information is relevant." *Moore v. Superway Logistics, Inc.*, No. 1:17-cv-01480-DAD-BAM, 2019 U.S. Dist. LEXIS 90111, at *7 (E.D. Cal. 2019). Only upon making this threshold showing does the burden shift to the party resisting discovery to show that discovery of relevant information should not be allowed *Louisiana Pac. Corp. v. Money Mkt. 1 Institutional Inv. Dealer*, 285 F.R.D. 481, 485 (N.D. Cal. 2012); *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975). As Defendant notes, the language of Rule 26(b)(1) was recently amended. "[T]he purpose of the amendment to Rule 26(b)(1) was ***to narrow the scope of discovery*** because the language 'reasonably calculated to lead to the discovery of admissible evidence' had been incorrectly used by some to define the scope of discovery as more broad than intended." *ArcelorMittal Ind. Harbor LLC v. Amex Nooter, LLC*, No. 2:15-CV-195-PRC, 2016 U.S. Dist. LEXIS 89117, at *11 (N.D. Ind. 2016); *Michael Kors, L.L.C. v. Su Yan Ye*, No. 1:18-CV-2684 (KHP), 2019 U.S. Dist. LEXIS 60057, at *4 (S.D.N.Y. 2019). The new and narrower permissible scope applies to Defendant's requests.

A simple comparison of the language Request No. 8 shows that it is cumulative of Request No. 7. Defendant's definition of "documents" expressly includes "communications" such that the overlap among these two requests is complete. In response, Kajeet agreed to and has produced all executed agreements conferring a license, grant of rights, assignment, covenant not to sue, or release for the Patents-in-Suit. This is the permissible scope of discovery to which Defendant

- 34 -

is entitled. Because this request seeks the same information as Request No. 7, Kajeet incorporates the arguments made in the preceding section herein.

### 6. Request No. 9

Defendant's Request for Production No. 9 requests:

> **Request No. 9**: All Documents and Things relating to any actual or potential investment in or offer of a financial interest relating to litigation of the Patents-in-Suit or any Related Patent (including but not limited to, any interest in Kajeet), including any materials supplied to investors or potential investors relating to the Patents-in-Suit or any Related Patent or any lawsuit or licensing involving the Patents-in-Suit or any Related Patent.

Plaintiff's answer:

> **RESPONSE:** Plaintiff objects to this Request to the extent it seeks production of information and materials protected from disclosure by the attorney-client privilege, the work-product doctrine, or any other applicable privilege or immunity. Plaintiff additionally objects to this Request to the extent it seeks production of information and materials designated confidential or sealed pursuant to a Court order or by application of one or more Federal Rules of Evidence.
>
> Plaintiff objects to this Request as being overly broad and unduly burdensome, insofar as it seeks the production of materials and information that is not proportional to the needs of the case based on both the breadth of the Request, itself, as well as application of the definitions proffered by Defendant. More specifically, the request for "All Documents and Things relating to any actual or potential investment in or offer of a financial interest relating to litigation of the Patents-in-Suit or any Related Patent (including but not limited to, any interest in Kajeet), including any materials supplied to investors or potential investors relating to the Patents-in-Suit or any Related Patent or any lawsuit or licensing involving the Patents-in-Suit or any Related Patent " is exceptionally broad and becomes broader still in light of Defendant's definitions of the terms "Related Patent" and "relating to." Accordingly, the present Request is not reasonably limited in scope and requests documents not relevant to the subject matter of this action, nor reasonably calculated to lead to the discovery of admissible evidence.
>
> Further, Plaintiff objects to this Request to the extent it seeks the production of documents that are not within the possession, custody, or control of Plaintiff. Plaintiff objects to this Request to the

- 35 -

JOINT STIPULATION TO COMPEL DISCOVERY

18-cv-01519

extent it is premature and improperly seeks discovery of legal positions or expert opinions within the scope of Federal Rule of Civil Procedure 26(a)(2)(B). Plaintiff objects to this Request to the extent it improperly seeks to require Plaintiff to marshal all of its available proof and limit the evidence that Plaintiff may present at the trial of this matter.

Subject to these objections and without waiving the same, Plaintiff responds as follows:

Plaintiff will not search for or produce documents responsive to this request but is willing to meet and confer regarding the scope of this Request.

**DEFENDANT'S ARGUMENT**

As discussed *supra*, Kajeet actively utilizes its patent portfolio in its licensing scheme, which is carried out in concert with PMI.  However, Kajeet also uses its patent portfolio as a basis to obtain other financial investments.  Kajeet has refused to provide any documents related to PMI and investments underlying the Patents-in-Suit.  Instead, Kajeet stated that it "will not search for or produce documents responsive to this request but is willing to meet and confer regarding the scope of this Request." (Ruggio Decl., Ex. B, at pg. 16).  On the meet-and-confer that occurred July 1, 2019, Kajeet stated that anything related to PMI is not relevant, or at most, only "tangential" and therefore it will not produce anything related to PMI, or the financial investments underlying the Patents-in-Suit. (Ruggio Decl., ¶ 11).

Kajeet is the Patent Owner-Plaintiff, and as such, it has the burden of proving damages for any alleged infringement underlying the Patents-in-Suit.  That damages assessment can comprise different methodologies to determine the value of the patent(s) and hence damages from any alleged infringement.  The valuation of the patents and the patent portfolio may include financing revenue, license revenue, litigation financing, and/or any other economic benefit underlying the Patents-in-Suit.  All of that financial information surrounding the Patents-in-Suit is

JOINT STIPULATION TO COMPEL DISCOVERY
4843-3646-8389v1/105552-0001
18-cv-01519

facially relevant and discoverable. *See generally In re Google Litig.*, No. C 08-03172 RMW , 2011 U.S. Dist. LEXIS 140656 (N.D. Cal. Dec. 7, 2011) (allowing third-party discovery as to a venture capital firm that invested in a party in patent litigation); *Gbarabe v. Chevron Corp.*, No. 14-cv-00173-SI, 2016 U.S. Dist. LEXIS 103594, at *6 (N.D. Cal. Aug. 5, 2016) (granting "Chevron's motion to compel and orders plaintiff to produce the litigation funding agreement" because "those documents (such as documents related to 'potential financing') are relevant and discoverable.").

Kajeet does not deny that it obtains financial investments underlying the Patents-in-Suit.  In fact, in Kajeet's letter to Qustodio, it touted itself for "having raised over $100 million in venture capital." (Ruggio Decl., Ex. H, at 4); https://www.crunchbase.com/organization/kajeet/funding_rounds/funding_rounds_ list;  https://www.cbinsights.com/company/kajeet-funding.  It therefore cannot reasonably be disputed that these investment-related documents regarding the Patents-in-Suit are relevant and required discovery.  It is important for Qustodio to understand the parties behind the scenes with interests in the Patents-in-Suit, and to further examine all of the financial discovery relating to this specific litigation, as well as others similarly situated, to arrive at an accurate valuation of the Patents-in-Suit. *See In re Method of Processing Ethanol Byproducts & Related Subsystems ('858) Patent Litig.*, 303 F. Supp. 3d 791, 874 n. 57 (S.D. Ind. Oct. 23, 2014) ("financial interest may be relevant to certain issues raised by both parties."); *Intel Corp. v. Prot. Capital LLC*, No. 13cv1685 GPC, 2013 U.S. Dist. LEXIS 201883, at *9 (S.D. Cal. Oct. 2, 2013) ("This court finds that the investment and litigation information sought in these requests is relevant because it relates to the valuation of the patents … [b]ecause a third-party's investment information is relevant in patent litigation.").

- 37 -
JOINT STIPULATION TO COMPEL DISCOVERY

Therefore, documents relating to any investments underlying the Patents-in-Suit are at a minimum discoverable, and Kajeet has no basis to withhold production.

**PLAINTIFF'S ARGUMENT**

Kajeet incorporates its objections submitted in response to this request herein for all purposes.

"The party seeking to compel discovery has the burden of establishing that the information is relevant." *Moore v. Superway Logistics, Inc.*, No. 1:17-cv-01480-DAD-BAM, 2019 U.S. Dist. LEXIS 90111, at *7 (E.D. Cal. 2019).  Only upon making this threshold showing does the burden shift to the party resisting discovery to show that discovery of relevant information should not be allowed *Louisiana Pac. Corp. v. Money Mkt. 1 Institutional Inv. Dealer*, 285 F.R.D. 481, 485 (N.D. Cal. 2012); *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975).  As Defendant notes, the language of Rule 26(b)(1) was recently amended. "[T]he purpose of the amendment to Rule 26(b)(1) was ***to narrow the scope of discovery*** because the language 'reasonably calculated to lead to the discovery of admissible evidence' had been incorrectly used by some to define the scope of discovery as more broad than intended." *ArcelorMittal Ind. Harbor LLC v. Amex Nooter, LLC*, No. 2:15-CV-195-PRC, 2016 U.S. Dist. LEXIS 89117, at *11 (N.D. Ind. 2016); *Michael Kors, L.L.C. v. Su Yan Ye*, No. 1:18-CV-2684 (KHP), 2019 U.S. Dist. LEXIS 60057, at *4 (S.D.N.Y. 2019).   The new and narrower permissible scope applies to Defendant's requests.

Defendant's arguments for compelling production are made only with respect to a specific third-party entity, PMI.   As such, Kajeet's responsive arguments are similarly confined, although they would also largely be applicable to any other alleged third-party funders and/or investors that Defendant contends exist.  Defendant asserts that "[i]t is important for Qustodio to understand the parties behind the scenes with interests in the Patents-in-Suit" as its basis for being

- 38 -

entitled to blanket production of "[a]ll Documents and Things relating to any actual or potential investment in or offer of a financial interest relating to litigation of the Patents-in-Suit or any Related Patent…" This position is meritless.

First, Plaintiff filed its Certification and Notice of Interested Parties concurrent with the filing of its Original Complaint which directly and completely addresses Defendant's purported need to "understand the parties behind the scenes with interests in the Patents-in-Suit." Wojcio Decl. at Ex. M. It does not list any entity other than Plaintiff Kajeet, Inc. as owning any such interest. Second, Kajeet informed Defendant during the conference of counsel that PMI has no ownership interest in any of Kajeet's Patents or its business and is not a licensee to the Kajeet Patents. Documents detailing the ownership of and rights to the Patents-in-Suit have already been produced as well as all licenses to the Patents-in-Suit. None mention or relate in any way to PMI. Despite knowing this Defendant continues forward with its fishing expedition seeking to compel production through Kajeet of documents Defendant is not entitled to, to the extend such documents even exist, from a third party.

The very cases Defendant cites to demonstrate that it is not entitled to the documents sought by this request. For example, *Google* addressed a subpoena seeking production from a third-party, KPCB, to a litigation based on the third party having a substantial relationship with Defendant Google. Specifically, the third party was a venture capital firm that both invested in Google and had one of its general partners on Google's Board of Directors. *In re Google*, 2011 U.S. Dist. LEXIS 140656, at *7. The Court ordered discovery from the third party limited to three specific categories of information while denying broader discovery on thirty-one other categories, including "KPCB's consideration to invest and actual investment in Google" and valuations conducted by KPCB relating to Google's technology and licenses relating thereto. *Id. Google*, therefore, **denied discovery** on the very categories of documents to which Defendant's request is addressed.

Likewise, *Gbarabe* is completely inapposite to the facts of this case.  In *Gbarabe* production of a funding agreement was compelled in the context of a class action lawsuit because "***under the circumstances of this case***, the litigation funding agreement is ***relevant to the adequacy determination***" as part of class certification.  *Gbarabe*, 2016 U.S. Dist. LEXIS 103594, at *5 (emphasis added). Production of other documents relating to litigation financing was not compelled, however.  Moreover, in *Gbarabe* Plaintiff ***conceded*** that the funding agreement was relevant and discoverable but only withheld it awaiting a Court order compelling its production to comply with the confidentiality provisions of the agreement.  *Id*, 2016 U.S. Dist. LEXIS 103594, at *4-5.  This holding of this case is inapplicable outside of the context of class action lawsuits where "adequacy of representation" determinations are not a required finding in the litigation.  It most certainly does not stand for the proposition that "[a]ll of that financial information surrounding the Patents-in-Suit is facially relevant and discoverable" as Defendant grossly misstates.

Finally, *Intel Corp*. dealt with third party subpoenas to the financial backers who formed a non-practicing entity holding company for the purpose of purchasing and asserting the patents-in-suit.  *Intel Corp.*, 2013 U.S. Dist. LEXIS 201883, at *15.  The Court granted a motion for enforcement of the subpoenas relating to documents from each financial backer detailing the due diligence and financials of the patent purchase.  *Id*.

Again, the law Defendant cites is inapposite.  Kajeet is a practicing entity that is the sole assignee of all rights in and title to the Patents-in-Suit directly from the inventors, who developed the inventions claimed in the Kajeet Patent as employees of Kajeet and in connection with their job duties.  Documents establishing this truth have already been produced.  Defendant has no basis for contending that any other entity has or has had any interest in any of the Kajeet

- 40 -

JOINT STIPULATION TO COMPEL DISCOVERY

Patents.  Documents evidencing a purchase of interest in the Patents-in-Suit simply do not exist and Defendant is well aware of this fact.

Beyond this, to the extent PMI has been retained as an agent of Kajeet in connection with Kajeet's licensing campaign and corresponding litigations, communications between PMI and Kajeet would be protected from disclosure under the common interest privilege and the work product privilege.  *In re Regents of the Univ. of Cal.*, 101 F.3d 1386, 1390 (Fed. Cir. 1996) (finding a common interest among licensing agent and patent owner).   These protections extend beyond just work product made by an attorney to also cover work product of a party's representatives and agents.  *United States v. Nobles*, 422 U.S. 225, 254 n.16, 95 S. Ct. 2160, 2178 (1975) (protection covers documents of a party's "representative," whether a lawyer or not); *United States v. Torf (In re Grand Jury Subpoena)*, 357 F.3d 900, 909 (9th Cir. 2003) (documents prepared by retained environmental consultant protected from disclosure); Fed R. Civ. P. 26(b)(3)(B).

Communications and documents shared between and among PMI as a licensing agent and Kajeet as patent owner relating to the Kajeet Patents were made under direction of counsel and necessarily were created in anticipation of litigation to enforce Kajeet's patent rights.  As such, they are protected by the work product privilege.  *Carlyle Inv. Mgmt. L.L.C. v. Moonmouth Co. S.A.*, No. 7841-VCP, 2015 Del. Ch. LEXIS 42, at *28 (Ch. 2015) (communications leading to and agreement forming agent relationship asserting patent rights "almost certainly" implicate 'lawyers' mental impressions, theories and strategies" and are "only prepared 'because of' the litigation.'")  This protection from disclosure extends to pre-litigation communications.  *Odyssey Wireless, Inc. v. Samsung Elecs. Co.*, No. 3:15-cv-01738-H (RBB), 2016 U.S. Dist. LEXIS 188611, at *17 (S.D. Cal. 2016).

To the extent Defendant elects to remain obstinate and move forward based on presumptions it knows to be false, Defendant should be forced to pursue the non-existent documents it seeks through the proper procedural vehicle which is a

- 41 -

third-party subpoena.  Defendant surely knows this to be the more appropriate course of action as the cases to which it presently cites are addressed to enforcement of third-party subpoenas rather than to improperly seeking production of documents relating to a third-party to a litigation through normal party discovery.

## B.   Requests For Admissions Disputes

### 1.   Request No. 1[1]

Defendant's Request for Admission No. 1 requests:

> **Request No. 1**:   Admit that You did not download the accused instrumentality, Qustodio for Family (as defined in Kajeet's S.P.R. 2.1 Disclosures and Exhibits thereto), prior to filing this case on August 24, 2018.

Plaintiff's answer:

> **RESPONSE:** Plaintiff objects to this Request for Admission as premature and not properly calculated to lead to the discovery of admissible evidence. Plaintiff further objects to this Request for Admission to the extent that it seeks information protected by attorney-client privilege, work product doctrine, or other applicable privilege. Subject to these limitations and without waiving the same, Plaintiff answers as follows:
>
> Plaintiff is unable to admit or deny this Request without disclosing information protected by attorney-client privilege and/or the work product doctrine.

## DEFENDANT'S ARGUMENT

Continuing with its inappropriate tactics to dodge all reasonable discovery, Kajeet improperly refused to answer simple, pointed, and factual Requests for Admissions ("RFAs").  Instead, it baselessly claimed "attorney-client privilege and/or the work product doctrine."  In Qustodio's second discovery dispute letter, it discussed several cases *squarely* on point, and yet, Kajeet still maintained its

---

[1] Qustodio's argument for this Request applies to its RFA Nos. 2-9.  The Requests were different iterations of actions, "did not download" (Req. Nos. 1/4/7), "did not install" (Req. Nos. 2/5/8), "did not test" (Req. Nos. 3/6/9) "the accused instrumentality."

4843-3646-8389v1/105552-0001

baseless objections.  Qustodio therefore requests this Court's assistance to compel answers to factual questions that it is entitled to.

*First*, each of Qustodio's RFAs No. 1–9 asked for Kajeet to admit or deny whether factual events occurred prior to litigation – namely whether the accused products were downloaded and/or installed by Kajeet and/or its counsel as part of its pre-suit diligence.  Kajeet's claims of "attorney-client privilege and/or the work product doctrine" are misplaced.  Attorney-client privilege does not apply, as the Requests were for facts as to whether or not certain events occurred. *See Upjohn v. United States*, 449 U.S. 383, 396 (1981):

> "[T]he protection of the privilege extends only to *communications* and not to facts.  A fact is one thing and a communication concerning that fact is an entirely different thing.  The client cannot be compelled to answer the question 'What did you say or write to the attorney?' but may not refuse to disclose any relevant facts within his knowledge merely because he incorporated a statement of such fact into his communication with his attorney." (emphasis added).

Neither does the work-product doctrine apply.  Information regarding pre-suit investigations is routinely discoverable in patent litigation suits because it is the Patentee-Plaintiff that bears the burden of complying with its Rule 11 pre-filing investigation.  *See, e.g.*, *Antonious v. Spalding & Evenflo Cos, Inc.*, 275 F.3d 1066, 1072 (Fed. Cir. 2002) (Fed. R. Civ. P. 11 "require[s] that an attorney interpret the pertinent claims of the patent in issue before filing a complaint alleging patent infringement.").  This investigation entails, that the Plaintiff and its attorneys, "at a bare minimum apply the claims of each and every patent that is being brought into the lawsuit to an accused device." *View Eng'g Inc. v. Robotic Vision Sys.*, 208 F.3d 981, 986 (Fed. Cir. 2000)  To establish the reasonableness of its decision to file suit in the first place, Kajeet must answer discovery as to what tests were performed in their analyses of the accused devices (if any). *See, e.g., Judin v. United States*, 110 F.3d 780, 784 (Fed. Cir. 1997) (noting that "neither [patentee] or his counsel had made a reasonable effort to ascertain whether the accused

- 43 -

devices satisfied the two key claim limitations… No adequate explanation was offered for why ***they failed to obtain, or attempted to obtain, a sample of the accused device***") (emphasis added); *see also Antonious* at 1076 ("Thus, the [attorneys] had no direct knowledge that any of the accused [products] met the [claim limitation].").

***Second,*** the pre-filing investigation, i.e., an investigation to determine *whether* litigation is imminent or anticipated, is not protected work-product, and neither are the underlying actions and tests. *See, e.g., Itex, Inc. v. Workrite Unif. Co.*, No. 08-C-1224, 2011 U.S. Dist. LEXIS 35275, at *6 (N.D. Ill. Mar. 31, 2011) (granting motion to compel because "Defendants explain that they are not seeking any substantive information—at least through the requests to admit—regarding any pre-suit testing, but merely the underlying fact whether Plaintiff conducted the very specific pre-suit test described in their request."); *see also John Wiley & Sons, Ltd., v. McDonnell Boehnen Hulbert & Berghoff LLP*, No. 12-C-1446, 2013 U.S. Dist. LEXIS 80181, at *14-16 (N.D. Ill. Jun. 7, 2013) (ordering party to answer "pre-filing investigation" RFAs despite work-product claims because "[t]he RFAs ask about the existence of communications or searches.  This is non-privileged information…").  Therefore, Kajeet's claim of work-product holds no water.

***Third***, this objection is also belied by the information Kajeet provided in response to Qustodio's Interrogatory No. 4, which asked about Kajeet's pre-suit diligence. (Ruggio Decl., Ex. J).  Kajeet responded by providing the factual steps it took prior to bringing the present suit; it did not object to providing this information under the attorney-client privilege or work-product doctrine. (*Id*.). There is no reason for Kajeet to now reverse course from its prior position and refuse to admit or deny whether *other* certain, specific factual steps were taken as part of its pre-suit assessment.

\* \* \*

- 44 -

4843-3646-8389v1/105552-0001

18-cv-01519

Qustodio has adamantly maintained none of its accused products infringe the patents-in-suit, and has apprised Kajeet of that fact on numerous occasions, including by supplying specific citations to the non-infringing source code.  It is important for Qustodio to understand if Kajeet even downloaded any of the accused instrumentalities—all of which were publicly available for *anyone* to download—and whether it installed the instrumentality, and whether Kajeet tested it, *prior to* filing this lawsuit. Kajeet cannot dodge the issue of whether it had proper basis to accuse infringement—which requires actual testing of readily available products. *See, e.g, Kinglite Holdings, Inc. v. Micro-Star Int'l Co.*, No. 14-cv-03009 JVS, 2016 U.S. Dist. LEXIS 113284, at *16 (C.D. Cal. Jun. 23, 2016) ("[v]erification that any accused product have these three elements would be a crucial step of any adequate pre-suit investigation prior to filing claims for direct infringement"); *Lumen View Tech., LLC v. Findthebest.com, Inc.*, 24 F. Supp. 3d. 329, 336 (S.D.N.Y. 2014) (making exceptional case finding when plaintiff's "most basic pre-suit investigation" would have shown obvious noninfringement); *see also Int'l Intellectual Mgmt. Corp. v. Lee Yunn Enters., Inc.*, No. 2:08-cv-07587, 2009 U.S. Dist. LEXIS 132872, at *6 (C.D. Cal. Dec. 14, 2009) (finding plaintiff did not make proper pre-suit investigation).  Privilege is no shield here.

Therefore, Qustodio respectfully requests this Court grant its Motion to compel substantive responses to its RFAs Nos. 1–9 that admit or deny whether certain facts occurred.

**PLAINTIFF'S ARGUMENT**

Kajeet incorporates its objections submitted in response to this request herein for all purposes.

Defendant's Request for Admissions 1-9 are indisputably directed to the actions taken by Kajeet and its counsel in preparation for the present litigation. Defendant admits as much by characterizing the information sought as "[i]nformation regarding pre-suit investigations" while putting forth its legally

- 45 -

unsupported contention that such information is "routinely discoverable in patent litigation suits." Yet, Defendant cites to zero cases that show this to be the case. The cases cited by Defendant in support of this contention have nothing to do with the scope of discovery. Instead, each is addressed to the application of Rule 11 in patent cases. The facts and evidence pertaining to pre-suit diligence in each case, to the extent they were even at issue, were made of record in those cases via limited waiver of privilege in connection with the opposition briefs filed; not in response to discovery requests. *See, e.g.*, *Antonious*, 275 F.3d at 1074 ("***In its brief***, Finnegan Henderson emphasizes that Mr. Antonious looked at several Intimidator metal woods and reviewed all the available Spalding literature.")(emphasis added); *View Eng'g*, 208 F.3d at 986 ("Morrison admits ***in its brief*** that 'since no opportunity had ever been afforded [Robotic] to study the View machine or the technical drawings thereof, and, because of the complexity of the machines involved, it was virtually impossible to determine infringement to a certainty from a visual inspection of the machines.')(emphasis added).

The *Judin* case goes further and expressly demonstrates that discovery of work done in preparation of litigation is not discoverable. Notably, in the Court of Federal Claims decision reviewed by the Federal Circuit case Defendant cites, the Court discusses the scope of permissible discovery in this area, stating:

> Another discovery issue arose in connection with ***statements made by Judin's present and former counsel at oral argument describing their actions before and after filing the complaint***. It is not clear whether counsel for HP waived any right to respond to those statements or to further discovery regarding the asserted conduct during oral argument. ***The court would not, in any event, have permitted further discovery***. First, those assertions were not substantially different from the representations ***made to the court in affidavits***. Second, to the extent plaintiff's counsels' representations were relevant, they consisted of statements that HP would not be able

1  to challenge easily. They relate to what the attorneys said, saw or
2  heard. *Judin v. United States*, 34 Fed. Cl. 483, 488 (1995) (emphasis
3  added).

4  These portions of the lower court holding were undisturbed by the Federal Circuit.

5      *Itex* and the few cases that cite to it are likewise unavailing to support
6  Defendant's motion.  Responses were compelled in *Itex* because they were not
7  broadly and generically directed to whether Plaintiff's engaged in ***any testing*** of
8  the accused products but instead asked whether ***specific tests***[2] had been performed.
9  *Itex*, 2011 U.S. Dist. LEXIS 35275, at *6 ("Defendants explain that they are not
10 seeking any substantive information—at least not through the requests to admit—
11 ***regarding any pre-suit testing***, but merely the underlying fact whether Plaintiffs
12 conducted ***the very specific pre-suit test described in their request***.").  The Court
13 found this distinction to be a meaningful one in the context of whether requiring
14 responses to questions about pre-suit investigatory activities violate the work-
15 product protections.  *Itex* makes clear that generic requests for admission of the
16 type Defendant presents, directed to ***any testing***, are improper and encroach upon
17 subject matter protected by the work-product privilege.  *Id.*

18     The work-product privilege applies to protect from disclosure the broad
19 information Defendant seeks.  Kajeet has not waived this privilege through its
20 response to Interrogatory No. 4 as Defendant contends.  Kajeet's response presents
21 general statements that amount to an affirmation that Kajeet and its counsel have
22 complied with Rule 11 through investigating its claims prior to filing suit.
23 Defendant cannot disagree in light of positions it has taken with respect to Kajeet's
24 response to Interrogatory No. 4, alleging that:

25

26

---

27 [2] The Requests for Admissions at issue asked whether the accused products were
28 tested "for phosphorous levels after 5 washes and 24-hour boil."  Wojcio Decl. at
   Ex. N.

JOINT STIPULATION TO COMPEL DISCOVERY

> "Kajeet's response to Interrogatory No. 4, seeking an explanation of "the **entire** factual basis" known to Kajeet supporting its infringement allegations on or before the filing date of the lawsuit, *is completely inadequate, and so vague as to be non-responsive*. The first sentence, describing Kajeet's mis-construing of the claims, *is a legal issue, not a factual basis*." Wojcio Decl. at Ex. O.

Such statements belie any assertion that Kajeet has waived privilege with regard to the information now sought.

While Defendant purports to disagree with Kajeet's objections and invocation of privilege in response to these discovery requests, in truth, Defendant agrees with and has taken the exact same position in its own discovery responses in this case.  For example, Kajeet's Interrogatory No. 8 asks Defendant to describe the actions it took in response to receipt of a notice letter from Kajeet detailing Kajeet's infringement claims against Defendant.  Defendant refuses to provide the factual information requested "on the grounds that it facially seeks privileged information, including but not limited to Attorney-Client communications and information subject to the work product doctrine."  Wojcio Decl. at Ex. P.

Defendant refused to supplement this response to provide any factual information sought despite acknowledging Kajeet's assurance that "the Interrogatory response should be limited to a high level, factual recitation of what Qustodio did after receiving notice, i.e., what actions did they take."  Wojcio Decl. at Ex. Q.  Defendant cannot be permitted to take such positions when dealing with Kajeet with respect to Defendant's invocation of privilege only to take the precise opposite position to the Court in arguing against Kajeet doing the same.

For at least the reasons presented herein, Defendant's positions are baseless and the relief requested should be denied.

JOINT STIPULATION TO COMPEL DISCOVERY

4843-3646-8389v1/105552-0001

18-cv-01519

## IV.   CONCLUSION

For the reasons set forth herein, Qustodio respectfully requests this Court grant its Motion to Compel Discovery from Kajeet.  Kajeet, conversely, respectfully requests that all relief sought in the present motion be denied.

Dated:  September 10, 2019                STRADLING YOCCA CARLSON & RAUTH, P.C.

*/s/ Salil Bali*
Douglas Q. Hahn
Salil Bali

***Attorneys for Defendant***
***QUSTODIO, LLC***

Dated:  September 10, 2019                FRIEDMAN, SUDER & COOKE

*/s/ Richard C. Wojcio, Jr.*
Jonathan T. Suder
Michael T. Cooke
Corby R. Vowell
Richard A. Wojcio, Jr.

***Attorneys for Defendant***
***KAJEET, INC.***

## SIGNATURE CERTIFICATION

I hereby certify that the content of this document is acceptable to Richard Wojcio, counsel for Kajeet, Inc., and Defendant has obtained his authorization to affix his electronic signature to this document.

*/s/ Salil Bali*

- 49 -