# EXHIBIT "A"

BRANDON C. FERNALD
FERNALD LAW GROUP
510 West Sixth Street, Suite 700
Los Angeles, California 90014
Telephone:  323-410-0320
Facsimile:   323-410-0330
Email:  brandon.fernald@fernaldlawgroup.com

JONATHAN T. SUDER (*Pro Hac Vice*)
MICHAEL T. COOKE (*Pro Hac Vice*)
CORBY R. VOWELL (*Pro Hac Vice*)
RICHARD A. WOJCIO, JR. (*Pro Hac Vice*)
FRIEDMAN, SUDER & COOKE
Tindall Square Warehouse No. 1
604 East 4th Street, Suite 200
Fort Worth, Texas 76102
Telephone:  (817) 334-0400
Facsimile:  (817) 334-0401
Email:  jts@fsclaw.com
Email:  mtc@fsclaw.com
Email:  vowell@fsclaw.com
Email:  wojcio@fsclaw.com

Attorneys for Plaintiff
KAJEET, INC.

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| KAJEET, INC., | CASE NO. 8:18-cv-01519-JAK-PLA |
| Plaintiff, | |
| vs. | **SECOND AMENDED COMPLAINT FOR PATENT INFRINGEMENT** |
| QUSTODIO, LLC, | |
| Defendant. | **JURY TRIAL DEMANDED** |

SECOND AMENDED COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff KAJEET, INC. files this Second Amended Complaint against Defendant QUSTODIO LLC, alleging as follows:

## I.      THE PARTIES

1.      KAJEET, INC. ("Plaintiff" or "Kajeet") is a corporation organized and existing under the laws of the State of Delaware, with a principal place of business at 7901 Jones Branch Drive, Suite 350, McLean, Virginia 22102.

2.      Defendant QUSTODIO LLC ("Defendant" or "Qustodio") is a limited liability company organized under the laws of Delaware with a principal place of business at Passeig de Gracia, 18, 2nd Floor, Barcelona, Spain 08007.  Qustodio maintains its principal, and only, North American business location at 2110 Artesia Blvd, Suite 713, Redondo Beach, California 90278, within this District.  Qustodio has already appeared in this case and may be served through its counsel of record.

## II.     JURISDICTION AND VENUE

3.      This is an action for infringement of several United States patents under 35 U.S.C. §§ 271, *et seq.*, for defamation by libel under Cal. Civ. Code §44, *et seq.*, and for the tort of business disparagement under California common law.  Federal question jurisdiction is conferred to this Court over patent infringement actions under 28 U.S.C. §§ 1331 and 1338(a).

4.      This Court has supplemental jurisdiction over the non-patent claims pursuant to 28 U.S.C. § 1367. These claims are so related to the patent infringement claims that they each form part of the same case or controversy because, at a minimum, issues relating to validity of the patents in suit and the litigation conduct of Plaintiff in this and related patent infringement cases are at issue in resolving the business disparagement claim.

5.      Defendant maintains its lone established and regular place of business in North America at 2110 Artesia Blvd, Suite 713, Redondo Beach, California 90278, within this District.  Defendant develops and/or sells its products, including the Accused Product described herein, from this location.

6.     Defendant has sufficient minimum contacts with the Central District of California such that this venue is fair and reasonable.  Defendant has committed such purposeful acts and/or transactions in this District that it reasonably should know and expect that they could be hailed into this Court as a consequence of such activity. Defendant has transacted and, at the time of the filing of this Complaint, continues to transact business within the Central District of California.

7.     Further, upon information and belief, Defendant makes or sells products that are and have been used, offered for sale, sold, and/or purchased in the Central District of California.  Defendant directly and/or through its distribution network, places infringing products or systems within the stream of commerce, which stream is directed at this district, with the knowledge and/or understanding that those products will be sold and/or used in the Central District of California.

8.     For these reasons, personal jurisdiction exists and venue is proper in this Court under 28 U.S.C. §§ 1391(b) and (c) and 28 U.S.C. § 1400(b), respectively.

### III.    BACKGROUND AND FACTS

9.     Kajeet is the owner of all rights and title in and to U.S. Patent No. 8,712,371 ("the '371 Patent"), U.S. Patent No. 8,667,559 ("the '559 Patent"), and U.S. Patent No. 8,630,612 ("the '612 Patent").  These patents are sometimes referred to collectively hereinafter as "the Asserted Patents."  The respective inventions disclosed and claimed in the Asserted Patents were developed by the founders, entrepreneurs, and engineers of Kajeet and were assigned to Kajeet upon issuance.

10.    Kajeet is a U.S.-based company, founded in 2003, which develops software and hardware solutions promoting safe use of mobile devices by children both at home and in schools and libraries.  Kajeet was founded by three fathers who sought to develop systems and methods ensuring safe use of mobile phones, tablets, computers, and other mobile devices by their children.

11.    Kajeet has become an industry leader in this area of mobile device management, developing innovations that led to the issuance of thirty-two U.S.

patents to date, including the Asserted Patents, and having implemented its solutions in hundreds of school districts comprising thousands of schools across the nation. These innovations were directly developed by the founders and engineers at Kajeet as part of Kajeet's continuous work to protect children from inappropriate and distracting online content, and to enable schools and families to keep children focused and safe from the many potential dangers associated with unconstrained access to online content.

12.     The disclosure and claims of the Asserted Patents describe improved control schemes implemented on communication devices, focusing on applications in which it is undesirable for the user of the communication device to have unfettered or unconstrained access to some or all of the available functionality supported by the communication device.  See*, e.g.*, the '371 Patent at 1:18-33.[1]  A typical scenario addressed by the Asserted Patents is that of a smartphone, tablet, or laptop used by a child.  See, *e.g.*, the '371 Patent at 3:48-54; 4:7-13; and, 4:56-65. This is a relatively new problem that has arisen in the past decade as mobile communication devices have become more popular and more widely used throughout society, including in schools and at home by children.  See, *e.g.*, the '371 Patent at 1:22-29; 2:47-53; 4:11-27; 6:3-9; 12:20-34; and, 13:52-61.  The Declaration of Dr. Charles Knutson and Supplemental Declaration of Charles Knutson, both submitted herewith as Exhibits E and I, respectively, and incorporated for all purposes, including but not limited to this

---

[1] All citations to the Patent-in-Suit are to the '371 Patent, which is attached hereto as Exhibit C, unless otherwise stated.  The citations provided are illustrative rather than exhaustive and therefore do not comprise complete listings of all portions of the specification addressed to each topic for which citations are provided.  Further, because each of the Patents-in-Suit share a common specification, the cited passages are equally applicable to each of the Patents-in-Suit.

SECOND AMENDED COMPLAINT FOR PATENT INFRINGEMENT

sentiment and others manifest in Kajeet's allegations supporting its claims for patent infringement.

13.     Mobile smartphones appeared in the mid-1990s as Personal Digital Assistants ("PDAs").  These devices expanded the set of features accommodated by handheld mobile communication devices and their appearance coincided with the rise in popularity and use of the World Wide Web.  In 2007, Apple released the first iPhone and in 2008 released the App Store.  This signaled the beginning of mainstream smartphone ownership and usage and, in particular, ownership and usage of feature-rich smartphone devices by teens and children.  Also during this timeframe, other Internet-capable, mobile computing devices greatly expanded in popularity, including tablet devices, including iPads and Kindles, as well as laptop devices, including the Google Chromebook.  Increasingly, these devices are put in the hands of teens and children both by their parents and by schools, giving them ready access which they never had before to inappropriate content, contacts, sexting, online gaming, among other undesirable features and functionality.  Further, this new access is cheap, anonymous, and readily-available at any time, day or night from virtually anywhere.  Parents, as well as school administrators and others, have struggled with addressing this newly created problem ever since.

14.     The Patents-in-Suit are addressed to specific systems and methods for addressing this new problem faced by parents, teachers, business owners, and the like. The Patents-in-Suit recognize that old-world methodologies, such as simply taking the devices away, do not truly address the problem at hand and undermine the safety benefit of device ownership – continuous access for communication, such as always providing a direct means for a parent to call its child or vice versa.  For device ownership by teens and others to provide this benefit, the device is necessarily in the possession of the teen at times when he or she is *away from* parents, teachers, and the like.  Old-world monitoring of device use to preventing inappropriate use is therefore also ineffective and does not address the true context of this new problem in society

SECOND AMENDED COMPLAINT FOR PATENT INFRINGEMENT

created by the development and proliferation of feature-rich mobile communication devices.

15.     As explained in the specification of the Patents-in-Suit, prior art systems and methods for controlling mobile communication device usage in such settings were ineffective.  For example, prepaid phone plans placed limits on the charges that could be run up on a mobile communication device but did so through toggling access to the communication network off once the account reached a zero balance.  Beforehand, access to the communication network may be unconstrained while after, no access is provided whatsoever.  This control scheme was ineffective for preventing misuse of the mobile communication device by a child while still providing access to desirable features.  See, *e.g.*, the '371 Patent at 2:7-15.

16.     Likewise, unlimited use smartphone service plans could prevent the accumulation of excessive usage costs, but were ineffective to prevent overuse or use of a mobile communication device at inappropriate times or to access inappropriate content.  See, *e.g.*, the '371 Patent at 2:45-53.

17.     Other solutions involving control through enforcement of decisions based upon policies defining permitted use that were set and stored only in accessible portions of the memory of the device itself, such as in the volatile memory of the device.  These solutions were likewise ineffective as the policies upon which decisions effecting control were vulnerable to manipulation or deletion by virtue of their only being stored in accessible portions of memory of the computing device.  Further, such solutions required separate and independent configuration of each computing device to be controlled, resulting in increased administrative costs.

18.     The Patents-in-Suit state that the systems and methods disclosed therein "are effective tools for any phone user that requires some level of supervision, such as a handicapped individual, a person suffering from dementia, a corporate employee, or even an adult that has shown poor judgment in the past and needs help managing their affairs." '371 Patent at 5:5-10.  The Patents-in-Suit also state that:

SECOND AMENDED COMPLAINT FOR PATENT INFRINGEMENT

The ability to regulate ***when a phone can be and cannot be used can also be of value to parents and school districts*** with respect to resolving one of the greatest conflicts that exist between parents/students and school administrators - mobile phone usage by kids. Parents want children to have a mobile phone with them so the child can call the parent if need be, i.e., if someone forgets to pick the child up after school. School districts do not want the children to have the phones at all ***because the students tend to misuse the phones, i.e., to call friends during school, to cheat, to engage in illegal activity, etc***. While the school districts believe that children should be relegated to only using the school phones if the children need to contact a parent, the parents want the children to have the phones with them in case they get locked out of the school, get lost on a field trip, etc. '371 Patent at 12:20-34 (emphasis added).

The Patents-in-Suit therefore recognize that it is advantageous to dispose the policies applied for effecting feature management over communication devices in accordance with a scheme that prevents access to them by the user of the device, who may have poor judgment or be motivated to otherwise misuse the communication device.

19.     The inventions disclosed and claimed in the Asserted Patents provide for systems and methods for providing access to desirable features, such as always allowing for calls to a parent, for example, while also preventing access to features deemed inappropriate because of cost (e.g., downloadable games or other applications), type of content (e.g., gambling or pornographic content), the time of day or night (e.g., during school hours or after bed time), and/or the device's location, among other criteria.  See, *e.g.*, the '371 Patent at 3:24-29; 3:48-54; 5:14-19; 12:47-67; and, Claims. The Asserted Patents disclose control embodiments applying decisions based upon  policies defining acceptable and unacceptable uses of a mobile communication device.  The policies may be based on a variety of contexts which are set by administrators (e.g., parents or teachers).  In accordance with certain embodiments of the inventions disclosed, the policies are set and stored at the server level to provide simultaneous control over use of one or more mobile communication

7

devices.  See, *e.g.*, the '371 Patent at embodiment of Fig. 2; 3:24-29; 3:48-54; 12:47-67; and, Claims.  The intrinsic record states this at Office Action Response dated October 17, 2013 filed during prosecution of the '559 Patent at p. 10, 17 (stating the prior art "does not describe a ***distributed architecture where policy decisions are performed at the server level*** and those policies are enforced on the phone itself.")(emphasis added).  A true and correct copy of this Office Action Response is attached hereto as Exhibit H and incorporated for all purposes.

20.     Application of use decisions based upon a policy stored remote from the controlled computing device represented an unconventional scheme that was neither well known nor routine for addressing a newly emerging problem in society.  Embodiments of the inventions disclosed and claimed in the Asserted Patents provided for more robust control that was more resilient to manipulation and/or disablement by users of the controlled devices and, therefore, more effective than prior art systems and methods.

21.     Qustodio is a software developer of solutions accommodating feature management of computing devices configured for operation on communication networks, including laptops, tablets, smartphones, and the like.  Each comprises a computing device usable to access online content and applications over a communication network managed by a service provider, such as an internet service provider (ISP).

22.     The Accused Products of Qustodio include all versions and releases of Premium plans of the Qustodio Parental Control and Qustodio Professional Business applications, which are marketed and sold as Qustodio for Family, Qustodio for Schools, and Qustodio for Business, when used on devices utilizing any of iOS, Android, Mac OS X, or Windows operating software.  Qustodio has confirmed that each of these Accused Products comprise substantially similar features, functionality, and operation, accommodating management of mobile communication devices

SECOND AMENDED COMPLAINT FOR PATENT INFRINGEMENT

accessing content over communication networks via application of settings remotely configured by administrators (i.e., parents, teachers, and/or supervisors).

23. The Accused Products comprise a system of hardware (Qustodio servers) and software (the Qustodio App and local agent software) implementable on computing devices to accommodate management of certain features and functionality of computing devices. The Accused Products effect policy-based control over these devices via, among other things, executing local agent software on the device to route traffic to and from the device through the Qustodio servers. Application of said policies yields decisions defining when and what features and content are accessible on a managed device. Qustodio accommodates selectively permitting or blocking access to device features, such as Internet content, calls, texts, contacts, and applications which can be based on application of time-based policies for limiting access to device features in accordance with daily time limits or usage schedules.

24. The Accused Products are marketed as "providing multiple layers of protection and control for everything users do online and offline, whether they use a desktop computer, a laptop, a tablet, or a mobile phone" to enforce rules set by administrators via web-based dashboard in the Qustodio User Guide, attached hereto as Exhibit A and incorporated for all purposes. The Accused Products allow parents and teachers to set rules enforcing time limits and prohibiting access to specified content; and, allows employers to prohibit inappropriate use of resources to improve employee productivity. Exh. A at 3.

25. Qustodio offers a Free Version of Qustodio which comprises a web filter which may be applied to a single device. The Accused Products represent the Premium versions of the Qustodio products identified above which accommodate feature management functionality beyond that provided by the Free Version, including: daily scheduling and time limit rules; games and application blocking; location tracking; call blocking; and, SMS blocking; among others. Additionally, the

9

SECOND AMENDED COMPLAINT FOR PATENT INFRINGEMENT

Accused Products may be applied to multiple devices, which may be grouped by user(s).

26.     To use the Accused Products, the Qustodio local agent software must be installed on each controlled device.  Qustodio provides links to download the local agent software through its website and makes the App available on the iTunes store and Google Play store.

27.     The Accused Products manage Android and iOS smartphones, Windows or Mac laptops/computers, and on Kindles.  Upon download, the Accused Products require several permissions be provided to operate on a managed device.

28.     For example, on Android devices Qustodio requires: access to WiFi connection information; App Supervision; Usage Access; and, Web Supervision. These permissions allow the local agent software of the Accused Products to detect attempts to use features of the device and generate corresponding requests.  The local agent software controls how the device processes attempts to use functions of the device, including communication with other phones (calls and messaging), computers (accessing content), servers (download and play games and apps), and the like.  The local agent software communicates with Qustodio's servers to receive one or more decisions (for example, a decision indicating that a policy set at the server requires monitoring of a particular use of the device and/or a decision indicating that the particular use would be allowed/disallowed based upon all activity that has been reported to the Qustodio server) from the server and updates thereto.  The decisions and updates received by the local agent software are based on policies set by administrators and stored at the server which define permitted use(s) of the device. Updates are triggered by one or more of:  the passing of a specified time interval since the last communication between the local agent software and the Qustodio server; detection of a specified number of attempts to use the computing device since the last communication between the local agent software and the Qustodio server; in response to an indication that a policy stored at Qustodio's server and associated to the device

10

SECOND AMENDED COMPLAINT FOR PATENT INFRINGEMENT

has been added, deleted, or changed; any time an attempted use of a feature of the device would be blocked by the currently held decision(s) on the device; and/or in connection with reporting device activity by the local agent to the Qustodio server, among other triggers.  The local agent software checks each request generated in response to an attempted use of the device against the most recent update and decision and most recent update.  Appropriate enforcement action is then taken by the local agent software, including allowing or blocking the use of a function of the device.  Upon information and belief, the Accused Products operate in a substantially similar manner when used in connection with devices using Windows or Mac OS.[2]

29.    Similarly, on iOS devices, such as iPhones and iPads, the Accused Products require Mobile Device Management and Remote Management to be enabled for the Accused Products to work.  The required access and permissions allow for and cause all actions taken and content viewed on a managed device to be routed through and reported to one or more servers of Qustodio. The local agent software detects attempts to use functions of the device and generates requests.  Requests are routed via a VPN connection over a communication network created by the local agent software.  Decision(s) based on one or more policies defining permitted use of the device which are set by an administrator and stored on Qustodio's servers are applied to determine whether an attempted use of the device is permitted or not.  Data indicative of that determination is sent back to the device and appropriate enforcement

_____

[2] The description of operation of the Accused Products provided herein is based upon publicly available information and discovery obtained in this case to date.  Kajeet makes these allegations without prejudice to its presenting evidence of additional or different modes or methods of operation of the Accused Products that may be discovered as the case proceeds in subsequent pleadings or at trial.

SECOND AMENDED COMPLAINT FOR PATENT INFRINGEMENT

action is taken, including allowing or blocking the use of a function of the device.[3] Qustodio's servers host its user interface dashboard from which administrators can see all managed devices and usage.  The Accused Products comprise a policy decider generating decisions based on policies set by administrators and stored at Qustodio's servers to manage the use of computing devices associated to that profile.  The Accused Products either permit a requested use or block it in accordance with the decision generated by the policy decider.  Usage requests and decisions, all routed through Qustodio software and hardware, are logged on Qustodio servers and accessible to administrators via the online dashboard.  Disallowed requests result in a "block screen" on the managed device.

30.    The Accused Products accommodate Time Usage Limits and Schedules defining daily maximum time allotments and usage scheduling.  Requests for access are blocked once a time limit is met or a scheduled time period is exceeded.  The time based limits define daily maximum time allotments and allowed usage scheduling by profile, application, and/or by device.

31.    In operation, devices are named by an administrator and associated to a particular user profile during installation and setup.  Policies are then set for a profile via the online dashboard or a "Parents" App and applied to all devices associated to that user profile.  The dashboard displays data for all devices associated to a particular profile.   Policies, such as the time-based policies are accessible and configurable through an application running on an administrator's mobile device (i.e., the "Parents"

---

[3] The description of operation of the Accused Products provided herein is based upon publicly available information and discovery obtained in this case to date.  Kajeet makes these allegations without prejudice to its presenting evidence of additional or different modes or methods of operation of the Accused Products that may be discovered as the case proceeds in subsequent pleadings or at trial.

SECOND AMENDED COMPLAINT FOR PATENT INFRINGEMENT

App).  The Accused Products operate to alert users when a usage request has been blocked.

32.    Qustodio provides instructions to its customers and users of the Accused Products demonstrating how to install, set up, and use the Accused Products to manage computing devices.  For example, Qustodio provides user manuals and set up guides on Qustodio's website at URL: https://www.qustodio.com/en/help.  The 2017 release of Qustodio's User Guide describes the features and operation of the Accused Products and is attached hereto as Exhibit A and made a part hereof.

33.    The weblinks provided on Qustodio's help page access Qustodio's software applications for download onto computing devices, provide instructions to users on installation, setup, and configuration of the Accused Products on communication devices, and provide instructions for accessing and modifying policies to be applied to communication devices.  The setup and use of the Accused Products in accordance with these instructions provided by Qustodio constitutes direct infringement of the Asserted Patents, either literally or under the doctrine of equivalents, by end users of the Accused Products.  Qustodio also maintains a YouTube channel with links to 10 videos created and/or uploaded by Qustodio which demonstrate how to set up and use the Accused Products in manners that infringe, either literally or under the doctrine of equivalents, one or more claims of the Asserted Patents at URL: https://www.youtube.com/channel/UCfqkXPNpfUGT2gpQ20jlmQA/featured.  These videos have been viewed over 40 thousand times, collectively.

34.    On June 8, 2018, Kajeet sent a letter to Qustodio to put Qustodio on notice of the Kajeet patents and alleging infringement of at least the Asserted Patents by Qustodio via its making, using, and selling of the Accused Products.  Attached to this correspondence was a representative claim chart detailing Kajeet's infringement allegations which are consistent with those presented herein.  Qustodio did not responded to Kajeet's letter and allegations.

SECOND AMENDED COMPLAINT FOR PATENT INFRINGEMENT

35.     Qustodio has had actual knowledge of each of the Asserted Patents since at least June 2018 and, further, has had actual knowledge of Kajeet's claims of infringement relating to the Asserted Patents since that time.  Qustodio continues to make, use, and sell the Accused Products despite having been on notice of Kajeet's infringement claims since at least its receipt of the June 8, 2018 correspondence.

## COUNT I

### PATENT INFRINGEMENT

### U.S. Patent No. 8,667,559 B1

36.     Kajeet repeats and re-alleges all preceding paragraphs of this Complaint, as though fully set forth herein.

37.     On March 4, 2014, United States Patent No. 8,667,559 B1 ("the '559 Patent") was duly and legally issued for "Feature Management of a Communication Device."  As of the filing of this Complaint, the '559 Patent remains in force.  A true and correct copy of the '559 Patent is attached hereto as Exhibit B and made a part hereof.

38.     Kajeet is the owner of all right and title in the '559 Patent, including all rights to enforce and prosecute action for infringement of the '559 Patent and to collect damages for all relevant times against infringers of the '559 Patent. Accordingly, Kajeet possesses the exclusive right and standing to prosecute the present action for infringement of the '559 Patent by Qustodio.

39.     The '559 Patent generally discloses and claims systems and methods for controlling computing devices usable on communication networks to perform various functions, such as sending and receiving data over the Internet or other communication network, for example.  The systems and methods claimed accommodate enforcement of decisions granting or denying requests to communicate with remote computing devices over a communication network.  The decisions are based on the application of one or more relevant use policies which may be administrator-configurable and may be stored remotely from the controlled computing

14

SECOND AMENDED COMPLAINT FOR PATENT INFRINGEMENT

device.  Decisions to grant or deny communication requests from the controlled device may be made and effectuated in real-time.

40.    More specifically, independent claim 1 of the '559 Patent and each dependent claim depending therefrom are directed to a "non-transitory computer readable storage medium comprising instructions" rendering a computing device operable to: formulate and send a request to use a communication network to a server; receive data indicative of a grant/deny decision to the request from the server based on the application of policies stored at the server; and, enforce the decision by enabling or disabling the communication.  '559 Patent at Claim 1 (paraphrased).  The claims require that the executed instructions stored on the computing device operate to cause it to "***send to a server a request*** to communicate with a remote computing device…," "***receive in real-time from the server a response***… based on one or more policies ***that are stored at the server***…," and that the "communication [is] enabled or disabled without accessing the one or more policies by the computing device."  *Id*. (emphasis added).

41.    These limitations mandate that a set of policies upon which decisions are based to control use of the computing device are stored on a server and apart from the computing device.  Policies stored on the server are not accessed by the computing device.  Rather, responses indicative of a decision made at the server are received by the computing device and enforced.  These limitations capture a distributed architecture concept <u>not</u> well-understood, routine, or conventional in the art for managing use of a computing device, including at least that policies upon which usage decisions are based are stored on a server which is meaningfully apart from the computing device.  This distributed arrangement results in improved control and management of the computing device through at least increased resistance to undesirable accessing of the policies upon which control decisions are based to manipulate or delete them.

15

SECOND AMENDED COMPLAINT FOR PATENT INFRINGEMENT

42.    Claim 1 of the '559 Patent and each claim depending therefrom are rooted in control schemes for managing a computing device performing a function using a communication network.  They require server level storage of one or more of the policies upon which use decisions are based, making those policies less vulnerable to manipulation and deletion while still accommodating real-time control concurrent with device usage.  Communication device management in accordance with these claims improved security, effectiveness, and robustness of control accommodated over prior art systems.  As such, these claims are directed to patent eligible subject matter.

43.    Additionally, when considered as an ordered combination of elements, claim 1 and each claim depending therefrom comprise an "inventive concept" for at least the reasons presented herein and above.  These claims require an unconventional component arrangement yielding improvements in effectiveness of the control accommodated.  Prior art control was not premised on application of decisions based upon policies stored at the server level.  Instead, the prior art applied decisions based on policies set up on the computing device itself and stored only on the computing device.  Such policies reside such that they are readily accessible for manipulation and/or deactivation or deletion to circumvent control entirely.  Further, prior art systems required that each device be configured separately and individually with its own set of policies.  The arrangement claimed in claim 1 and its dependent claims run counter to what was well-understood, routine, and conventional to one of ordinary skill in the art at the relevant time by requiring that usage decisions be based upon one or more policies stored at the server level, remote form the computing device, while effecting real-time control over communication devices and providing other benefits, as noted herein and above.

44.    Independent claim 13 of the '559 Patent and each dependent claim depending therefrom are directed to "a computing device configured to execute a function using a communication network" and configured via execution of software to

16

SECOND AMENDED COMPLAINT FOR PATENT INFRINGEMENT

apply decisions and updates received from a server and based on a policy stored at a server to control use of the computing device.  '559 Patent at Claim 13.  These claims require, among other limitations, that the computing device "access a decision stored on the computing device, *the decision having been received from a server* and being *based on a policy that is stored at the server* that determines whether [a] function is permitted to run on the computing device;" "receive *from the server an update* to the decision;" and, "determine whether the request is granted or denied *based on the decision and the update*."  *Id*. (emphasis added).

45.     These limitations mandate that a decision and update received from a server are used to determine whether a request is granted or denied.  The decision and update are first made at the server based on a policy stored at the server and apart from the computing device.  These limitations capture a distributed architecture concept <u>not</u> well-understood, routine, or conventional in the art for managing use of a computing device, including at least that policies upon which usage decisions and updates are based are stored at a server which is meaningfully apart from the computing device.  This distributed arrangement results in improved control and management of the computing device through at least increased resistance to undesirable accessing of the policies upon which the decisions are based to manipulate or delete them.

46.     Claim 13 of the '559 Patent and each claim depending therefrom are rooted in control schemes for managing a computing device performing a function using a communication network.  They require server level storage of a policy upon which decisions and updates applied by the computing device are based, making the policy less vulnerable to manipulation and deletion while still accommodating control concurrent with device usage.  Communication device management in accordance with these claims improved security, effectiveness, and robustness of control accommodated over prior art systems.  As such, these claims are directed to patent eligible subject matter.

SECOND AMENDED COMPLAINT FOR PATENT INFRINGEMENT

47.     Additionally, when considered as an ordered combination of elements, claim 13 and each claim depending therefrom comprise an "inventive concept" for at least the reasons presented herein and above.  These claims require an unconventional component arrangement yielding improvements in effectiveness of the control accommodated.  Prior art control was not premised on application of decisions based upon policies stored at the server level.  Instead, the prior art applied decisions based on policies set up on the computing device itself and stored only on the computing device.  Such policies reside such that they are readily accessible for manipulation and/or deactivation or deletion to circumvent control entirely.  Further, prior art systems required that each device be configured separately and individually with its own set of policies.  The arrangement claimed in claim 13 and its dependent claims run counter to what was well-understood, routine, and conventional to one of ordinary skill in the art at the relevant time by applying usage decisions and updates based upon policies stored at the server level, remote form the computing device, while effecting control over communication devices and providing other benefits, as noted herein and above.

48.     Independent claim 27 of the '559 Patent and each dependent claim depending therefrom are directed to "methods for controlling a computing device configured to execute a function using a communication network managed by a service provider."  '559 Patent at Claim 27.  These claimed methods explicitly require, among other steps, "***sending to a server a request*** to communicate with a remote computing device…," "***receiving in real-time from the server a decision*** granting or denying the request, the decision being based on a policy stored at the server…," and that "the communication being enabled or disabled ***without storing the policy on the computing device***."  *Id*. (emphasis added).

49.     These limitations mandate that the decision applied to effect control over the computing device is based on a policy stored at a server remote from the computing device.  The decision is receive from the server following the sending of a

SECOND AMENDED COMPLAINT FOR PATENT INFRINGEMENT

request to the server by the device.  Further, these limitations capture the distributed architecture concept <u>not</u> well-understood, routine, or conventional in the art for effecting feature management on a computing device including that the server storing the policies upon which decisions are based being meaningfully apart from the computing device.  This arrangement resulted in improved operation through at least increased resilience to undesirable access to policies to manipulate or delete them.

50.     These limitations additionally cover communications requested by a third-party device directed to a device managed by a control system operating in accordance with the method of claim 27 and its dependent claims.  Effecting control over these incoming communications to a communication device was not well-understood, routine, or conventional to one of ordinary skill in the art.

51.     Claim 27 of the '559 Patent and each claim depending therefrom are rooted in control schemes for managing communication devices and require the application of decisions based upon remotely stored polices.  Remote storage of the policies upon which decisions are based makes them less vulnerable to manipulation and deletion while still accommodating real-time control concurrent with device usage.  Communication device management in accordance with these claimed methods improves the security, effectiveness, and robustness of control accommodated.  As such, the claimed methods are directed to patent eligible subject matter.

52.     Additionally, when considered as an ordered combination of elements, claim 27 and each claim depending therefrom comprise an "inventive concept" for at least the reasons presented herein and above.  These claims require storing usage policies upon which decisions are based at a server remote from the computing device, an unconventional arrangement at the time which yielded improvements in the operation of systems implementing the claimed methods.  Prior art control was not premised on application of decisions based upon policies stored at the server level.  Instead, the prior art applied decisions based on policies set up on the computing

19

SECOND AMENDED COMPLAINT FOR PATENT INFRINGEMENT

device itself and stored only on the computing device.  Such policies reside such that they are readily accessible for manipulation and/or deactivation or deletion to circumvent control entirely.  Further, prior art systems required that each device be configured separately and individually with its own set of policies.  The arrangement claimed in claim 27 and its dependent claims run counter to what was well-understood, routine, and conventional to one of ordinary skill in the art at the relevant time by applying usage decisions to effect control that are based upon policies stored at the server level, remote form the computing device, while effecting real-time control over communication devices and providing other benefits, as noted herein and above.

53.     Qustodio has had actual knowledge of the existence of the '559 Patent since at least June 8, 2018 for at least the reasons discussed above.  As such, Qustodio's infringement of the '559 Patent has been willful since at least June 8, 2018.

54.     Qustodio, without authority, consent, right, or license, and in direct infringement of the '559 Patent, makes, has made, uses, and sells the Accused Products which practice the method claimed in at least claims 1, 13, and 27 of the '559 Patent, among others.  By way of example only, Qustodio's quality testing and demonstrations of operation of the Accused Products, including several videos, to manage use of computing devices directly infringe, either literally or under the doctrine of equivalents, at least Claims 1, 13, and 27 of the '559 Patent.

55.     Qustodio actively induces infringement of one or more of the claims of the '559 Patent by its customers and end users of at least the Accused Products and is therefore liable for indirect infringement under 35 U.S.C. § 271(b).  Download, installation, and use of the Accused Products on a computing device to control its use in the manners described above infringes at least Claims 1, 13, and 27 of the '559 Patent.  Qustodio provides software for download and installation on computing devices by its customers through its publicly accessible website and third-party app

SECOND AMENDED COMPLAINT FOR PATENT INFRINGEMENT

stores.  Qustodio also sells subscriptions to its customers permitting execution of software comprising the Accused Products to control use of computing devices by its customers.  Qustodio does each knowing that the Accused Products are especially designed for and marketed toward infringing use by Qustodio's customers such as by parents or supervisors, to implement feature management of computing devices. Further, Qustodio provides step-by-step instructions for download, installation, setup, and use of the Accused Products to infringe, either literally or under the doctrine of equivalents, at least claims 1, 13 and 27 of the '559 Patent.  These instructions are provided by Qustodio as user manuals and online content made available by Qustodio through its website and YouTube channel as well as through third-party app stores.

56.     Qustodio contributes to the infringement of at least claims 1, 13, and 27 of the '559 Patent by its customers and end users of at least the Accused Products and is therefore liable for indirect infringement under 35 U.S.C. § 271(c).  Qustodio provides software comprising the Accused Products for download, installation, and sells subscriptions allowing its customers to use the Accused Products which are especially designed for controlling use of computing devices in the manner described above.  Following installation and enrollment, customers set up policies upon which control decisions are based using the Qustodio App.  These administrator configured policies are stored on Qustodio's servers.  Qustodio's backend hardware and the local software application installed on each controlled device implement decisions based upon at least these administrator configured policies to control use of a computing device.  As such, the Qustodio software, applications, and servers comprise material aspects of the devices and methods claimed in at least claims 1, 13, and 27 of the '559 Patent.  Further, upon information and belief, the Accused Products have no substantial non-infringing use, as they are specifically designed and marketed for use by parents, teachers, and supervisors to control use of a computing device operating on a communication network.  Setup and use of the Accused Products by Qustodio's

SECOND AMENDED COMPLAINT FOR PATENT INFRINGEMENT

customers in the manner constitutes direct infringement, either literally or under the doctrine of equivalents, of at least claims 1, 13, and 27 of the '559 Patent.

57.     Kajeet expressly reserves the right to assert additional claims of the '559 Patent against Qustodio.

58.     Kajeet has been damaged as a result of Qustodio's infringing conduct. Qustodio is, thus, liable to Kajeet in an amount that adequately compensates for their infringement, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

59.     Based on Qustodio's actual knowledge of the '559 Patent and of Kajeet's allegations of patent infringement which are consistent with those presented herein since at least June 8, 2018, if not earlier, as well as Qustodio's objective recklessness in continuing to offer for sale and selling the Accused Products since that time, Kajeet is further entitled to enhanced damages under 35 U.S.C. § 284.

**COUNT II**

**PATENT INFRINGEMENT**

**U.S. Patent No. 8,712,371 B2**

60.     Kajeet recognizes that the cause of action presented in this Count II has been dismissed from the case following entry of the Court's Order Re Claim Construction and Defendant's Motion to Dismiss First Amended Complaint (Dkt. No. 140).  The allegations supporting this cause of action are maintained in this Second Amended Complaint for the purpose of preserving them for appeal upon entry of final judgment in this case.

61.     Kajeet repeats and re-alleges all preceding paragraphs of this Complaint, as though fully set forth herein.

62.     On April 29, 2014, United States Patent No. 8,712,371 B2 ("the '371 Patent") was duly and legally issued for "Feature Management of a Communication Device."  As of the filing of this Complaint the '371 Patent remains in force.  A true

SECOND AMENDED COMPLAINT FOR PATENT INFRINGEMENT

and correct copy of the '371 Patent is attached hereto as Exhibit C and made a part hereof.

63.     Kajeet is the owner of all right and title in the '371 Patent, including all rights to enforce and prosecute action for infringement of the '371 Patent and to collect damages for all relevant times against infringers of the '371 Patent. Accordingly, Kajeet possesses the exclusive right and standing to prosecute the present action for infringement of the '371 Patent by Qustodio.

64.     The '371 Patent generally discloses and claims systems and methods for managing computing devices usable on communication networks to perform various functions, such as sending and receiving data over the Internet via one or more servers, for example.  The systems and methods comprise switches or nodes through which usage requests are routed along with decision making and enforcement functionality accommodated by software and/or hardware modules.  Policy decisions are based on the application of one or more relevant usage policies which may be administrator-configurable and may be stored remotely from the controlled computing device.  Decisions to grant or deny requests are enforced on the managed devices.

65.     More specifically, independent claim 1 of the '371 Patent and each dependent claim depending therefrom are directed to "system[s] for managing a computing device."  '371 Patent at Claim 1 (emphasis added). These claimed systems explicitly require "a switch or node configured to *receive a request to or from the computing device*…," "a policy decider operable to *access one or more policies* that control one or more functions associated with the computing device… [and] generate a decision to grant or deny the request based on the one or more policies," and "a policy enforcer operable to enforce the decision… *by transmitting data to the switch or node*, the data being indicative of one or more actions *consistent with the decision to the switch or node*."  *Id*. (emphasis added).

66.     These limitations mandate that the policies applied to manage the computing device be stored apart from the computing device based on the requirement

23

SECOND AMENDED COMPLAINT FOR PATENT INFRINGEMENT

that requests and data consistent with the decision be routed through the switch/node
to the policy decider and enforcer agents and vice versa.  These limitations capture the
distributed architecture concept not well-understood, routine, or conventional in the
art for effecting feature management on a computing device (including that the server
storing the policies is meaningfully apart from the computing device) which resulted
in improved operation through at least increased resilience to undesirable accessing of
policies by a user of the device to manipulate or delete them.

67.     These limitations additionally cover communications requested by a third
party device directed to a device managed by a control system as claimed in claim 1 of
the '371 Patent and its dependent claims.  Effecting control over these incoming
communications to a communication device was not well-understood, routine, or
conventional to one of ordinary skill in the art.

68.     Claim 1 of the '371 Patent and each claim depending therefrom are
rooted in control schemes for managing communication devices and require remote
storage of usage polices which are thereby less vulnerable to manipulation and
deletion by the user of the controlled device(s) while still accommodating real-time
control concurrent with device usage.  Communication device management in
accordance with the systems claimed improve the functionality of the computer-based
system through improved security, effectiveness, and robustness of control
accommodated.  As such, the claimed systems are directed to patent eligible subject
matter.

69.     Additionally, when considered as an ordered combination of elements,
claim 1 and each claim depending therefrom comprise an "inventive concept" for at
least the reasons presented herein and above.  These claims apply usage policies
stored remote from the managed devices, an unconventional arrangement at the time
which yielded improvements in the operation of communication device control
systems.  The few communication device control systems and methods available at the
time of invention of the subject matter claimed relied upon storing settings and

24

SECOND AMENDED COMPLAINT FOR PATENT INFRINGEMENT

policies within accessible portions of the device's memory.  As such, these policies were accessible to users of those devices for manipulation and/or deactivation or deletion, circumventing the control system entirely and requiring that each controlled device be configured separately and individually.  The system of claim 1 and its dependent claims run counter to what was well-understood, routine, and conventional to one of ordinary skill in the art at the relevant time applying remotely stored policies to effect real-time control over communication devices and provide other benefits, as noted herein and above.

70.    Qustodio has had actual knowledge of the existence of the '371 Patent since at least early June 8, 2018 for at least the reasons discussed above.  As such, Qustodio's infringement of the '371 Patent has been willful since at least early June 8, 2018.

71.    Qustodio's Accused Products comprise hardware and software for accessing and enforcing usage policies stored on one or more Qustodio servers.  The Accused Products operate to access one or more servers of Qustodio over a communication network to compare usage requests to applicable usage policies where decisions regarding whether the requested use is permissible are made.  Data indicative of these policy decisions are communicated, at least, back through the communication network to the computing device for enforcement.  Communications corresponding to requested functions which do not violate any relevant policy are permitted while communications corresponding to requested functions that violate any relevant policy are blocked.

72.    Qustodio, without authority, consent, right, or license, and in direct infringement of the '371 Patent, make, has made, uses, and/or sells products that practice the invention claimed in at least claims 1, 3, and 6 of the '371 Patent. By way of example only, Qustodio's selling and using, through quality testing and demonstrations of operation of the Accused Products, including on videos linked to

SECOND AMENDED COMPLAINT FOR PATENT INFRINGEMENT

the Qustodio website, directly infringe, either literally or under the doctrine of equivalents, at least Claims 1, 3, and 6 of the '371 Patent.

73.     Qustodio actively induces infringement of at least Claims 1, 3, and 6 of the '371 Patent by its customers and end users of at least the of the Accused Products and is therefore liable for indirect infringement under 35 U.S.C. § 271(b).  Use of the of the Accused Products to manage use of computing devices in the manners described above infringes at least Claim 1 of the '371 Patent.  Qustodio makes, uses, and sells the of the Accused Products knowing that they are especially designed for and marketed toward such infringing use by users of these products, such as by parents for use in selectively permitting or denying use of computing device functionality by children, or employees.  Further, Qustodio provides step-by-step instructions for use of the of the Accused Products in ways that infringe, either literally or under the doctrine of equivalents,  at least Claims 1, 3, and 6 of the '371 Patent in the form of user manuals and online content available through Qustodio's website and YouTube channel.

74.     Qustodio contributes to the infringement of one or more of the claims of the '371 Patent by its customers and end users of at least the of the Accused Products and is therefore liable for indirect infringement under 35 U.S.C. § 271(c).  Qustodio makes and sells the of the Accused Products which are especially designed for use to manage computing devices through the setting and enforcement of remotely stored administrator-configured policies in the manner described above.  Policies are set via the Qustodio App, are stored on Qustodio servers, and implemented on managed devices through Qustodio hardware and software.  As such, Qustodio's servers and software comprise material aspects of the system claimed in at least Claims 1, 3, and 6 of the '371 Patent.  Further, upon information and belief, the of the Accused Products have no substantial non-infringing use, as they are specifically designed and marketed for use to manage use of computing device.  Use in the manner advertised by

SECOND AMENDED COMPLAINT FOR PATENT INFRINGEMENT

Qustodio constitutes direct infringement, either literally or under the doctrine of equivalents, of at least Claims 1, 3, and 6 of the '371 Patent.

75.    Kajeet expressly reserves the right to assert additional claims of the '371 Patent against Qustodio.

76.    Kajeet has been damaged as a result of Qustodio's infringing conduct. Qustodio is, thus, liable to Kajeet in an amount that adequately compensates for its infringement, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

77.    Based on Qustodio's actual knowledge of the '371 Patent and of Kajeet's allegations of patent infringement which are consistent with those presented herein since at least June 8, 2018, if not earlier, as well as Qustodio's objective recklessness in continuing to offer for sale and selling the of the Accused Products since that time, Kajeet is further entitled to enhanced damages under 35 U.S.C. § 284.

## COUNT III

## PATENT INFRINGEMENT

### U.S. Patent No. 8,630,612 B1

78.    Kajeet recognizes that the cause of action presented in this Count III has been dismissed from the case following entry of the Court's Order Re Claim Construction and Defendant's Motion to Dismiss First Amended Complaint (Dkt. No. 140).  The allegations supporting this cause of action are maintained in this Second Amended Complaint for the purpose of preserving them for appeal upon entry of final judgment in this case.

79.    Kajeet repeats and re-alleges all preceding paragraphs of this Complaint, as though fully set forth herein.

80.    On January 14, 2014, United States Patent No. 8,630,612 B1 ("the '612 Patent") was duly and legally issued for "Feature Management of a Communication Device."  As of the filing of this Complaint, the '612 Patent remains in force.  A true

SECOND AMENDED COMPLAINT FOR PATENT INFRINGEMENT

and correct copy of the '612 Patent is attached hereto as Exhibit D and made a part hereof.

81.     Kajeet is the owner of all right and title in the '612 Patent, including all rights to enforce and prosecute action for infringement of the '612 Patent and to collect damages for all relevant times against infringers of the '612 Patent. Accordingly, Kajeet possesses the exclusive right and standing to prosecute the present action for infringement of the '612 Patent by Qustodio.

82.     The '612 Patent generally discloses and claims systems and methods for controlling computing devices usable on communication networks to perform various functions, such as sending and receiving data over the Internet via one or more servers, for example.  The systems and methods accommodate storing policies upon which usage decisions are based to grant or deny requests to communicate with remote computing devices.  The controlled devices may be grouped, with policies associated to a group applied to all devices comprising the group.  Policies may be administrator-configurable and may comprise time or location-based usage rules.

83.     More specifically, independent claim 1 of the '612 Patent and each dependent claim depending therefrom are directed to a "system for managing a computing device…".  '612 Patent at Claim 1. These claimed systems explicitly require "stor[ing] a policy that controls at least a use of a function on a computing device…," "group one or more computing devices in a group," "*receive a request sent to or from a computing device in the group* to use the function," "*generate a decision* to grant or deny the request based on the policy," and, "enforce the decision by taking an action that is consistent with the decision *and by sending to the computing device data indicative of the action*…" *Id.* (emphasis added).

84.     These limitations mandate that the policies applied to manage the computing device be stored apart from the computing device based on the requirement that requests *to and from the device* must be received and that data consistent with the decision *be sent back to the computing device*.  These limitations capture the

SECOND AMENDED COMPLAINT FOR PATENT INFRINGEMENT

distributed architecture concept <u>not</u> well-understood, routine, or conventional in the art for effecting feature management on a computing device which resulted in improved operation through at least increased resilience to undesirable accessing of policies by a user of the device to manipulate or delete them.

85.     These limitations additionally cover communications requested by a third party device directed to a grouped device managed by the control system claimed in claim 1 of the '612 Patent and its dependent claims.  Effecting control over these incoming communications to a grouped communication device was not well-understood, routine, or conventional to one of ordinary skill in the art.

86.     Claim 1 of the '612 Patent and each claim depending therefrom are rooted in control schemes for managing grouped communication devices and require remote storage of usage polices which are thereby less vulnerable to manipulation and deletion by the user(s) of the grouped device(s) while still accommodating real-time control concurrent with usage.  Communication device management in accordance with the systems claimed improve the functionality of the computer-based system through improved security, effectiveness, and robustness of control accommodated.  As such, the claimed systems are directed to patent eligible subject matter.

87.     Additionally, when considered as an ordered combination of elements, claim 1 and each claim depending therefrom comprise an "inventive concept" for at least the reasons presented herein and above.  These claims apply usage policies stored remote from the grouped devices, an unconventional arrangement at the time which yielded improvements in the operation of communication device control systems.  The few communication device control systems and methods available at the time of invention of the subject matter claimed relied upon storing settings and policies within accessible portions of the device's memory.  As such, these policies were accessible to users of those devices for manipulation and/or deactivation or deletion, circumventing the control system entirely and requiring that each controlled device be configured separately and individually.  The system of claim 1 and its

29

SECOND AMENDED COMPLAINT FOR PATENT INFRINGEMENT

dependent claims run counter to what was well-understood, routine, and conventional to one of ordinary skill in the art at the relevant time applying remotely stored policies to effect real-time control over communication devices and provide other benefits, as noted herein and above.

88.     Qustodio has had actual knowledge of the existence of the '612 Patent since at least June 8, 2018 for at least the reasons discussed above.  As such, Qustodio' infringement of the '612 Patent has been willful since at least June 8, 2018.

89.     Qustodio, without authority, consent, right, or license, and in direct infringement of the '612 Patent, makes, has made, uses, and sells the Accused Products which infringe at least Claims 1, 6, and 8 of the '612 Patent, among others. By way of example only, Qustodio's quality testing and demonstrations of operation of the Accused Products, including several videos, to manage use of computing devices directly infringe, either literally or under the doctrine of equivalents, at least Claims 1, 6, and 8 of the '612 Patent.

90.     Qustodio actively induces infringement of one or more of the claims of the '612 Patent by its customers and end users of at least the Accused Products and is therefore liable for indirect infringement under 35 U.S.C. § 271(b).  Use of the Accused Products to manage use of computing devices as proscribed in Qustodio's product literature, including user manuals and online video tutorials for the Accused Products, infringes at least Claims 1, 6, and 8 of the '612 Patent.  Qustodio makes and sells the Accused Products knowing that they are especially designed for and marketed toward such infringing use by users of these products, such as by parents, for use in selectively permitting or denying use of computing device functionality by children, or employees, in accordance with daily time limits, among other uses. Further, Qustodio provides step-by-step instructions for use of the Accused Products in ways that infringe, either literally or under the doctrine of equivalents, at least Claims 1, 6, and 8 of the '612 Patent in the form of user manuals and online content available through Qustodio's website and YouTube channel.

30

SECOND AMENDED COMPLAINT FOR PATENT INFRINGEMENT

91.     Qustodio contributes to the infringement of one or more of the claims of the '612 Patent by its customers and end users of at least the Accused Products and is therefore liable for indirect infringement under 35 U.S.C. § 271(c).  Qustodio makes and sells the Accused Products which are especially designed for use to manage computing devices configured to communicate over communication networks.  The Accused Products accommodate setting and enforcement of remotely stored Qustodio-configured and administrator-configured policies in the manner described above. Policies are set using the Qustodio App, are stored on Qustodio's servers and/or by the Qustodio Home appliance.  These policies are implemented through Qustodio hardware and software within a home network and through the MyQustodio and/or Qustodio Go applications installed on managed devices while away from the home network.  The policies corresponding to a particular user, or family member, are applied to all devices within a defined group of devices associated with that user. Additionally, all shared devices are grouped within a Home profile with all policies corresponding to the Home profile applied to the shared devices.  As such, the Qustodio appliances, software applications, and servers comprise material aspects of the inventions claimed in at least Claims 1, 6, and 8 of the '612 Patent.

92.     The Accused Products have no substantial non-infringing use, as they are specifically designed and marketed for use by parents in managing use of computing devices used by children, or employees.  Use by Qustodio's customers of the Accused Products in the manner proscribed by Qustodio on the its website, product literature, and YouTube videos constitutes direct infringement, either literally or under the doctrine of equivalents, of at least Claims 1, 6, and 8 of the '612 Patent.

93.     Kajeet expressly reserves the right to assert additional claims of the '612 Patent against Qustodio.

94.     Kajeet has been damaged as a result of Qustodio's infringing conduct. Qustodio is, thus, liable to Kajeet in an amount that adequately compensates for their

SECOND AMENDED COMPLAINT FOR PATENT INFRINGEMENT

infringement, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

95.     Based on Qustodio's actual knowledge of the '612 Patent and of Kajeet's allegations of patent infringement which are consistent with those presented herein since at least June 8, 2018, if not earlier, as well as Qustodio's objective recklessness in continuing to offer for sale and selling the Accused Products since that time, Kajeet is further entitled to enhanced damages under 35 U.S.C. § 284.

## COUNT IV

### Commercial Disparagement / Business Disparagement / Trade Libel

96.     Kajeet recognizes that the cause of action presented in this Count IV has been dismissed from the case following entry of the Court's Order Re Qustodio's Special Motion to Strike Pursuant to FRCP 12(f) and California Code of Civil Procedure § 425.16 (Dkt. No. 102).  The allegations supporting this cause of action are maintained in this Second Amended Complaint for the purpose of preserving them for appeal upon entry of final judgment in this case.

97.     Kajeet repeats and re-alleges all preceding paragraphs of this Complaint, as though fully set forth herein.

98.     Kajeet initially contacted Qustodio in a letter dated June 8, 2018 and addressed to Qustodio's CEO, Eduardo Cruz.  In that letter, Kajeet apprised Qustodio of its claims of patent infringement against Qustodio (consistent with those presented herein) and conveyed Kajeet's desire to reach an amicable business solution to the dispute rather than litigate. To that end, Kajeet offered Qustodio a license to the entirety of Kajeet's patent portfolio.

99.     The June 8, 2018 correspondence provided additional background information about Kajeet, stating:

> "Kajeet is a company conceived of in 1996 by Daniel J.
> Neal and incorporated in 2003 with a vision for mobile
> phones and services that could be safely used by children

SECOND AMENDED COMPLAINT FOR PATENT INFRINGEMENT

1        and all those who love them.  From Mr. Neal's vision

2        grew a patent portfolio of thirty-one (31) issued U.S.

3        Patents with a number of pending applications directed to

4        different aspects of this technology."

5  and:

6        "Kajeet is a successful growing operating company with

7        over 65 employees.  In addition to Daniel Neal, two other

8        dads worked with Daniel to figure out how mobile

9        technology, kids, and parents work best.  They had the

10        foresight to protect their ideas through building a robust

11        patent portfolio.  Kajeet is not a 'patent troll.'  Kajeet,

12        having raised over $100 million in venture capital, is a

13        model of American invention, innovation and

14        commercial success."

15      100.   Kajeet continued to reach out to Qustodio over the next four months to

16  discuss its infringement claims and the possibility of reaching an amicable resolution

17  thereof to no avail.  Qustodio ignored Kajeet's letters and ultimately forced Kajeet to

18  file the present lawsuit.

19      101.   Following filing of Kajeet's Original Complaint on August 24, 2018, the

20  parties engaged in limited discussions exploring the possibility of early settlement.

21  Kajeet's continued willingness to work with Qustodio to resolve the dispute was met

22  with threats by Qustodio to, among other things, make false public statements

23  intended to disparage Kajeet and sully its reputation within the parental controls

24  industry.  Kajeet refused to be bullied, however, and responded by once again

25  apprising Qustodio that Kajeet is a practicing entity with several products on the

26  market and many employees.

27      102.   On December 20, 2018, despite knowing the statements made therein to

28  be both false and defamatory, Qustodio (through its CEO Eduardo Cruz) followed

SECOND AMENDED COMPLAINT FOR PATENT INFRINGEMENT

through on its threat and published a press release disparaging Kajeet and its patents. Specifically, the press release labels Kajeet a "patent troll" and a "threat to our industry." Further, the press release likens Kajeet to a bully filing "predatory patent infringement lawsuits" and baldly asserts that Kajeet's patents are directed to "abstract ideas not protected under U.S. patent laws," and are therefore invalid.

103.   The press release was published through Los Angeles-based Globe Newswire Inc. and remains available to the public via the Internet at URL: https://globenewswire.com/news-release/2018/12/20/1670551/0/en/Qustodio-Invites-Startups-Threatened-by-Kajeet-Inc-to-Join-in-Defensive-Action.html. A true and correct copy of the release is attached hereto as Exhibit F and is incorporated herein for all purposes.

104.   In the legal community, "patent troll" is a "[d]isparaging term for someone who sues for patent infringement but who does not make or sell any product using the patented technology."[4] The term "patent troll" connotes "companies that buy (usually inexpensive poor-quality) -- patents, and use them as a basis for demanding royalty payments from other companies while threatening to sue non-compliant companies."[5] In the business community, "patent troll" is a "perjorative term for a company… that uses a portfolio of patents not to produce products but solely to collect licensing fees or settlements on patent infringement from other companies."[6] The negative "patent troll" rhetoric is especially strong in technology-based industries.

---

[4] *See*, https://www.law.cornell.edu/wex/patent_troll.

[5] *See*, http://www.patentinsuranceonline.com/Trolls.html.

[6] *See*, https://www.britannica.com/topic/patent-troll.

SECOND AMENDED COMPLAINT FOR PATENT INFRINGEMENT

105.   Kajeet is not a patent troll nor has Kajeet engaged in "predatory patent infringement lawsuits" as Qustodio is well aware by virtue of communications between the parties leading up to and during the present litigation as well as via Qustodio and Kajeet's relationship as competitors in the device management and parental controls space.  These false, negative, and malicious statements about Kajeet made by Qustodio in its press release have caused and continues to cause financial and reputational harm to Kajeet.  For example, Google search results from January 11, 2019 for "kajeet" (a screen capture of which is attached hereto as Exhibit G and incorporated for all purposes) returned Qustodio's inaccurate and defamatory press release as the top 'News' result, ahead of other articles covering newly released products and grant programs of Kajeet.  Those interested in learning more about Kajeet and its new products are therefore more likely to wind up accessing Qustodio's defamatory press release and incorrectly associate Kajeet with the negative "patent troll" rhetoric.



106.   Qustodio and Kajeet are competitors in the parental controls industry. Upon information and belief, Qustodio's press release characterizing itself as a hero within the industry for defending itself against Kajeet, which is wrongfully described as a "patent troll" and bully filing "predatory" lawsuits asserting invalid patents,

drives customers and investors away from Kajeet.  By providing a hyperlink to Qustodio's website at the outset of the press release, Qustodio seeks to use the inaccurate and defamatory press release to draw these customers and investors to its own website and products.

107.   Qustodio's bald assertions of invalidity of the Kajeet patents and that they are directed only to abstract ideas diminishes the value of Kajeet's patent portfolio, which is the result of many years of innovative work and financial investment by Kajeet.  Upon information and belief, this along with the reputational harm and loss of market share caused by Qustodio's false and defamatory press release have or will result in a loss of opportunities to obtain investment capital by Kajeet, going forward.

108.   The statements made by Qustodio in its press release are made with malice and for the express purpose of disparaging Kajeet.  They are not made in anticipation of a subsequent litigation nor are they made in furtherance of any objective germane to the issues of this case.  For these and other reasons, Qustodio's statements are not protected by any applicable privilege.

109.   Kajeet expressly reserves the right to assert additional claims in this lawsuit against Qustodio based on additional public statements or publications of Qustodio disparaging Kajeet, its business, its products, and/or its patents of which Kajeet is not presently aware and may discover during the course of this litigation.

110.   Kajeet has been damaged as a result of Qustodio's conduct.  Qustodio is, thus, liable to Kajeet in an amount that adequately compensates Kajeet for damages that are determined to have been suffered by Kajeet, such as loss of market share, loss of investment capital, devaluation of Kajeet's business and patents, reputational harm, and expense necessary to defend itself against Qustodio's conduct.

SECOND AMENDED COMPLAINT FOR PATENT INFRINGEMENT

**COUNT V**

**Defamation by Libel**

111.   Kajeet recognizes that the cause of action presented in this Count V has been dismissed from the case following entry of the Court's Order Re Qustodio's Special Motion to Strike Pursuant to FRCP 12(f) and California Code of Civil Procedure § 425.16 (Dkt. No. 102).  The allegations supporting this cause of action are maintained in this Second Amended Complaint for the purpose of preserving them for appeal upon entry of final judgment in this case.

112.   Kajeet repeats and re-alleges all preceding paragraphs of this Complaint, as though fully set forth herein.

113.   The press release attached hereto as Exhibit F and incorporated herein for all purposes was published or caused to be published by Qustodio on December 20, 2018 on Globe Newswire Inc.'s website and remains available to the public via the Internet at URL: https://globenewswire.com/news-release/2018/12/20/1670551/0/en/Qustodio-Invites-Startups-Threatened-by-Kajeet-Inc-to-Join-in-Defensive-Action.html.

114.   Upon information and belief, this press release was authored by Qustodio through its CEO Mr. Eduardo Cruz.

115.   The press release asserts false statements regarding Plaintiff Kajeet, Kajeet's business, and Kajeet's conduct in licensing and enforcing its patent rights. Specifically, the press release labels Kajeet a "patent troll," a "threat to our industry," and likens Kajeet to a bully filing "predatory patent infringement lawsuits."  These statements were known to be untrue by Qustodio and Mr. Eduardo Cruz by virtue of communications between the parties leading up to and during the present litigation as well as via Qustodio and Kajeet's relationship as competitors in the device management and parental controls space.

116.   The statements in this press release are made with malice and for the express purpose of disparaging Kajeet.  They follow threats made by Qustodio that it

SECOND AMENDED COMPLAINT FOR PATENT INFRINGEMENT

would pursue this exact course of action.  Further, the statements are false and do not reflect a fair and true reporting of Kajeet's business, the validity of its patents, or the conduct of the Parties preceding and during this litigation.  They are not made in anticipation of a subsequent litigation nor are they made in furtherance of any objective germane to the issues of this case.  For these and other reasons, Qustodio's statements are not protected by any applicable privilege.

117.  As noted above, the use of the terms "patent troll," "predatory," and "threat to our industry" are known and pejorative terms having pronounced negative connotation in tech industries and among startups.  As such, the false, negative, and malicious statements about Kajeet made by Qustodio in its press release, standing alone, are sufficient to cause, have caused and continue to cause financial and reputational harm to Kajeet among its peers within the device management and parental controls industry.

118.  Qustodio's false and defamatory press release is intended to and, upon information and belief, does drive potential customers and investors away from Kajeet.  Qustodio's bald assertions of invalidity of the Kajeet patents and that they are directed only to abstract ideas diminishes the value of Kajeet's patent portfolio which diminishes Kajeet's ability to license its patents.

119.  Kajeet expressly reserves the right to assert additional claims in this lawsuit against Qustodio based on additional public statements or publications of Qustodio disparaging Kajeet, its business, its products, and/or its patents of which Kajeet is not presently aware and may discover during the course of this litigation.

120.  Kajeet has been damaged as a result of Qustodio's conduct.  Qustodio is, thus, liable to Kajeet in an amount that adequately compensates Kajeet for damages that are determined to have been suffered by Kajeet, such as loss of market share, loss of investment capital, devaluation of Kajeet's business and patents, reputational harm, and expense necessary to defend itself against Qustodio's conduct.

# VI.  JURY DEMAND

121.   Plaintiff hereby requests a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure.

# VII.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court find in its favor and against Defendant, and that the Court grant Plaintiff the following relief:

a.  Judgment that one or more claims of the Asserted Patents have been directly infringed, either literally or under the doctrine of equivalents, by Defendant, or judgment that one or more of the claims of the Asserted Patents have been directly infringed by others and indirectly infringed by Defendant, to the extent Defendant contributed to or induced such direct infringement by others;

b.  Judgment that Defendant account for and pay to Plaintiff all damages to and costs incurred by Plaintiff because of Defendant's infringing activities and other conduct complained of herein, including enhanced damages as permitted by 35 U.S.C. § 284;

c.  Judgement that Defendant's infringement is willful from the time Defendant was made aware of the infringing nature of its products and methods and that the Court award treble damages for the period of such willful infringement pursuant to 35 U.S.C. § 284;

d.  That Plaintiff be granted pre-judgment and post-judgment interest on the damages caused by Defendant's infringing activities and other conduct complained of herein;

d.  That the Court declare this an exceptional case and award Plaintiff its reasonable attorney's fees and costs in accordance with 35 U.S.C. § 285; and

e.  That Defendant, its officers, agents, servants and employees, and those persons in active concert and participation with any of them, be

1   permanently enjoined from infringement of one or more claims of the

2   Asserted Patents or, in the alternative, if the Court finds that an injunction

3   is not warranted, Plaintiff requests an award of post judgment royalty to

4   compensate for future infringement;

5   f.   Judgment against Defendant for all damages to and costs incurred by

6   Plaintiff attributable to and/or resulting from Defendant's defamation,

7   disparagement and/or trade libel; and,

8   g.   That Plaintiff be granted such other and further relief as the Court may

9   deem just and proper under the circumstances.

10

11   DATED:  November 18, 2019        /s/ *Corby R. Vowell*

12
13   Brandon C. Fernald
     FERNALD LAW GROUP
14   510 W. 6TH Street, Suite 700
     Los Angeles, California 90014
15   Telephone:  (323) 410-0320
     Fax:  (323) 410-0330
16   Email:  brandon.fernald@fernaldlawgroup.com

17
18   Attorney for Plaintiff
     KAJEET, INC.
19
20   Of Counsel:

21   Jonathan T. Suder
22   Michael T. Cooke
     Corby R. Vowell
23   Richard A. Wojcio, Jr.
     FRIEDMAN, SUDER & COOKE
24   Tindall Square Warehouse No. 1
25   604 East 4th Street, Suite 200
     Fort Worth, Texas  76102
26   Telephone:  (817) 334-0400
27   Facsimile:  (817) 334-0401
     Email:  jts@fsclaw.com
28   Email:  mtc@fsclaw.com

40

SECOND AMENDED COMPLAINT FOR PATENT INFRINGEMENT

Email:  vowell@fsclaw.com
Email:  wojcio@fsclaw.com

SECOND AMENDED COMPLAINT FOR PATENT INFRINGEMENT